JEFFREY W. BROKER – State Bar No. 53226
PAMELA J. ZYLSTRA – State Bar No. 147977
BROKER & ASSOCIATES PROFESSIONAL CORPORATION
18191 Von Karman Avenue, Suite 470
Irvine, CA 92612-7114

Telephone: (949) 222-2000
Facsimile: (949) 222-2022
email:    *jbroker@brokerlaw.biz*

General Reorganization Counsel
for Debtor and Debtor-in-Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### RIVERSIDE DIVISION

| | |
|---|---|
| In re<br><br>THE PRESERVE, LLC, a California Limited Liability Company,<br><br>Debtor and<br>Debtor-in-Possession | Case No. 6:08-bk-23006-BB<br><br>Chapter 11 Proceeding<br><br>**DEBTOR'S NOTICE OF MOTION AND MOTION FOR ORDER AUTHORIZING EXTENSION OF (1) DEADLINE TO FILE A PLAN AND DISCLOSURE STATEMENT; AND (2) EXCLUSIVITY PERIOD REGARDING SOLICITATION OF ACCEPTANCES AND REJECTIONS TO PLAN; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS OF SCOTT KRENTEL AND RICHARD HARVEY IN SUPPORT THEREOF**<br><br>[No Hearing Required]<br>[11 U.S.C. §1121(d); Local Bankruptcy Rule 9013-1(o)(1)] |

**TO THE HONORABLE SHERI BLUEBOND, UNITED STATES BANKRUPTCY JUDGE; THE OFFICE OF THE UNITED STATES TRUSTEE; CREDITORS AND PARTIES IN INTEREST:**

THE PRESERVE, LLC, a California Limited Liability Company, the Debtor and Debtor-in-Possession in the within Chapter 11 case (the "Debtor"), hereby moves this Court for its Order, pursuant to 11 U.S.C. §1121(d) and Local Bankruptcy Rule 9013-1(o)(1), extending until May 22,

1  2009, the exclusivity period within which the Debtor has the exclusive right to file a Plan, and
2  extending to July 22, 2009, the exclusivity period within which the Debtor has the exclusive right
3  to solicit acceptances thereto. In addition, the Debtor moves that such extension be without
4  prejudice to the Debtor's right to seek further extension of the exclusivity periods.

5      This Motion is based upon the annexed Memorandum of Points and Authorities and the
6  annexed declarations of Scott Krentel (the "Krentel Declaration") and Richard Harvey (the "Harvey
7  Declaration"), and upon such other additional evidence, oral or documentary, that the Court may
8  consider prior to or at the time of the hearing on the Motion, should such hearing be timely
9  requested.

10      **IF YOU DO NOT OPPOSE THE MOTION AND THE COURT APPROVAL OF**
11  **THE MOTION REQUESTED HEREBY, YOU NEED TAKE NO ACTION. HOWEVER,**
12  **IF YOU OBJECT TO THE COURT APPROVING THE MOTION, PURSUANT TO THE**
13  **PROVISIONS OF LOCAL BANKRUPTCY RULE 9013-1(o), SUCH OBJECTION MUST**
14  **BE FILED WITH THE BANKRUPTCY COURT *NO LATER THAN FIFTEEN (15) DAYS***
15  ***AFTER THE DATE OF SERVICE OF THIS NOTICE* IN THE MANNER REQUIRED BY**
16  **LOCAL BANKRUPTCY RULE 9013-1(o)(1).**

17      **YOU MUST FILE YOUR OBJECTION AND REQUEST FOR A HEARING WITH**
18  **THE CLERK OF THE UNITED STATES BANKRUPTCY COURT, LOCATED AT 3420**
19  **TWELFTH STREET, RIVERSIDE, CALIFORNIA 92501. YOU MUST SERVE A COPY**
20  **OF YOUR OBJECTION TO THE MOTION AND REQUEST FOR A HEARING UPON**
21  **THE DEBTORS' GENERAL REORGANIZATION COUNSEL AT THE ADDRESS**
22  **INDICATED ON THE UPPER LEFT HAND CORNER OF THE FIRST PAGE OF THIS**
23  **MOTION, AND UPON THE OFFICE OF THE UNITED STATES TRUSTEE, LOCATED**
24  **AT 3685 MAIN STREET, SUITE 300, CALIFORNIA 92501.**

25      <u>**UPON RECEIPT OF A TIMELY OBJECTION AND REQUEST FOR A HEARING,**</u>
26  <u>**GENERAL REORGANIZATION COUNSEL WILL OBTAIN A HEARING DATE AND**</u>
27  <u>**GIVE APPROPRIATE NOTICE THEREOF.**</u> **ANY FAILURE TO TIMELY FILE AND**
28

1  SERVE OBJECTIONS MAY RESULT IN ANY SUCH OBJECTION BEING WAIVED,
2  AND THE COURT MAY ENTER AN ORDER APPROVING THE MOTION UPON THE
3  DEBTORS' SUBMISSION THEREOF TO THE COURT WITHOUT FURTHER NOTICE
4  OR HEARING.

5  DATED: January **20**, 2009          BROKER & ASSOCIATES
                                         PROFESSIONAL CORPORATION

                                         By: /s/ Jeffrey W. Broker
                                         Jeffrey W. Broker
                                         General Reorganization Counsel
                                         for Debtor and Debtor in Possession

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## CASE OVERVIEW

This case was commenced by the filing of a voluntary Chapter 11 petition by the Debtor on September 25, 2008 (the "Petition Date"). The Debtor is in the business of acquiring and making real estate investments, and by and through the efforts of its consultants, both political and technical, designs, plans and offers for sale to developers their projects consisting of single family residential lots, commercial and industrial projects to then sell to the public and private builder-developers throughout the United States at a profit. See, Krentel Declaration at ¶2

### A. Administrative matters that have taken place in this case

The Debtor has obtained timely Court authorization to employ General Reorganization Counsel and two law firms to handle litigation matters as its Special Litigation Counsel. The examination of the Debtor pursuant to 11 U.S.C. §341(a) was held and concluded on November 12, 2008. The Debtor is current in its reporting requirements with the Office of the United States Trustee and is also current in the payment of its quarterly fees. The Debtor obtained authority from the Court to borrow up to $2 million for the purpose of funding the Debtor's post-petition cash needs. The Debtor has filed a motion to fix a bar date in this case and will be submitting an Order approving the motion and approving the form of notice on or about February 2 after the expiration of the time period for objection under Local Rule 9013-1(o). See, Krentel Declaration at ¶3.

### B. Point Center Litigation and The Legacy Highlands

To put the dynamics of this case in context, there is a dispute with Point Center as to the nature, extent and validity of its claimed interest in the approximately 700 acres of real property within the "Legacy Highlands" project which is the Debtor's most valuable asset.[1] The Legacy Highlands is a unique, multi-generational master planned community set within the rolling hills of

---

[1] The Point Center Claim is scheduled as Disputed, Unliquidated and Contingent in Schedule D (Exhibit 5 to the Motion). In addition, the Debtor disputes that 46 acres of land *possibly within the legal description* of the deed of trust securing the Point Center Claim was intended to be security for the loan arranged by Point Center.

-4-

West Beaumont, located in Riverside County, California. Land uses include conventional residential single family homes on lots ranging in size from 7,000 to 20,000 square feet, PUD residential single family homes, a gated "active Adult" community which consists of residential single family homes with lots ranging from 4,000 to 7,000 square feet, parks, school sites and trails. A total of 2,868 residential lots have been approved as described below. See, Krentel Declaration at ¶4.

The Specific Plan that sets the zoning standards was approved in January of 2008 after six years of work on this project. The Environmental Impact Report was certified, the Tentative Parcel Map, and a 25 year Development Agreement with two five year extensions of time were also approved by the City Council of the City of Beaumont in January of 2008. The Final Parcel Maps are in the process of being recorded. All the "back bone" infra-structure improvement plans for Portero Parkway, 4th Street, and South Loop Road have been prepared. All the in-tract infra-structure including water, sewer, storm drain, grading, and final maps for planning areas 1.1 through 1.9, 3.1 through 3.3, and 4.1 through 4.4 are completed and are in "plan check" at the City of Beaumont. The Tentative Tract maps are also prepared and have been approved *for financing purposes* by the City of Beaumont. All Tract Maps, and all Improvement Plans are, with the exception of storm drain, being processed thru the City of Beaumont. The City of Beaumont supports and has approved the Legacy Highlands project. The Debtor's actions post-petition have been for the purpose of enhancing the value of the Legacy Highlands project. See, Krentel Declaration at ¶5.

A lawsuit was filed by the Debtor against Point Center and others relating to the transaction which is the subject matter of that claimed interest prior to the Petition Date (the "Point Center Litigation"). The relief sought in the Point Center Litigation is based upon claims set forth in the Complaint for Civil Rico, Fraud, Conversion, Breach of Contract, Breach of the Implied Covenant of Good Faith and Fair Dealing, Rescission, Reformation, Injunctive Relief and the Appointment of a Receiver. Significant monetary damages in an amount in excess of $60 million and other relief is sought in that litigation on behalf of the Debtor. See, Krentel Declaration at ¶6.

The Point Center Litigation is presently before this Court, having been referred by the United States District Court. This matter had been set for its scheduling conference by District Court Judge Stephen G. Larson for May 11, 2009 which compels counsel to meet and confer, thereafter jointly filing certain information with this court according to FRCP 26. Debtor's special litigation counsel has been attempting to schedule the meet and confer since December 13, 2008 and will continue to do so. Debtor's special litigation counsel intends to file a joint status report no later than February 11, 2009 to comply with this Court's order dated December 12, 2008 which sets a status conference for February 25, 2009 at 2:00 p.m. (it is respectfully noted to this Court that its order incorrectly describes The Preserve as the "removing party") and unless otherwise directed by this Court, to file other required pleadings utilizing May 11, 2009 as the scheduling conference date. See, Harvey Declaration at ¶2.

The claim by Point Center has been scheduled as disputed, contingent and unliquidated in view of the significant legal and equitable claims being asserted against it by the Debtor that are diligently being pursued now in this Court as described above. In addition, again with regard to the Legacy Highlands project, the Debtor continues in its defense of the CEQA challenge with a trial now set for January 23, 2008. Further, the Debtor has been proceeding forward with work necessary for the completion of the entitlement process for the Legacy Highlands project as described above. See, Krentel Declaration at ¶7.

The Debtor is exploring the possible purchase of an additional 57 lots that are contiguous to the Adelanto Finished Lot upon very favorable terms to the Debtor. The Debtor is also exploring what to do with the 112 Acres. The Debtor has other secured creditors whose scheduled *undisputed* claims are secured by real property assets *other than the Legacy Highlands project.* The Debtor also has general unsecured creditors having claims in excess of $6 million. The Debtor fully intends to propose a Chapter 11 Plan that treats the claim secured by the Legacy Highlands project when its nature, extent and validity is finally determined as well as the claims of its other secured and unsecured creditors. See, Krentel Declaration at ¶8.

As reflected in the procedural history above, the Debtor has been successful in prosecuting this case within the context of Chapter 11 over the last few months, and is in complete compliance with the requirements of the Office of the United States Trustee. Based upon the foregoing, the Debtor submits that it has demonstrated that it will have "probable success" in formulating a Chapter 11 plan in this case. Accordingly, the Debtor believes that good cause exists in this case for the Court to grant an extension of the plan exclusivity periods by 120 days each, as requested in this Motion.

## II.

## THIS COURT HAS AUTHORITY TO EXTEND THE EXCLUSIVE PERIODS FOR FILING A PLAN AND SOLICITING ACCEPTANCES THERETO

Pursuant to 11 U.S.C. 1121(b), a Chapter 11 debtor has the exclusive right to file a plan of reorganization during the first 120 days following the filing date of a Chapter 11 bankruptcy petition and to thereafter solicit acceptances to any plan so filed for a period of an additional 60 days. 11 U.S.C. § 1121(b):

> Except as otherwise provided in this section, only a debtor may file a plan
> until after 120 days after the date of the order for relief under this Chapter.

11 U.S.C. § 1121(b).

No other party in interest may file a plan of reorganization unless: (i) a trustee has been appointed, (ii) the debtor has not filed a plan within 120 days after the date of the order of relief, or (iii) the debtor has not filed a plan that has been accepted before 180 days after the date of the order for relief by each class of claims or interests that is impaired by the plan. See, 11 U.S.C. § 1121(c). However, 11 U.S.C. §1121(d)(1) empowers the Court to reduce or extend the 120-day and 180-day periods for "cause" when it provides, in pertinent part:

> (1) Subject to subparagraph (2), on request of a party in interest made within
> the respective periods specified in subsection (c) of this section and after
> notice and a hearing, the court may for cause reduce or increase the 120-day
> period or the 180-day period referred to in this section.

11 U.S.C. § 1121(d)(1).

-7-

The Bankruptcy Code does not define "cause" as used in 11 U.S.C. § 1121(d). The decision regarding whether to grant a request to extend the exclusivity periods lies within the sound discretion of the bankruptcy judge. In re Gibson & Cushman, 101 B.R. 405, 409 (E.D.N.Y. 1989). The accepted standard to extend the exclusivity periods, which is supported by the legislative history of Section 1121, requires merely that the debtor make a "showing of some promise of success for reorganization." In the case, In Matter of Newark Airport/Hotel Ltd. Partnership, 156 B.R. 444, 451 (Bankr. D.N.J. 1993) *affirmed* 155 B.R. 93 (D.N.J. 1993), the court stated:

> **. . . As the legislative history to § 1121(d) indicates, the legislature intended that the granting of an extension would be based "on a showing of some promise of probable success [for reorganization]."** 11 U.S.C.A. § 1121(d) (Historical and Revision Notes, S. Rept. No. 95-989).
> . . .
> The purpose of the debtor's exclusivity period is to make a chapter 11 filing attractive enough to encourage ailing businesses to seek reorganization without unduly delaying creditors. *See* In re Pine Run, 67 B.R. at 434. If the chapter 11 provisions did not enable the debtor to remain in control for at least some period of time, debtors would likely avoid the provisions of chapter 11 reorganization until it would no longer be an effective remedy. Id. at 435, relying on, H.R.Rep. No. 595, 95th Cong., 2d Sess. 231-232 (1978), reprinted in U.S.C.C.A.N.1978, pp. 5787, 6191.

Id. at 451 (emphasis added). *See also* In re Landmark Park Plaza Ltd. Partnership, 167 B.R. 752, 756 (Bankr. D. Conn. 1994)("exclusivity extension based upon a showing of some promise of probable success"); In re Montgomery Court Apartments of Ingham County, Ltd, 126 B.R. 537, 539 (Bankr.S.D.Ohio 1991) ("a debtor seeking an extension should make a showing 'of some probable success' in formulating a plan."); In re Grossinger's Associates, 116 B.R. 34, 36 (Bankr.S.D.N.Y. 1990) ("probable success in formulating a plan of reorganization"); In re Washington-St. Tammany Elec. Co-op., Inc., 97 B.R. 852, 854 (E. D. La. 1989) ("the granted extension should be based on a showing of some promise of probable success"); In re Texaco Inc., 76 B.R. 322, 326 (Bankr. S.D.N.Y. 1987) ("probable success in formulating a plan of reorganization").

Further, the very notion of the exclusivity period is to favor and promote the Debtor's efforts to reorganize. See, Legislative History 140 Cong. Rec. H 10714, October 4, 1994. In the case, In re Eagle-Picher Industries, Inc., 176 B.R. 143 (Bankr. S.D. Ohio 1994), the official

unsecured creditors' committee filed a motion to terminate the debtor's exclusivity period so that it could file a competing plan. The official unsecured creditors' committee believed that the presentation of competing plans would serve to expedite a prompt resolution of the case and, therefore, that the debtor's exclusivity period should be terminated. The court found that this did not constitute cause for the termination of the debtor's exclusivity period, specifically stating:

> The view of the UCC [Committee] that it should in fairness be allowed to file an alternative plan because it is entitled to a level playing field does not lead us to alter our view that the UCC has failed to show cause for termination of the exclusivity period. **The UCC argued that a level playing field was what was contemplated by the Bankruptcy Code. That is simply not so. The concept of an exclusivity period in favor of the debtor, a consideration at the heart of the Bankruptcy Code, on its face contradicts the notion that parties in a chapter 11 bankruptcy case be given an equal opportunity to seek confirmation of a plan.** What will happen now in these consolidated cases is that they will proceed in the manner contemplated by the Bankruptcy Code. That is debtors under the shield of exclusivity will present their plan. Other constituencies, all in these case, represented by knowledgeable and competent counsel, can then take such steps in pursuit of the interest of their constituencies as are appropriate. If the debtor's plan fails at confirmation, then it may be appropriate for these constituencies to present their own plan or plans.

Id. at 148 (emphasis added).

The "cause" standard referred to in Section 1121 has been referred to as a general standard that allows the bankruptcy court "maximum flexibility to suit various types of reorganization proceedings." In re Public Service Company of New Hampshire, 88 B.R. 534 (Bankr.D.N.H. 1988). Courts have recognized that the diligence of management and the proper administration of the case are factors supporting an extension of the exclusivity periods. See In re United Press Int'l, 60 B.R. 265 (Bankr. D.D.C. 1986).

As set forth below, the Debtor's request for an extension of the exclusivity periods for the filing of a plan and the solicitation of acceptances to such a plan satisfies the general principles established by the courts as guidelines for a Debtor demonstrating "cause" within the meaning of 11 U.S.C. §1121(d). The Debtor has not yet been able to formulate a Chapter 11 plan in this case. The reasons are compelling, not subject to serious dispute, and constitute "cause" for the granting of the Motion.

-9-

### A. The Court's Consideration of the Pendency of the Point Center Litigation in Approving the Debtor's Requested Extensions of the Exclusivity Periods is Proper.

As stated in the Motion and evidenced by the Declarations of Scott Krentel and Richard Harvey appended hereto, the Debtor's diligent prosecution of its bankruptcy case demonstrates that it is likely to file a confirmable plan of reorganization within a reasonable time. However, the Debtor's ability to file such a plan at this time is impeded by the pendency of the Point Center Litigation in that its disputed, contingent and unliquidated claim needs to be determined in order for the Debtor to properly formulate its treatment under a Plan.

The Court should properly consider the pendency of the Point Center Litigation in deciding whether to extend the exclusivity periods provided by Section 1121(d) of the Bankruptcy Code. See, e.g., In re Slettleland, 260 B.R. 657, 670 (S.D.N.Y. 2001) ("litigation may be one factor, among others, that supports an extension"); In re Texaco, Inc., 76 B.R. 322, 325 (Bankr. S.D.N.Y. 1987) (Bankruptcy court extended exclusivity twice to give the debtors "a reasonable opportunity to pursue their appeal of the Pennzoil judgment" and "to negotiate with the creditors in order to formulate a plan of reorganization"); In re United Press Internat'l, Inc., 60 B.R. 265, 270 (Bankr. D. Colo.1986) ("a pending appeal, along with the consideration of other factors, may lead to a finding of cause for extending the exclusivity period.").

The existence of litigation can constitute cause for an extension where the mass, weight, volume and complication of the litigation justify a "shakedown period". In re Southwest Oil of Jourdanton, Inc., 84 B.R. 448, 452 (Bankr. W.D. Tex. 1987); In re Manville Forest Products Corp., 31 B.R. 991,995 (S.D.N.Y. 1983). In Manville Forest Products Corp., *supra*, the District Court affirmed the Bankruptcy Court's granting of the **fifth extension of the exclusivity period** based on a significant amount of litigation involving the Debtor's parent company, even though there was no substantial showing of any lawful claims of the parent's creditors against the Debtor's assets.

In In re Gibson & Cushman Dredging Corp., 101 B.R. 405 (E.D.N.Y. 1989), 101 B.R. 405, the Bankruptcy Court granted successive motions that had the effect of extending the period in which the Debtor may file a plan to **over one and one half years after the filing of the petition**.

The filing of the petition was prompted by Debtor's desire to maintain its business while challenging the validity of a $2.5 million dollar state tort judgment rendered against the Debtor. According to the Debtor, the judgment was "likely to be reversed by the state appellate court because, inter alia, it was fraudulently obtained." Id. at 406-407. In addition to the judgment, two major claims were noticed against the Debtor's estate, one claim alleged breach of contract seeking approximately $600,000, and the other claim sought to hold the debtor liable in the amount of two million dollars for personal injuries allegedly suffered by a plaintiff. After reviewing the relevant case law, the District Court affirmed the Bankruptcy Court's order extending the exclusivity period.

The prosecution to a conclusion of the Point Center Litigation is inextricably intertwined with the Debtor's ability to propose a meaningful plan. The resolution of the Point Center Litigation is vital to the Debtor's reorganization efforts as Point Center purports to be the agent for third parties which renders Point Center the Debtor's largest secured, but disputed, creditor. However, the Debtor is asserting claims for significant monetary damages which necessarily will impact the claim and its treatment under a plan.

**B.     The Debtor is Operating its Business in an Appropriate Fashion Pending the Proposal of its Plan**

The Debtor is in compliance with the operating requirements of the Office of the United States Trustee. The Debtor believes that its diligently proceeding with the completion of the entitlement process for the Legacy Highlands in order to maximize the value of that asset. In addition, as indicated above, the Debtor is exploring the possible purchase of an additional 57 lots that are contiguous to the Adelanto Finished Lot upon very favorable terms to the Debtor and the Debtor is also exploring what to do with the 112 Acres.

Based upon the foregoing, the Debtor submits that it has demonstrated that it will have "probable success" in formulating a Chapter 11 plan in this case. Accordingly, the Debtor believes that good cause exists in this case for the Court to grant a first extension of the plan exclusivity periods by approximately 120 days each, as requested in this Motion.

## III.

## THE DEBTOR IS REQUESTING AN EXTENSION OF THE PLAN EXCLUSIVITY PERIODS IN GOOD FAITH, AND NOT FOR THE PURPOSE OF PRESSURING CREDITORS TO ACCEDE TO PLAN TERMS

Courts have found that cause exists to extend the plan exclusivity periods where there is no evidence that an extension is being sought for the purpose of pressuring creditors into acceding to a debtor's reorganization demands. *See* In re Pine Run Trust, Inc., 67 B.R. 432 (Bankr. E.D.Pa. 1986). In this case, the Debtor's requested plan exclusivity extension is not intended to hold the parties in interest in this case "hostage" to the Debtor's restructuring efforts. The Debtor is not attempting to force its approach to financial reorganization upon its creditors. The extension is necessary in light of the substantial and material unresolved issues outlined above (i.e., the prosecution of the Point Center Litigation). The extension of time sought by the Debtor will afford an opportunity to continue to deal with the issues outlined above, and to negotiate with creditors and parties in interest (including Point Center) concerning a Chapter 11 plan.

This is the Debtor's first request for an extension of the plan exclusivity periods. This extension is necessary in light of the significant impact of the pending Point Center Litigation on this case and, in addition, will permit the Debtor to continue to negotiate in good faith with creditors and parties in interest. No creditor or party-in-interest in this case will be harmed by the granting of the relief requested herein. Accordingly, the Debtor submits that sufficient "cause" exists for the relief requested by this Motion.

## IV.

## THE DEBTOR HAS PROPERLY ADMINISTERED ITS CHAPTER 11 CASE

Courts have recognized that the diligence of management and the proper administration of the case are yet additional factors in supporting an extension of the exclusivity periods. See, In re United Press International, 60 B.R. 265, 269-270 (Bankr. D.C. 1986); In re Trainer's, Inc., 17 B.R. 246, 247 (Bankr. E.D. Pa. 1982).

-12-

In the present case, the Debtor has properly administered its Chapter 11 case. The Debtor has complied with the requirements of the Bankruptcy Code and the Bankruptcy Rules, and is in full compliance with the requirements of the Office of the United States Trustee. As a result, the Debtor believes an extension is appropriate.

## V.

## **THE DEBTOR'S MOTION IS TIMELY**

Pursuant to 11 U.S.C. §1121(d), on request of a party-in-interest, and after notice and a hearing, the Court may extend the exclusivity periods specified by 11 U.S.C. §1121 if such request for the extension of the exclusivity periods *is made prior to the expiration of the statutory period.* Since the expiration of the statutory period is currently January 23, 2009, the filing of this Motion is timely.

## VI.

## **PURSUANT TO LOCAL BANKRUPTCY RULE 9013-1(o)(1), AN ORDER GRANTING THE RELIEF SOUGHT BY THIS MOTION MAY BE OBTAINED WITHOUT A HEARING**

Local Bankruptcy Rule 9013-1(o)(1) provides that matters can be determined "Upon Notice of Opportunity to Request Hearing" except as to matters specifically noted in Local Bankruptcy Rule 9013-1(o)(2). Relief of the type requested in this Motion is not specifically noted in Local Bankruptcy Rule 9013-1(o)(2) and therefore may be determined upon *notice of opportunity to request a hearing* basis. Thus, an order on this Motion may be obtained without a hearing in the absence of a timely objection.

-13-

## VII.

## CONCLUSION

The Debtor respectfully requests that this Court grant the relief requested herein without the need for a hearing, if no objection by a party in interest is timely filed, and if a request for hearing is timely filed that the Court grant the relief requested herein after hearing.

DATED: January 20, 2009

**BROKER & ASSOCIATES
PROFESSIONAL CORPORATION**

By: *Jeffrey Broker*
Jeffrey W. Broker
General Reorganization Counsel for
Debtor and Debtor-in-Possession

-14-

## DECLARATION OF SCOTT KRENTEL

I, Scott Krentel, declare and state as follows:

1. The matters stated herein are true and correct and are within my personal knowledge, and if called upon to testify as a witness, I could and would testify competently thereto. I am the manager of Beaumont 1600, a California Limited Liability Company, which is the manager of the Debtor.

2. This case was commenced by the filing of a voluntary Chapter 11 petition by the Debtor on September 25, 2008 (the "Petition Date"). The Debtor is in the business of acquiring and making real estate investments, and by and through the efforts of its consultants, both political and technical, designs, plans and offers for sale to developers their projects consisting of single family residential lots, commercial and industrial projects to then sell to the public and private builder-developers throughout the United States at a profit.

3. The Debtor has obtained timely Court authorization to employ General Reorganization Counsel and two law firms to handle litigation matters as its Special Litigation Counsel. The examination of the Debtor pursuant to 11 U.S.C. §341(a) was held and concluded on November 12, 2008. The Debtor is current in its reporting requirements with the Office of the United States Trustee and is also current in the payment of its quarterly fees. The Debtor obtained authority from the Court to borrow up to $2 million for the purpose of funding the Debtor's post-petition cash needs. The Debtor has filed a motion to fix a bar date in this case and will be submitting an Order approving the motion and approving the form of notice on or about February 2 after the expiration of the time period for objection under Local Rule 9013-1(o).

4. To put the dynamics of this case in context, there is a dispute with Point Center as to the nature, extent and validity of its claimed interest in the approximately 700 acres of real property within the "Legacy Highlands" project which is the Debtor's most valuable asset.[1] The

---

[1] The Point Center Claim is scheduled as Disputed, Unliquidated and Contingent in Schedule D (Exhibit 5 to the Motion). In addition, the Debtor disputes that 46 acres of land *possibly within the legal description* of the deed of trust securing the Point Center Claim was intended to be security for the loan arranged by Point Center.

-15-

Case 2:10-bk-18429-BB    Doc 76    Filed 01/21/09    Entered 01/21/09 11:05:45    Desc
Main Document    Page 16 of 20

Legacy Highlands is a unique, multi-generational master planned community set within the rolling hills of West Beaumont, located in Riverside County, California. Land uses include conventional residential single family homes on lots ranging in size from 7,000 to 20,000 square feet, PUD residential single family homes, a gated "active Adult" community which consists of residential single family homes with lots ranging from 4,000 to 7,000 square feet, parks, school sites and trails. A total of 2,868 residential lots have been approved as described below.

5. The Specific Plan that sets the zoning standards was approved in January of 2008 after six years of work on this project. The Environmental Impact Report was certified, the Tentative Parcel Map, and a 25 year Development Agreement with two five year extensions of time were also approved by the City Council of the City of Beaumont in January of 2008. The Final Parcel Maps are in the process of being recorded. All the "back bone" infra-structure improvement plans for Portero Parkway, 4th Street, and South Loop Road have been prepared. All the in-tract infra-structure including water, sewer, storm drain, grading, and final maps for planning areas 1.1 through 1.9, 3.1 through 3.3, and 4.1 through 4.4 are completed and are in "plan check" at the City of Beaumont. The Tentative Tract maps are also prepared and have been approved *for financing purposes* by the City of Beaumont. All Tract Maps, and all Improvement Plans are, with the exception of storm drain, being processed thru the City of Beaumont. The City of Beaumont supports and has approved the Legacy Highlands project. The Debtor's actions post-petition have been for the purpose of enhancing the value of the Legacy Highlands project.

6. A lawsuit was filed by the Debtor against Point Center and others relating to the transaction which is the subject matter of that claimed interest prior to the Petition Date (the "Point Center Litigation"). The relief sought in the Point Center Litigation is based upon claims set forth in the Complaint for Civil Rico, Fraud, Conversion, Breach of Contract, Breach of the Implied Covenant of Good Faith and Fair Dealing, Rescission, Reformation, Injunctive Relief and the Appointment of a Receiver. Significant monetary damages in an amount in excess of $60 million and other relief is sought in that litigation on behalf of the Debtor.

-16-

7. The claim by Point Center has been scheduled as disputed, contingent and unliquidated in view of the significant legal and equitable claims being asserted against it by the Debtor that are diligently being pursued now in this Court as described above. In addition, again with regard to the Legacy Highlands project, the Debtor continues in its defense of the CEQA challenge with a trial now set for January 23, 2008. Further, the Debtor has been proceeding forward with work necessary for the completion of the entitlement process for the Legacy Highlands project as described above.

8. The Debtor is exploring the possible purchase of an additional 57 lots that are contiguous to the Adelanto Finished Lot upon very favorable terms to the Debtor. The Debtor is also exploring what to do with the 112 Acres. The Debtor has other secured creditors whose scheduled *undisputed* claims are secured by real property assets *other than the Legacy Highlands project*. The Debtor also has general unsecured creditors having claims in excess of $6 million. The Debtor fully intends to propose a Chapter 11 Plan that treats the claim secured by the Legacy Highlands project when its nature, extent and validity is finally determined as well as the claims of its other secured and unsecured creditors.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct and that this declaration was executed this 20th day of January, 2009 at Riverside, California.

_____
Scott Krentel

-17-

## DECLARATION OF RICHARD A. HARVEY

I, Richard A. Harvey, declare and state as follows:

1. The matters stated herein are true and correct and are within my personal knowledge, and if called upon to testify as a witness, I could and would testify competently thereto. I am an attorney at law, duly licensed to practice in the State of California and before the bar of this Court and my law firm is the Special Litigation Counsel to the Debtor in the Point Center Litigation.

2. The Point Center Litigation is presently before this Court, having been referred by the United States District Court. This matter had been set for its scheduling conference by District Court Judge Stephen G. Larson for May 11, 2009 which compels counsel to meet and confer, thereafter jointly filing certain information with this court according to FRCP 26. I have been attempting to schedule the meet and confer since December 13, 2008 and will continue to do so. I intend to file a joint status report no later than February 11, 2009 to comply with this Court's order dated December 12, 2008 which sets a status conference for February 25, 2009 at 2:00 p.m. (it is respectfully noted to this Court that its order incorrectly describes The Preserve as the "removing party") and unless otherwise directed by this Court, to file other required pleadings utilizing May 11, 2009 as the scheduling conference date.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct and that this declaration was executed this 20th day of January, 2009 at Lake Forest, California.

Richard A. Harvey

-18-

| In re:<br>THE PRESERVE, LLC | CHAPTER 11 |
|---|---|
| Debtor(s). | CASE NUMBER 6:08-bk-23006-BB |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 18191 Von Karman Avenue, Suite 470, Irvine, CA 92612

The foregoing document described **DEBTOR'S NOTICE OF MOTION AND MOTION FOR ORDER AUTHORIZING EXTENSION OF (1) DEADLINE TO FILE A PLAN AND DISCLOSURE STATEMENT; AND (2) EXCLUSIVITY PERIOD REGARDING SOLICITATION OF ACCEPTANCES AND REJECTIONS TO PLAN; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS OF SCOTT KRENTEL AND RICHARD HARVEY IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On January 21, 2009 I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

dfisher@ptwww.com (Palmieri Tyler et al.)
kmurphy@goeforlaw.com (Goe & Forsythe, LLP)
ustregion16.rs.ecf@usdoj.gov (United States Trustee)
mcschnitzer@rhlaw.com (Reid & Hellyer)

☐ Service information continued on attached page

II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served):
On January 21, 2009 I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

The Hon. Sheri Bluebond

☒ Service information continued on attached page

III. **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on_____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| January 21, 2009 | Barbara Jean Little-Raphael | */s/ Barbara Jean Little-Raphael* |
|---|---|---|
| Date | Type Name | Signature |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009                                                                                                              **F 9013-3.1**

Office of the US Trustee
3685 Main Street, Suite 300
Riverside, CA 92501
**[via ECF notice]**

Riverside County Tax collector
P.O. Box 12005
Riverside, CA 92502-2205

The William Marano Living Trust
c/o Steve Coldwell
3239 North Verdugo Road
Glendale, CA 91208-1633

Gresham Savage Nolan & Tilden
3750 University Avenue,
Suite 250
Riverside, CA 92501-3335

Barry Hildebrandt
20886 Indigo Point
Riverside, CA 92508

National Financial Lending, LLC
7 Argonaut
Aliso Viejo, CA 92656

Lloyd Charton
14 Monarch Bay Plaza No. 310
Dana Point, CA 92629

San Bernardino County Tax Collector
172 West Third St., First Floor
San Bernardino, CA 91425-0360

Mark Schnitzer, Esq.
Reid & Hellyer
P.O. Box 1300
Riverside, CA 92502-1300
**[via ECF notice]**

The Preserve, LLC
7006 Magnolia Ave., PMB 309
Riverside, CA 92506

Franchise Tax Board
Attention: Bankruptcy
PO Box 2952
Sacramento, CA 95812-2952

Scott H. Krentel
7006 Magnolia, PMB No 309
Riverside, Ca 92506

Bandari Beach Lim & Cleland
12424 Wilshire Blvd. Suite 750
Los Angeles, CA 90025

Palmieri Tyler et al
2603 Main Street, East Tower
Suite 1300
Irvine, CA 92614
[Special Notice] **[via ECF notice]**

Sherry Ikezawa
6349 Riverside Avenue
Riverside, CA 92506

Point Center Financial, Inc.
(PCF1)
7 Argonaut
Aliso Viejo, CA 92656

Cherry Valley Pass Acres
c/o Rogers Joseph O'Donnell
311 California Street
San Francisco, CA 94104

Richard A. Harvey, Esq.
21076 Bake Parkway, Suite 106
Lake Forest, CA 92630

Internal Revenue Service
P.O. Box 21126
Philadelphia, PA 19114

Point Central Financial
7Argonaut
Aliso Viejo, Ca 92656

Aamir Raza
655 Central Avenue, 17th Floor
Glendale, CA 91203

Rox Consulting Group, Inc
575 Anton, Suite 820
Costa Mesa, CA 92626

Deep Canyon Holdings, Inc.
P.O. Box 10723
Palm Desert, CA 92255

Point Center Financial, Inc.
(PCFU)
7 Argonaut
Aliso Viejo, CA 92656

Robert P. Goe, Esq.
Goe & Forsythe, LLP
660 Newport Center Drive #320
Newport Beach, CA 92660
[Special Notice] **[via ECF notice]**

Cherry Valley Environmental
c/o Rogers Joseph O'Donnell
311 California Street
San Francisco, CA 94104