JEFFREY W. BROKER – State Bar No. 53226
PAMELA J. ZYLSTRA – State Bar No. 147977
BROKER & ASSOCIATES PROFESSIONAL CORPORATION
18191 Von Karman Avenue, Suite 470
Irvine, CA 92612-7114

Telephone: (949) 222-2000
Facsimile: (949) 222-2022
email:    *jbroker@brokerlaw.biz*

General Reorganization Counsel
for Debtor and Debtor-in-Possession

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## RIVERSIDE DIVISION

| | |
|---|---|
| In re<br><br>THE PRESERVE, LLC, a California Limited Liability Company,<br><br>Debtor and<br>Debtor-in-Possession | Case No. 6:08-bk-23006-BB<br><br>Chapter 11 Proceeding<br><br>**REPLY BY DEBTOR AND DEBTOR-IN-POSSESSION TO PRELIMINARY OPPOSITION BY POINT CENTER FINANCIAL TO MOTION OF DEBTOR AND DEBTOR-IN-POSSESSION FOR ORDER (1) AUTHORIZING SECOND EXTENSION OF DEADLINE TO FILE A PLAN AND DISCLOSURE STATEMENT AND (2) EXCLUSIVITY PERIOD REGARDING SOLICITATION OF ACCEPTANCES AND REJECTIONS TO PLAN; MEMORANDUM OF POINTS AND AUTHORITIES AND SUPPLEMENTAL DECLARATION OF JEFFREY W. BROKER IN SUPPORT THEREOF**<br><br>[SUPPLEMENTAL DECLARATION OF DAVID GOLKAR AND REQUEST FOR JUDICIAL NOTICE FILED CONCURRENTLY HEREWITH]<br><br>Date: July 29, 2009<br>Time: 2:00 p.m.<br>Ctrm: 303 |

**TO THE HONORABLE SHERI BLUEBOND, UNITED STATES BANKRUPTCY JUDGE; THE OFFICE OF THE UNITED STATES TRUSTEE; OBJECTING PARTY POINT CENTER FINANCIAL, INC. AND ITS ATTORNEYS, AND PARTIES IN INTEREST:**

THE PRESERVE, LLC, a California Limited Liability Company, the Debtor and Debtor-in-Possession in the within Chapter 11 case (the "Debtor"), hereby presents its Reply to the Preliminary Opposition (the "Opposition") filed by Point Center Financial, Inc. ("Point Center") to the Debtor's *MOTION OF DEBTOR AND DEBTOR-IN-POSSESSION FOR ORDER (1) AUTHORIZING SECOND EXTENSION OF DEADLINE TO FILE A PLAN AND DISCLOSURE STATEMENT AND (2) EXCLUSIVITY PERIOD REGARDING SOLICITATION OF ACCEPTANCES AND REJECTIONS TO PLAN* (the "Motion"). Annexed hereto is the Supplemental Declaration of Jeffrey W. Broker (the "Broker Supplemental Declaration") in further support of this Reply. In addition, filed concurrently herewith are the Supplemental Declaration of David Golkar (the "Golkar Supplemental Declaration") and a Request for Judicial Notice (the "RJN") in further support of this Reply.

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.**

<u>**OVERVIEW**</u>

This voluntary Chapter 11 case was filed on September 25, 2008 in response to actions and activities taken by a <u>predatory arranger</u> of a secured loan to the Debtor as part of what has turned out to clearly be a **lend to own** Ponzi Scheme followed by a **scorched earth**[1] approach in this case. This financial predator, Point Center Financial, Inc. ("Point Center"), the sole opposing party herein through its Opposition, has heretofore caused significant damage and disruption to the Debtor's business operations through its illegal activities and efforts to acquire title to the Debtor's

---

[1] Examples include objecting to the motion to borrow funds from Scott Krentel in order to fund the case (overruled by the Court per its Order entered on November 26, 2008), objection (later withdrawn) to insider compensation, and a motion for a single asset real estate determination that was denied (per Order entered on December 24, 2008). No reconsideration or appellate review was taken with respect to any of the aforementioned Orders.

-2-

Legacy Highlands project, directly resulting in the initiation of this Chapter 11 case. It should be specifically noted that Point Center has been scheduled in this case as a "<u>purported servicing agent on behalf of multiple lenders holding fractional interests</u>" (emphasis added) and was specifically characterized in the Debtor's schedules as the holder of a ***contingent, unliquidated and disputed*** claim in this case. The Debtor contends that its case has special circumstances that justify the extension of the exclusivity periods.

<u>Point Center diverted for its own purposes</u> **$7.675 million of the Debtor's funds** out of a fully funded $39 million loan (the "Loan") as asserted in the Motion. In addition, at the time of the origination of the $39 million loan, Point Center was paid a loan broker fee of **$2.34** million which was calculated based upon the fully funded $39 million loan (which was obviously never fully funded) as asserted in the Motion. *There is a minimum of over $10 million in damages just attributable to those two items alone.* <u>The Debtor's dispute with Point Center existed for approximately a year prior to the Petition Date.</u>

As asserted in the Motion, the disclosure by Point Center in approximately October 2007 that <u>$7,675,980.00 of the funds attributable to the $39 million loan arranged by Point Center in 2006</u> **were not existent** left the Debtor 'in the lurch' without the full use of the anticipated proceeds from the Loan for its use in the ongoing development process involving the Legacy Highlands project. Those funds were specifically earmarked to pay for "soft costs" or related interest reserves relating to the ongoing development of the Legacy Highlands project, which include but are not limited to consulting fees, 'contingency', legal and insurance, management fees, property maintenance and property tax reserves. The **defalcation** on the part of Point Center meant no remaining interest reserve for the Loan; the nonpayment of interest was the basis for the recording of the notice of default in the first place! In other words, the Debtor would not be here, but for the defalcation by Point Center and the failure to fund, among other items, sufficient funds to have carried the interest on the Loan for fourteen months beyond October 2007. In addition, there was a commitment to have the Loan extended for an additional two years beyond its original maturity date (to September 2010).

As asserted in the Motion, Point Center demanded that the Debtor fund the purported shortfall without any reduction in the fees and costs that were taken at the inception of the "Loan." After the *existence of the shortfall* was disclosed to the Debtor by Point Center, the Debtor made arrangements to raise money through Deep Canyon Holdings, Inc. ("DCH") in order to assist in the replacement of the missing proceeds. After DCH provided over $1.3 million to Point Center and was granted definitive fractionalized interests in the Loan in its own name, further funding by DCH was refused by Point Center, in violation of the terms of its own loan modification with the Debtor, and Point Center indicated that no further investment would be allowed by DCH in connection with the Loan. Thereafter, Mr. Krentel loaned $1,197,497 to the Debtor at great personal hardship in order to keep the development process for the Legacy Highlands project moving forward.

DCH has its own disputes with Point Center, is represented by its own separate legal counsel in this case, filed its own separate proof of secured claim pertaining to its definitive fractionalized interests in the Loan and has independently objected to the relief sought by Point Center in its Motion for Relief From Stay (the "RFS Motion") that was filed on June 16, 2009. See, RJN Exhibit 4. In addition, other parties claiming to be holders of definitive fractional interests in the Loan filed (i) a written objection and (ii) eight (8) separate declarations asserting the status of "Real Parties in Interest" in independent opposition to the RFS Motion. See, RJN Exhibits 5 through 13. An evidentiary hearing is set to take place on September 17, 2009 to address, among other matters, the <u>authority</u> of Point Center to act on behalf of the Loan in this case. See, Broker Supplemental Declaration at ¶2. The "authority" issue in and of itself is a special circumstance in this case justifying extension of the exclusivity periods.

Point Center has filed a proof of claim on behalf of 113 purported fractionalized interest holders and three Point Center 'pools' or 'funds.' See, RJN Exhibit 14, and Broker Supplemental Declaration at ¶3. In Reply pleadings filed in connection with the RFS Motion on July 7, 2009, Point Center most recently asserts that *there are now approximately 182 purported fractionalized "investors" in the Loan.* See, RJN Exhibit 15, at page 3, footnote 1 thereof. The Debtor needs to obtain information about the <u>entirety</u> of the now approximately **182** fractionalized interest holders

that Point Center claims exist. Point Center has been frustrating those efforts. There is a Motion to Compel Production of Documents and Request for Sanctions brought by the Debtor that is set for July 29, 2009 in the Point Center Litigation at 2:00 p.m. in this Court (set at the same time as this Motion) regarding the failure on the part of Point Center; Escrow Professionals, Inc.; Point Center Mortgage Fund I, LLC; National Financial Lending, Inc; and National Financial Lending, LLC to adequately respond to the first wave of written discovery served by Debtor several months ago. See, Broker Supplemental Declaration at ¶4. The "true investor" issue including the verification of investment in and of itself is a special circumstance in this case justifying extension of the exclusivity periods

As the Motion and this Reply again demonstrate, this case has significant complexities and only one entity – Point Center who is itself not a creditor and only an *alleged* "servicer"– has been an ongoing impediment to the reorganization process. When the Court considers the source of the Opposition (a party who stole the Debtor's money) and the true motive on the part of Point Center of diverting attention away from the pre-petition **defalcation** which negatively impacted the Debtor and caused the filing of this Chapter 11 case in the first instance, the Court must overrule the Opposition and grant the Motion.

## II.

## THE POINT CENTER LITIGATION

A lawsuit was filed by the Debtor against Point Center and others relating to the transaction which is the subject matter of that claimed interest prior to the Petition Date (the "Point Center Litigation") described in detail in the Motion at page 8. As further described at page 9 of the Motion, Point Center has not produced documents that have been repeatedly requested on behalf of the Debtor in the Point Center Litigation. Only a small portion of the contact information regarding the *investors* purportedly represented by Point Center or monies actually received from *investors* in connection with the Loan have been produced to date. No documents concerning any commissions received by Point Center, and any information that relates to the transaction forming the basis of the proof of Claim filed by Point Center regarding Point Center's methodology in

doing business, the actual location of funds purportedly invested in the Loan but misdirected to other loans in an alleged "bait and switch" of documents which were not to be a part of the Debtor's Loan have been produced to date. Special Litigation Counsel for Debtor was not supplied the information either in the Rule 26 (Bankruptcy Rule 7026) "disclosure" process or in response to formal document discovery demands propounded under Rule 34 (Bankruptcy Rule 7034) that were responded to on May 8, 2009 <u>without the concurrent production of a single document</u>. The Demand for production of documents is attached as Exhibit 2 and the Response thereto is attached as Exhibit 3 to the Harvey Declaration annexed to the Motion. A Motion to Compel Production of Documents and Request for Sanctions is set for hearing at the same time as the hearing on this Motion. <u>See</u>, Broker Supplemental Declaration at ¶4.

### III.
### THE DEBTOR'S POST-PETITION BORROWING TO FUND ONGOING OPERATIONS

Notwithstanding objection by Point Center, this Court approved the proposed post-petition borrowing from Mr. Krentel (in an amount up to $2 million for the purpose of funding the Debtor's post-petition cash needs) pursuant to its order entered on November 26, 2008. The debtor has been proceeding forward in its reorganization efforts with *replacement funding* from Mr. Krentel. <u>See</u>, Krentel Declaration annexed to the Motion at ¶10.

### IV.
### RECENT DEVELOPMENTS INVOLVING THE CEQA CHALLENGE

The CEQA Challenge was initiated in February of 2008. The trial of the CEQA Challenge took place on January 23, 2009. The trial court judge concluded in the Judgment filed on March 30, 2009 that, in his opinion, some, (but far from all that had been alleged) CEQA "violations" had occurred. Specifically, the trial count found that the water supply for the next 20 years had not been adequately reviewed. Recognizing that the scope of items reviewed under CEQA can be, and often is, extensive the statutes require that the court "itemize" its determination of any shortfall. This, then, enables the agency to redo that portion (<u>and that portion only</u>) that was found to be

inadequate. This project has been returned to the City of Beaumont (the "City") to "correct" those portions of CEQA's requirements that were found wanting. The Debtor has, even before trial, conducted its own further water analysis and can with relative ease supply the City with additional factual data about water as well as more information regarding the unacceptability of the suggested alternatives and furnish more support for the overriding benefits of the project. The City is in the process of hiring Wildermuth Environmental, Inc. for the purpose of producing a report that will satisfy the requirements of the judgment relating to the CEQA Challenge. Although precise time lines are somewhat uncertain for situations such as this, it is believed by Debtor's Special Litigation Counsel and by the principal engineer, project manager and lead consultant (David Golkar of Rox Consulting) in charge of the Legacy Highlands project to be likely that the correction activities can be completed within the next 4 to 6 months and the corrective work circulated, and approved by the Beaumont City Council and the EIR re-certified and then submitted to this same court for confirmation and the matter of the CEQA Challenge concluded favorably to the Debtor and the City of Beaumont. See, Golkar Supplemental Declaration at ¶¶3-6 and see also RJN Exhibits 16 (Declaration of John C. Nolan at ¶¶1-12) and 17 (Declaration of John C. Nolan at ¶¶3-4). The Debtor is continuing with all dispatch in the entitlement process for the Legacy Highlands project and is pleased that the CEQA Challenge is in the process of being favorably concluded within approximately the next 4 to 6 months.

## V.

## CHALLENGES IN PLAN FORMULATION

The Debtor has other secured creditors whose scheduled *undisputed* claims are secured by real property assets *other than the Legacy Highlands project*. The Debtor also has general unsecured creditors having claims in excess of $6 million. The Debtor fully intends to propose a Chapter 11 Plan that fairly treats the claim asserted by Point Center as the alleged agent for third party investors when its true nature, extent and validity is finally determined as well as fairly treats the claims of its other secured and unsecured creditors. See, Krentel Declaration annexed to Motion at ¶14.

The Debtor faces the following challenges, among others, in attempting to address the proof of claim filed by Point Center (*as an alleged agent*) in its formulation of a plan pertaining thereto:

- Point Center is <u>not</u> the lender;
- Neither through its initial disclosures nor as a result of formal discovery requests by Debtor in the adversary proceeding, did Point Center produce any document other than an irrelevant broker license for the period 2008 through 2011 which purports to allow Point Center to represent any purported investor in this case;
- Point Center has aggressively resisted the production of any documents that would verify, certify or even mention the contact information of any alleged investor until its recent partial production which is the subject of a motion to compel on July 29, 2009. (The Debtor is therefore unable to verify what arrangement, if any, exists between Point Center and the true investors);
- Point Center has not produced, either through its initial disclosures or pursuant to a formal written discovery request, any documentation that Point Center has notified the actual investors of Point Center's actions or that any alleged investor has validly authorized the actions; and
- The Debtor has reviewed the public record as of various dates but has been unable to complete its review and analysis of the status, number and names of all of the true investors, as a result of Point Center's refusal to produce the records in either the bankruptcy or the adversary action in a timely fashion.

The Debtor believes that Point Center has what appears to be a clear <u>conflict of interest</u> in this matter. It has not to date, nor has it in its Objection to this Motion, represented to this Court **under oath** that it has **disclosed to all of the alleged investors in the Loan** that, notwithstanding it was paid a fee of $2,340,000 based upon the fully funded $39 million loan, <u>in fact</u> (i) the Loan was not fully funded, (ii) when the Debtor obtained an additional funding source (DCH) to replace the missing Loan proceeds, further funding from DCH was refused by Point Center in violation of

the terms of its Loan modification with the Debtor and (iii) the Debtor had initiated litigation against Point Center and others in September 2008 for Civil Rico, Fraud, Conversion, Breach of Contract, Breach of the Implied Covenant of Good Faith and Fair Dealing, Rescission, Reformation, Injunctive Relief and the Appointment of a Receiver in connection with the Loan. The Debtor believes that Point Center does not want its *investors* in this Loan (to the extent they can be disclosed and verified) as well as the other plaintiffs in other litigation pending against Point Center as well as regulatory authorities already examining Point Center to know about the problems with the Loan and is, for that reason, *stonewalling* the Debtor in its discovery efforts and the assertion of its rights in the Point Center Litigation.

<u>The Debtor wants to negotiate with the legitimate investors/creditors involved with the Loan since it believes that Point Center has an obvious conflict.</u> There is an inherent problem dealing directly with a party (Point Center) whom the Debtor believes is not only **dishonest** but is also 'hiding the ball' from the Debtor and the true investors in the Loan. The Debtor has been stymied in its efforts to ascertain the contact information and back-up regarding any investor in the Loan. The Debtor is fully prepared to discuss plan issues such as a payoff and payment options and/or profit participation in the Legacy Highlands in the future, and participation in the Point Center Litigation with the true legitimate creditors (investors) in the Loan in this case once their contact information is disclosed in order for the Debtor to confirm their *bona fides* in connection therewith. <u>See</u>, Krentel Declaration annexed to Motion at ¶16.

## VI.

## **ARGUMENT**

A. **DEMONSTRATION OF CAUSE**

On the issue of cause the reported cases amalgamate the following relevant factors (*see also*, <u>In re Henry Mayo Newhall Memorial Hospital</u>, 282 B.R. 444, 452 (9th Cir. BAP 2002):

- Was this the first extension requested
- Was the case complicated
- Was the case pending for a long time relative to its size and complexity

- Was the debtor proceeding in good faith
- Was the debtor paying current operating expenses
- Was there a reasonable prospect for filing a viable plan and prepare adequate information
- Was there satisfactory progress negotiating with key creditors
- Was the extension sought to pressure creditors
- Was there an unresolved contingency

This is the second extension requested by the Debtor in this case. The request by the Debtor was made timely.

The Debtor submits that this case is complex for four reasons. The first is the magnitude and inherent complexity of the Legacy Highlands project in and of itself that has been worked on for well over six years. The entitlements process is substantially completed which the Debtor contends has enhanced the value of the Legacy Highlands project. The second is the fact that the CEQA Challenge is still a few months away from its anticipated favorable completion and the EIR certification becoming immune against further attack. The Debtor has demonstrated significant progress in the entitlement processes, has taken steps to rectify the deficiencies in the judgment relating to the CEQA Challenge and believes it will be favorably resolved within the next 4 to 6 months. The third is the pending litigation against Point Center, which will be tried before a jury in the United States District Court next year. **Stated simply, Point Center took money that belonged to the Debtor, paid itself a fee that it did not earn, and through its improper actions precipitated the filing of this case.** The fourth is the Debtor's long stated desire to communicate with the 'true' creditors in the Loan in this case, which may be coming to fruition through the discovery process and the investors who, to date, have filed pleadings in the case.

This case has not been pending for a "long time" since it was filed on September 25, 2008. The Debtor has made progress in both the entitlement processes and in its prosecution of the pending litigation against Point Center in order to obtain information that is both relevant to the litigation and to Loan and the 'true' creditor issue in this case.

-10-

The Debtor asserts that it filed its Chapter 11 case in good faith and is proceeding in good faith in its efforts to reorganize. The Debtor is current in its administrative operating expenses through Court-approved borrowing (over the objection of Point Center) and is in complete compliance with the requirements of the Office of the United States Trustee.

A plan in this case is inextricably intertwined with the amount, *if anything*, that is found to be owed on the Loan. <u>The Debtor has no objection to the matter being referred (again) to mediation with Point Center if the Court determines that it has authority to act on behalf of the Loan</u>. However, the Debtor believes that Point Center does not represent the interests of most if not all 'investors' relevant to the Loan and the Debtor is evaluating how to proceed with a *diversity of constituents* apparently present here: (i) DCH, which has appeared several times in this case, filed its own Proof of Secured Claim based upon its fractionalized interest and has affirmatively opposed the RFS Motion, (ii) a group of Point Center "investors" who have appeared in opposition to the RFS Motion and are interested in communicating with the Debtor in connection with the Loan, and (iii) perhaps even the SEC itself or a receiver or other fiduciary. Now that there is momentum on the "fractionalized interest" holder front the Debtor is encouraged that negotiation with the 'true' creditors in this case may be a realistic expectation for plan formulation purposes.

The Debtor has not pressured any of its creditors with regard to a particular payment proposal, although there have been discussions with parties *other than* Point Center post-petition in that regard. Finally, there are the unresolved contingencies of what the Debtor *actually owes* with regard to the Loan, *if anything*, at the end of the day, and whether it is validly secured in the first instance (the discovery process in the adversary proceeding is critical in that regard), the completion of the entitlement process, as well as the final corrective work relating to the CEQA Challenge completed, circulated, approved and the corrected portion of the EIR re-certified by the Beaumont City Council.

The authorities cited by Point Center on the issue of cause, most notably <u>In re R.G. Pharmacy, Inc.</u>, 374 B.R. 484 (Bankr. D. Conn. 2007) miss the mark. In <u>R.G. Pharmacy</u>, the case dynamics were significantly different than those at bar. First, Debtor did not show good cause

pursuant to 11 USCS §1121(d) to further extend debtor's exclusivity period where debtor's bankruptcy case was not particularly large (debtor had assets of just under $ 4,000,0000) and there was <u>no support by any constituency</u> (the two major secured and unsecured creditors both opposed the extension of exclusivity). The major secured creditor held a claim of $2.5 million (82% of total scheduled secured debt), and the major unsecured creditor held an unsecured claim of $1.6 million (98% of total scheduled unsecured debt), *$1.025 million of which was a stipulated allowed administrative claim.* In addition, the United States and the State of Connecticut (both unscheduled) had filed proofs of claim asserting an estimated aggregate unsecured claim of $2.7 million. There was a breakdown in negotiations between the Debtor, the secured creditor <u>and</u> the major unsecured creditor <u>who both opposed extending the exclusivity period</u>. In fact, the secured creditor also had motions pending for the appointment of a trustee as well as for relief from stay to enforce its security agreement. The Court also noted that the adversary proceeding against the secured creditor was filed just prior to the date of the hearing on the exclusivity extension motion, and denied the Debtor's request for an extension of the exclusivity period.

In the case at bar, the case simply has more complexities than any cited by Point Center. There have been ongoing communications with Deep Canyon as well as other individual investors in the Loan who have contacted the Debtor's manager as well as Debtor's counsel. The Debtor is willing to mediate again in this case. The Debtor submits that it has established good cause to grant the requested extension of the exclusivity periods.

## VII.

## CONCLUSION

This is the second requested extension of the exclusive period in a case which is complex for the reasons outlined above and has serious issues regarding the Debtor's ability to negotiate with the creditors who are the fractionalized interest holders in the Loan. Based upon the foregoing, the Debtor respectfully submits that good cause exists for this Court to grant the relief requested in this Motion and extend until September 23, 2009, the exclusivity period within which the Debtor has the exclusive right to file a Plan, and extend to November 23, 2009, the exclusivity

period within which the Debtor has the exclusive right to solicit acceptances thereto. In addition, the Debtor requests that such extension be without prejudice to the Debtor's right to seek further extension of the exclusivity periods.

DATED: July 22, 2009

**BROKER & ASSOCIATES
PROFESSIONAL CORPORATION**

By: /s/ Jeffrey W. Broker
Jeffrey W. Broker
General Reorganization Counsel for Debtor and Debtor-in-Possession

## SUPPLEMENTAL DECLARATION OF JEFFREY W. BROKER

I, Jeffrey W. Broker, do hereby declare and state as follows:

1. I am an attorney at law, duly licensed to practice before all courts of the State of California and am admitted to practice before the above-entitled Court. I am a member of Broker & Associates Professional Corporation, a California corporation, general reorganization counsel to THE PRESERVE, LLC, a California Limited Liability Company, the Debtor and Debtor-in-Possession (the "Debtor") in the within Chapter 11 case. All of the matters testified to herein are based upon my own personal knowledge, are true and correct and, if called upon to testify, I could testify competently thereto.

2. At the July 14, 2009 hearing on the Motion for Relief from Stay brought by Point Center, the Court set an evidentiary hearing on, among other issues, whether Point Center is authorized to act on behalf of the Loan, which will take place on September 17, 2009 at 2:00 in Los Angeles.

3. I have reviewed the Proof of Claim filed by Point Center in this case (RJN Exhibit 11). Aside from the three Point Center entities, I counted 113 other purported fractionalized interest holders listed at pages 27-33 and again at pages 72-78 thereof. In Reply pleadings filed in connection with the RFS Motion on July 7, 2009, *Point Center most recently asserts that there are now approximately 182 purported fractionalized "investors" in the Loan.*

4. There is a Motion to Compel Production of Documents and Request for Sanctions brought by the Debtor that is set for July 29, 2009 in the Point Center Litigation at 2:00 p.m. in this Court (set at the same time as this Motion) regarding the failure on the part of Point Center; Escrow Professionals, Inc.; Point Center Mortgage Fund I, LLC; National Financial Lending, Inc; and National Financial Lending, LLC to adequately respond to the first wave of written discovery served by Debtor several months ago.

-14-

1  I declare under penalty of perjury under the laws of the State of California and of the United
2  States of America that the foregoing is true and correct, and that this declaration was executed by
3  the undersigned this **22** day of July, 2009 at Irvine, California.

4
5  Jeffrey W. Broker
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

-15-

| In re:<br>THE PRESERVE, LLC                  Debtor(s). | CHAPTER 11<br>CASE NUMBER 6:08-bk-23006-BB |
|---|---|

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 18191 Von Karman Avenue, Suite 470, Irvine, CA 92612

A true and correct copy of the foregoing document described as **REPLY BY DEBTOR AND DEBTOR-IN-POSSESSION TO PRELIMINARY OPPOSITION BY POINT CENTER FINANCIAL TO MOTION OF DEBTOR AND DEBTOR-IN-POSSESSION FOR ORDER (1) AUTHORIZING SECOND EXTENSION OF DEADLINE TO FILE A PLAN AND DISCLOSURE STATEMENT AND (2) EXCLUSIVITY PERIOD REGARDING SOLICITATION OF ACCEPTANCES AND REJECTIONS TO PLAN; MEMORANDUM OF POINTS AND AUTHORITIES AND SUPPLEMENTAL DECLARATION OF JEFFREY W. BROKER IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On July 22, 2009 I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

dfisher@ptwww.com ( Don Fisher at Palmieri Tyler et al.)
kmurphy@goeforlaw.com (Robert P. Goe at Goe & Forsythe, LLP)
ustregion16.rs.ecf@usdoj.gov (United States Trustee)
elizabeth.lossing@usdoj.gov (Elizabeth Lossing at Office of the United States Trustee)
mcschnitzer@rhlaw.com (Mark Schnitzer at Reid & Hellyer)
dzaro@allenmatkins.com (David R. Zaro at Allen Matkins)
jdelcastillo@allenmatkins.com (Joshua del Castillo at Allen Matkins)
dickatlaw@cox.net (Richard Harvey)

☐ Service information continued on attached page

II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served):
On July 22, 2009 I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

The Hon. Sheri Bluebond, 255 East Temple Street, Suite 1482, Los Angeles, CA 90012

☐ Service information continued on attached page

III. **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on_____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| July 22, 2009 | Barbara Jean Little-Raphael | */s/ Barbara Jean Little-Raphael* |
|---|---|---|
| Date | Type Name | Signature |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                                                           **F 9013-3.1**