JEFFREY W. BROKER – State Bar No. 53226
PAMELA J. ZYLSTRA – State Bar No. 147977
BROKER & ASSOCIATES PROFESSIONAL CORPORATION
18191 Von Karman Avenue, Suite 470
Irvine, CA 92612-7114

Telephone: (949) 222-2000
Facsimile: (949) 222-2022
email:     jbroker@brokerlaw.biz

General Reorganization Counsel
for Debtor and Debtor-in-Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### RIVERSIDE DIVISION

| | |
|---|---|
| In re<br><br>THE PRESERVE, LLC, a California Limited Liability Company,<br><br><br>Debtor and<br>Debtor-in-Possession | Case No. 6:08-bk-23006-BB<br><br>Chapter 11 Proceeding<br><br>**DEBTOR'S NOTICE OF MOTION AND MOTION FOR ORDER AUTHORIZING THIRD EXTENSION OF (1) DEADLINE TO FILE A PLAN AND DISCLOSURE STATEMENT; AND (2) EXCLUSIVITY PERIOD REGARDING SOLICITATION OF ACCEPTANCES AND REJECTIONS TO PLAN; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS OF SCOTT KRENTEL AND RICHARD HARVEY IN SUPPORT THEREOF**<br><br><br>[No Hearing Required]<br>[11 U.S.C. §1121(d); Local Bankruptcy Rule 9013-1(o)(1)] |

**TO THE HONORABLE SHERI BLUEBOND, UNITED STATES BANKRUPTCY JUDGE;**

**THE OFFICE OF THE UNITED STATES TRUSTEE; CREDITORS AND PARTIES IN**

**INTEREST:**

THE PRESERVE, LLC, a California Limited Liability Company, the Debtor and Debtor-in-Possession in the within Chapter 11 case (the "Debtor"), hereby moves this Court for its Order, pursuant to 11 U.S.C. §1121(d) and Local Bankruptcy Rule 9013-1(o)(1), extending until January 27, 2010, the exclusivity period within which the Debtor has the exclusive right to file a Plan, and extending to March 26, 2010, the exclusivity period within which the Debtor has the exclusive right to solicit acceptances thereto.  In addition, the Debtor moves that such extension be without prejudice to the Debtor's right to seek further extension of the exclusivity periods.

This Motion is based upon the annexed Memorandum of Points and Authorities and the annexed declarations of Scott Krentel (the "Krentel Declaration") and Richard Harvey (the "Harvey Declaration"), and upon such other additional evidence, oral or documentary, that the Court may consider prior to or at the time of the hearing on the Motion, should such hearing be timely requested.

**IF YOU DO NOT OPPOSE THE MOTION AND THE COURT APPROVAL OF THE MOTION REQUESTED HEREBY, YOU NEED TAKE NO ACTION.  HOWEVER, IF YOU OBJECT TO THE COURT APPROVING THE MOTION, PURSUANT TO THE PROVISIONS OF LOCAL BANKRUPTCY RULE 9013-1(o), SUCH OBJECTION MUST BE FILED WITH THE BANKRUPTCY COURT *NO LATER THAN FIFTEEN (15) DAYS AFTER THE DATE OF SERVICE OF THIS NOTICE* IN THE MANNER REQUIRED BY LOCAL BANKRUPTCY RULE 9013-1(o)(1).**

**YOU MUST FILE YOUR OBJECTION AND REQUEST FOR A HEARING WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT, LOCATED AT 3420 TWELFTH STREET, RIVERSIDE, CALIFORNIA 92501.  YOU MUST SERVE A COPY OF YOUR OBJECTION TO THE MOTION AND REQUEST FOR A HEARING UPON THE DEBTORS' GENERAL REORGANIZATION COUNSEL AT THE ADDRESS INDICATED ON THE UPPER LEFT HAND CORNER OF THE FIRST PAGE OF THIS**

1   MOTION, AND UPON THE OFFICE OF THE UNITED STATES TRUSTEE, LOCATED

2   AT 3685 MAIN STREET, SUITE 300, CALIFORNIA 92501.

3

4        UPON RECEIPT OF A TIMELY OBJECTION AND REQUEST FOR A HEARING,

5   GENERAL REORGANIZATION COUNSEL WILL OBTAIN A HEARING DATE AND

6   GIVE APPROPRIATE NOTICE THEREOF. ANY FAILURE TO TIMELY FILE AND

7   SERVE OBJECTIONS MAY RESULT IN ANY SUCH OBJECTION BEING WAIVED,

8   AND THE COURT MAY ENTER AN ORDER APPROVING THE MOTION UPON THE

9   DEBTORS' SUBMISSION THEREOF TO THE COURT WITHOUT FURTHER NOTICE

10  OR HEARING.

11

12  DATED: September 21, 2009            BROKER & ASSOCIATES
                                        PROFESSIONAL CORPORATION
13

14

15                                      By: _____
                                            Jeffrey W. Broker
16                                          General Reorganization Counsel
                                            for Debtor and Debtor in Possession
17

18

19

20

21

22

23

24

25

26

27

28
                                        -3-

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### CASE OVERVIEW

This case was commenced by the filing of a voluntary Chapter 11 petition by the Debtor on September 25, 2008 (the "Petition Date"). The Debtor is in the business of acquiring and making real estate investments, and by and through the efforts of its consultants, both political and technical, designs, plans and offers for sale to developers their projects consisting of single family residential lots, commercial and industrial projects to then sell to the public and private builder-developers throughout the United States at a profit. See, Krentel Declaration at ¶2.

**A.    Administrative Matters That Have Taken Place in This Case**

The Debtor has obtained timely Court authorization to employ General Reorganization Counsel and two law firms to handle litigation matters as its Special Litigation Counsel involving the "Point Center Litigation" and the "CEQA Challenge" described below. The examination of the Debtor pursuant to 11 U.S.C. §341(a) was held and concluded on November 12, 2008. The Debtor is current in its reporting requirements with the Office of the United States Trustee, is current in the payment of its quarterly fees, and has no unpaid administrative expenses. The bar date has now passed and the Debtor is in the process of examining claims, some of which the Debtor believes will be resolved consensually and amended by the creditors. The proof of claim filed by Point Center Financial ("Point Center") as the alleged "designated agent" for scores of purported individual investors and three Point Center 'affiliates' is under intense scrutiny by the Debtor as it is intertwined with the Point Center Litigation described below. See, Krentel Declaration at ¶3.

On January 21, 2009 the Debtor filed a motion to extend the exclusivity periods in this case. The only objection to that motion came from Point Center. This Court overruled the objection and granted the motion after a hearing that took place on March 11, 2009, extending until May 22, 2009, the exclusivity period within which the Debtor has the exclusive right to file a Plan, and extending to July 22, 2009, the exclusivity period within which the Debtor has the exclusive right to solicit acceptances thereto. On May 20, 2009 the Debtor filed a second motion to extend

1    the exclusivity periods in this case.  The only objection to that motion came from Point Center.

2    This Court overruled the objection and granted the motion after a hearing that took place on July

3    29, 2009, extending until September 23, 2009, the exclusivity period within which the Debtor has

4    the exclusive right to file a Plan, and extending to November 23, 2009, the exclusivity period

5    within which the Debtor has the exclusive right to solicit acceptances thereto.  The Debtor requires

6    additional time within which to formulate its reorganization plan due to the still unresolved matter

7    of who has authority to 'represent' the interests of the true investors in the $39 million Loan

8    arranged by PCF, if anyone, and the unresolved matter of the CEQA Challenge.  See, Krentel

9    Declaration at ¶4.

10    **B.    The Legacy Highlands and the Point Center Litigation**

11    **(i)    The Legacy Highlands**

12    To put the dynamics of this case in context, there is a dispute with Point Center as to the

13    nature, extent and validity of the interest it claims as the purported "agent" for other investors in the

14    approximately 700 acres of real property within the "Legacy Highlands" project which is the

15    Debtor's most valuable asset.[1]  Point Center is NOT the lender to the Debtor.  The Legacy

16    Highlands is a unique, multi-generational master planned community set within the rolling hills of

17    West Beaumont, located in Riverside County, California.  Land uses include conventional

18    residential single family homes on lots ranging in size from 7,000 to 20,000 square feet, PUD

19    residential single family homes, a gated "active Adult" community which consists of residential

20    single family homes with lots ranging from 4,000 to 7,000 square feet, parks, school sites and trails.

21    A total of 2,868 residential lots have been approved as described below.  See, Krentel Declaration

22    at ¶5.

23    The Specific Plan that sets the zoning standards was approved in January of 2008 after six

24    years of work on this project.  The Environmental Impact Report was certified, the Tentative Parcel

25    _____

26    [1]  The Point Center Claim is scheduled as Disputed, Unliquidated and Contingent in Schedule D (Exhibit 5
     to the Motion).  In addition, the Debtor disputes that 46 acres of land *possibly within the legal description*

27    of the deed of trust securing the Point Center Claim was intended to be security for the loan arranged by
     Point Center.

28

1    Map, and a 25 year Development Agreement with two five year extensions of time were also

2    approved by the City Council of the City of Beaumont in January of 2008.  The Final Parcel Maps

3    are in the process of being recorded.  All the "back bone" infra-structure improvement plans for

4    Portero Parkway, 4th Street, and South Loop Road have been prepared.  All the in-tract infra-

5    structure including water, sewer, storm drain, grading, and final maps for planning areas 1.1

6    through 1.9, 3.1 through 3.3, and 4.1 through 4.4 are completed and are in "plan check" at the City

7    of Beaumont.  The Tentative Tract maps are also prepared and have been approved *for financing*

8    *purposes* by the City of Beaumont.  All Tract Maps, and all Improvement Plans are, with the

9    exception of storm drain, are continued to be processed through the City of Beaumont.  The City of

10   Beaumont supports and has approved the Legacy Highlands project.  The Debtor has been

11   proceeding forward with work necessary for the completion of the entitlement process for the

12   Legacy Highlands project as described above.    The Debtor's actions post-petition have been for

13   the purpose of enhancing the value of the Legacy Highlands project.  See, Krentel Declaration at

14   ¶6.

15                    (ii)       **The Point Center Litigation**

16                        (a)       **The Loan Arranged by Point Center**

17           Prior to the Petition Date, in or about September 2006 the Debtor entered into a loan

18   transaction arranged by Point Center for a $39,000,000.00 fully funded development loan (the

19   "Loan") with 24 months of draws, and was promised two (2) one-year extensions (to extend the

20   loan to September 2010) wherein the Debtor was the borrower, secured by a Deed of Trust on real

21   property in the County of Riverside, State of California consisting of approximately 1,300 acres

22   known as the "Legacy Highlands" project.  *Point Center was not the lender to the Debtor, only the*

23   *arranger of the Loan the funding of which was to come from third party investors, for which it was*

24   *to be paid a fee of $2,340,000.00.*  Among other aspects of the Loan was that $9,650,000.00 would

25   be retained by Point Center as a 24-month interest reserve and there was a further soft cost

26   holdback of $7,251,736.00 placed in a trust account on behalf of the Debtor.  Interest reserves in

27   commercial loans are typically set aside on "day one" and are untouchable for any other purpose.

28

1    Point Center was paid a loan broker fee of $2,340,000.00 which was calculated based upon a fully

2    funded $39 million loan.  See, Krentel Declaration at ¶7, which attaches collectively as Exhibit

3    "1" the Escrow Closing Statement and "HUD-1"[2] received by the Debtor from the Escrow that

4    confirm the foregoing details, including (i) a $39,000,000.00 fully funded loan, (ii) a 24 month

5    interest reserve of $9,650,000.00, (iii) a holdback of $7,251,736.00 and (iv) a loan broker fee of

6    $2,340,000.00 for the arranging of the $39,000,000.00 loan.

7                    **(b)        The Loan was Not Fully Funded**

8            In or about October 2007 the Debtor was advised by Point Center that the Loan was <u>not</u>

9    <u>fully funded</u> as previously represented and that there was a *shortfall* of approximately

10    $7,675,980.00.  As a direct result of the missing funds of approximately $7,675,980.00 described

11    above, there were no funds available from the Loan after the tenth draw to pay for "soft costs" or

12    related interest reserves relating to the ongoing development of the Legacy Highlands which

13    include but are not limited to consulting fees, 'contingency', legal and insurance, management fees,

14    property maintenance and property tax reserves, as well as there being no remaining interest

15    reserve for the Loan all as indicated on closing statements and other transactional documents as of

16    the date of the original funding.  See, Krentel Declaration at ¶8.

17            After the *existence of the shortfall* was disclosed to the Debtor by Point Center, the Debtor

18    immediately made arrangements to raise money through Deep Canyon Holdings, Inc. ("DCH") in

19    order to assist in the replacement of the missing proceeds.  After DCH provided over $1.3 million

20    to Point Center and was granted a definitive fractionalized interest in the Loan in its own name,

21    further funding by DCH was refused by Point Center in violation of the terms of its loan

22    modification with The Preserve, and Point Center indicated that no further investment would be

23    allowed by DCH in connection with the Loan.  DCH has terminated Point Center as servicer on its

24    behalf in connection with the Loan.  See, Krentel Declaration at ¶9.

25    _____

26    [2]  The HUD-1 states the following prominent warning at page 3 thereof: "WARNING: It is a crime to
       knowingly make false statements to the United States on this or any other similar form.  Penalties upon
27    conviction can include a fine or imprisonment.  For details see:  Title 18 U.S. Code Sections 1001 and
       1010." See, Exhibit 1.

28

1    The disclosure by Point Center in approximately October 2007 that <u>$7,675,980.00 of the</u>

2    <u>funds attributable to the $39 million loan arranged by Point Center in 2006</u> **were not existent** left

3    the Debtor 'in the lurch' without the full use of the anticipated proceeds from the loan for its use in

4    the ongoing development process involving the "Legacy Highlands" project which is the Debtor's

5    most valuable asset.  In order to keep the development processes moving forward and as a direct

6    consequence of no funds being available from the Loan after the tenth draw as described above,

7    commencing in or about October 2007, Scott Krentel arranged for loans to the Debtor, at a great

8    personal hardship to Mr. Krentel.  As of the Petition Date the loans arranged by Mr. Krentel to the

9    Debtor were in the total principal amount of $1,117,497.00.  Notwithstanding objection by Point

10   Center, this Court approved the proposed post-petition borrowing from Mr. Krentel (in an amount

11   up to $2 million for the purpose of funding the Debtor's post-petition cash needs) pursuant to its

12   order entered on November 26, 2008 and the debtor has been proceeding forward in its

13   reorganization efforts with *replacement funding* from Mr. Krentel.  The Debtor is current with its

14   post-petition administrative obligations.  <u>See</u>, Krentel Declaration at ¶10.

**(c)      Status of the Point Center Litigation**

16   A lawsuit was filed by the Debtor against Point Center and others in the Riverside Superior

17   Court prior to the Petition Date relating to the transaction which is the subject matter of that

18   claimed interest prior to the Petition Date (the "Point Center Litigation").  As described above,

19   <u>Point Center diverted for its own purposes</u> **$7.675 million of the Debtor's funds** out of the

20   purported $39 million loan it arranged.  In addition, at the time of the origination of the $39 million

21   loan, Point Center was paid a loan broker fee of **$2.34 million** which was calculated based upon a

22   fully funded $39 million loan (which was obviously never fully funded).  *There is a minimum of*

23   *over $10 million in damages just attributable to those two items alone*.  The relief sought in the

24   Point Center Litigation is based upon claims set forth in the Complaint for Civil Rico, Fraud,

25   Conversion, Breach of Contract, Breach of the Implied Covenant of Good Faith and Fair Dealing,

26   Rescission, Reformation, Injunctive Relief and the Appointment of a Receiver.  Significant

1    monetary damages in an amount in excess of $60 million and other relief is sought in the Point

2    Center Litigation on behalf of the Debtor. See, Krentel Declaration at ¶11.

3        The Point Center Litigation is presently before this Court as a result of a Notice of Removal

4    filed by the defendants on October 30, 2008. The matter was referred to this Court by the United

5    States District Court. A second status conference is presently set for September 30, 2009 at 2:00

6    p.m. in this Court. It is anticipated that the discovery problems described below will be addressed

7    at that time in a preliminary fashion. See, Harvey Declaration at ¶2.

8        In response to the Motion to Compel Production of Documents presently pending before

9    this Court, Point Center has informed the Law Office of Richard A. Harvey, in writing, that the

10    additional documents to be produced will consist of approximately 225,000 pages. It is The

11    Preserve's understanding that documents already produced illustrate the number of investors varies

12    depending on which document is produced. Due to the continuing lack of cooperation from Point

13    Center in the adversary proceeding regarding discovery, the Debtor has noticed the depositions of

14    what it believes to be the primary witnesses who would testify on behalf of Point Center which

15    depositions are presently scheduled for October 27, 2009 and October 28, 2009. In addition, The

16    Preserve is presently contemplating amending the Complaint to include each of the purported

17    beneficiaries/investors in the underlying deed of trust. The Court has recently set a further hearing

18    on the issue of authority which hearing will not be held until November 10, 2009 and which should

19    have a material affect on whether such amendment is necessary. See, Harvey Declaration at ¶3.

20        **C.**    **The CEQA Challenge**

21        The CEQA Challenge was tried and a judgment was obtained specifying corrective matters

22    regarding those portions of CEQA's requirements that were found wanting. The Debtor has, even

23    before trial, conducted its own further water analysis and believes that it can with relative ease

24    supply the City of Beaumont (the "City") with additional factual data about water as well as more

25    information regarding the unacceptability of the suggested alternatives and furnish more support for

26    the overriding benefits of the project. The Debtor has been advised by its professionals and

27    consultants that it is likely that the correction activities can be completed within the next 2 to 4

28

1   months and then submitted to the same superior court for confirmation and the matter of the CEQA

2   Challenge concluded favorably to the Debtor and the City.  The Debtor is actively pursuing this

3   course of action which would result in the complete restoration of all entitlements for the Legacy

4   Highlands.  See, Krentel Declaration at ¶12.

5   **D.    Other Properties**

6       The Debtor continues to explore the possible purchase of an additional 57 lots that are

7   contiguous to the Adelanto Finished Lot upon very favorable terms to the Debtor.  The Debtor is

8   also continuing to explore what to do with the 112 Acres.  See, Krentel Declaration at ¶13.

9   **E.    Challenges in Plan Formulation**

10      The Debtor has other secured creditors whose scheduled *undisputed* claims are secured by

11  real property assets *other than the Legacy Highlands project*.  The Debtor also has general

12  unsecured creditors having claims in excess of $6 million.  The Debtor fully intends to propose a

13  Chapter 11 Plan that fairly treats the claim asserted by Point Center as the alleged agent for third

14  party investors (or perhaps with the many fractionalized investors directly, which the Debtor would

15  prefer) when its true nature, extent and validity is finally determined as well as fairly treats the

16  claims of its other secured and unsecured creditors.  See, Krentel Declaration at ¶14.

17      The Debtor faces the following challenges, among others, in attempting to address the

18  proof of claim filed by Point Center (*as an alleged agent*) in its formulation of a plan pertaining

19  thereto:

20         •    Point Center is <u>not</u> the lender;

21         •    Point Center has <u>not</u> produced, although formally requested by the Debtor, any

22             document to verify that any alleged *investor* it purports to represent actually

23             provided one dollar attributable to the Loan;

24         •    Point Center has <u>recently</u> produced contact information relating to the alleged

25             *investor* in order for the Debtor to verify that such person is truly an *investor* in the

26             Loan and as a result entitled to treatment in connection with the Loan in a plan and

27             entitled to receive notice of a bar date in connection with his/her/its claim.  The

28

1    Debtor is evaluating the filing of a motion to establish a new bar date or other

2    procedure by which the growing list of alleged "investors" can be verified; and

3    •    The Debtor is in the process of reviewing the public record regarding the Loan

4    when compared to what it has reviewed to date in the form of what was produced

5    previously by Point Center and what is in the Debtor's files.

6    See, Krentel Declaration at ¶15.

7    The Debtor believes that Point Center has what appears to be a clear <u>conflict of interest</u> in

8    this matter since it has not to date, nor will it in its anticipated objection to this Motion, represent

9    to this Court **under oath** that it has **disclosed to all of the alleged investors in the Loan** that,

10    notwithstanding it was paid a fee of $2,340,000 based upon a fully funded $39 million loan, <u>in fact</u>

11    (i) the Loan was not fully funded, (ii) when the Debtor obtained an additional funding source

12    (DCH) to replace the missing Loan proceeds, further funding from DCH was refused by Point

13    Center in violation of the terms of its Loan modification with the Debtor and (iii) the Debtor had

14    initiated litigation against Point Center in September 2008 for Civil Rico, Fraud, Conversion,

15    Breach of Contract, Breach of the Implied Covenant of Good Faith and Fair Dealing, Rescission,

16    Reformation, Injunctive Relief and the Appointment of a Receiver in connection with the Loan.

17    The Debtor believes that Point Center does not want its *investors* in this Loan (to the extent they

18    can be disclosed and verified) as well as the other plaintiffs in other litigation pending against

19    Point Center as well as regulatory authorities already examining Point Center to know about the

20    problems with the Loan, including but not limited to short funding.

21    <u>The Debtor wants to negotiate with the legitimate investors/creditors involved with the</u>

22    <u>Loan</u>.  There is an inherent problem dealing directly with a party (Point Center) whom the Debtor

23    believes is not only **dishonest** but is also 'hiding the ball' from the Debtor and the true investors.

24    The Debtor is fully prepared to discuss plan issues such as a payoff and payment options and/or

25    profit participation in the Legacy Highlands in the future, and participation in the Point Center

26    Litigation with the true legitimate creditors (investors) in the Loan in this case once their contact

27

28

1   information is disclosed in order for the Debtor to confirm their *bona fides* in connection therewith.

2   See, Krentel Declaration at ¶16.

3       **F.      Summary**

4       As reflected in the case overview above, the Debtor has been successful in prosecuting this

5   case within the context of Chapter 11 over the past twelve months, and is in complete compliance

6   with the requirements of the Office of the United States Trustee.  The Debtor only recently obtained

7   information about the identities and contact information of the alleged *investors* because of the

8   stonewalling and delaying tactics of Point Center in its "hiding the ball" from the Debtor as to its

9   *bona fides* in the case.  The Debtor has demonstrated that it will have "probable success" in

10  formulating a Chapter 11 plan in this case because of the ongoing financial support by Mr. Krentel,

11  the ongoing development efforts, and the continued pursuit by the Debtor of the Point Center

12  Litigation.  Accordingly, the Debtor believes that good cause exists in this case for the Court to

13  grant an extension of the plan exclusivity periods by 120 days each, as requested in this Motion.

**II.**

**THIS COURT HAS AUTHORITY TO EXTEND THE EXCLUSIVE PERIODS
FOR FILING A PLAN AND SOLICITING ACCEPTANCES THERETO**

17      Pursuant to 11 U.S.C. 1121(b), a Chapter 11 debtor has the exclusive right to file a plan of

18  reorganization during the first 120 days following the filing date of a Chapter 11 bankruptcy

19  petition and to thereafter solicit acceptances to any plan so filed for a period of an additional 60

20  days.  11 U.S.C. § 1121(b):

> Except as otherwise provided in this section, only a debtor may file a plan
> until after 120 days after the date of the order for relief under this Chapter.

11 U.S.C. § 1121(b).

23      No other party in interest may file a plan of reorganization unless: (i) a trustee has been

24  appointed, (ii) the debtor has not filed a plan within 120 days after the date of the order of relief, or

25  (iii) the debtor has not filed a plan that has been accepted before 180 days after the date of the order

26  for relief by each class of claims or interests that is impaired by the plan.  See, 11 U.S.C. § 1121(c).

1    However, 11 U.S.C. §1121(d)(1) empowers the Court to reduce or extend the 120-day and 180-day

2    periods for "cause" when it provides, in pertinent part:

3        (1) Subject to subparagraph (2), on request of a party in interest made within
         the respective periods specified in subsection (c) of this section and after

4        notice and a hearing, the court may for cause reduce or increase the 120-day
         period or the 180-day period referred to in this section.

5

6    11 U.S.C. § 1121(d)(1).

7        The Bankruptcy Code does not define "cause" as used in 11 U.S.C. § 1121(d). The decision

8    regarding whether to grant a request to extend the exclusivity periods lies within the sound

9    discretion of the bankruptcy judge. In re Gibson & Cushman, 101 B.R. 405, 409 (E.D.N.Y. 1989).

10   The accepted standard to extend the exclusivity periods, which is supported by the legislative

11   history of Section 1121, requires merely that the debtor make a "showing of some promise of

12   success for reorganization." In the case, In re Matter of Newark Airport/Hotel Ltd. Partnership,

13   156 B.R. 444, 451 (Bankr. D.N.J. 1993) affirmed 155 B.R. 93 (D.N.J. 1993), the court stated:

14           . . . As the legislative history to § 1121(d) indicates, the legislature
             intended that the granting of an extension would be based "on a showing

15           of some promise of probable success [for reorganization]." 11 U.S.C.A.
             § 1121(d) (Historical and Revision Notes, S. Rept. No. 95-989).

16               . . .
                 The purpose of the debtor's exclusivity period is to make a chapter 11 filing

17           attractive enough to encourage ailing businesses to seek reorganization without
             unduly delaying creditors. See In re Pine Run, 67 B.R. at 434. If the chapter

18           11 provisions did not enable the debtor to remain in control for at least some
             period of time, debtors would likely avoid the provisions of chapter 11

19           reorganization until it would no longer be an effective remedy. Id. at 435,
             relying on, H.R.Rep. No. 595, 95th Cong., 2d Sess. 231-232 (1978), reprinted

20           in U.S.C.C.A.N.1978, pp. 5787, 6191.

21   Id. at 451 (emphasis added). See also In re Landmark Park Plaza Ltd. Partnership, 167 B.R. 752,

22   756 (Bankr. D. Conn. 1994)("exclusivity extension based upon a showing of some promise of

23   probable success"); In re Montgomery Court Apartments of Ingham County, Ltd., 126 B.R. 537,

24   539 (Bankr. S.D. Ohio 1991) ("a debtor seeking an extension should make a showing 'of some

25   probable success' in formulating a plan."); In re Grossinger's Associates, 116 B.R. 34, 36 (Bankr.

26   S.D.N.Y. 1990) ("probable success in formulating a plan of reorganization"); In re Washington-St.

27   Tammany Elec. Co-op., Inc., 97 B.R. 852, 854 (E. D. La. 1989) ("the granted extension should be

28                                    -13-

1   based on a showing of some promise of probable success"); In re Texaco Inc., 76 B.R. 322, 326

2   (Bankr. S.D.N.Y. 1987) ("probable success in formulating a plan of reorganization").

3       Further, the very notion of the exclusivity period is to favor and promote the Debtor's

4   efforts to reorganize. See, Legislative History 140 Cong. Rec. H 10714, October 4, 1994. In the

5   case, In re Eagle-Picher Industries, Inc., 176 B.R. 143 (Bankr. S.D. Ohio 1994), the official

6   unsecured creditors' committee filed a motion to terminate the debtor's exclusivity period so that it

7   could file a competing plan. The official unsecured creditors' committee believed that the

8   presentation of competing plans would serve to expedite a prompt resolution of the case and,

9   therefore, that the debtor's exclusivity period should be terminated. The court found that this did

10  not constitute cause for the termination of the debtor's exclusivity period, specifically stating:

11          The view of the UCC [Committee] that it should in fairness be allowed to
            file an alternative plan because it is entitled to a level playing field does not lead
12          us to alter our view that the UCC has failed to show cause for termination of the
            exclusivity period. **The UCC argued that a level playing field was what was**
13          **contemplated by the Bankruptcy Code. That is simply not so. The concept**
            **of an exclusivity period in favor of the debtor, a consideration at the heart**
14          **of the Bankruptcy Code, on its face contradicts the notion that parties in a**
            **chapter 11 bankruptcy case be given an equal opportunity to seek**
15          **confirmation of a plan.** What will happen now in these consolidated cases is
            that they will proceed in the manner contemplated by the Bankruptcy Code.
16          That is debtors under the shield of exclusivity will present their plan. Other
            constituencies, all in these case, represented by knowledgeable and competent
17          counsel, can then take such steps in pursuit of the interest of their constituencies
            as are appropriate. If the debtor's plan fails at confirmation, then it may be
18          appropriate for these constituencies to present their own plan or plans.

19  Id. at 148 (emphasis added).

20      The "cause" standard referred to in Section 1121 has been referred to as a general standard

21  that allows the bankruptcy court "maximum flexibility to suit various types of reorganization

22  proceedings." In re Public Service Company of New Hampshire, 88 B.R. 534 (Bankr. D.N.H.

23  1988). Courts have recognized that the diligence of management and the proper administration of

24  the case are factors supporting an extension of the exclusivity periods. See In re United Press

25  International, supra.

26

27

28
                                    -14-

The cases cited above amalgamate the following relevant factors in determining "cause" for the requested extension (*see also*, In re Henry Mayo Newhall Memorial Hospital, 282 B.R. 444, 452 (9th Cir. BAP 2002)):

- **Was this the first extension requested**

This is the third extension requested by the Debtor in this case.  The request by the Debtor was made timely.  The Debtor contends that it has been delayed in its reorganization efforts by the difficulties encountered in the Point Center Litigation among other factors set forth in this Motion hereinabove.

- **Was the case complicated**

The Debtor submits that this case is complex for three reasons.  The first is the magnitude and inherent complexity of the Legacy Highlands project in and of itself that has been worked on for well over six years.  The entitlements process is substantially completed which the Debtor contends has enhanced the value of the Legacy Highlands project.  Second, the Debtor has proactively pursued the resolution of the CEQA Challenge and believes it will be favorably resolved within the next 2 to 4 months after identified corrections are submitted to the trial court.

The third reason is the pending litigation against Point Center, which will be tried before a jury in the United States District Court next year.  **Stated simply, Point Center took money that belonged to the Debtor, paid itself a $2,340,000 fee that it did not earn, and through its improper actions precipitated the filing of this case**.  The Court should properly consider the pendency of the Point Center Litigation in deciding whether to extend the exclusivity periods provided by Section 1121(d) of the Bankruptcy Code.  See, e.g., In re Slettleland, 260 B.R. 657, 670 (S.D.N.Y. 2001) ("litigation may be one factor, among others, that supports an extension"); In re Texaco, Inc., supra, at 325 (Bankruptcy court extended exclusivity twice to give the debtors "a reasonable opportunity to pursue their appeal of the Pennzoil judgment" and "to negotiate with the creditors in order to formulate a plan of reorganization"); In re United Press International, supra, at 270 ("a pending appeal, along with the consideration of other factors, may lead to a finding of cause for extending the exclusivity period.").

The existence of litigation can constitute cause for an extension where the mass, weight, volume and complication of the litigation justify a "shakedown period". In re Southwest Oil of Jourdanton, Inc., 84 B.R. 448, 452 (Bankr. W.D. Tex. 1987); In re Manville Forest Products Corp., 31 B.R. 991,995 (S.D.N.Y. 1983). In Manville Forest Products Corp., *supra*, the District Court affirmed the Bankruptcy Court's granting of the **fifth extension of the exclusivity period** based on a significant amount of litigation involving the Debtor's parent company, even though there was no substantial showing of any lawful claims of the parent's creditors against the Debtor's assets.

In In re Gibson & Cushman, supra, the Bankruptcy Court granted successive motions that had the effect of extending the period in which the Debtor may file a plan to **over one and one half years after the filing of the petition**. The filing of the petition was prompted by Debtor's desire to maintain its business while challenging the validity of a $2.5 million dollar state tort judgment rendered against the Debtor. According to the Debtor, the judgment was "likely to be reversed by the state appellate court because, inter alia, it was fraudulently obtained." Id. at 406-407. In addition to the judgment, two major claims were noticed against the Debtor's estate, one claim alleged breach of contract seeking approximately $600,000, and the other claim sought to hold the debtor liable in the amount of two million dollars for personal injuries allegedly suffered by a plaintiff. After reviewing the relevant case law, the District Court affirmed the Bankruptcy Court's order extending the exclusivity period.

The disclosure of information in the discovery process and the prosecution to a conclusion of the Point Center Litigation is inextricably intertwined with the Debtor's ability to propose a meaningful plan with the true creditors involved in the process. However, the Debtor is asserting claims for significant monetary damages which necessarily will impact the claim filed by Point Center and its treatment under a plan once a dialog with the true investors is opened.

   •   **Was the case pending for a long time relative to its size and complexity**

This case has not been pending for a "long time" since it was filed on September 25, 2008, just twelve months ago relative to its size and complexity described above. The Debtor has made

1    progress in both the entitlement processes and in its prosecution of the pending litigation against

2    Point Center.

3            •    **Was the debtor proceeding in good faith**

4            The Debtor asserts that it filed its Chapter 11 case in good faith and is proceeding in good

5    faith in its efforts to reorganize.  The Debtor is current in its administrative operating expenses

6    through Court-approved borrowing (over the objection of Point Center) and is in complete

7    compliance with the requirements of the Office of the United States Trustee.

8            •    **Was the debtor paying current operating expenses**

9            The Debtor is current in its administrative operating expenses through Court-approved

10   borrowing (over the objection of Point Center) and is in complete compliance with the

11   requirements of the Office of the United States Trustee.  Courts have recognized that the diligence

12   of management and the proper administration of the case are yet additional factors in supporting

13   an extension of the exclusivity periods.  See, In re United Press International, 60 B.R. 265, 269-

14   270 (Bankr. D.C. 1986); In re Trainer's, Inc., 17 B.R. 246, 247 (Bankr. E.D. Pa. 1982).  In the

15   present case, the Debtor has properly administered its Chapter 11 case.  The Debtor has complied

16   with the requirements of the Bankruptcy Code and the Bankruptcy Rules, is in full compliance

17   with the requirements of the Office of the United States Trustee, and is current on its

18   administrative expenses.

19           •    **Was there a reasonable prospect for filing a viable plan and prepare adequate**

20                **information**

21           The Debtor has invested and continues to invest significant time and significant monies

22   toward a reorganization of its financial affairs.  It has significant assets and simply wants the

23   opportunity to negotiate with its true legitimate creditors, not a purported agent that through its

24   dishonesty has caused significant damage to the Debtor and is on the other side of litigation with

25   the Debtor.

26

27

28

- **<u>Was there satisfactory progress negotiating with key creditors</u>**

Debtor believes that Point Center does not represent the interests of 'investors' relevant to the Loan and the Debtor is evaluating how to proceed with a diversity of constituents apparently present here regarding the Loan:  (i) DCH, which has appeared several times in this case and has indicated that Point Center does not speak for it in connection with the Loan, and has filed its own secured claim with reference to its fractional interest in the Loan; (ii) alleged *investors* in the Loan who are true, legitimate creditors; (iii) alleged *investors* in the Loan who have no paper trail relating them to the Loan; (iv) investors in Pools managed/arranged by Point Center who are plaintiffs in pending litigation in Orange County Superior Court against Point Center who *may* be interested in connection with the Loan; and (v) perhaps the SEC, FBI, Riverside County District Attorney, a Grand Jury, the California Department of Real Estate, a receiver or other fiduciary.

- **<u>Was the extension sought to pressure creditors</u>**

The Debtor has not pressured any of its creditors with regard to a particular payment proposal, although there have been discussions with parties *other than* Point Center post-petition in that regard with regard to the Loan.  The Debtor does not anticipate that any creditor or party in interest *other than Point Center* will object to the granting of the Motion.  Point Center's standing to represent anyone in this case is the subject of a further hearing on November 10, 2009.

Courts have found that cause exists to extend the plan exclusivity periods where there is no evidence that an extension is being sought for the purpose of pressuring creditors into acceding to a debtor's reorganization demands. *See* In re Pine Run Trust, Inc., 67 B.R. 432 (Bankr. E.D. Pa. 1986).  In this case, the Debtor's requested plan exclusivity extension is not intended to hold the parties in interest in this case "hostage" to the Debtor's restructuring efforts.  The Debtor is not attempting to force its approach to financial reorganization upon its creditors.  The extension is necessary in light of the substantial and material unresolved issues outlined above (i.e., the prosecution of the Point Center Litigation, verification of investment and other information relating to the true investors, the ongoing development efforts, and the resolution of the CEQA Challenge). The extension of time sought by the Debtor will afford an opportunity to continue to deal with the

1   issues outlined above, and to negotiate with creditors and parties in interest concerning a

2   Chapter 11 plan.

3        •   **Was there an unresolved contingency**

4        There are the unresolved contingencies of what the Debtor actually owes with regard to the

5   Loan, *if anything*, at the end of the day, and whether it is validly secured in the first instance, the

6   completion of the entitlement process, as well as the final resolution of the CEQA Challenge by

7   settlement or corrective matters.

8        As set forth above, the Debtor's request for an extension of the exclusivity periods for the

9   filing of a plan and the solicitation of acceptances to such a plan satisfies the general principles

10  established by the courts as guidelines for a Debtor demonstrating "cause" within the meaning of

11  11 U.S.C. §1121(d).  The Debtor has not yet been able to formulate a Chapter 11 plan in this case

12  for the reasons set forth above.  The reasons are compelling, not subject to serious dispute, and

13  constitute "cause" for the granting of the Motion.

**III.**

**THE DEBTOR'S MOTION IS TIMELY**

16  Pursuant to 11 U.S.C. §1121(d), on request of a party-in-interest, and after notice and a

17  hearing, the Court may extend the exclusivity periods specified by 11 U.S.C. §1121 if such request

18  for the extension of the exclusivity periods *is made prior to the expiration of the statutory period*.

19  Since the expiration of the statutory period is currently September 23, 2009, the filing of this

20  Motion is timely.

**IV.**

**PURSUANT TO LOCAL BANKRUPTCY RULE 9013-1(o)(1), AN ORDER**

**GRANTING THE RELIEF SOUGHT BY THIS MOTION MAY BE OBTAINED**

**WITHOUT A HEARING**

25  Local Bankruptcy Rule 9013-1(o)(1) provides that matters can be determined "Upon Notice

26  of Opportunity to Request Hearing" except as to matters specifically noted in Local Bankruptcy

27  Rule 9013-1(o)(2).  Relief of the type requested in this Motion is not specifically noted in Local

28

1  Bankruptcy Rule 9013-1(o)(2) and therefore may be determined upon *notice of opportunity to*

2  *request a hearing* basis.  Thus, an order on this Motion may be obtained without a hearing in the

3  absence of a timely objection.

4                                              **V.**

5                                        **CONCLUSION**

6        The Debtor respectfully requests that this Court grant the relief requested herein without

7  the need for a hearing, if no objection by a party in interest is timely filed, and if an objection and

8  a request for hearing is timely filed, that the Court grant the relief requested herein after hearing.

9

10  DATED: September 21, 2009                **BROKER & ASSOCIATES**
                                            **PROFESSIONAL CORPORATION**
11

12                                          By: _____
13                                              Jeffrey W. Broker
                                                General Reorganization Counsel for
14                                              Debtor and Debtor-in-Possession

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                              -20-

## **DECLARATION OF SCOTT KRENTEL**

I, Scott Krentel, declare and state as follows:

1.     The matters stated herein are true and correct and are within my personal knowledge, and if called upon to testify as a witness, I could and would testify competently thereto. I am the manager of Beaumont 1600, a California Limited Liability Company, which is the manager of the Debtor.

2.     This case was commenced by the filing of a voluntary Chapter 11 petition by the Debtor on September 25, 2008 (the "Petition Date").  The Debtor is in the business of acquiring and making real estate investments, and by and through the efforts of its consultants, both political and technical, designs, plans and offers for sale to developers their projects consisting of single family residential lots, commercial and industrial projects to then sell to the public and private builder-developers throughout the United States at a profit.

3.     The Debtor has obtained timely Court authorization to employ General Reorganization Counsel and two law firms to handle litigation matters as its Special Litigation Counsel involving the "Point Center Litigation" and the "CEQA Challenge" described below.  The examination of the Debtor pursuant to 11 U.S.C. §341(a) was held and concluded on November 12, 2008.  The Debtor is current in its reporting requirements with the Office of the United States Trustee, is current in the payment of its quarterly fees, and has no unpaid administrative expenses. The bar date has now passed and the Debtor is in the process of examining claims, some of which the Debtor believes will be resolved consensually and amended by the creditors.  The proof of claim filed by Point Center Financial ("Point Center") as the alleged "designated agent" for scores of purported individual investors and three Point Center 'affiliates' is under intense scrutiny by the Debtor as it is intertwined with the Point Center Litigation described below.

4.     On January 21, 2009 the Debtor filed a motion to extend the exclusivity periods in this case.  The only objection to that motion came from Point Center.  This Court overruled the objection and granted the motion after a hearing that took place on March 11, 2009, extending until May 22, 2009, the exclusivity period within which the Debtor has the exclusive right to file a Plan,

1   and extending to July 22, 2009, the exclusivity period within which the Debtor has the exclusive

2   right to solicit acceptances thereto.  On May 20, 2009 the Debtor filed a second motion to extend

3   the exclusivity periods in this case.  The only objection to that motion came from Point Center.

4   This Court overruled the objection and granted the motion after a hearing that took place on July

5   29, 2009, extending until September 23, 2009, the exclusivity period within which the Debtor has

6   the exclusive right to file a Plan, and extending to November 23, 2009, the exclusivity period

7   within which the Debtor has the exclusive right to solicit acceptances thereto.  The Debtor requires

8   additional time within which to formulate its reorganization plan due to the still unresolved matter

9   of who has authority to 'represent' the interests of the true investors in the $39 million Loan

10  arranged by PCF, if anyone, and the unresolved matter of the CEQA Challenge.

11          5.      To put the dynamics of this case in context, there is a dispute with Point Center as

12  to the nature, extent and validity of the interest it claims as the purported "agent" <u>for other</u>

13  <u>investors</u> in the approximately 700 acres of real property within the "Legacy Highlands" project

14  which is the Debtor's most valuable asset.[3]  Point Center is NOT the lender to the Debtor.  The

15  Legacy Highlands is a unique, multi-generational master planned community set within the rolling

16  hills of West Beaumont, located in Riverside County, California.  Land uses include conventional

17  residential single family homes on lots ranging in size from 7,000 to 20,000 square feet, PUD

18  residential single family homes, a gated "active Adult" community which consists of residential

19  single family homes with lots ranging from 4,000 to 7,000 square feet, parks, school sites and

20  trails.  A total of 2,868 residential lots have been approved as described below.

21          7.      The Specific Plan that sets the zoning standards was approved in January of 2008

22  after six years of work on this project.  The Environmental Impact Report was certified, the

23  Tentative Parcel Map, and a 25 year Development Agreement with two five year extensions of time

24  were also approved by the City Council of the City of Beaumont in January of 2008.  The Final

25

26  [3]  The Point Center Claim is scheduled as Disputed, Unliquidated and Contingent in Schedule D (Exhibit 5
    to the Motion).  In addition, the Debtor disputes that 46 acres of land *possibly within the legal description*
27  of the deed of trust securing the Point Center Claim was intended to be security for the loan arranged by
    Point Center.

28                                          -22-

1    Parcel Maps are in the process of being recorded. All the "back bone" infra-structure improvement

2    plans for Portero Parkway, 4th Street, and South Loop Road have been prepared. All the in-tract

3    infra-structure including water, sewer, storm drain, grading, and final maps for planning areas 1.1

4    through 1.9, 3.1 through 3.3, and 4.1 through 4.4 are completed and are in "plan check" at the City

5    of Beaumont. The Tentative Tract maps are also prepared and have been approved *for financing*

6    *purposes* by the City of Beaumont. All Tract Maps, and all Improvement Plans are, with the

7    exception of storm drain, are continued to be processed through the City of Beaumont. The City of

8    Beaumont supports and has approved the Legacy Highlands project. The Debtor has been

9    proceeding forward with work necessary for the completion of the entitlement process for the

10    Legacy Highlands project as described above.    The Debtor's actions post-petition have been for

11    the purpose of enhancing the value of the Legacy Highlands project.

12         7.    Prior to the Petition Date, in or about September 2006 the Debtor entered into a loan

13    transaction arranged by Point Center for a $39,000,000.00 fully funded development loan (the

14    "Loan") with 24 months of draws, and was promised two (2) one-year extensions (to extend the

15    loan to September 2010) wherein the Debtor was the borrower, secured by a Deed of Trust on real

16    property in the County of Riverside, State of California consisting of approximately 1,300 acres

17    known as the "Legacy Highlands" project. *Point Center was not the lender to the Debtor, only the*

18    *arranger of the Loan the funding of which was to come from third party investors, for which it was*

19    *to be paid a fee of $2,340,000.00.* Among other aspects of the Loan was that $9,650,000.00 would

20    be retained by Point Center as a 24-month interest reserve and there was a further soft cost

21    holdback of $7,251,736.00 placed in a trust account on behalf of the Debtor. Interest reserves in

22    commercial loans are typically set aside on "day one" and are untouchable for any other purpose.

23    Point Center was paid a loan broker fee of $2,340,000.00 which was calculated based upon a fully

24    funded $39 million loan. Attached hereto collectively as Exhibit "1" are the Escrow Closing

25    Statement and "HUD-1"[4] received by the Debtor from the Escrow that confirm the foregoing

26

27    [4] The HUD-1 states the following prominent warning at page 3 thereof: "WARNING: It is a crime to
       knowingly make false statements to the United States on this or any other similar form. Penalties upon

28                                                      -23-

1    details, including (i) a $39,000,000.00 fully funded loan, (ii) a 24 month interest reserve of

2    $9,650,000.00, (iii) a holdback of $7,251,736.00 and (iv) a loan broker fee of $2,340,000.00 for the

3    arranging of the $39,000,000.00 loan.

4              8.       In or about October 2007 the Debtor was advised by Point Center that the Loan was

5    not fully funded as previously represented and that there was a *shortfall* of approximately

6    $7,675,980.00.  As a direct result of the missing funds of approximately $7,675,980.00 described

7    above, there were no funds available from the Loan after the tenth draw to pay for "soft costs" or

8    related interest reserves relating to the ongoing development of the Legacy Highlands which

9    include but are not limited to consulting fees, 'contingency', legal and insurance, management fees,

10    property maintenance and property tax reserves, as well as there being no remaining interest

11    reserve for the Loan all as indicated on closing statements and other transactional documents as of

12    the date of the original funding.

13              9.       After the *existence of the shortfall* was disclosed to the Debtor by Point Center, the

14    Debtor immediately made arrangements to raise money through Deep Canyon Holdings, Inc.

15    ("DCH") in order to assist in the replacement of the missing proceeds.  After DCH provided over

16    $1.3 million to Point Center and was granted a definitive fractionalized interest in the Loan in its

17    own name, further funding by DCH was refused by Point Center in violation of the terms of its

18    loan modification with The Preserve, and Point Center indicated that no further investment would

19    be allowed by DCH in connection with the Loan.  DCH has terminated Point Center as servicer on

20    its behalf in connection with the Loan.

21              10.      The disclosure by Point Center in approximately October 2007 that $7,675,980.00

22    of the funds attributable to the $39 million loan arranged by Point Center in 2006 **were not**

23    **existent** left the Debtor 'in the lurch' without the full use of the anticipated proceeds from the loan

24    for its use in the ongoing development process involving the "Legacy Highlands" project which is

25    the Debtor's most valuable asset.  In order to keep the development processes moving forward and

26

27    conviction can include a fine or imprisonment.  For details see:  Title 18 U.S. Code Sections 1001 and
       1010."  See, Exhibit 1.

28

1   as a direct consequence of no funds being available from the Loan after the tenth draw as described

2   above, commencing in or about October 2007, I arranged for loans to the Debtor, at a great

3   personal hardship to me. As of the Petition Date the loans arranged by me to the Debtor were in

4   the total principal amount of $1,117,497.00. Notwithstanding objection by Point Center, this Court

5   approved the proposed post-petition borrowing from me (in an amount up to $2 million for the

6   purpose of funding the Debtor's post-petition cash needs) pursuant to its order entered on

7   November 26, 2008 and the debtor has been proceeding forward in its reorganization efforts with

8   *replacement funding* from me. The Debtor is current with its post-petition administrative

9   obligations.

10        11.    A lawsuit was filed by the Debtor against Point Center and others in the Riverside

11   Superior Court prior to the Petition Date relating to the transaction which is the subject matter of

12   that claimed interest prior to the Petition Date (the "Point Center Litigation"). As described above,

13   <u>Point Center diverted for its own purposes</u> **$7.675 million of the Debtor's funds** out of the

14   purported $39 million loan it arranged. In addition, at the time of the origination of the $39 million

15   loan, Point Center was paid a loan broker fee of **$2.34 million** which was calculated based upon a

16   fully funded $39 million loan (which was obviously never fully funded). *There is a minimum of*

17   *over $10 million in damages just attributable to those two items alone.* The relief sought in the

18   Point Center Litigation is based upon claims set forth in the Complaint for Civil Rico, Fraud,

19   Conversion, Breach of Contract, Breach of the Implied Covenant of Good Faith and Fair Dealing,

20   Rescission, Reformation, Injunctive Relief and the Appointment of a Receiver. Significant

21   monetary damages in an amount <u>in excess of $60 million</u> and other relief is sought in the Point

22   Center Litigation on behalf of the Debtor.

23        12.    The CEQA Challenge was tried and a judgment was obtained specifying corrective

24   matters regarding those portions of CEQA's requirements that were found wanting. The Debtor

25   has, even before trial, conducted its own further water analysis and believes that it can with relative

26   ease supply the City of Beaumont (the "City") with additional factual data about water as well as

27   more information regarding the unacceptability of the suggested alternatives and furnish more

28

1  support for the overriding benefits of the project. The Debtor has been advised by its professionals

2  and consultants that it is likely that the correction activities can be completed within the next 2 to 4

3  months and then submitted to the same superior court for confirmation and the matter of the CEQA

4  Challenge concluded favorably to the Debtor and the City. The Debtor is actively pursuing this

5  course of action which would result in the complete restoration of all entitlements for the Legacy

6  Highlands.

7        13.    The Debtor continues to explore the possible purchase of an additional 57 lots that

8  are contiguous to the Adelanto Finished Lot upon very favorable terms to the Debtor. The Debtor

9  is also continuing to explore what to do with the 112 Acres.

10        14.    The Debtor has other secured creditors whose scheduled *undisputed* claims are

11  secured by real property assets *other than the Legacy Highlands project*. The Debtor also has

12  general unsecured creditors having claims in excess of $6 million. The Debtor fully intends to

13  propose a Chapter 11 Plan that fairly treats the claim asserted by Point Center as the alleged agent

14  for third party investors (or perhaps with the many fractionalized investors directly, which the

15  Debtor would prefer) when its true nature, extent and validity is finally determined as well as fairly

16  treats the claims of its other secured and unsecured creditors.

17        15.    The Debtor faces the following challenges, among others, in attempting to address

18  the proof of claim filed by Point Center (*as an alleged agent*) in its formulation of a plan pertaining

19  thereto:

20      •   Point Center is <u>not</u> the lender;

21      •   Point Center has <u>not</u> produced, although formally requested by the Debtor, any

22         document to verify that any alleged *investor* it purports to represent actually

23         provided one dollar attributable to the Loan;

24      •   Point Center has <u>recently</u> produced contact information relating to the alleged

25         *investor* in order for the Debtor to verify that such person is truly an *investor* in the

26         Loan and as a result entitled to treatment in connection with the Loan in a plan and

27         entitled to receive notice of a bar date in connection with his/her/its claim. The

28

1   Debtor is evaluating the filing of a motion to establish a new bar date or other

2   procedure by which the growing list of alleged "investors" can be verified; and

3   • The Debtor is in the process of reviewing the public record regarding the Loan

4   when compared to what it has reviewed to date in the form of what was produced

5   previously by Point Center and what is in the Debtor's files.

6   16.   The Debtor wants to negotiate with the legitimate investors/creditors involved with

7   the Loan. There is an inherent problem dealing directly with a party (Point Center) whom the

8   Debtor believes is not only **dishonest** but is also 'hiding the ball' from the Debtor and the true

9   investors. The Debtor is fully prepared to discuss plan issues such as a payoff and payment

10   options and/or profit participation in the Legacy Highlands in the future, and participation in the

11   Point Center Litigation with the true legitimate creditors (investors) in the Loan in this case once

12   their contact information is disclosed in order for the Debtor to confirm their *bona fides* in

13   connection therewith.

14   I declare under penalty of perjury under the laws of the State of California and the United

15   States of America that the foregoing is true and correct and that this declaration was executed this

16   21st day of September, 2009 at Riverside, California.

17

18   _____

19   Scott Krentel

20

21

22

23

24

25

26

27

28

-27-

## DECLARATION OF RICHARD A. HARVEY

I, Richard A. Harvey, declare and state as follows:

1.        The matters stated herein are true and correct and are within my personal knowledge, and if called upon to testify as a witness, I could and would testify competently thereto. I am an attorney at law, duly licensed to practice in the State of California and before the bar of this Court. I practice law under the name LAW OFFICE OF RICHARD A. HARVEY (the "Firm"), and as such am authorized to make this Declaration on behalf of the Firm.

2.        The Point Center Litigation is presently before this Court as a result of a Notice of Removal filed by the defendants on October 30, 2008. The matter was referred to this Court by the United States District Court. A second status conference is presently set for September 30, 2009 at 2:00 p.m. in this Court. It is anticipated that the discovery problems described below will be addressed at that time in a preliminary fashion.

3.        In response to the Motion to Compel Production of Documents presently pending before this Court, Point Center has informed the Law Office of Richard A. Harvey, in writing, that the additional documents to be produced will consist of approximately 225,000 pages. It is The Preserve's understanding that documents already produced illustrate the number of investors varies depending on which document is produced. Due to the continuing lack of cooperation from Point Center in the adversary proceeding regarding discovery, the Debtor has noticed the depositions of what it believes to be the primary witnesses who would testify on behalf of Point Center which depositions are presently scheduled for October 27, 2009 and October 28, 2009. In addition, The Preserve is presently contemplating amending the Complaint to include each of the purported beneficiaries/investors in the underlying deed of trust. The Court has recently set a further hearing *on the issue of authority* which hearing will not be held until November 10, 2009 and which should have a material affect on whether such amendment is necessary.

1    I declare under penalty of perjury under the laws of the State of California and the United

2    States of America that the foregoing is true and correct and that this declaration was executed this

3    _____ day of September, 2009 at Lake Forest, California.

4

5

6                                    Richard Harvey

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## Escrow Professionals, Inc.
33161 Camino Capistrano Unit H
San Juan Capistrano, CA 92675
P: (949) 661-8066 • F: (949) 661-9727

The Preserve LLC

Date: October 25, 2006
Escrow No.: 57323

7006 Magnolia Avenue #909
Riverside, Ca. 92506

RE: Property Address:  1.300+ Acres Located Beamont, Ca, , CA

We are please to inform you that the above referenced escrow was closed on **October 23, 2006** and we enclose the following for your records:

> Our Check in the amount of **$218,062.17** representing your refund.  WIRED
> Final HUD-I and Closing Statement.

**Loan Information:**

> First Deed of Trust in favor of: **Point Center Financial, Inc., as Designated Lender for Multi-Beneficiaries.** (Lender will notify you regarding payments.)

Any documents to which you are entitled will be forwarded to you directly from the appropriate governing party.

We hope this transaction has been handled to your satisfaction, and that we may serve you again in the future.

Escrow Professionals, Inc.

Beverly A. Miali
Escrow Officer / Manager

Exhibit ___1___    Exhibit ___C___
Page ___30___    Page ___7___

# ESCROW CLOSING STATEMENT

POINT CENTER FINANCIAL, INC.
30900 RANCHO VIEJO ROAD, #100
SAN JUAN CAPISTRANO CA 92675

**Escrow Number:** 206070
**Escrow Officer:** Beverly A. Miali
**Date Recorded:**

**Borrower:** THE PRESERVE LLC, a California limited liability company

**Property:** SW of I-10 and SR60
Beaumont CA

Page: 1

| DESCRIPTION | DEBIT | CREDIT |
|---|---|---|
| **Funds Deposited To Escrow:** | | |
| RICHARD T. BREENE  ( 0.13%) | | 49,920.00 |
| STEVEN C. COLBURN  ( 0.13%) | | 49,920.00 |
| PAUL P. KRASNER, M.D., TRUSTEE  ( 0.13%) | | 49,920.00 |
| Point Center Mortgage Fund I, LLC  (Jul-12-2006 99.49%) | | 38,800,320.00 |
| DONOVAN H. RITTENBACH, TRUSTEE  ( 0.13%) | | 49,920.00 |
| **Demands Paid Through Escrow:** | | |
| Point Center Financial, Inc. | | |
| Principal | 19,000,000.00 | |
| Interest From 10/01/06 To 10/30/06 | 173,602.70 | |
| Less the Trust Account Balance | -4,890.13 | |
| | 19,168,712.57 | 19,168,712.57 |
| **Payments Made on Authorization of Borrower:** | | |
| Beneficiary Statement Fees | 45.00 | |
| Credit for Partialy Funded Loan | | 6,456.02 |
| Re-imbursemnt of Appraisal to THE PRESERVE, LLC | 16,000.00 | |
| **Costs and Expenses:** | | |
| Escrow Fee | 10,250.00 | |
| Title Insurance Policy | 28,000.00 | |
| Notary Fee | 40.00 | |
| Recording Fees | 200.00 | |
| Credit Investigation Fees | 81.00 | |
| Processing Fee | 500.00 | |
| Underwriting Fee | 5,000.00 | |
| Documentation Fee | 300.00 | |
| Securitization Fee | 1,000.00 | |
| County Property Tax Reserves (24 months) | 250,000.00 | |
| Interest Reserves (24 months) | 9,650,000.00 | |
| PCF Inspection Site Fee | 250.00 | |
| Construction Hold Back | 7,251,736.00 | |
| **Other Items Paid Through Escrow:** | | |
| Broker's Commission | 2,340,000.00 | |
| Prepaid Interest From 10/30/06 To 11/01/06 @ $13,356.16/day | 26,712.32 | |
| **Check To Borrower** | 257,629.13 | |
| **Totals** | 39,006,456.02 | 39,006,456.02 |

Exhibit _____1_____
Page _____31_____

Exhibit _____C_____
Page _____8_____

**Escrow Professionals, Inc**
33161 Camino Capistrano, Unit. H
San Juan Capistrano, CA 92675
Phone: (949) 661-8066 • Fax: (949) 661-9727

BORROWER STATEMENT
Final

| | | |
|---|---|---|
| Escrow Number: | 57323 | |
| Escrow Officer: | Beverly A. Miali | |
| | | |
| Borrower: | The Preserve LLC | |

| | | |
|---|---|---|
| Title Order Number: | 09301656-12 | |
| Date: | 10/25/2006 - 10:30:29AM | |
| Closing Date: | 10/23/2006 | |

Property:   1.300+ Acres Located Beamont, Ca, CA

| DESCRIPTION | DEBITS | CREDITS |
|---|---|---|
| **TOTAL CONSIDERATION** | | |
| **TITLE CHARGES** | | |
| Lender/Mortgage Premium for 39,000,000.00: Land America Lawyers Title | 26,520.00 | |
| Mortgage Recording Fee: Land America Lawyers Title | 223.00 | |
| Agreement fee: Land America Lawyers Title | 82.00 | |
| UCC Financing Statement: Land America Lawyers Title | 20.00 | |
| Inspection fee: Land America Lawyers Title | 50.00 | |
| **ESCROW CHARGES TO: Escrow Professionals, Inc.** | | |
| Escrow Fee | 10,250.00 | |
| Wire Fee | 45.00 | |
| Audit & Assessment Fee | 9.50 | |
| **LENDER CHARGES** | | |
| New to Point Center Financial, Inc., as Designated Lender for Multi-Beneficiaries: | | 39,000,000.00 |
| Loan Fee @ 0.00 %: Point Center Financial, Inc., as Designated Lender for Multi-Beneficiaries | 2,340,000.00 | |
| Interest Adjustment From 10/20/2006 To 11/01/2006, 11 Days, @ 7,520.3300/per day: Point Center Financial, Inc., as Designated Lender for Multi-Beneficiaries | 90,243.96 | |
| Underwriting Fee: Point Center Financial, Inc., as Designated Lender for Multi-Beneficiaries | 5,000.00 | |
| Credit Investigation Fee: Point Center Financial, Inc., as Designated Lender for Multi-Beneficiaries | 81.00 | |
| Processing Fee: Point Center Financial, Inc., as Designated Lender for Multi-Beneficiaries | 500.00 | |
| Documntation Fee: Point Center Financial, Inc., as Designated Lender for Multi-Beneficiaries | 300.00 | |
| Securitization Fee: Point Center Financial, Inc., as Designated Lender for Multi-Beneficiaries | 1,000.00 | |
| County Property Tax Resrves (24 Months): Point Center Financial, Inc., as Designated Lender for Multi-Beneficiaries | 250,000.00 | |
| Interest Reserves (24 Months): Point Center Financial, Inc., as Designated Lender for Multi-Beneficiaries | 9,650,000.00 | |
| Pcf Inspeciton Site Fee: Point Center Financial, Inc., as Designated Lender for Multi-Beneficiaries | 250.00 | |
| Construction Hold Back: Point Center Financial, Inc., as Designated Lender for Multi-Beneficiaries | 7,251,736.00 | |
| **LOAN PAYOFF: Point Center Financial** | | |
| Principal Balance | 19,000,000.00 | |
| Interest Per Diem From 10/01/2006 To 10/19/2006, 18 Days, @ 6,069.4444 | 113,739.70 | |
| Less The Trust Account Balance | -2,434.58 | |
| Total Loan Payoff | 19,113,739.70 | 2,434.58 |
| **TAXES:** | | |
| Property Tax to: Riverside County Tax Collector | 44,322.25 | |
| **ADDITIONAL DISBURSEMENTS:** | | |
| Reimbursement Of Appraisal: The Preserve LLC | 16,000.00 | |
| Funds Returned To PCF For Reserves: Point Center Financial | 202,062.17 | |
| **TOTALS** | 39,002,434.58 | 39,002,434.58 |

THIS IS A FINAL CLOSING STATEMENT

Exhibit     1
Page    32

Exhibit    C
Page    9

A. U.S. DEPARTMENT OF HOUSING    URBAN DEVELOPMENT    B. TYPE OF LOAN

SETTLEMENT STATEMENT

| | |
|---|---|
| 1. ☐ FHA | 2. ☐ FHMA | 3. ☒ CONV. UNINS. |
| 4. ☐ VA | 5. ☐ CONV. INS. | |

6. FILE NUMBER:
57323

7. LOAN NUMBER:

8. MORTGAGE INS. CASE NO.:

C. NOTE: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

D. NAME & ADDRESS    The Preserve LLC
OF BORROWER:

E. NAME & ADDRESS
OF SELLER:

F. NAME & ADDRESS    Point Center Financial, Inc., as Designated Lender for Multi-Beneficiaries
OF LENDER:    30900 Rancho Viejo Road #110, San Juan Capistrano, CA 92675

G. PROPERTY LOCATION:    1,300+ Acres Located Beamont, Ca., , CA

H. SETTLEMENT AGENT:    Escrow Professionals, Inc.
PLACE OF SETTLEMENT: 33161 Camino Capistrano Unit H, San Juan Capistrano, CA  92675 (949) 661-8066

I. SETTLEMENT DATE:    10/23/2006  Final

| J. Summary of Borrower's Transaction | | K. Summary of Seller's Transaction | |
|---|---|---|---|
| 100. Gross Amount Due From Borrower: | | 400. Gross Amount Due To Seller: | |
| 101. Contract sales price | | 401. Contract sales price | |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower: (line 1400) | 19,844,372.63 | 403. | |
| 104. Property Tax | 44,322.25 | 404. | |
| 105. Payoff To Point Center Financial | 19,111,305.12 | 405. | |
| | | | |
| | | | |
| | | | |
| Adjustments For Items Paid By Seller In Advance: | | Adjustments For Items Paid By Seller In Advance: | |
| 106. City/town taxes          to | | 406. City/town taxes          to | |
| 107. County taxes             to | | 407. County taxes             to | |
| 108. Assessments              to | | 408. Assessments              to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 113. | | 413. | |
| 114. | | 414. | |
| 115. | | 415. | |
| 116. | | 416. | |
| 120. Gross Amount Due From Borrower: | 39,000,000.00 | 420. Gross Amount Due To Seller: | |
| 200. Amounts Paid By Or In Behalf Of Borrower: | | 500. Reductions In Amount Due To Seller: | |
| 201. Deposit or earnest money | | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | 39,000,000.00 | 502. Settlement charges to seller (line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff 1st Mtg. Ln. | |
| 205. | | 505. Payoff 2nd Mtg. Ln. | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| | | | |
| | | | |
| Adjustments For Items Unpaid By Seller: | | Adjustments For Items Unpaid By Seller: | |
| 210. City/town taxes          to | | 510. City/town taxes          to | |
| 211. County taxes             to | | 511. County taxes             to | |
| 212. Assessments              to | | 512. Assessments              to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| | | | |
| 220. Total Paid By/For Borrower: | 39,000,000.00 | 520. Total Reductions In Amount Due Seller: | |
| 300. Cash At Settlement From/To Borrower: | | 600. Cash At Settlement From/To Seller: | |
| 301. Gross amount due from borrower (line 120) | 39,000,000.00 | 601. Gross amount due to seller (line 420) | |
| 302. Less amount paid by/for borrower (line 220) | 39,000,000.00 | 602. Less reductions in amount due seller (line 520) | |
| 303. Cash (☐FROM) (☐TO) Borrower: | 0.00 | 603. Cash (☐TO) (☐FROM) Seller: | 0.00 |

Previous Edition Is Obsolete
Form No. 1581
3/86

Exhibit    1
Page    33

Page 1 of  3

Exhibit    C
Page    10

SB-4-3538-000-1
HUD-1 (3-86)
RESPA, HB 4305.2

**SETTLEMENT CHARGES**

Escrow 57331

| 700. Total Sales/Broker's Commission Based On Price $ | | Paid From Borrower's Funds At Settlement | Paid From Seller's Funds At Settlement |
|---|---|---|---|
| Division of Commission (line 700) As Follows: | | | |
| 701. $ to | | | |
| 702. $ to | | | |
| 703. Commission paid at settlement | | | |
| 704. | | | |
| **800. Items Payable In Connection With Loan:** | | | |
| 801. Loan Origination fee                    % | | | |
| 802. Loan Discount                            % | | | |
| 803. Appraisal fee to: | | | |
| 804. Credit report to: | | | |
| 805. Lender's inspection fee | | | |
| 806. Mortgage insurance application fee to | | | |
| 807. Assumption fee | | | |
| 808. Loan Fee To: Point Center Financial, Inc., as Designated Lender for Multi-Beneficiaries | | 2,340,000.00 | |
| 809. Securitization Fee To: Point Center Financial, Inc. as Designated Lender for Multi-Beneficiaries | | 1,000.00 | |
| 810. County Property Tax Reserves (24 Months) To: Point Center Financial, Inc., as Designated Lender for M | | 250,000.00 | |
| 811. Interest Reserves (24 Months) To: Point Center Financial, Inc., as Designated Lender for Multi-Benef | | 9,650,000.00 | |
| 812. Pcf Inspecitor Site Fee To: Point Center Financial, Inc., as Designated Lender for Multi-Beneficiari | | 250.00 | |
| 813. Construction Hold Back To: Point Center Financial, Inc., as Designated Lender for Multi-Beneficiarie | | 7,251,736.00 | |
| 814. Underwriting Fee To: Point Center Financial, Inc., as Designated Lender for Multi-Beneficiari | | 5,000.00 | |
| 815. Credit Investigation Fee To: Point Center Financial, Inc., as Designated Lender for Multi-Beneficiar | | 81.00 | |
| 816. Exhibit "C" Attached Hereto | | 800.00 | |
| **900. Items Required By Lender To Be Paid In Advance:** | | | |
| 901. Interest from  10/20/2006  to  11/01/2006  @$  7,520.3300 /day | | 90,243.96 | |
| 902. Mortgage insurance premium for      mo. to | | | |
| 903. Hazard insurance premium for      yrs. to | | | |
| 904. Flood insurance premium for      yrs. to | | | |
| 905. | | | |
| 906. | | | |
| **1000. Reserves Deposited With Lender:** | | | |
| 1001. Hazard insurance      months @ $      per month | | | |
| 1002. Mortgage insurance      months @ $      per month | | | |
| 1003. City property taxes      months @ $      per month | | | |
| 1004. County property taxes      months @ $      per month | | | |
| 1005. Annual assessments      months @ $      per month | | | |
| 1006. Flood insurance      months @ $      per month | | | |
| 1007.      months @ $      per month | | | |
| 1008. Aggregate Adjustment | | | |
| 1009. | | | |
| **1100. Title Charges** | | | |
| 1101. Settlement or closing fee to Escrow Professionals, Inc. | | 10,250.00 | |
| 1102. Abstract or title search to | | | |
| 1103. Title examination to | | | |
| 1104. Title insurance binder to | | | |
| 1105. Document preparation to | | | |
| 1106. Notary fees to | | | |
| 1107. Attorney's fees to | | | |
| (includes above item Numbers: ) | | | |
| 1108. Title insurance to Land America Lawyers Title | | | |
| (includes above item Numbers: ) | | 26,520.00 | |
| 1109. Lender's coverage $ 39000,000.00  Premium: $26520.00 | | | |
| 1110. Owner's coverage $ | | | |
| 1111. Wire Fee to Escrow Professionals, Inc. | | 45.00 | |
| 1112. Audit & Assessment Fee to Escrow Professionals, Inc. | | 9.50 | |
| 1113. Agreement fee to Land America Lawyers Title | | 82.00 | |
| 1114. Exhibit "D" Attached Hereto | | 70.00 | |
| **1200. Government Recording and Transfer Charges:** | | | |
| 1201. Recording fees: Deed $      ;Mortgage $  223.00      ;Releases $ | | 223.00 | |
| 1202. City/county tax/stamps: Deed $      :Mortgage $ | | | |
| 1203. State tax/Stamps:  Deed $      :Mortgage $ | | | |
| 1204. | | | |
| 1205. | | | |
| **1300. Additional Settlement Charges:** | | | |
| 1301. Survey to | | | |
| 1302. Pest inspection to | | | |
| 1303. Reimbursement Of Appraisal to The Preserve LLC | | 16,000.00 | |
| 1304. Funds Returned To PCF For Reserves to Point Center Financial | | 202,062.17 | |
| 1305. | | | |
| 1306. | | | |
| 1307. | | | |
| 1308. | | | |
| 1309. | | | |
| 1310. | | | |
| 1311. | | | |
| 1312. | | | |
| 1313. | | | |
| 1400.  Total Settlement Charge (Enter on line 103, Section J - and - line 502, Section K) | | 19,844,372.63 | |

Form No. 1582

Page 2 of 3

SB-4-3538-000-1

Exhibit ___1___
Page ___34___

Exhibit ___C___
Page ___11___

SELLER'S AND/OR BORROWER'S STATEMENT          Escrow 57521

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement.

Settlement Agent: _____     Date: _____

        Beverly A. Miali, Escrow Professionals, Inc.

WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine or imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

Exhibit ___1___

Page ___35___     Page 3 of 3

Exhibit ___C___

Page ___12___

Settlement Date: 10/23/2006

Escrow No.: 57323
Title No.: 09301656-12
Page: 1

### EXHIBIT A: Tax Payment Breakdown

Breakdown of Tax Payments:

County Taxes

| Year | Amount | Interest | Penalty |
|------|--------|----------|---------|
|      |        |          |         |

### EXHIBIT B: (HUD Section 100)                                    Buyer Amount

Gross Amount Due From Borrower - Loan Payoff Breakdown:

**Point Center Financial**

| | Buyer Amount |
|---|---|
| Principal Balance To: Point Center Financial | 19,000,000.00 |
| Interest Per Diem From 10/01/2006 to 10/19/2006 @ $  6,069.4444 To: Point Center Fi | 113,739.70 |
| Less The Trust Account Balance To: Point Center Financial | -2,434.58 |
| Total: | 19111,305.12 |

### EXHIBIT C: (HUD Section 800 )                                    Buyer Amount

Items Payable In Connection With Loan:

| | Buyer Amount |
|---|---|
| Processing Fee To: Point Center Financial, Inc., as Designated Lender for Multi-Benefici | 500.00 |
| Documntation Fee To: Point Center Financial, Inc., as Designated Lender for Multi-Bene | 300.00 |
| Total: | 800.00 |

### EXHIBIT D: (HUD Section 1100)                                    Buyer Amount

Title Charges:

| | Buyer Amount |
|---|---|
| UCC Financing Statement to Land America Lawyers Title | 20.00 |
| Inspection fee to Land America Lawyers Title | 50.00 |
| Total: | 70.00 |

Exhibit _1_

Page _36_

Exhibit _C_

Page _13_

| In re:<br>THE PRESERVE, LLC<br><br>Debtor(s). | CHAPTER 11<br><br>CASE NUMBER 6:08-bk-23006-BB |
|---|---|

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 18191 Von Karman Avenue, Suite 470, Irvine, CA 92612

A true and correct copy of the foregoing document described as **DEBTOR'S NOTICE OF MOTION AND MOTION FOR ORDER AUTHORIZING THIRD EXTENSION OF (1) DEADLINE TO FILE A PLAN AND DISCLOSURE STATEMENT; AND (2) EXCLUSIVITY PERIOD REGARDING SOLICITATION OF ACCEPTANCES AND REJECTIONS TO PLAN; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS OF SCOTT KRENTEL AND RICHARD HARVEY IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On September 21, 2009 I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

dfisher@ptwww.com ( Don Fisher at Palmieri Tyler et al.)
kmurphy@goeforlaw.com (Robert P. Goe and Marc C. Forsythe at Goe & Forsythe, LLP)
ustregion16.rs.ecf@usdoj.gov (United States Trustee)
elizabeth.lossing@usdoj.gov (Elizabeth Lossing at Office of the United States Trustee)
mcschnitzer@rhlaw.com (Mark Schnitzer at Reid & Hellyer)
dzaro@allenmatkins.com (David R. Zaro at Allen Matkins)
jdelcastillo@allenmatkins.com (Joshua del Castillo at Allen Matkins)
dickatlaw@cox.net (Richard Harvey)

☐ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On September 21, 2009 I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

The Hon. Sheri Bluebond, 255 East Temple Street, Suite 1482, Los Angeles, CA 90012

☒ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served)**:** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on_____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| September 21, 2009 | Barbara Jean Little-Raphael | _Brukn Jn Little-Raphael_ |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009                                                                                                                    **F 9013-3.1**

Office of the US Trustee
3685 Main Street, Suite 300
Riverside, CA  92501

The Preserve, LLC
7006 Magnolia Ave., PMB 309
Riverside, CA 92506

Internal Revenue Service
P.O. Box 21126
Philadelphia, PA 19114

Riverside County Tax collector
P.O. Box 12005
Riverside, CA 92502-2205

Scott H. Krentel
7006 Magnolia Ave., PMB 309
Riverside, CA 92506

Franchise Tax Board
Attention:  Bankruptcy
PO Box 2952
Sacramento, CA 95812-2952

Deep Canyon Holdings, Inc.
P.O. Box 10723
Palm Desert, CA 92255

San Bernardino County Tax Collector
172 West Third St., First Floor
San Bernardino, CA 91425-0360

Aamir Raza
655 Central Avenue, 17th Floor
Glendale, CA 91203

Gresham Savage Nolan & Tilden
3750 University Avenue,
Suite 250
Riverside, CA 92501-3335

Bandari Freeman Lim & Cleland
12424 Wilshire Blvd. Suite 750
Los Angeles, CA 90025

Rox Consulting Group, Inc
575 Anton, Suite 880
Costa Mesa, CA 92626

Barry Hildebrandt
20886 Indigo Point
Riverside, CA 92508

Lloyd Charton
14 Monarch Bay Plaza No. 310
Dana Point, CA 92629

National Financial Lending, LLC
7 Argonaut
Aliso Viejo, CA 92656

The William Marano Living Trust
c/o Steve Coldwell
3239 North Verdugo Road
Glendale, CA 91208-1633

Sherry Ikezawa
6349 Riverside Avenue
Riverside, CA 92506

Point Central Financial, Inc.
"PCFU" and "PCF1"
7Argonaut
Aliso Viejo, Ca 92656

Cherry Valley Pass Acres
c/o Rogers Joseph O'Donnell
311 California Street
San Francisco, CA 94104

Cherry Valley Environmental
c/o Rogers Joseph O'Donnell
311 California Street
San Francisco, CA 94104

Office of the US Trustee
3685 Main Street, Suite 300
Riverside, CA  92501
**[via ECF notice]**

David Zaro, Esq.
Allen Matkins et al
515 S. Figueroa Street, 9th Floor
Los Angeles, CA 90071
**[via ECF notice]**

Richard A. Harvey, Esq.
21076 Bake Parkway, Suite 106
Lake Forest, CA 92630
**[via ECF notice]**

Mark Schnitzer, Esq.
Reid & Hellyer
P.O. Box 1300
Riverside, CA 92502-1300
**[via ECF notice]**

Palmieri Tyler et al
2603 Main Street, East Tower
Suite 1300
Irvine, CA 92614
[Special Notice] **[via ECF notice]**

Robert P. Goe, Esq.
Goe & Forsythe, LLP
18101 Von Karman, Suite 510
Irvine, CA 92612
[Special Notice] **[via ECF notice]**