JEFFREY W. BROKER – State Bar No. 53226
PAMELA J. ZYLSTRA – State Bar No. 147977
BROKER & ASSOCIATES PROFESSIONAL CORPORATION
18191 Von Karman Avenue, Suite 470
Irvine, CA 92612-7114

Telephone: (949) 222-2000
Facsimile: (949) 222-2022
email:     *jbroker@brokerlaw.biz*

General Reorganization Counsel
for Debtor and Debtor-in-Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### RIVERSIDE DIVISION

| | |
|---|---|
| In re | Case No. 6:08-bk-23006-BB |
| | Chapter 11 Proceeding |
| THE PRESERVE, LLC, a California Limited Liability Company, | **REPLY BY DEBTOR AND DEBTOR-IN-POSSESSION TO OPPOSITION BY POINT CENTER FINANCIAL, INC. TO MOTION OF DEBTOR AND DEBTOR-IN-POSSESSION FOR ORDER (1) AUTHORIZING THIRD EXTENSION OF DEADLINE TO FILE A PLAN AND DISCLOSURE STATEMENT AND (2) EXCLUSIVITY PERIOD REGARDING SOLICITATION OF ACCEPTANCES AND REJECTIONS TO PLAN; MEMORANDUM OF POINTS AND AUTHORITIES AND SUPPLEMENTAL DECLARATION OF JEFFREY W. BROKER IN SUPPORT THEREOF** |
| Debtor and Debtor-in-Possession | |
| | **[REQUEST FOR JUDICIAL NOTICE FILED CONCURRENTLY HEREWITH]** |
| | Date:  November 4, 2009 |
| | Time:  11:00 a.m. |
| | Ctrm: 303 |

1  **TO THE HONORABLE SHERI BLUEBOND, UNITED STATES BANKRUPTCY JUDGE;**

2  **THE OFFICE OF THE UNITED STATES TRUSTEE; OBJECTING PARTY POINT**

3  **CENTER FINANCIAL, INC. AND ITS ATTORNEYS, AND PARTIES IN INTEREST:**

4  THE PRESERVE, LLC, a California Limited Liability Company, the Debtor and Debtor-

5  in-Possession in the within Chapter 11 case (the "Debtor"), hereby presents its Reply to the

6  Opposition (the "Opposition") filed by Point Center Financial, Inc. to the **DEBTOR'S MOTION**

7  **FOR ORDER AUTHORIZING THIRD EXTENSION OF (1) DEADLINE TO FILE A**

8  **PLAN AND DISCLOSURE STATEMENT; AND (2) EXCLUSIVITY PERIOD**

9  **REGARDING SOLICITATION OF ACCEPTANCES AND REJECTIONS TO PLAN** (the

10 "Motion"). Annexed hereto is the Supplemental Declaration of Jeffrey W. Broker (the "Broker

11 Supplemental Declaration") in further support of this Reply. In addition, filed concurrently

12 herewith is a Request for Judicial Notice (the "RJN") in further support of this Reply.

13 **MEMORANDUM OF POINTS AND AUTHORITIES**

14 **I.**

15 **OVERVIEW**

16 This voluntary Chapter 11 case was filed on September 25, 2008 in response to actions and

17 activities taken by a <u>predatory arranger</u> of a secured loan to the Debtor as part of what has turned

18 out to clearly be a **lend to own**[1] Ponzi Scheme followed by a **scorched earth**[1] approach in this case.

19 This financial predator, Point Center Financial, Inc. ("Point Center"), the sole opposing party

20 herein through its Opposition, has heretofore caused significant damage and disruption to the

21 Debtor's business operations through its illegal activities and efforts to acquire title to the Debtor's

22 Legacy Highlands project, directly resulting in the initiation of this Chapter 11 case. It should be

23 specifically noted that Point Center has been scheduled in this case as a "<u>purported servicing agent</u>

24

25
26
27

---

[1] Examples include objecting to the motion to borrow funds from Scott Krentel in order to fund the case (overruled by the Court per its Order entered on November 26, 2008), objection (later withdrawn) to insider compensation, and a motion for a single asset real estate determination that was denied (per Order entered on December 24, 2008). No reconsideration or appellate review was taken with respect to any of the aforementioned Orders.

28
-2-

1   on behalf of multiple lenders holding fractional interests" (emphasis added) and was specifically

2   characterized in the Debtor's schedules as the holder of a ***contingent, unliquidated and disputed***

3   claim in this case. **Point Center has never lent the Debtor one penny yet it continues to refer**

4   **to itself as a secured creditor in this case.**[2]   The Debtor contends that its case has special

5   circumstances that justify the extension of the exclusivity periods as prayed for in the Motion.

6        Point Center diverted for its own purposes **$7.675 million of the Debtor's funds** out of a

7   fully funded $39 million loan (the "Loan") as asserted in the Motion.  In addition, at the time of the

8   origination of the $39 million loan, Point Center was paid a loan broker fee of **$2.34** million which

9   was calculated based upon the **fully funded $39 million loan** (which was obviously never fully

10  funded) as asserted in the Motion. *There is a minimum of over $10 million in damages just*

11  *attributable to those two items alone.* The Debtor's dispute with Point Center existed for

12  approximately a year prior to the Petition Date.

13       As asserted in the Motion, the disclosure by Point Center in approximately October 2007

14  that $7,675,980.00 of the funds attributable to the $39 million loan arranged by Point Center in

15  2006 **were not existent** left the Debtor 'in the lurch' without the full use of the anticipated

16  proceeds from the Loan for its use in the ongoing development process involving the Legacy

17  Highlands project.  Those funds were specifically earmarked to pay for "soft costs" or related

18  interest reserves relating to the ongoing development of the Legacy Highlands project, which

19  include but are not limited to consulting fees, 'contingency', legal and insurance, management fees,

20  property maintenance and property tax reserves. The **defalcation** on the part of Point Center

21  meant no remaining interest reserve for the Loan; the nonpayment of interest was the basis for the

22  recording of the notice of default in the first place!  In other words, the Debtor would not be here,

23  but for the defalcation by Point Center and the failure to fund, among other items, sufficient funds

24  to have carried the interest on the Loan for fourteen months beyond October 2007.  In addition,

25

26  _____

27  [2]  See, for example, Opposition, page 2, line 1 thereof.

28                                                         -3-

1   there was a commitment to have the Loan extended for an additional two years beyond its original

2   maturity date (to September 2010).

3          As asserted by the Debtor in the Motion, Point Center demanded that the Debtor fund the

4   purported shortfall without any reduction in the fees and costs that were improperly taken at the

5   inception of the "Loan." After the *existence of the shortfall* was disclosed to the Debtor by Point

6   Center, the Debtor made arrangements to raise money through Deep Canyon Holdings, Inc.

7   ("DCH") in order to assist in the replacement of the missing proceeds. After DCH provided over

8   $1.3 million to Point Center for the benefit of the Debtor and was contemporaneously granted

9   definitive fractionalized interests in the Loan in its own name, further funding by DCH was refused

10  by Point Center. This refusal was in violation of the terms of its own loan modification with the

11  Debtor, and Point Center indicated that no further investment would be allowed by DCH in

12  connection with the Loan. Thereafter, Mr. Krentel loaned $1,197,497 to the Debtor at great

13  personal hardship in order to keep the development process for the Legacy Highlands project

14  moving forward.

15         DCH has its own disputes with Point Center, is represented by its own separate legal

16  counsel in this case,[3] (i) has filed its own separate proof of secured claim pertaining to its definitive

17  fractionalized interests in the Loan,[4] (ii) has independently opposed the relief sought by Point

18  Center in its Motion for Relief From Stay (the "RFS Motion") that was filed on June 16, 2009

19  (ECF Docket No. 109),[5] (iii) on October 22, 2009 DCH filed a statement of non-opposition to this

20  Motion (ECF Docket No. 176), and (iv) has filed its own Special Brief on Issues of Authority and

21  Standing (See, RJN Exhibit D). Further, Allen Parrin, the president of DCH, provided a

22  declaration in connection with the evidentiary hearing that took place on September 17, 2009 (ECF

23  Docket No. 152; the "Parrin Declaration"), to which there was no evidentiary objection

24  whatsoever. See, RJN, Exhibit B. The Parrin Declaration and all of its exhibits are in evidence in

25

26  [3] See, RJN Exhibit A, Exhibit 4 thereto beginning at page 5 thereof.
27  [4] See, RJN Exhibit A, Exhibit 4 thereto at page 12 et seq. thereof.
    [5] See, RJN Exhibit A, Exhibit 4 thereto, beginning at page 5 thereof.

28                                            -4-

1    connection with the evidentiary hearing regarding the RFS Motion that took place on September

2    17, 2009 in Los Angeles.

3          In addition, other parties claiming to be holders of definitive fractional interests in the Loan

4    filed (i) a written objection and (ii) eight (8) separate declarations asserting the status of "Real

5    Parties in Interest" in independent opposition to the RFS Motion. <u>See</u>, RJN, Exhibit A, Exhibits 5

6    through 13 thereto.  The evidentiary hearing that took take place on September 17, 2009 addressed,

7    among other matters, the <u>authority</u> of Point Center to act in this case on behalf of the many alleged

8    fractionalized investors in the Loan.  Further briefing has been filed on October 26, 2009 in that

9    specific regard by the Debtor and by DCH.  <u>See</u>, Broker Supplemental Declaration at ¶2 and RJN

10   Exhibits C and D.  The "authority" issue in and of itself is a special circumstance in this case

11   justifying extension of the exclusivity periods until that issue is resolved by the Court.

12         Point Center has filed a proof of claim on behalf of **112** purported fractionalized interest

13   holders and three Point Center 'pools' or 'funds.'  <u>See</u>, RJN, Exhibit A, Exhibit 14 thereto.    In

14   Reply pleadings filed in connection with the RFS Motion on July 7, 2009, Point Center most

15   recently asserts that *there are now **approximately 182** purported fractionalized "investors" in the*

16   *Loan.*  <u>See</u>, RJN, Exhibit A, Exhibit 15 thereto, at page 3 thereof, footnote 1.  The analysis by Mr.

17   Parrin in the Parrin Declaration concludes that there are well in excess of the "approximately 182"

18   purported fractional investors in the public record with regard to the Loan.  The Debtor is entitled

19   to more than an approximation from Point Center.  <u>See</u>, RJN, Exhibit B, Exhibit M thereto at page

20   158 thereto and Broker Supplemental Declaration at ¶3.  The Debtor needs to obtain information

21   about the <u>entirety</u> of the fractionalized interest holders that Point Center claims exist as well as the

22   ones discovered by a review of the public record that has taken place as set forth in Exhibit M to

23   the Parrin Declaration.

24         Point Center has been frustrating those efforts.  As stated by Mr. Harvey in his declaration

25   annexed to the Motion (to which there has been no evidentiary objection):

26         3.    In response to the Motion to Compel Production of Documents

27   presently pending before this Court, Point Center has informed the Law Office of

28                                                                                    -5-

Richard A. Harvey, in writing, that the additional documents to be produced will consist of approximately 225,000 pages. <u>It is The Preserve's understanding that documents already produced illustrate the number of investors varies depending on which document is produced.</u> Due to the continuing lack of cooperation from Point Center in the adversary proceeding regarding discovery, the Debtor has noticed the depositions of what it believes to be the primary witnesses who would testify on behalf of Point Center which depositions are presently scheduled for October 27, 2009 and October 28, 2009. In addition, The Preserve is presently contemplating amending the Complaint to include <u>each</u> of the purported beneficiaries/investors in the underlying deed of trust. The Court has recently set a further hearing *on the issue of authority* which hearing will not be held until November 10, 2009 and which should have a material affect on whether such amendment is necessary. (Underlined emphasis added).

The "true investor" issue <u>including</u> the verification of investment in and of itself is a special circumstance in this case justifying extension of the exclusivity periods in this case. It may be that a special "Bar Date" will need to be established to sort out who is and who is not a legitimate investor in the Loan.

As the Motion and this Reply again demonstrate, **this case has significant complexities** and only one entity – Point Center who is itself <u>not a creditor (never having lent the Debtor one cent) and only an *alleged* "servicer"</u>– has been an ongoing impediment to the reorganization process. When the Court considers the source of the Opposition (a party who stole the Debtor's money) and the true motive on the part of Point Center of diverting attention away from its pre-petition **defalcation** which negatively impacted the Debtor and along with other improper actions caused the filing of this Chapter 11 case in the first instance, the Court must <u>overrule</u> the Opposition and grant the Motion.

## II.

### THE POINT CENTER LITIGATION

A lawsuit was filed by the Debtor against Point Center and others relating to the transaction which is the subject matter of that claimed interest prior to the Petition Date (the "Point Center Litigation") described in detail in the Motion beginning at page 8. As further described at page 9 of the Motion, Point Center is not cooperating regarding discovery and it is hoped that through the deposition process documents that have been repeatedly requested will finally be produced. In addition, The Preserve is presently contemplating amending the Complaint to include <u>each</u> of the purported beneficiaries/investors in the underlying deed of trust, using the list that Mr. Parrin developed[6] since it appears to be more accurate than anything produced to date by Point Center. The Court has set a further hearing *on the issue of authority* which hearing will not be held until November 10, 2009 and which should have a material affect on whether such amendment is necessary and if a special "Bar Date" for alleged investors in the Loan will need to be established in this case.

## III.

### THE DEBTOR'S POST-PETITION BORROWING
### TO FUND ONGOING OPERATIONS

Notwithstanding objection by Point Center, this Court approved the proposed post-petition borrowing from Mr. Krentel (in an amount up to $2 million for the purpose of funding the Debtor's post-petition cash needs) pursuant to its order entered on November 26, 2008. The debtor has been proceeding forward in its reorganization efforts with *replacement funding* from Mr. Krentel. <u>See</u>, Krentel Declaration annexed to the Motion at ¶10.

---

[6] <u>See</u>, RJN Exhibit B, Exhibits K and M thereto.

## IV.

## **RECENT DEVELOPMENTS INVOLVING THE CEQA CHALLENGE**

The CEQA Challenge was initiated in February of 2008, seven months prior to the Petition date. The trial of the CEQA Challenge took place on January 23, 2009. The trial court judge concluded in the Judgment filed on March 30, 2009 that, in his opinion, some, (but far from all that had been alleged) CEQA "violations" had occurred. The Debtor has, even before trial, conducted its own further water analysis and believes that it can with relative ease supply the City of Beaumont (the "City") with additional factual data about water as well as more information regarding the unacceptability of the suggested alternatives and furnish more support for the overriding benefits of the project. The Debtor has been advised by its professionals and consultants that it is likely that the correction activities can be completed within the next 2 to 4 months and then submitted to the same superior court for confirmation and the matter of the CEQA Challenge concluded favorably to the Debtor and the City. The Debtor is actively pursuing this course of action which would result in the complete restoration of all entitlements for the Legacy Highlands. See, Krentel Declaration annexed to Motion at ¶12.

## V.

## **CHALLENGES IN PLAN FORMULATION**

The Debtor has other secured creditors whose scheduled *undisputed* claims are secured by real property assets *other than the Legacy Highlands project*. The Debtor also has general unsecured creditors having claims in excess of $6 million. The Debtor fully intends to propose a Chapter 11 Plan that fairly treats the claim asserted by Point Center as the alleged agent for third party investors (or perhaps with the many fractionalized investors directly, which the Debtor would prefer in order to not have to deal any further with Point Center) when its true nature, extent and validity is finally determined as well as fairly treats the claims of its other secured and unsecured creditors. See, Krentel Declaration annexed to Motion at ¶14.

1    The Debtor faces the following challenges, among others, in attempting to address the

2    proof of claim filed by Point Center (*as an alleged agent*) in its formulation of a plan pertaining

3    thereto:

4    • Point Center is <u>not</u> the lender to the Debtor in connection with the Loan, never

5    having lent the Debtor one penny;

6    • Point Center has <u>not</u> produced, although formally requested by the Debtor, any

7    document to verify that any alleged *investor* it purports to represent actually

8    provided one dollar attributable to the Loan;

9    • Point Center has <u>recently</u> produced contact information relating to the alleged

10    *investor* in order for the Debtor to verify that such person is truly an *investor* in the

11    Loan and as a result entitled to treatment in connection with the Loan in a plan and

12    entitled to receive notice of a bar date in connection with his/her/its claim. The

13    contact information is incomplete when compared to the information developed by

14    Mr. Parrin as set forth in Exhibit M to the Parrin Declaration. The Debtor is

15    evaluating the filing of a motion to establish a new bar date or other procedure by

16    which the growing list of alleged "investors" can be verified; and

17    • The Debtor is in the process of reviewing the public record regarding the Loan

18    when compared to what it has reviewed to date in the form of what was produced

19    previously by Point Center and what is in the Debtor's files.[7]

20    <u>See</u>, Krentel Declaration annexed to Motion at ¶15.

21    The Debtor believes that Point Center has what appears to be a clear <u>conflict of interest</u> in

22    this matter. It has not to date, nor has it in its Objection to this Motion, represented to this Court

23    **under oath** that it has **disclosed to all of the alleged investors in the Loan** that, notwithstanding

24    it was paid a fee of $2,340,000 based upon the fully funded $39 million loan, <u>in fact</u> (i) the Loan

25

26    _____

27    [7] The Parrin Declaration indicates more "fractional interest holders" in the public record than acknowledged to exist to date by Point Center in this case. See, RJN Exhibit A, Exhibit 15 thereto, at page 208 thereof, footnote 1, and RJN Exhibit B, Exhibit M thereto, at page 158 thereof.

28

1    was not fully funded, (ii) when the Debtor obtained an additional funding source (DCH) to replace

2    the missing Loan proceeds, further funding from DCH was <u>refused</u> by Point Center in violation of

3    the terms of its Loan modification with the Debtor and (iii) the Debtor had initiated litigation

4    against Point Center and others in September 2008 for Civil Rico, Fraud, Conversion, Breach of

5    Contract, Breach of the Implied Covenant of Good Faith and Fair Dealing, Rescission,

6    Reformation, Injunctive Relief and the Appointment of a Receiver in connection with the Loan.

7    The Debtor believes that Point Center does not want its *investors* in this Loan (to the extent they

8    can be disclosed and the alleged investment verified) as well as the other plaintiffs in other

9    litigation pending against Point Center as well as regulatory authorities already examining Point

10    Center to know about the problems with the Loan and is, for that reason, *stonewalling* the Debtor

11    in its discovery efforts and the assertion of its rights in the Point Center Litigation.

12        <u>The Debtor wants to negotiate with the legitimate investors/creditors involved with the Loan</u>

13    <u>since it believes that Point Center has an obvious conflict</u>.  There is an inherent problem dealing

14    directly with a party (Point Center) whom the Debtor believes is not only **dishonest** but is also

15    'hiding the ball' from the Debtor and the true investors in the Loan.  The Debtor is fully prepared to

16    discuss plan issues such as a payoff and payment options and/or profit participation in the Legacy

17    Highlands in the future, and participation in the Point Center Litigation with the true legitimate

18    creditors (investors) in the Loan in this case once their contact information and investment

19    information is disclosed in order for the Debtor to confirm their *bona fides* in connection therewith.

20    <u>See</u>, Krentel Declaration annexed to Motion at ¶16.

## VI.

### ARGUMENT

A.    **DEMONSTRATION OF CAUSE**

On the issue of cause the reported cases amalgamate the following relevant factors (*see*

*also*, <u>In re Henry Mayo Newhall Memorial Hospital</u>, 282 B.R. 444, 452 (9th Cir. BAP 2002):

- •    Was this first extension requested

- •    Was the case complicated

1      •      Was the case pending for a long time relative to its size and complexity

2      •      Was the debtor proceeding in good faith

3      •      Was the debtor paying current operating expenses

4      •      Was there a reasonable prospect for filing a viable plan and prepare adequate

5            information

6      •      Was there satisfactory progress negotiating with key creditors

7      •      Was the extension sought to pressure creditors

8      •      Was there an unresolved contingency

9          This is the third extension requested by the Debtor in this case.  The request by the Debtor

10 was made timely.  The second extension request was approved by the Court without reference to

11 the comments made by the Court in connection with the first extension request regarding the

12 pending litigation between the Debtor and Point Center.  See, Exhibit E to the Supplemental

13 Broker Declaration annexed hereto.

14          The Debtor submits that this case is complex for four reasons.  The first is the magnitude

15 and inherent complexity of the Legacy Highlands project in and of itself that has been worked on

16 for well over six years.  The entitlements process is substantially completed which the Debtor

17 contends has enhanced the value of the Legacy Highlands project.  The second is the fact that the

18 CEQA Challenge is still a few months away from its anticipated favorable completion and the EIR

19 certification becoming immune against further attack.  The Debtor has demonstrated significant

20 progress in the entitlement process, has taken steps to rectify the deficiencies in the judgment

21 relating to the CEQA Challenge and believes it will be favorably resolved within the next 4 to 6

22 months.  The third is the pending litigation against Point Center, which will be tried before a jury

23 in the United States District Court next year.  **Stated simply, Point Center took money that**

24 **belonged to the Debtor, paid itself a fee that it did not earn, and through its improper actions**

25 **precipitated the filing of this case.**  The fourth is the Debtor's long stated desire to communicate

26 with the 'true' creditors in the Loan in this case, which may be coming to fruition through the

27

28                            -11-

1  discovery process and the investors who, to date, have filed pleadings in the case on their own

2  behalf.

3      This case has not been pending for a "long time" since it was filed on September 25, 2008.

4  The Debtor has made progress in both the entitlement processes and in its prosecution of the

5  pending litigation against Point Center in order to obtain information that is both relevant to the

6  litigation and to the Loan and the 'true' investor/creditor issue in this case relating to the Loan.

7      The Debtor asserts that it filed its Chapter 11 case in good faith and is proceeding in good

8  faith in its efforts to reorganize.  The Debtor is current in its administrative operating expenses

9  through Court-approved borrowing (over the objection of Point Center) and is in complete

10  compliance with the requirements of the Office of the United States Trustee.

11      A plan in this case is inextricably intertwined with the amount, *if anything*, that is found to

12  be owed on the Loan.  <u>The Debtor has no objection to the matter being referred (again) to</u>

13  <u>mediation with Point Center if the Court determines that it has the legal authority to act on behalf</u>

14  <u>of the Loan in connection with this case.</u>  However, the Debtor believes that Point Center does not

15  represent the interests of most if not all 'investors' relevant to the Loan and the Debtor is

16  evaluating how to proceed with a *diversity of constituents* apparently present here:  (i) DCH, which

17  has appeared several times in this case, filed its own Proof of Secured Claim based upon its own

18  fractionalized interest in the Loan and has affirmatively opposed the RFS Motion, (ii) a group of

19  Point Center "investors" who have appeared in opposition to the RFS Motion and are interested in

20  communicating with the Debtor in connection with the Loan, and (iii)  perhaps even the SEC itself

21  or a receiver or other fiduciary.  Now that there is momentum on the "fractionalized interest"

22  holder front, the Debtor is encouraged that negotiation with the 'true' creditors in this case may be

23  a realistic expectation on the part of the Debtor for plan formulation purposes.

24      The Debtor has not pressured any of its creditors with regard to a particular payment

25  proposal, although there have been discussions with parties *other than* Point Center post-petition in

26  that regard.  Finally, there are the unresolved contingencies of what the Debtor *actually owes* with

27  regard to the Loan, *if anything*, at the end of the day, and whether it is validly secured in the first

28

1    instance (the discovery process in the adversary proceeding is critical in that regard), the

2    completion of the entitlement process, as well as the final corrective work relating to the CEQA

3    Challenge completed, circulated, approved and the corrected portion of the EIR re-certified by the

4    Beaumont City Council.

5            The authorities cited by Point Center on the issue of cause, most notably In re R.G.

6    Pharmacy, Inc., 374 B.R. 484 (Bankr. D. Conn. 2007) miss the mark.  In R.G. Pharmacy, the case

7    dynamics were significantly different than those at bar.  First, Debtor did not show good cause

8    pursuant to 11 USCS §1121(d) to further extend debtor's exclusivity period where debtor's

9    bankruptcy case was not particularly large (debtor had assets of just under $ 4,000,0000) and there

10   was no support by any constituency (the two major secured and unsecured creditors both opposed

11   the extension of exclusivity).  The major secured creditor held a claim of $2.5 million (82% of

12   total scheduled secured debt), and the major unsecured creditor held an unsecured claim of $1.6

13   million (98% of total scheduled unsecured debt), *$1.025 million of which was a stipulated allowed*

14   *administrative claim.*  In addition, the United States and the State of Connecticut (both

15   unscheduled) had filed proofs of claim asserting an estimated aggregate unsecured claim of $2.7

16   million.  There was a breakdown in negotiations between the Debtor, the secured creditor and the

17   major unsecured creditor who both opposed extending the exclusivity period.  In fact, the secured

18   creditor also had motions pending for the appointment of a trustee as well as for relief from stay to

19   enforce its security agreement.  The Court also noted that the adversary proceeding against the

20   secured creditor was filed just prior to the date of the hearing on the exclusivity extension motion,

21   and denied the Debtor's request for an extension of the exclusivity period.

22           In the case at bar, this case simply has more complexities and constituencies than any cited

23   by Point Center.  There have been ongoing communications with Deep Canyon as well as other

24   individual investors in the Loan who have contacted the Debtor's manager as well as Debtor's

25   counsel.  The Debtor is willing to mediate again in this case.  The Debtor submits that it has

26   established good cause to grant the requested extension of the exclusivity periods as prayed for in

27   the Motion.

28

## VII.

### CONCLUSION

This is the third requested extension of the exclusive period in a case which is complex for the reasons outlined above and has serious issues regarding the Debtor's ability to negotiate with the creditors who are the true, legitimate fractionalized interest holders in the Loan. Based upon the foregoing, the Debtor respectfully submits that good cause exists for this Court to grant the relief requested in this Motion and extend until January 27, 2010, the exclusivity period within which the Debtor has the exclusive right to file a Plan, and extend to March 26, 2010, the exclusivity period within which the Debtor has the exclusive right to solicit acceptances thereto. In addition, the Debtor requests that such extension be without prejudice to the Debtor's right to seek further extension of the exclusivity periods.

DATED:  October 28, 2009

BROKER & ASSOCIATES
PROFESSIONAL CORPORATION

By: _____
     Jeffrey W. Broker
     General Reorganization Counsel for Debtor and
     Debtor-in-Possession

-14-

1

## SUPPLEMENTAL DECLARATION OF JEFFREY W. BROKER

2       I, Jeffrey W. Broker, do hereby declare and state as follows:

3       1.      I am an attorney at law, duly licensed to practice before all courts of the State of

4   California and am admitted to practice before the above-entitled Court.  I am a member of Broker

5   & Associates Professional Corporation, a California corporation, general reorganization counsel to

6   THE PRESERVE, LLC, a California Limited Liability Company, the Debtor and Debtor-in-

7   Possession (the "Debtor") in the within Chapter 11 case.  All of the matters testified to herein are

8   based upon my own personal knowledge, are true and correct and, if called upon to testify, I could

9   testify competently thereto.

10      2.      At the conclusion of the September 17, 2009 hearing on the Motion for Relief from

11  Stay brought by Point Center, the Court requested further briefing on the authority and standing

12  issue.  A Special Brief by the Debtor on those issues was filed on October 26, 2009, a true and

13  correct copy of which is attached as Exhibit C to the Request for Judicial Notice ("RJN") filed

14  concurrently herewith.  A Special Brief by Deep Canyon Holdings, Inc on those issues was also

15  filed on October 26, 2009, a true and correct copy of which is attached as Exhibit D to the RJN.

16      3.      I have reviewed the Proof of Claim filed by Point Center in this case (RJN Exhibit

17  A, Exhibit 11 thereto).  Aside from the three Point Center entities, I counted <u>112</u> other purported

18  fractionalized interest holders listed at pages 27-33 and again at pages 72-78 thereof.  In Reply

19  pleadings filed in connection with the RFS Motion on July 7, 2009, *Point Center most recently*

20  *asserts that there are now approximately 182 purported fractionalized "investors" in the Loan.*

21  (RJN Exhibit A, Exhibit 15 thereto).  Further, the Parrin Declaration identifies in excess of 182

22  purported fractionalized "investors" in the Loan.  RJN Exhibit B, Exhibit M thereto, page 158

23  thereof.

24      4.      Attached hereto as Exhibit E is a true and correct copy of this Court's tentative

25  ruling relating to the hearing on the *DEBTOR'S MOTION FOR ORDER AUTHORIZING THIRD*

26  *EXTENSION OF (1) DEADLINE TO FILE A PLAN AND DISCLOSURE STATEMENT; AND (2)*

27  *EXCLUSIVITY PERIOD REGARDING SOLICITATION OF ACCEPTANCES AND REJECTIONS*

28

1  *TO PLAN.*  The tentative ruling became the Order of the Court.

2        I declare under penalty of perjury under the laws of the State of California and of the United

3  States of America that the foregoing is true and correct, and that this declaration was executed by

4  the undersigned this 28th day of October, 2009 at Irvine, California.

6                         Jeffrey W. Broker

-16-

**United States Bankruptcy Court**
**Central District of California**

**Riverside**

**Judge Sheri Bluebond, Presiding**

**Courtroom 303 Calendar**

Wednesday, July 29, 2009                                                                 Hearing Room    303

 2:00 pm

6:08-23006        **The Preserve, LLC**                                                                  Chapter    11

#209.20        Motion to Extend Exclusivity Period for Filing a Chapter 11 Plan and
Disclosure Statement

Docket #:    96

**Courtroom Deputy:**

- NONE LISTED -

**Tentative Ruling:**

Overrule objections.  Grant motion.  Extend debtor's exclusive period to file plan until
September 23, 2009 and its exclusive right to solicit acceptances for its plan until
November 23, 2009.

Party Information

Debtor(s):
The Preserve, LLC                                           Represented By
Jeffrey W Broker

Movant(s):
The Preserve, LLC                                           Represented By
Jeffrey W Broker

Exhibit    E
Page    17

| In re:<br>THE PRESERVE, LLC<br><br>                                     Debtor(s). | CHAPTER  11<br><br>CASE NUMBER 6:08-bk-23006-BB |
|---|---|

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is 18191 Von Karman Avenue, Suite 470, Irvine, CA 92612

A true and correct copy of the foregoing document described as **REPLY BY DEBTOR AND DEBTOR-IN-POSSESSION TO OPPOSITION BY POINT CENTER FINANCIAL, INC. TO MOTION OF DEBTOR AND DEBTOR-IN-POSSESSION FOR ORDER (1) AUTHORIZING THIRD EXTENSION OF DEADLINE TO FILE A PLAN AND DISCLOSURE STATEMENT AND (2) EXCLUSIVITY PERIOD REGARDING SOLICITATION OF ACCEPTANCES AND REJECTIONS TO PLAN; MEMORANDUM OF POINTS AND AUTHORITIES AND SUPPLEMENTAL DECLARATION OF JEFFREY W. BROKER IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.   TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On October 28, 2009 I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

dfisher@ptwww.com ( Don Fisher at Palmieri Tyler et al.)
kmurphy@goeforlaw.com (Robert P. Goe and Marc C. Forsythe at Goe & Forsythe, LLP)
ustregion16.rs.ecf@usdoj.gov (United States Trustee)
elizabeth.lossing@usdoj.gov (Elizabeth Lossing at Office of the United States Trustee)
mcschnitzer@rhlaw.com (Mark Schnitzer at Reid & Hellyer)
dzaro@allenmatkins.com (David R. Zaro at Allen Matkins
jdelcastillo@allenmatkins.com (Joshua del Castillo at Allen Matkins)
dickatlaw@cox.net (Richard Harvey)

☐ Service information continued on attached page

**II.   SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served)**:**
On October 28, 2009 I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

The Hon. Sheri Bluebond, 255 East Temple Street, Suite 1482, Los Angeles, CA 90012
☒ Service information continued on attached page

**III.   SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served)**:** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on_____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| October 28, 2009 | Barbara Jean Little-Raphael | *Bmby Jn Little-Rqphael* |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009                                                                                                          **F 9013-3.1**