of dower, courtesy and rights of courtesy, property, possession, claim and demand, both in law and in equity, of Trustor in the Premises and every part thereof and all appurtenances thereto;

(b)    All machinery, furniture, equipment, fixtures, material, appliances and other articles of personal property of every kind owned by Trustor, or in which Trustor has an interest, located upon the Premises, and appurtenances thereto, and usable for the generation and distribution of air, water, heat, electricity, light, fuel or refrigeration, or for ventilating or air conditioning purposes, or for sanitary or drainage purposes, or for the exclusion of vermin or insects, or for removal of dust, refuse or garbage, and such machinery, furniture, equipment, fixtures and other articles of personal property which consist of all appliances, awnings, window shades, drapery rods, brackets, screens, floor coverings, incinerators and carpeting used in the operation of the Premises and Improvements (and all other personal property, either similar or dissimilar to the foregoing usable in the operation of the Premises and Improvements), together with all replacements and substitutions therefore, now owned or hereafter acquired by Trustor and located in or on said Premises and Improvements, together with all materials intended for construction, reconstruction, alteration, and repair of the Improvements (hereinafter collectively called the "Equipment"), together with all condemnation awards and rights under insurance policies and Leases described below pertaining to said Premises or the Improvements now or hereafter located thereon;

(c)    All awards or payments, including interest, which may be made as to the Trust Property, whether from the exercise of the right of eminent domain, constructive taking or for any other injury to or decrease in the value of the Trust Property (collectively, "Awards");

(d)    All leases and other agreements affecting the use, enjoyment or occupancy of the Trust Property, (the "Leases"), if any, and all rents and security deposits payable under the Leases, and other deposits, issues and profits from the Trust Property (the "Rents");

(e)    All Policies (as defined herein) and their proceeds thereof and any unearned premiums on any insurance policies covering the Trust Property, including, the right to receive and apply the proceeds of any insurance, judgments, or settlements made in lieu thereof, for damage to the Trust Property, whether such insurance is or is not required by this Deed of Trust;

(f)    All utility deposits made to obtain or maintain utility services to the Premises or the Improvements;

(g)    Any amounts in any escrow fund for the purposes of payment of taxes, insurance premiums or other Impositions (as defined in paragraph 4 below) as to the Trust Property;

(h)    All building materials and supplies now or hereafter located upon the Trust Property and all architectural renderings, drawings, specifications now or hereafter relating to the Trust Property;

(i)    All contracts and agreements now or hereafter existing relating to the design, construction or improvement of the Trust Property;

(j)    All deposits given to utilities and governmental authorities pertaining to the Trust Property;

(k)    All present and future governmental, utility and homeowner association approvals, permits and entitlements pertaining to the Trust Property; and

(l)    The products and proceeds of the property described in the above (a) through (k) inclusive.

FOR THE PURPOSE OF SECURING the payment and performance of the following covenants, obligations, indebtedness, and liabilities:

(i)    all obligations of Trustor under the Promissory Note executed by Trustor in favor of Beneficiary described more particularly in Exhibit A attached hereto (the "Note"), as well as any other substituted note and all modifications, renewals, or extension of the Note, regardless of whether evidenced by a new or additional promissory note or notes.  The payee under the Note and all subsequent holders of the Note are collectively the "Beneficiary" and the indebtedness evidenced by the Note is the "Loan";

(ii)    all present and future loans, advances, or other extensions of credit obtained by Trustor from Beneficiary, and all promissory notes evidencing such present or future loans, advances, or other extensions of credit, including Trustor's obligations under any present or future loan or credit agreement executed by Trustor, including any other agreement granting additional security interests (collectively, "Other Security Documents"), and all liabilities that Trustor may now or in the future owe to Beneficiary;

Collectively the obligations referred to in (i) and (ii) above are called the "Indebtedness;"

(iii)    all other obligations under this Deed of Trust and the other Loan Documents (as defined in paragraph 2(c) below), collectively referred to as the "Obligations."

Notwithstanding any provision of this Deed of Trust to the contrary, in no event shall this Deed of Trust secure the Obligations of any guarantor ("Guarantor") arising exclusively under any guaranty on or about the same date (the "Guaranty") given by Trustor or any other person to Beneficiary.

1.    <u>Warranty of Title.</u>  Trustor warrants that (a) Trustor has good title to the Trust Property, (b) Trustor has the unrestricted right to grant the security interests given in this Deed of Trust, (c) Trustor presently possesses an unencumbered fee simple estate in the Premises and the Improvements except for those shown in the title report for this transaction (the "Permitted Encumbrances"), and (d) this Deed of Trust is and will remain a valid and enforceable lien on and security interest in the Trust Property, subject only to the Permitted Encumbrances.  Trustor shall forever warrant, defend and preserve such title and the validity and priority of the lien of this Deed of Trust, subject to the Permitted Encumbrances, and shall forever warrant and defend the same to Beneficiary against the claims of all persons.

Exhibit __A__
Page __52__

3

Exhibit __6__
Page __49__

2.    <u>Representations, Warranties and Covenants</u>.    Trustor represents, warrants and covenants to Beneficiary that as of the date of this Deed of Trust:

(a)    <u>Trust Property</u>.

(i)    All certifications, permits, licenses and approvals, including certificates of completion and occupancy permits required for the legal use, occupancy and operation of the Trust Property as currently operated (collectively, the "Licenses"), have or will be obtained and maintained in good standing (including, without limitation, any applicable liquor license). Trustor shall keep and maintain all Licenses. The Trust Property is free of material damage and is in good repair, and there is no proceeding pending for the total or partial condemnation of, or affecting, the Trust Property.

(ii)    All of the Improvements which were included in determining the appraised value of the Trust Property lie wholly within the boundaries and building restriction lines of the Trust Property, and no improvements on adjoining properties encroach upon the Trust Property, and no easements or other encumbrances upon the Premises encroach upon any of the Improvements so as to affect the value or marketability of the Trust Property, except those which are insured against by the Beneficiary's policy of mortgagee's title insurance insuring the lien of this Deed of Trust. All of the Improvements comply with all material requirements of any applicable zoning and subdivision laws and ordinances.

(iii)    The Trust Property is not subject to any Leases other than the Leases described in the rent roll delivered to Beneficiary in connection with this Deed of Trust. No person has any possessory interest in the Trust Property or right to occupy the same except under and pursuant to the provisions of the Leases. The current Leases are in good standing.

(iv)    The Trust Property is and shall at all times remain in compliance with all statutes, ordinances, regulations and other governmental or quasi-governmental requirements and private covenants now or in the future relating to the ownership, construction, use or operation of the Trust Property.

(v)    There has not been committed by Trustor or, to Trustor's knowledge, any other person in occupancy of or involved with the operation or use of the Trust Property, any act or omission affording the federal government or any state or local government the right of forfeiture as against the Trust Property or any part thereof or any monies paid in performance of Trustor's obligations under this Deed of Trust or any of the Other Security Documents. Trustor hereby covenants and agrees not to commit, permit or suffer to exist any act or omission affording such right of forfeiture.

(vi)    Neither the execution nor delivery of the Note, this Deed of Trust, or the Other Security Documents, nor Trustor's performance thereunder, nor the

Exhibit ___A___
Page ___53___

4

Exhibit ___4___
Page ___50___

recordation of this Deed of Trust, nor the exercise of any remedies by Beneficiary, will adversely affect Trustor's rights under any of the Licenses.

(b)   <u>Organization of Trustor</u>.

(i)   Trustor is an entity described in Exhibit A attached hereto, is organized under the laws described in Exhibit A attached hereto and is qualified to do business in each state in which such qualification is required by law.

(ii)   Trustor has the requisite power and authority to own and manage its properties, to carry on its business as now being conducted, and to own, develop, and operate the Trust Property.

(iii)   Trustor is qualified to do business in every jurisdiction in which the nature of its business or its properties makes qualification necessary.

(iv)   Trustor is in compliance with all laws, regulations, ordinances, and orders of public authorities applicable to it.

(c)   <u>Loan Documents</u>.   The Note, this Deed of Trust, the Other Security Documents and all other documents, instruments and written agreements entered into by Trustor in connection with the Loan are hereinafter referred to as the "Loan Documents." The execution, delivery, and performance by Trustor and any guarantors of the Loan, together with their respective affiliates and their respective employees, representatives, and agents (the "Loan Parties") of the Loan Documents and the borrowings evidenced by the Note:

(i)   are within the power of the Loan Parties,

(ii)   have been duly authorized by all requisite corporate or partnership actions, as appropriate,

(iii)   have received all necessary governmental approval,

(iv)   will not violate any provision of law, any order of any court or agency of government, the charter documents of any Loan Party, or any indenture, agreement, or any other instrument to which any Loan Party is a party or by which any Loan Party or any of its property is bound, nor will they conflict with, result in a breach of, or constitute (with due notice and lapse of time) a default under any indenture, agreement, or other instrument, or result in the creation or imposition of any lien, charge, or encumbrance of any nature on any of the property or assets of any Loan Party, except as contemplated by the provisions of the Loan Documents, and

(v)   will, when executed and delivered to Beneficiary, constitute a valid obligation, enforceable in accordance with its terms.

(d)   <u>Financial Statements</u>.

Exhibit ___A___
Page ___54___

5

Exhibit ___6___
Page ___51___

(i)    All financial statements and data that have been given to Beneficiary with respect to any Loan Party are complete and correct in all material respects; accurately present the financial condition of that Loan Party on each date as of which they have been furnished, and accurately present the results of the operations of that Loan Party for the periods for which they have been furnished; and have been prepared in accordance with generally accepted accounting principles consistently applied throughout the periods covered.

(ii)    All balance sheets and the notes with respect to the Loan Parties furnished to Beneficiary disclose all liabilities of the Loan Parties, fixed and contingent, as of their respective dates, as well as all obligations of those Loan Parties under any guaranties.

(iii)    There has been no material and adverse change in the business or properties or condition (financial or otherwise) of Trustor, or the condition or operation of the Trust Property ("Material Adverse Change") since the date of the most recent financial statement given to Beneficiary with respect to Trustor of the Trust Property.

(e)    Use of Trust Property.  Trustor will use the Trust Property or the funds advanced pursuant to the Note to acquire and/or develop, maintain, and operate the Premises and the Improvements.

(f)    Other Arrangements.  Trustor is not a party to any agreement or instrument materially and adversely affecting Trustor's present or proposed business, properties, assets, operation, or condition, financial or otherwise; and Trustor is not in default in the performance, observance, or fulfillment of any of the material obligations, covenants, or conditions in any agreement or instrument to which Trustor is a party that materially affect Trustor's present or proposed business, properties, assets, operation, or condition, financial or otherwise.

(g)    Litigation.  There is not now pending against or affecting any Loan Party, nor to the knowledge of any Loan Party is there threatened, any action, suit, or proceeding at law or in equity or before any administrative agency that, if adversely determined, would materially impair or affect:

(i)    the financial condition or operations of Trustor, or

(ii)    the condition or operation of the Trust Property.

(h)    Survival.  The warranties of this paragraph will survive foreclosure or enforcement of this Deed of Trust and shall run with the Premises.

3.    Insurance.

(a)     <u>Risks to be Insured and Policy Provisions.</u>  Subject to the provisions of paragraph 5 hereof, Trustor, at its sole cost and expense, will maintain or cause to be maintained the following:

(i)     Commercial general liability (including contractual liability) insurance ("CGL Insurance") covering any and all liability of the insured arising out of the ownership, maintenance, use or occupancy of the Trust Property, and all operations incidental thereto, said insurance to have limits of not less than Two Million Dollars ($2,000,000.00) combined single limit per occurrence for bodily injury, personal injury and property damage liability;

(ii)    Insurance ("Building Insurance") on all buildings, fixtures and improvements located on the Trust Property against fire and "special perils" (including "ordinance or law coverage"), in amounts at least equal to the greater of: (A) the full replacement cost thereof (without deduction for depreciation) as such replacement cost shall be determined from time to time at the reasonable request of Beneficiary; or (B) unless prohibited by law, the unpaid principal amount of the Indebtedness.  The Building Insurance shall include a co-insurance waiver or agreed amount endorsement.  Such insurance shall, during the course of any construction of additions to the Improvements, be on Special Form Builder's Risk 100% Completed Value Non-Reporting Form or other form approved by Beneficiary;

(iii)   Insurance on personal property against fire and any peril generally included within the classification of "extended coverage" ("Personal Property Insurance") in amounts at least equal to the replacement value thereof;

(iv)    Rental value or business interruption insurance (or a combination thereof as Beneficiary may require) ("Rental Value or Business Interruption Insurance") on all buildings, fixtures, improvements, and other constructions located on and forming a part of the Trust Property as above described (including parking and common areas) against loss by the perils covered by the Building Insurance in amounts of not less than the amount of Trustor's annual gross income from the Trust Property or Trustor's debt service on the Trust Property (including any required payments to the Escrow Fund), for twelve (12) months, whichever is greater.  Such Rental Value or Business Interruption Insurance shall contain an endorsement extending the period of indemnity for not less than ninety (90) days after restoration of said buildings, fixtures and improvements is completed;

(v)     If and whenever Trustor shall have employees, workers' compensation insurance as required by law and employer's liability insurance with limits of liability of not less than $2,000,000.00;

(vi)    If the Trust Property is located in an area which has been identified by the Secretary of Housing and Urban Development as a flood hazard area and in which flood insurance has been made available under the National Flood




Insurance Act of 1968 (the "Act"), Trustor shall keep the Trust Property covered by flood insurance ("Flood Insurance") up to the maximum limit of coverage available under the Act, but not in excess of the amount of the Indebtedness; and

(vii)   Such other insurance with respect to the Trust Property in such amounts and against such insurable hazards as Beneficiary from time to time may reasonably require ("Additionally Required Insurance").

All insurance required hereunder, including the CGL Insurance (collectively, the "Policies"), shall provide that coverage shall not be revised, cancelled or reduced until at least thirty (30) days' written notice of such revision, cancellation or reduction shall have been given to Beneficiary; be issued by insurance companies which are qualified to do business in the State in which the Trust Property is located, which have at least one of the following A.M. Best Co. combinations of Best's Rating and Best Financial Size Category: A-, XV; A, XIII; A+, IX; or A++, VIII; and which are satisfactory to Beneficiary in all other ways.

The CGL Insurance shall name Beneficiary as an additional insured; apply severally as to Trustor and Beneficiary (excepting the limits of liability); cover each of them as insureds in the same manner as if separate policies had been issued to each of them (excepting the limits of liability); contain no provisions affecting any rights which any of them would have as claimants if not so named as insureds; and be primary insurance with any other valid and collectible insurance available to Beneficiary constituting excess insurance.

The Building Insurance, Personal Property Insurance, Rental Value or Business Interruption Insurance, and Flood Insurance and any and all other insurance maintained by the Trustor related to the Trust Property, whether or not required by this Deed of Trust, shall name Beneficiary as an additional insured; and have attached to them a Lender's Loss Payable Endorsement naming Beneficiary as Lender, a standard waiver of subrogation endorsement, a stipulated amount endorsement, and a full replacement cost endorsement.

(b)   Delivery of Policy.  Trustor will deliver to Beneficiary original certificates and evidence of all required insurance to Beneficiary and Trustor shall promptly furnish to Beneficiary copies of all renewal notices and all receipts of paid premiums received by it.  At least ten (10) days prior to the expiration date of a required policy, Trustor shall deliver to Beneficiary a renewal certificate and evidence of insurance in a form satisfactory to Beneficiary.

(c)   Assignment of Policy.  If the Trust Property is sold at a foreclosure sale or if Beneficiary shall acquire title to the Trust Property, Beneficiary shall have all of the rights of Trustor to the Policies and the unearned premiums on them and to the proceeds resulting from any damage to Trust Property prior to such sale or acquisition.

(d)   Notice of Damage or Destruction; Adjusting Loss.  If any part of the Trust Property is damaged or destroyed by fire or other casualty, Trustor will promptly give written notice thereof to the insurance carrier and Beneficiary, and will not adjust any damage or loss which exceeds $10,000 unless Beneficiary joins in such adjustment; but if there has been no adjustment of any such damage or loss within four months from the date of occurrence and if an

Exhibit   A
Page   57

Exhibit   4
Page   54

Event of Default exists at the end of such four-month period or at any time thereafter, Beneficiary may alone make proof of loss, adjust and compromise any claim under the policies and appear in and prosecute any action arising from such policies. In connection therewith, Trustor does hereby irrevocably authorize, empower and appoint Beneficiary as attorney-in-fact for Trustor (which appointment is coupled with an interest) to do any of the above in the name of Trustor.

(e)    Application of Insurance Proceeds. All sums in excess of $10,000 paid under any insurance policies relating to the Building Insurance, Personal Property Insurance, Rental Value or Business Interruption Insurance, Flood Insurance or Additionally Required Insurance (collectively the "Proceeds"), shall be paid to Beneficiary which may, at its option (but subject to the provisions of this paragraph), apply them, after first deducting Beneficiary's expenses incurred in the collection thereof, to the payment of the Indebtedness, whether or not due and in such order of application as Beneficiary may determine, or to the repair, replacement, rebuilding or restoration of the Trust Property, in such manner as Beneficiary may determine. However, Beneficiary shall make all Proceeds (after first deducting therefrom Beneficiary's reasonable expenses incurred in collecting them) available to Trustor to reimburse Trustor for Trustor's reasonable costs of restoration, repair, replacement or rebuilding of the Improvements and Equipment, in accordance with procedures reasonably required by Beneficiary (and shall not be applied toward the payment of the Indebtedness until after restoration and repair of the Improvements and Equipment) provided:

(i)    There is no Event of Default;

(ii)    Trustor has notified Beneficiary of Trustor's intention to perform such restoration or repair within thirty (30) days after adjusting the loss or casualty;

(iii)    Beneficiary receives reasonably satisfactory evidence that the Premises and Equipment have been fully restored or that by application of the Proceeds will be fully restored to their condition prior to the damage or destruction, free and clear of all liens other than the Permitted Encumbrances;

(iv)    If, in the reasonable judgment of Beneficiary, the Proceeds will be insufficient to restore the Improvements and Equipment to their condition prior to the damage or destruction, Trustor shall deposit with Beneficiary funds which, together with the Proceeds, are in Beneficiary's sole opinion sufficient to restore the Improvements and Equipment to their condition prior to the damage or destruction; and

(v)    There will, in the reasonable judgment of Beneficiary, remain sufficient time to complete the restoration or repair of the Improvements and Equipment prior to the Date of Maturity (as defined in the Note).

Any Proceeds remaining after reimbursement of Trustor for its costs of restoring the Improvements and Equipment, at Beneficiary's option, may be applied to partial prepayment of

the Indebtedness. Any such application of the Proceeds to the payment of the Indebtedness shall be without prepayment premium or penalty, if any, otherwise applicable and shall not extend or postpone the due dates of the monthly installments under the Note or change the amount of such installments. Any remaining proceeds not applied to the Indebtedness shall be paid to Trustor.

4.   <u>Payment of Impositions.</u>   Subject to the payments in the manner provided in paragraph 5 hereof and to paragraph 8 relating to contests, Trustor shall pay when due all real estate and personal property taxes and other taxes and assessments, water and sewer rates and charges, and all other governmental charges and any interest or costs or penalties with respect to those charges, assessments, or taxes, ground rent and charges for any easement or agreement maintained for the benefit of the Trust Property, general and special, ordinary and extraordinary, foreseen or unforeseen, of any kind that at any time prior to or after the execution of the Loan Documents may be assessed, levied, imposed, or become a lien on the Trust Property or the rent or income received from the Trust Property, or any use or occupancy of the Trust Property; and any charges, expenses, payments, or assessments of any nature, if any, that are or may become a lien on the Trust Property or the rent or income received from the Trust Property (the "Impositions"). Trustor will deliver to Beneficiary, upon request, evidence satisfactory to Beneficiary that the Impositions are not delinquent. Trustor shall not permit and shall promptly cause to be discharged any lien or charge which becomes a lien or charge against the Trust Property, and shall promptly pay for all utility services provided to the Trust Property.

5.   <u>Escrow Fund.</u>   At the option of the Beneficiary, Beneficiary may require Trustor to establish an Escrow Fund (defined below) sufficient to pay all Impositions and all insurance premiums for all Policies (the "Insurance Premiums") pursuant to this Deed of Trust. Initial deposits of Impositions and Insurance Premiums shall be made by Trustor to Beneficiary in amounts determined by Beneficiary in its discretion on the date hereof to be held by Beneficiary or its agent, in escrow. Additionally, Trustor shall pay to Beneficiary on the first day of each calendar month one-twelfth of an amount which would be sufficient to pay the Impositions and Insurance Premiums upon the due dates for them (the initial deposits and the amounts referred to in the previous sentence shall be called the "Escrow Fund"). Trustor agrees to notify Beneficiary immediately of any changes to the amounts, schedules and instructions for payment of any Impositions and Insurance Premiums and authorizes Beneficiary or its agent to obtain the bills for Impositions directly from the appropriate tax or insurance authority. The Escrow Fund and the payments of interest or principal or both under the Note shall be added and paid together. Provided there are sufficient amounts in the Escrow Fund and no Event of Default exists, Beneficiary shall pay the Impositions and Insurance Premiums when due with funds from the Escrow Fund. If the Escrow Fund is insufficient to pay the items set forth above, Trustor shall pay, upon demand, to Beneficiary, any shortage. Unless otherwise required by applicable law, no earnings or interest on the Escrow Fund shall be payable to Trustor.

6.   <u>Liens.</u>   Subject to paragraph 8 hereof relating to contests, the Trustor shall not create or permit any lien, encumbrance or charge on the Trust Property inferior to the lien of this Deed of Trust. Trustor shall pay, when due, the claims of: (a) all persons supplying labor or materials to or in connection with the Trust Property; and (b) registered or certified surveyors or engineers, or licensed architects, or their professional consultants supplying professional services in connection with the Trust Property.



Exhibit ____A____
Page ____51____

10

Exhibit ____6____
Page ____56____

7.   Compliance with Laws.  Subject to paragraph 8 relating to contests, Trustor shall comply with all present and future statutes, laws, rules, orders, regulations and ordinances affecting the Trust Property, any part thereof or the use thereof and shall comply with all covenants, conditions and restrictions applicable to the Trustor which are contained in any documents constituting a Permitted Encumbrance.

8.   Permitted Contests.  Trustor shall not be required to (a) pay any tax, assessment or other charge referred to in paragraph 4, (b) discharge or remove any lien, encumbrance or charge referred to in paragraph 6, or (c) comply with any statute, law, rule, regulation or ordinance referred to in paragraph 7, if Trustor (i) contests, in good faith, the existence, the amount or the validity of the item, and (ii) shall give such security to Beneficiary as may be reasonably demanded by Beneficiary to ensure compliance with the foregoing provisions of this paragraph. Trustor shall give prompt written notice to Beneficiary of the commencement of any contest referred to in this paragraph.

9.   Condemnation.

(a)   Immediately upon receipt by Trustor of notice of the institution of any proceeding or negotiations for condemnation or other eminent domain proceeding (a "Taking"), Trustor shall give notice thereof to Trustee and Beneficiary. Trustee and Beneficiary may appear in any such proceedings and participate in any such negotiations and may be represented by counsel. Trustor, notwithstanding that Trustee and Beneficiary may not be a party to any such proceeding, will promptly give to Trustee and Beneficiary copies of all notices, pleadings, judgments, determinations and other papers received by Trustor therein. Trustor will not enter into any agreement permitting or consenting to the taking of the Trust Property, or any part thereof, or providing for the conveyance thereof in lieu of condemnation unless Beneficiary has first consented thereto in writing, which consent shall not be unreasonably withheld or delayed. All Awards shall be adjusted jointly by Trustor and Beneficiary. All Awards payable as a result of a Taking which exceed $10,000 shall be paid to Beneficiary. Beneficiary may, at its option, apply the proceeds, after first deducting its expenses incurred in the collection of them, to the payment of the Indebtedness, whether or not due and in such order of application as Beneficiary may determine, or to the repair, replacement, rebuilding or restoration of the Trust Property, in such manner as Beneficiary may determine. Any such application of any award payable as a result of a Taking, to the payment of the Indebtedness, shall be without prepayment premium or penalty.

(b)   Subject to the same conditions imposed under the terms of paragraph 3(e) above, relating to the use of Proceeds, Beneficiary shall make all Awards not subject to subparagraph (a) above (after first deducting Beneficiary's expenses to collecting the Award) available to Trustor to reimburse Trustor for its reasonable costs of restoration, repair, replacement or rebuilding of the Improvements. Any excess portion of any Award shall be applied to partial prepayment of the Indebtedness, without prepayment premium or penalty and shall not extend or postpone the due dates of monthly payments.

(c)     Trustor hereby unconditionally and irrevocably waives all rights of a property owner under any applicable law providing for the allocation of condemnation proceeds between a property owner and a lien holder.

10.     <u>Preservation and Maintenance of Trust Property</u>.  Trustor shall:

(a)     keep the Improvements now or hereafter erected on the Premises in safe and good repair and condition, ordinary depreciation excepted;

(b)     upon damage or destruction of the Trust Property or any part thereof by fire or other casualty, restore, repair, replace or rebuild the Trust Property that is damaged or destroyed to the condition it was in immediately prior to such damage or destruction, whether or not any insurance proceeds are available or sufficient for such purpose; provided, however, that if Beneficiary shall apply all the insurance proceeds or any portion thereof to payment of the Indebtedness, Trustor shall have the option, in lieu of completing such repair, replacement, rebuilding or restoration, to pay in full the Note and the entire Indebtedness without payment of a premium or penalty;

(c)     constantly maintain the parking and landscaped areas of the Trust Property;

(d)     not commit waste or permit impairment or deterioration of the Trust Property;

(e)     shall not construct additions to existing buildings or additional buildings on the Premises without the prior written consent of Beneficiary, which consent shall not be unreasonably withheld or delayed;

(f)     shall not remove from the Premises any of the fixtures and personal property included in the Trust Property unless the same is immediately replaced with property of at least equal value and utility, and this Deed of Trust becomes a valid first lien on such property; and

(g)     shall maintain the roofs of the Improvements in safe, sound and good repair and condition.

11.     <u>Encumbrance or Transfer of the Trust Property</u>.

(a)     <u>Encumbrance</u>.  Except for the liens securing the Indebtedness, Trustor will not create or permit to continue in existence any mortgage, pledge, encumbrance, lien, or charge of any kind (including purchase money and conditional sale liens) on any of the Trust Property except for:

(i)     liens for taxes not yet delinquent, and

(ii)     any other liens or charges that are specifically approved in writing by Beneficiary prior to the recordation of this Deed of Trust.

Any transaction in violation of this paragraph 11 will cause all Indebtedness, irrespective of the maturity dates, at the option of the holder and without demand or notice, to immediately become due, together with any prepayment premium in accordance with the terms of the Note.

(b)    <u>Transfer</u>.    Trustor acknowledges that Beneficiary has examined both the creditworthiness of Trustor and Trustor's experience in owning and operating properties such as the Trust Property in determining whether or not to make the Loan, that Beneficiary has relied on Trustor's creditworthiness and experience in deciding to make the Loan, and that Beneficiary will continue to rely on Trustor's ownership of the Trust Property as a means of maintaining the value of the Trust Property as security for repayment of the Indebtedness. Trustor acknowledges that Beneficiary has a valid interest in maintaining the value of the Trust Property so as to ensure that, if Trustor defaults in the repayment of the Indebtedness, Beneficiary can recover the Indebtedness by a sale of the Trust Property. Trustor shall not, without the prior written consent of Beneficiary, assign, transfer or convey the right to manage or control the operation of any part of the Trust Property. A sale, transfer or conveyance within the meaning of this paragraph shall be deemed to include:

(i)    an installment sales agreement in which Trustor agrees to sell any part of the Trust Property for a price to be paid in installments;

(ii)    an agreement by Trustor leasing all or a substantial part of the Trust Property (except as provided in paragraph 21(d)), or a sale, pledge, assignment or other transfer of, or the grant of a security interest in, Trustor's right, title and interest in any Leases or any Rents;

(iii)    if Trustor is a corporation or a limited partnership with a corporate general partner, the transfer of stock of the Trustor or its corporate general partner to parties who do not now hold a controlling interest;

(iv)    if Trustor is a general or limited partnership, joint venture, or other form of partnership (a "Partnership"), a transfer of any general partnership interest or the admission of any new general partner; and

(v)    if Trustor is a limited liability company or a limited partnership with a limited liability company as general partner, the transfer of membership interests in the Trustor or its limited liability company general partner (or the stock or membership interests in any corporation or limited liability company controlling Trustor or its limited liability company general partner) or the creation or issuance of new memberships in Trustor or its limited liability company general partner to parties so as to reduce the ownership interest of any manager to less than Fifty-One percent (51%) or so as to change the control of the current manager over the company or partnership.

Beneficiary reserves the right to condition its consent upon a modification of the terms of this Deed of Trust and the Note and on assumption of this Deed of Trust as so modified,

Exhibit __A__
Page ____62____

13

Exhibit __6__
Page __59__

by the proposed transferee, payment of a transfer or assumption fee, or such other conditions as Beneficiary shall determine in its sole discretion to be in the interest of Beneficiary. Beneficiary shall not be required to demonstrate any actual impairment of its security or any increased risk of default in order to declare the Indebtedness immediately due and payable upon Trustor's sale, transfer, conveyance or further encumbrance of the Trust Property without Beneficiary's consent. This provision shall apply to every sale, transfer, conveyance, or further encumbrance of the Trust Property regardless of whether voluntary or not or whether or not Beneficiary has consented to any previous sale, transfer, conveyance, or further encumbrance of the Trust Property.

12.    <u>Estoppel Certificates.</u> After request by Beneficiary, Trustor, within ten (10) days and at its expense, will furnish the Beneficiary with a statement, duly certified, confirming or otherwise setting forth the original principal amount of the Note, the unpaid principal amount of the Note, the rate of interest on the unpaid principal amount of the Note, the dates installments of interest (or any principal) were last paid, the offsets or defenses to the payment of the Indebtedness, if any, and that the Note and this Deed of Trust are valid, legal and binding obligations and have not been modified or, if modified, giving particulars on such modification.

13.    <u>Sale of Trust Property.</u> If this Deed of Trust is foreclosed, the Trust Property, or any interest therein, may at the discretion of Beneficiary be sold in one or more parcels or in several interests or portions and in any order or manner as may be permitted by applicable law.

14.    <u>Books and Records.</u>  Trustor shall keep adequate books and records of account and furnish Beneficiary with financial statements prepared by a certified public accountant reasonably acceptable to Beneficiary, and other information concerning the affairs of Trustor as Beneficiary may reasonably request, in form and detail reasonably satisfactory to Beneficiary, including, annual statements of income and expense related to the operation of the Trust Property (including a current rent roll, gross rental income, other income, real estate taxes, insurance, operating expenses and depreciation), a copy of Trustor's federal income tax return (including all supporting schedules) within 90 days after the end of each fiscal year, and from time to time, interim financial statements and other information as reasonably requested by Beneficiary. All such financial statements, and other information, shall be certified to be true and accurate by an individual responsible for the financial affairs of Trustor, in such individual's individual capacity. In the event that such financial statements and other information are not furnished to Beneficiary by Trustor, or, if furnished, are not in a form reasonably acceptable to Beneficiary, Beneficiary may, in addition to any other remedies which Beneficiary has under this Deed of Trust, the Note, or any of the Other Security Documents, audit the books and records of Trustor, and any expense of the audit shall be added to the Indebtedness. Immediately upon the appointment of a receiver of the Trust Property by a court of competent jurisdiction, Trustor shall deliver all books and records or other documents required to be maintained under the terms of this paragraph to such receiver.

15.    <u>Performance of Other Agreements.</u> Trustor shall observe and perform each and every term to be observed or performed by Trustor pursuant to the terms of any agreement or recorded instrument affecting or pertaining to the Trust Property.

Exhibit A
Page 63

14

Exhibit 4
Page 60

16.    <u>Events of Default.</u>  Any one or more of the following events shall be an event of default (an "Event of Default") under this Deed of Trust:

(a)    Default in the payment of any sum of principal or interest when due under the Note or any other sum due under the Loan Documents; or

(b)    The failure of Trustor to pay any Imposition before it becomes delinquent; or

(c)    The failure of Trustor to maintain the Policies in good standing; or

(d)    The failure (without cure during the applicable period, if any, for cure) of any Loan Party to observe, perform, or discharge any obligation, term, covenant, or condition of the Loan Documents, any agreement relating to the Trust Property, or any agreement or instrument between any Loan Party and Beneficiary; or

(e)    The entry of an order for relief under federal bankruptcy laws as to Trustor or the adjudication of Trustor as insolvent or bankrupt pursuant to the provisions of any state insolvency or bankruptcy act; the commencement by Trustor of any case, proceeding, or other action seeking any reorganization, arrangement, composition, adjustment, liquidation, dissolution, or other relief for debtors; Trustor's consent to, acquiescence in, or attempt to secure the appointment of, a receiver of all or any substantial part of its properties or of the Trust Property; Trustor generally not paying its debts as they become due or admitting in writing its inability to pay its debts or making a general assignment for the benefit of creditors; or Trustor's taking of any action to authorize any of the acts set forth above in this paragraph.

(f)    Any case, proceeding, or other action against Trustor is commenced, seeking to have an order for relief entered against it as a debtor or seeking any reorganization, arrangement, composition, adjustment, liquidation, dissolution, or similar relief under any present or future statute, law, or regulation relating to bankruptcy, insolvency, reorganization, or other relief for debtors, or seeking appointment of any receiver for Trustor or for all or any substantial part of its property or for the Trust Property, and that case, proceeding, or other action:

(i)    results in the entry of an order for relief against it that is not fully stayed within seven (7) business days, defined as Monday through Friday, exclusive of Federal holidays ("Business Days") after the entry; or

(ii)    remains undismissed for an aggregate of thirty (30) days (whether or not consecutive); or the possibility that any portion of the Trust Property would, by operation of law or otherwise, devolve on or pass to any person other than Trustor and that situation continues and is not remedied by Trustor within thirty (30) days after the happening of the event; or

(g)    If Trustor fails to proceed and continue with construction on the Trust Property in accordance with the schedules agreed to with Beneficiary or any senior construction lender; or

(h)    If Trustor defaults under any other mortgage, deed of trust or security agreement covering any part of the Trust Property whether it be superior or inferior to the lien of this Deed of Trust, and if such default is not cured within any applicable cure or grace period; or

(i)    If the Trust Property is subjected (i) to any lien which is superior to the lien of this Deed of Trust, other than a lien for local real estate taxes and assessments not yet delinquent and any Permitted Encumbrances, or (ii) to any mechanic's, materialmen's, construction, or other lien which is superior to the lien of this Deed of Trust and such lien remains undischarged for thirty (30) days; or

(j)    The transfer or encumbrance of the Trust Property in violation of paragraph 11 hereof; or

(k)    The occurrence of any Material Adverse Change.

17.    <u>Remedies</u>. If one or more of the Events of Default occurs, the Indebtedness shall include interest on the Indebtedness at the Default Rate as defined in the Note upon any unpaid portion of the Indebtedness and the entire Indebtedness shall become immediately due and payable at the option of the Beneficiary, without further notice or demand; and, in addition, whether or not Beneficiary exercises its option, it may exercise all rights and remedies available to it under the law, including the rights and remedies set forth in Section 17 of Exhibit C attached hereto.

18.    <u>Protection of Security.</u>    If an Event of Default occurs and is continuing, Beneficiary or Trustee, without notice to or demand upon Trustor, and without releasing Trustor from any obligations or defaults may, but is not required to:

(a)    enter on the Trust Property in any manner and to any extent that either deems necessary to protect the security of this Deed of Trust;

(b)    appear in and defend any action or proceeding purporting to affect, in any manner, the Obligations or the Indebtedness, the security of this Deed of Trust, or the rights or powers of Beneficiary or Trustee;

(c)    pay, purchase, or compromise any encumbrance, charge, or lien that in the judgment of Beneficiary or Trustee is prior or superior to this Deed of Trust; and

(d)    pay necessary expenses, employ counsel, and pay reasonable attorney fees.

Trustor shall repay on demand all sums expended by Trustee or Beneficiary pursuant to this paragraph with interest at the Default Rate, and those sums, with interest, will be secured by this Deed of Trust.

19.    <u>Curing Defaults</u>. If Trustor at any time fails to perform or comply with any of the terms, covenants, and conditions required on Trustor's part to be performed and complied with under this Deed of Trust, the Note, any of the other Loan Documents, or any other agreement

Exhibit ___A___
Page ___45___

16

Exhibit ___6___
Page ___62___

that, under the terms of this Deed of Trust, Trustor is required to perform, then Beneficiary, after seven (7) Business Days' notice to Trustor (or without notice if Beneficiary determines that an emergency exists), and without waiving or releasing Trustor from any of the Obligations, may, subject to the provisions of any of the agreements:

       (a)    make from its own funds any payments payable by Trustor and take out, pay for, and maintain any of the insurance policies provided for; and

       (b)    perform any other acts on the part of Trustor to be performed and enter on the Trust Property for that purpose.

The making by Beneficiary of payments out of Beneficiary's own funds will not, however, be deemed to cure the default by Trustor, and they will not be cured unless and until Trustor reimburses Beneficiary for the payments. All sums paid and all reasonable costs and expenses incurred by Beneficiary in connection with the performance of any act, together with interest on unpaid balances at the Default Rate from the respective dates of Beneficiary's making of each payment, will be added to the principal of the Indebtedness, will be secured by the Other Security Documents and by the lien of this Deed of Trust, prior to any right, title, or interest in or claim on the Trust Property attaching or accruing subsequent to the lien of this Deed of Trust, and will be payable by Trustor to Beneficiary on demand.

    20.   <u>Non-Waiver</u>. Beneficiary's failure to insist upon strict performance of a term of this Deed of Trust shall not be a waiver of any term of this Deed of Trust. Trustor shall not be relieved of its obligations because:

       (a)    Beneficiary fails to comply with any request of Trustor or any Guarantor to take any action to foreclose this Deed of Trust or otherwise enforce any of its provisions or the provisions of the Note or Other Security Documents;

       (b)    any part of the Trust Property is released or substituted; or

       (c)    Trustor or Beneficiary extend the time of payment or otherwise modify or supplement the terms of the Note, this Deed of Trust or the Other Security Documents. Beneficiary may resort to any other security held by Beneficiary in such order and manner as Beneficiary, in its discretion, may elect. The rights of Beneficiary under this Deed of Trust shall be separate, distinct and cumulative and none shall be given effect to the exclusion of the others. No act of Beneficiary shall be construed as an election to proceed under any one provision to the exclusion of other provisions.

    21.   <u>Assignment of Leases and Rents</u>.

       (a)    Trustor irrevocably assigns to Beneficiary:

          (i)    all of Trustor's right, title, and interest in all leases, licenses, and agreements relating to the management, leasing, or operation of the Trust Property, and other agreements of any kind relating to the use or occupancy of the

Trust Property, whether now existing or entered into after the date of this Deed of Trust ("Leases"), and

(ii)    the rents, issues, and profits of the Trust Property, including, without limitation, all amounts payable and all rights and benefits accruing to Trustor under the Leases ("Payments"), for the purposes and on the terms and conditions below.

The term Leases will also include all guarantees of and security for the lessees' performance, and all amendments, extensions, renewals, or modifications that are permitted. This is a present and absolute assignment, not an assignment for security purposes only, and Beneficiary's right to the Leases and Payments is not contingent on, and may be exercised without, possession of the Trust Property.

(b)    Beneficiary confers on Trustor a license ("License") to collect and retain the Payments as they become due until the occurrence of an Event of Default. Upon an Event of Default, the License will be automatically revoked and Beneficiary may collect and retain the Payments without notice and without taking possession of the Trust Property. Trustor irrevocably authorizes and directs the lessees under the Leases to rely on and comply with any notice or demand by Beneficiary for the payment to Beneficiary of any rental or other sums that may at any time become due under the Leases, or for the performance of any of the lessees' undertakings under the Leases. The lessees will have no right or duty to inquire as to whether any Event of Default has actually occurred or is then existing. Trustor relieves the lessees from any liability to Trustor by reason of relying on and complying with any notice or demand by Beneficiary.

(c)    Beneficiary, in its sole discretion, may apply, or require the application of, all amounts received pursuant to the assignment to the payment of any one or more of the Obligations in any order that Beneficiary may elect.

(d)    All Major Tenant Leases (as defined below) entered into subsequent to the date hereof shall be approved, in writing, by Beneficiary. Upon request, Trustor shall furnish Beneficiary with executed copies of all Leases. In addition, all renewals of Leases and all proposed Leases shall provide for rental rates comparable to existing local market rates (taking into account reasonable free-rent periods or other promotional discounts consistent with local market conditions) and shall be arm's length transactions. All Leases shall provide that they are subordinate to this Deed of Trust, and that the lessee attorns to Beneficiary, provided Beneficiary and the lessee execute a customary subordination, non-disturbance and attornment agreement. Trustor shall not, without the consent of Beneficiary, cancel any Major Tenant Lease or accept prepayments of installments of Rent under a Major Tenant Lease for a period of more than one (1) month in advance or further assign the whole or any part of the Leases or the Rents. Trustor shall perform each provision of every Lease. All security and other deposits received by Trustor under any Lease shall be maintained in a separate account at a bank, and shall not be commingled with Trustor's other funds. If an Event of Default occurs, Beneficiary, at its option, may require Trustor to pay monthly in advance to Beneficiary, or any receiver appointed to collect the Rents, the fair rental value for the portion of the Trust Property possessed by Trustor

and may require Trustor to surrender possession of the Trust Property to Beneficiary or to such receiver and, in default thereof, Trustor may be evicted by summary proceedings or otherwise. For purposes of this paragraph, a "Major Tenant Lease" shall mean any Lease under which the tenant occupies at least 5,000 square feet of the Premises, or which is for a term of at least 10 years, or which otherwise represents at least Twenty-Five percent (25%) of the sum total of the Rent under all Leases of the Trust Property.

22.     Assignment of Agreements.

(a)     As partial security for the Loan, Trustor sells, assigns, transfers, sets over, and delivers to Beneficiary all of Trustor's right, title, and interest in all agreements, permits, and contracts pertaining to the use or operation of the Trust Property, including, but not limited to, environmental impact reports; negative declarations; map approvals; grading and construction permits; conditional use permits; applications for all permits; management agreements; all development rights in the Trust Property that Trustor may now or later acquire (including, without limitation, development rights arising in connection with any action by a governmental entity, including, by way of illustration, but not of limitation, inducement resolutions of county, municipal, or other governmental entities); agreements with contractors, suppliers, and construction managers; and agreements pertaining to the transfer of development rights or permitted floor area under applicable laws or ordinances (collectively, "Agreements"), as they may be amended or otherwise modified from time to time, including, without limitation, the right of Trustor to terminate any of the Agreements, to perform under them, and to compel performance and otherwise exercise all remedies under them, together with the immediate and continuing right to collect and receive all sums that may become due to Trustor, or which Trustor may now or later become entitled to demand or claim, arising or issuing out of the Agreements, including, without limitation, claims of Trustor for damages arising out of breach of or default under any of the Agreements and all rights of Trustor to receive proceeds of any insurance, indemnity, warranty, or guaranty with respect to any of the Agreements. However, so long as no Event of Default has occurred and is continuing, Trustor will have the right under a license granted to collect and retain all sums that may become payable to Trustor under the Agreements.

(b)     Trustor covenants and agrees to punctually observe, perform, and discharge the obligations, terms, covenants, conditions, and warranties to be observed, performed, and discharged by it under the Agreements. Beneficiary, upon an Event of Default, at its option and upon written notice to Trustor, will have the right to declare the assignment in this Section 22 to be absolute, and, in addition, Beneficiary will have the complete right then or later to exercise and enforce all of the rights and remedies provided by law.

(c)     The acceptance by Beneficiary of this assignment, with all the rights, powers, privileges, and authority granted will not, prior to the exercise of Beneficiary's right to declare this assignment to be absolute, obligate Beneficiary to assume any obligations under the Agreements or to take any action under them, or to expend any money or incur any expense or perform or discharge any obligation, duty, or liability under the Agreements, or to assume any obligation or responsibility for the nonperformance of the provisions by Trustor.



Exhibit ___ A
Page ___ 68

19

Exhibit ___ 6
Page ___ 65

23.    _Liability_.    If Trustor consists of more than one person, the obligations and liabilities of each such person hereunder shall be joint and several.

24.    _Security Agreement_. This Deed of Trust is both a real property Deed of Trust and a "security agreement" within the meaning of the Uniform Commercial Code. The Trust Property includes both real and personal property and all other rights and interests, whether tangible or intangible in nature, of Trustor in the Trust Property. TRUSTOR HEREBY GRANTS TO BENEFICIARY, AS SECURITY FOR THE DEBT, A SECURITY INTEREST IN THE TRUST PROPERTY TO THE FULL EXTENT THAT THE TRUST PROPERTY MAY BE SUBJECT TO THE UNIFORM COMMERCIAL CODE OF ANY STATE OR STATES WHERE THE TRUST PROPERTY IS SITUATED (said portion of the Trust Property so subject to a Commercial Code being called in this paragraph the "Collateral"). If an Event of Default occurs, Beneficiary shall have and may exercise immediately and without demand, all rights and remedies granted to a secured party upon default under the applicable Uniform Commercial Code, including, the right to take possession of the Collateral, and to take such other measures as Beneficiary may deem reasonably necessary or advisable for the care, protection and preservation of the Collateral. Trustor shall pay to Beneficiary on demand any expenses, including attorneys' fees and expenses, incurred by Beneficiary in protecting its interest in the Collateral and in enforcing its rights to the Collateral. Any notice of sale, disposition or other intended action by Beneficiary as to the Collateral sent to Trustor at least ten (10) days prior to such action, shall constitute reasonable notice to Trustor. The proceeds of any disposition of the Collateral may be applied by Beneficiary to the payment of the Indebtedness in the priority and proportions as Beneficiary in its discretion shall deem proper.

25.    _Fixture Filing_.    From the date of its recording, this Deed of Trust shall be effective as a financing statement filed as a fixture filing to the extent set forth in Exhibit C hereto.

26.    _Successor Trustee_. The Trustee may be removed at any time with or without cause by an instrument in writing executed by the Beneficiary, or if there is more than one Beneficiary, by their designated agent. In case of the death, resignation, removal or disqualification of the Trustee, then the Beneficiary shall have the right and hereby is authorized and empowered to appoint a successor trustee, or a substitute trustee, without formality other than appointment and designation in writing executed by the Beneficiary. The authority hereby conferred shall extend to the appointment of other successor and substitute trustees successively until the Indebtedness finally has been paid in full or until the Trust Property is sold. All references herein to the Trustee shall refer to the Trustee from time to time acting hereunder.

27.    _Indemnification_. Trustor shall protect, indemnify and save harmless Trustee and Beneficiary from all liabilities, obligations, claims, damages, penalties, causes of action, costs and expenses (including without limitation reasonable attorneys' fees and expenses) imposed upon or incurred by or asserted against Trustee or Beneficiary because of

        (a)    fraud or material misrepresentation by or on behalf of the Trustor;

Exhibit  A
Page  69

20

Exhibit  6
Page  66

(b)  any failure on the part of Trustor to perform or comply with any of the terms of this Deed of Trust or the other security documents;

(c)  ownership of the Trust Property or any interest in it or the receipt of any rents;

(d)  any accident, injury to or death of persons or loss of or damage to property occurring in, on or about the Trust Property;

(e)  any use, nonuse or condition in, on or about the Trust Property or any part thereof; or

(f)  performance of any labor or services or the furnishing of any materials or other property to the Trust Property, whether or not caused in whole or in part by the negligent acts or omissions of the Beneficiary or individuals or entities acting as the agents or employees of Beneficiary.

However, such indemnity shall not apply to matters caused by or arising out of the gross negligence or willful misconduct of Trustee or Beneficiary, or any of its agents, or as to liabilities, obligations, claims, damages, penalties, causes of action, costs and expenses based solely on facts or circumstances occurring only subsequent to such time, if any, that Beneficiary becomes the owner of the Trust Property by way of foreclosure of the lien of this Deed of Trust, deed in lieu of such foreclosure, or otherwise. Any amount payable to Trustee or Beneficiary because of the application of this paragraph 27 shall become immediately due and payable upon demand by Beneficiary, and shall bear Interest at the Default Rate, as stated and defined in the Note, from the date of such demand. The obligations of Trustor under this paragraph shall survive any termination or satisfaction of this Deed of Trust.

28.  <u>Environmental Provisions.</u>

(a)  <u>Definitions;</u>

*Hazardous Substance:*
(i)  any oil, flammable substance, explosive, radioactive material, hazardous waste or substance, toxic waste or substance, or any other waste, material, or pollutant that:

(A)  poses a hazard to the Trust Property or to persons on the Trust Property, or

(B)  causes the Trust Property to be in violation of any Hazardous Substance Law;

(ii)  asbestos in any form;

(iii)  urea formaldehyde foam insulation;

Exhibit A
Page 10

21

Exhibit 6
Page 67

(iv)    transformers or other equipment that contain dielectric fluid containing levels of polychlorinated biphenyls;

(v)    radon gas;

(vi)    any chemical, material, or substance defined as or included in the definition of "hazardous substance," "hazardous substances," "hazardous wastes," "hazardous materials," "extremely hazardous waste," "restricted hazardous waste," or "toxic substances" or words of similar import under any applicable local, state, or federal law or under the regulations adopted or publications promulgated pursuant to those laws.

(vii)    any other chemical, material, or substance, exposure to which is prohibited, limited, or regulated by any governmental authority or which may pose a hazard to the health and safety of the occupants of the Trust Property or the owners or occupants of property adjacent to or surrounding the Trust Property, or any other person coming on the Trust Property or any adjacent property; and

(viii)    any other chemical, material, or substance that may pose a hazard to the environment.

*Hazardous Substance Claim:*    Any enforcement, cleanup, removal, remedial, or other governmental, regulatory, or private actions, agreements, or orders threatened, instituted, or completed pursuant to any Hazardous Substance Law, together with all claims made or threatened by any third party against Trustor or the Trust Property relating to damage, contribution, cost-recovery compensation, loss, or injury resulting from the presence, release, or discharge of any Hazardous Substance.

*Hazardous Substance Law:*    Any federal, state, or local law, ordinance, regulation, or policy relating to the environment, health, and safety, any Hazardous Substance (including, without limitation, the use, handling, transportation, production, disposal, discharge, or storage of the substance), industrial hygiene, soil, groundwater, and indoor and ambient air conditions or the environmental conditions on the Trust Property, including, without limitation, the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 [42 U.S.C.A. §§9601 et seq.], as amended from time to time; the Hazardous Substances Transportation Act [49 U.S.C.A. §§1801 et seq.], as amended from time to time; the Resource Conservation and Recovery Act [42 U.S.C.A. §§6901 et seq.], as amended from time to time; the Federal Water Pollution Control Act [33 U.S.C.A. §§1251 et seq.], as amended from time to time; and any state law relating to or regulating Hazardous Substances.

*Release:*    Any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment, including continuing migration, of Hazardous Substances that goes into the soil, surface water, or groundwater of the Trust Property, whether or not caused by, contributed to, permitted by, acquiesced to, or known to Trustor.

(b)   Representations and Warranties.   Except as disclosed in writing to, and acknowledged in writing by, Beneficiary, Trustor represents and warrants that:

(i)   during the period of Trustor's ownership of the Trust Property

(A)   there has been no use, generation, manufacture, storage, treatment, disposal, discharge, Release, or threatened Release of any Hazardous Substance by any person on or around the Trust Property; and

(B)   there have been no Hazardous Substances transported over or through the Trust Property;

(ii)   after diligent inquiry, Trustor has no knowledge of, or reason to believe that, there has been:

(A)   any use, generation, manufacture, storage, treatment, disposal, Release, or threatened Release of any hazardous waste or substance by any prior owners or prior occupants of the Trust Property or by any third parties onto the Trust Property; or

(B)   any actual or threatened litigation or claims of any kind by any person relating to these matters;

(iii)   no Hazardous Substances in excess of permitted levels or reportable quantities under applicable Hazardous Substance Laws are present in or about the Trust Property or any nearby real property that could migrate to the Trust Property;

(iv)   no Release or threatened Release exists or has occurred;

(v)   no underground storage tanks of any kind are or ever have been located in or about the Trust Property;

(vi)   the Trust Property and all operations and activities at, and the use and occupancy of, the Trust Property, comply with all applicable Hazardous Substance Laws;

(vii)   Trustor and every user of the Trust Property ("User") has, and is now in strict compliance with, every permit, license, and approval required by all applicable Hazardous Substance Laws for all activities and operations at, and the use and occupancy of, the Trust Property;

(viii)   to the best of Trustor's knowledge, after diligent inquiry, there are no Hazardous Substance Claims pending or threatened with regard to Trust Property or against Trustor or any Guarantor;

(ix)    any written disclosure submitted by or on behalf of Trustor to Beneficiary concerning any Release or threatened Release, past or present compliance by Trustor, or any User or other person with any Hazardous Substance Laws applicable to the Trust Property, the past and present use and occupancy of the Trust Property, and any environmental concerns relating to the Trust Property, was true and complete when submitted and continues to be true and complete as of the date of this Deed of Trust.

(c)    <u>Covenants</u>. Trustor agrees, except in the ordinary course of business and in strict compliance with all applicable Hazardous Substance Laws, as follows:

(i)    not to cause or permit the Trust Property to be used as a site for the use, generation, manufacture, storage, treatment, Release, discharge, disposal, transportation, or presence of any Hazardous Substance;

(ii)    not to cause, contribute to, permit, or acquiesce in any Release or threatened Release;

(iii)    not to change or modify the use of the Trust Property without the prior written consent of Beneficiary;

(iv)    to comply with and to cause the Trust Property and every User of the Trust Property to comply with all Hazardous Substance Laws;

(v)    to immediately notify Beneficiary in writing and to provide Beneficiary with a reasonably detailed description of:

(A)    any noncompliance of the Trust Property with any Hazardous Substance Laws;
(B)    any Hazardous Substance Claim;
(C)    any Release or threatened Release;
(D)    the discovery of any occurrence or condition on any real property adjoining or in the vicinity of the Trust Property that would cause the Trust Property or any part of it to be designated as hazardous waste property;

(vi)    in the event that Trustor discovers a Release or the presence of any Hazardous Substance on or about the Trust Property in violation of any Hazardous Substance Law, to:

(A)    notify Beneficiary of that discovery together with a reasonably detailed description;

(B)    promptly after a request by Beneficiary, engage a qualified environmental engineer reasonably satisfactory to Beneficiary to investigate these matters and prepare and

submit to Beneficiary a written report containing the findings and conclusions resulting from that investigation, all at the sole expense of Trustor; and

(C) take, at Trustor's sole expense, all necessary actions to remedy, repair, clean up, or detoxify any Release or Hazardous Substance, including, but not limited to, any remedial action required by any Hazardous Substance Laws or any judgment, consent, decree, settlement, or compromise in respect of any Hazardous Substance Claims. These actions are to be performed in accordance with Hazardous Substance Laws; and in a good and proper manner; and under the supervision of a qualified environmental engineer approved in writing by Beneficiary; and in accordance with plans and specifications for these actions approved in writing by Beneficiary; and using licensed and insured qualified contractors approved in writing by Beneficiary;

(vii) immediately furnish to Beneficiary copies of all written communications received by Trustor from any governmental authority or other person or given by Trustor to any person and any other information Beneficiary may reasonably request concerning any Release, threatened Release, Hazardous Substance Claim, or the discovery of any Hazardous Substance on or about the Trust Property in violation of any Hazardous Substance Law; and

(viii) keep Beneficiary generally informed regarding any Release, threatened Release, Hazardous Substance Claim, or the discovery of any Hazardous Substance on or about the Trust Property in violation of any Hazardous Substance Law.

(d) <u>Inspection and Receivership Rights.</u> Upon Beneficiary's reasonable belief of the existence of a past or present Release or threatened Release not previously disclosed by Trustor in connection with the making of the Loan or the execution of this Deed of Trust or upon Beneficiary's reasonable belief that Trustor has failed to comply with any environmental provision of this Deed of Trust or any other Loan Document and upon reasonable prior notice (except in the case of an emergency) to Trustor, Beneficiary or its representatives, employees, and agents, may from time to time and at all reasonable times (or at any time in the case of an emergency) enter and inspect the Trust Property and every part of it (including all samples of building materials, soil, and groundwater, and all books, records, and files of Trustor relating to the Trust Property) and perform those acts and things that Beneficiary deems necessary or desirable to inspect, investigate, assess, and protect the security of this Deed of Trust, for the purpose of determining:

(i) the existence, location, nature, and magnitude of any past or present Release or threatened Release;



(ii)    the presence of any Hazardous Substances on or about the Trust Property in violation of any Hazardous Substance Law; and

(iii)    the compliance by Trustor of every environmental provision of this Deed of Trust and every other Loan Document. In furtherance of the purposes above, without limitation of any of its other rights, Beneficiary may:

(A)    obtain a court order to enforce Beneficiary's right to enter and inspect the Trust Property, to which the decision of Beneficiary as to whether there exists a Release, a threatened Release, any Hazardous Substances on or about the Trust Property in violation of any Hazardous Substance Law, or a breach by Trustor of any environmental provision of this Deed of Trust or any other Loan Document, will be deemed reasonable and conclusive as between the parties; and

(B)    have a receiver appointed to enforce Beneficiary's right to enter and inspect the Trust Property for the purpose set forth above.

All costs and expenses incurred by Beneficiary with respect to the audits, tests, inspections, and examinations that Beneficiary or its agents, representatives, or employees may conduct, including the fees of the engineers, laboratories, contractors, consultants, and attorneys, will be paid by Trustor. All costs or expenses incurred by Trustee and Beneficiary pursuant to this subparagraph (including without limitation court costs, consultant's fees, and attorney fees, whether incurred in litigation and whether before or after judgment) will bear interest at the Default Rate from the date they are incurred until those sums have been paid in full. Except as provided by law, any inspections or tests made by Beneficiary or its representatives, employees, and agents will be for Beneficiary's purposes only and will not be construed to create any responsibility or liability on the part of Beneficiary to Trustor or to any other person. Beneficiary will have the right, but not the obligation, to communicate with any governmental authority regarding any fact or reasonable belief of Beneficiary that constitutes or could constitute a breach of any of Trustor's obligations under any environmental provision contained in this Deed of Trust or any Loan Document.

(e)    Release and Indemnity. Trustor:

(i)    releases and waives any future claims against Beneficiary for indemnity or contribution in the event Trustor becomes liable for cleanup or other costs under any Hazardous Substance Laws or under any Hazardous Substance Claim;

(ii)    agrees to reimburse Beneficiary, on demand, for all costs and expenses incurred by Beneficiary in connection with any review, approval,



consent, or inspection relating to the environmental provisions in this Deed of Trust together with interest, after demand, at the Default Rate; and

(iii) agrees to indemnify, defend, and hold Beneficiary and Trustee harmless from all losses, costs, claims, damages, penalties, liabilities, causes of action, judgments, court costs, attorney fees and other legal expenses, costs of evidence of title, cost of evidence of value, and other expenses (collectively, "Expenses"), including, but not limited to, any Expenses incurred or accruing after the foreclosure of the lien of this Deed of Trust, which either may suffer or incur and which directly or indirectly arises out of or is in any way connected with the breach of any environmental provision either in this Deed of Trust or in any Loan Document or as a consequence of any Release or threatened Release on the presence, use, generation, manufacture, storage, disposal, transportation, Release, or threatened Release of any Hazardous Substance on or about the Trust Property, including the soils and groundwaters, caused or permitted by Trustor, any prior owner or operator of the Trust Property, any adjoining landowner or any other party, including, without limitation, the cost of any required or necessary repair, cleanup, remedy, or detoxification of any Hazardous Substance and the preparation of any closure, remedial action, or other required plans, whether that action is required or necessary by reason of acts or omissions occurring prior to or following the recordation of this Deed of Trust. Trustor's obligations will survive the satisfaction, release, or cancellation of the Indebtedness, the release and reconveyance or partial release and reconveyance of this Deed of Trust, and the foreclosure of the lien of this Deed of Trust or deed in lieu of the Deed of Trust.

(f)   Request for Information.  Trustor and Beneficiary agree as set forth in Exhibit C hereto.

(g)   Effect of Site Assessment.  Even though Trustor may have provided Beneficiary with an environmental site assessment or other environmental report together with other relevant information regarding the environmental condition of the Trust Property, Trustor acknowledges and agrees that Beneficiary is not accepting the Trust Property as security for the Loan based on that assessment, report, or information.  Rather Beneficiary has relied on the representations and warranties of Trustor in this Deed of Trust, and Beneficiary is not waiving any of its rights and remedies in the environmental provisions of this Deed of Trust or any other Loan Document.

29.   Dispute Resolution.

(a)   Arbitration of Disputes.  Any dispute arising out of, or relating to, this Deed of Trust, the Note or the other Loan Documents, or the breach, termination, enforcement, interpretation or validity thereof, including the scope or applicability of this agreement to arbitrate, shall be determined by arbitration in Orange County, California, before one arbitrator. The arbitration shall be administered by JAMS pursuant to its Comprehensive Arbitration Rules and Procedures, a copy of which the parties acknowledge receiving at the time of executing this Agreement.  At the conclusion of the arbitration, the arbitrator shall enter an arbitrator's award



(the "Arbitration Award"). Judgment on the Arbitration Award may be entered in any court having jurisdiction. If the amount in controversy exceeds $100,000, any party can appeal the award to a three-arbitrator panel administered by JAMS which shall reconsider de novo any aspect of the initial award requested by the appealing party. The decision of the panel shall be by majority vote. The costs of such an appeal will be borne by the appealing party regardless of the outcome of the appeal. This clause shall not preclude parties from seeking provisional remedies in aid of arbitration from a court of appropriate jurisdiction, including preliminary injunctive relief to preserve the status quo or prevent irreparable injury. The parties agree not to defend against any application for provisional relief on the ground that an arbitration is pending.

(b)   Allocation of Fees and Costs. The arbitrator may, in the Arbitration Award, allocate all or part of the costs of the arbitration, including the fees of the arbitrator and the reasonable attorneys' fees of the prevailing party.

(c)   Alternative Arbitration Agency. In the event JAMS ceases to exist, or at the written stipulation of the parties, the above mediation and arbitration shall be conducted by, and pursuant to the rules of, the American Arbitration Association, or such other alternative dispute resolution association as the parties may mutually agree.

(d)   Federal Arbitration Act. This Dispute Resolution provision is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. Sections 1 et seq. The arbitrator shall apply applicable substantive law consistent with the FAA and applicable statutes of limitations and shall honor claims of privilege recognized at law.

30.   Authority. Trustor has full power, authority and legal right to execute this Deed of Trust, and to create the security interest in the Trust Property contained in this Deed of Trust and to keep and observe all of the terms of this Deed of Trust.

31.   Inapplicable Provisions. Whenever possible, each provision of this Deed of Trust shall be interpreted as effective and valid under applicable law, but if any provision of this Deed of Trust is prohibited or invalid, it shall be ineffective to the extent necessary to make the remaining provisions valid.

32.   Duplicate Originals. This Deed of Trust may be executed in any number of duplicate originals and each such duplicate original shall be deemed to be one and the same instrument.

33.   Certain Definitions. Words used in this Deed of Trust in singular or plural form shall include the other, and the word "Trustor" shall mean "each Trustor or any subsequent owner or owners of the Trust Property or any part thereof or any interest therein," the word "Trustee" shall mean "Trustee and any successor trustee appointed by Beneficiary according to law," the word "Beneficiary" shall mean "Beneficiary or any subsequent holder of the Note or any part thereof or any of the Indebtedness," and the word "Note" shall mean "the Note or any other evidence of indebtedness secured by this Deed of Trust," the word "person" shall mean an individual, partnership, corporation, limited liability company, trust, unincorporated association,

or other entity or association, the word "Trust Property" shall include any portion of the Trust Property or interest in it; the term "attorneys fees" shall include reasonable fees attributable to in-house counsel. Whenever the context may require, any pronouns used shall include the corresponding masculine, feminine or neuter forms, and the singular form of nouns and pronouns shall include the plural and vice versa.

34.    No Oral Change. This Deed of Trust may not be modified, amended, changed, discharged, waived or terminated orally, but only by a writing signed by the person against whom the enforcement of the modification, amendment, change, waiver, discharge or termination is sought.

35.    Further Acts, Etc. Trustor will, at its cost, do, execute, acknowledge and deliver all other acts, deeds, conveyances, mortgages, assignments, notices of assignments, transfers and assurances as Beneficiary shall require for to facilitate the performance of the terms of this Deed of Trust or for filing, registering or recording this Deed of Trust and, on demand, will execute and deliver any financing statement, chattel mortgages or comparable security instruments, to evidence more effectively the lien upon the Trust Property.

36.    Headings, Etc. The headings and captions of various paragraphs of this Deed of Trust are for convenience of reference only and are not to be considered as affecting the contents of the paragraphs.

37.    Filing of Deed of Trust, Etc. Trustor shall pay all filing, registration or recording fees and all attorneys' fees, commissions, and expenses for the preparation, execution and acknowledgment of the Note, this Deed of Trust, and the Other Security Documents.

38.    Reconveyance of Trust Property. Upon payment of all sums secured by this Deed of Trust, the Trustee shall reconvey all of the Trust Property to the person or persons entitled to such reconveyance.

39.    Governing Law. The Note, this Deed of Trust and all Other Security Documents shall be governed by and construed in accordance with the applicable laws of the State of California (without regard to principles of conflicts of law) except to the extent (a) of procedural and substantive matters relating only to the creation, perfection and foreclosure of liens, and enforcement of rights and remedies against the Trust Property, which matters shall be governed by the laws of the State in which such Trust Property is located and (b) that the laws of the United States of America and any rules, regulations or orders issued or promulgated thereunder, applicable to the affairs and transactions entered into by Trustor, otherwise pre-empt California law or the laws of the State in which the Trust Property is located, in which event such Federal law shall control.

40.    Duties and Obligations of Trustee. Trustor agrees that:

(a)    the duties and obligations of Trustee shall be determined solely by the express provisions of this Deed of Trust and the Trustee shall not be liable except for the

Exhibit __A__
Page __18__

29

Exhibit __6__
Page __75__

performance of such duties and obligations as are specifically set forth in this Deed of Trust, and no implied covenants or obligations shall be imposed upon Trustee;

(b)     no provision of this Deed of Trust shall require Trustee to expend or risk its own funds, or otherwise incur any financial obligation in the performance of any of its duties, or in the exercise of any of its rights or powers, if it shall have grounds for believing that the repayment of such funds or adequate indemnity against such risk or liability is not reasonably assured of it;

(c)     Trustee may consult with counsel of its own choosing and the advice of such counsel shall be full and complete authorization and protection in the respect of any actions taken by it in good faith and in reliance upon the advice;

(d)     Trustee shall not be liable for any action taken by it in good faith and reasonably believed by it to be authorized or within the discretion or rights or powers conferred upon it by this Deed of Trust.

41.     Notices.  Any notice, demand, statement, request, or consent made under this Deed of Trust shall be in writing and shall be deemed given when hand delivered, or within three (3) days after the date sent by certified mail, return receipt requested, or the next business day after the date sent by nationally recognized overnight mail or courier service to the address, as set forth in Exhibit A, of the party to whom such notice is to be given, or to such other address as Trustor, Trustee or Beneficiary, as the case may be, shall in like manner designate in writing.

42.     Request for Notice.  Trustor hereby requests that, unless otherwise prescribed by law, a copy of any notice of default or notice of sale pursuant to a nonjudicial foreclosure of this Deed of Trust be delivered to Trustor as set forth in the Notice provision above.

43.     Entire Agreement.  This Deed of Trust and the other Loan Documents set forth the entire understanding between Trustor and Beneficiary and they will not be amended except by a written instrument duly executed by each of Trustor and Beneficiary.  Any previous representations, warranties, agreements, and understandings among the parties regarding the subject matter of the Loan or the Loan Documents, whether written or oral, are superseded by this Deed of Trust and the other Loan Documents.

44.     Waiver of Rights.  Trustor and Beneficiary agree as set forth in Exhibit C hereto.

45.     Agreement to Subordinate.

(a)     Beneficiary acknowledges that Trustor currently is engaged in entitling the Trust Property and taking the steps necessary tot complete the subdivision of the Trust Property and cause the recordation of a Final Map(s) or Parcel Map(s), which may include lot line adjustments, the creation of easements and other requirements that may be imposed by the applicable governmental agency processing the Final or Parcel Map(s) (the "Final Map Process").

(b) Beneficiary agrees to unconditionally subordinate this Deed of Trust, together with the Note in favor of Beneficiary, together with any renewals or extensions thereof, to any and all reasonable requirements imposed by any applicable governmental agency as part of the Final Map Process.

Beneficiary declares, agrees and acknowledges that:

(i) It will consent to and approve all commercially reasonable conditions, requirements and documents required as part of the Final Map Process; and

(ii) It will timely execute, acknowledge and deliver any and all documents or agreements necessary or required as part of the Final Map Process, as requested by Trustor.

46.   California Provision Exhibit D

47.   Partial Release Rider to Deed of Trust Exhibit E

IN WITNESS WHEREOF, the undersigned has executed and delivered this Deed of Trust, effective as of the date first above written.

Trustor:

THE PRESERVE, LLC, a California limited liability company

BY: Beaumont 1600, LLC, a California limited liability company, Manager

By: _____
Scott H. Krentel, Managing Member

Exhibit A
Page 80

Exhibit 6
Page 77

## ACKNOWLEDGMENT

State of California
County of ~~Riverside~~ ORANGE

On SEPTEMBER 27, 2006 before me, MIKE BURCHARTZ, NOTARY PUBLIC,
(here insert name and title of the officer)
personally appeared SCOTT H. KRENTEL

_____, personally
known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s)
is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____

MIKE BURCHARTZ
COMM. #1464954
NOTARY PUBLIC ● CALIFORNIA
ORANGE COUNTY
Comm. Exp. JAN. 24, 2008

(Seal)

Exhibit  A
Page  81

32

Exhibit  6
Page  78

Loan No. 206076                                        Order # 9301656-12

## EXHIBIT "A"
### (Descriptions)

PREAMBLE:

Name (including State of formation, if any) and Mailing Address of Trustor:

THE PRESERVE, LLC, a California limited liability company

C/o Scott H. Krentel

7006 Magnolia Avenue, #309

Riverside, CA 92506

As of the signing of this document the names of the "Beneficiary" are unknown.

A complete listing of the Private Party Beneficiaries will be attached hereto, and a copy provided to Trustor at the close of escrow.


DESCRIPTION OF NOTE:

That certain promissory note executed of even date herewith by and between THE PRESERVE, LLC, in the amount of $39,000,000.00 in favor of Beneficiaries identified in the schedule of Private Party Beneficiaries attached hereto.

Exhibit ___A___

Page ___80___                          1          Exhibit ___6___

Page ___79___

Loan #206070                                          Order #9301656-12

## EXHIBIT "B"


Legal Description of Real Property

Real property in the unincorporated area of the County of Riverside, State of California, described
as follows:

PARCEL 1:
LOTS 6, 7 AND 8 IN SECTION 8, TOWNSHIP 3 SOUTH, RANGE 1 WEST, SAN
BERNARDINO BASE
AND MERIDIAN;

EXCEPTING FROM LOTS 7 AND 8 THAT PORTION DESCRIBED AS FOLLOWS:
BEGINNING AT THE NORTHEAST CORNER OF SAID LOT 8;
THENCE WESTERLY ON THE NORTH LINE OF SAID GOVERNMENT LOT 8, 400
FEET;
THENCE SOUTHERLY AT RIGHT ANGLES TO SAID NORTHERLY LINE 900 FEET;
THENCE EASTERLY PARALLEL WITH THE NORTHERLY LINE OF SAID LOTS 7
AND 8, 1000 FEET
TO A POINT IN SAID LOT 7;
THENCE NORTHERLY AT RIGHT ANGLES 900 FEET TO A POINT ON THE NORTH
LINE OF SAID
LOT 7;
THENCE WESTERLY ON SAID NORTH LINE 600 FEET TO THE POINT OF
BEGINNING,
DESCRIBED IN THE DEED RECORDED JANUARY 22, 1963 AS INSTRUMENT NO.
7083 OF
OFFICIAL RECORDS OF RIVERSIDE COUNTY, CALIFORNIA;

ALSO EXCEPTING FROM LOT 7 A RESERVATION OF 1/20 SHARE IN ALL OIL
AND MINERAL
RIGHTS AND DEPOSITS AS RESERVED IN DEED TO ED C. MARTIN AND BIRDIE
F. MARTIN
FROM JAMES E. THOMPSON, A WIDOWER, RECORDED JUNE 15, 1946 IN BOOK
756 PAGE 217
OF OFFICIAL RECORDS OF RIVERSIDE COUNTY, CALIFORNIA.

PARCEL 2:
SECTION 17, TOWNSHIP 3 SOUTH, RANGE 1 WEST, SAN BERNARDINO BASE
AND MERIDIAN,
AS SHOWN BY UNITED STATES GOVERNMENT SURVEY:


Exhibit _____ A
Page _____ 83

B-1

Exhibit _____ 4
Page _____ 80

EXCEPTING THEREFROM THAT PORTION OF THE NORTHEAST 1/4 OF SAID
SECTION,
PARTICULARLY DESCRIBED AS FOLLOWS:
BEGINNING AT A POINT FROM WHICH THE NORTHEAST CORNER OF SAID
SECTION BEARS
NORTH 14 DEGREES 58' EAST, 1073.0 FEET;
THENCE SOUTH 88 DEGREES 42' WEST, 660 FEET;
THENCE SOUTH 01 DEGREES 18' EAST, 660 FEET;
THENCE NORTH 88 DEGREES 42' EAST, 660 FEET;
THENCE NORTH 01 DEGREES 18' WEST, 660 FEET TO THE POINT OF
BEGINNING.
PARCEL 3:
THE NORTH 1/2 OF THE NORTHWEST 1/4 AND SOUTHWEST 1/4 OF NORTHWEST
1/4 OF
SECTION 20, TOWNSHIP 3 SOUTH, RANGE 1 WEST, SAN BERNARDINO BASE
AND MERIDIAN,
AS SHOWN BY UNITED STATES GOVERNMENT SURVEY;
EXCEPTING THEREFROM ALL THE OIL AND GAS TOGETHER WITH THE RIGHT
TO PROSPECT
FOR, MINE AND REMOVE SUCH DEPOSITS FROM SAME UPON COMPLIANCE
WITH THE
CONDITIONS AND SUBJECT TO THE PROVISIONS AND LIMITATIONS OF ACT
OF JULY 17, 1914,
AS RESERVED IN THE PATENT FROM THE UNITED STATES OF AMERICA,
RECORDED MARCH 15,
1949 IN BOOK 1059 PAGE 170 OF OFFICIAL RECORDS OF RIVERSIDE COUNTY,
CALIFORNIA.

PARCEL 4:
THE NORTH 1/2 OF THE NORTHEAST 1/4 AND THE SOUTHWEST 1/4 OF THE
NORTHEAST 1/4
AND THE SOUTHEAST 1/4 OF THE NORTHWEST 1/4 OF SECTION 20, TOWNSHIP
3 SOUTH,
RANGE 1 WEST, SAN BERNARDINO BASE AND MERIDIAN.

PARCEL 5:
THE WEST HALF OF THE NORTHEAST QUARTER OF THE SOUTHWEST
QUARTER OF SECTION
20, TOWNSHIP 3 SOUTH, RANGE 1 WEST, SAN BERNARDINO BASE AND
MERIDIAN,
ACCORDING TO THE OFFICIAL PLAT THEREOF.

PARCEL 6:
THE SOUTHEAST QUARTER OF THE NORTHEAST QUARTER OF SECTION 20;
THE NORTH HALF OF THE SOUTHEAST QUARTER OF SECTION 20;
THE SOUTHEAST QUARTER OF THE SOUTHEAST QUARTER OF SECTION 20;



Exhibit ___ A
Page ___ 44

B-2



Exhibit ___ 6
Page ___ 81

EAST HALF OF THE NORTHEAST QUARTER OF THE SOUTHWEST QUARTER OF
SECTION 20;
ALL IN TOWNSHIP 3 SOUTH, RANGE 1 WEST, SAN BERNARDINO BASE AND
MERIDIAN,
ACCORDING TO THE OFFICIAL PLAT THEREOF;
EXCEPTING THEREFROM THAT PORTION OF THE SOUTHEAST QUARTER OF
SECTION 20 AS
CONVEYED TO THE SOUTHERN CALIFORNIA EDISON COMPANY BY DEED
RECORDED JUNE 12,
1970 AS INSTRUMENT NO. 55231 OF OFFICIAL RECORDS OF RIVERSIDE
COUNTY, CALIFORNIA.

PARCEL 6A:
AN EASEMENT AND RIGHT OF WAY TO CONSTRUCT, USE, MAINTAIN AND
REPAIR ONE ROAD,
20 FEET WIDE, EXTENDING IN A GENERALLY NORTHWESTERLY AND
SOUTHEASTERLY
DIRECTION IN, ON, OVER AND ACROSS THAT PORTION OF THE SOUTHEAST
QUARTER OF
SECTION 20, TOWNSHIP 3 SOUTH, RANGE 1 WEST, SAN BERNARDINO BASE
AND MERIDIAN,
ACCORDING TO THE OFFICIAL PLAT THEREOF AS DESCRIBED IN THE DEED
TO THE
SOUTHERN CALIFORNIA EDISON COMPANY AND UPON THE TERMS AND
CONDITIONS SET
FORTH IN SAID DEED RECORDED JUNE 12, 1970 AS INSTRUMENT NO. 55231 OF
OFFICIAL
RECORDS OF RIVERSIDE COUNTY, CALIFORNIA.

PARCEL 7:
THAT PORTION OF GOVERNMENT LOTS 7 AND 8 OF FRACTIONAL SECTION 8
TOWNSHIP 3
SOUTH RANGE 1 WEST, SAN BERNARDINO BASE AND MERIDIAN, ACCORDING
TO AN
ADDITIONAL PLAT OF SAID LAND AS FOLLOWS:
BEGINNING AT THE NORTHEAST CORNER OF SAID LOT 8;
THENCE WESTERLY 400 FEET ON THE NORTHERLY LINE OF SAID
GOVERNMENT LOT 8;
THENCE SOUTHERLY 900 FEET AT RIGHT ANGLES TO SAID NORTHERLY LINE;
THENCE EASTERLY 1000 FEET PARALLEL WITH THE NORTHERLY LINE OF
SAID LOTS TO A
POINT IN SAID LOT 7;
THENCE NORTHERLY 900 FEET AT RIGHT ANGLES TO A POINT OF THE
NORTHERLY LINE OF
SAID LOT 7;
THENCE WESTERLY 600 FEET ON SAID NORTHERLY LINE TO THE POINT OF

B-3

Exhibit ___A___
Page ___95___

Exhibit ___6___
Page ___83___




BEGINNING;
ALSO EXCEPTING FROM LOT 7 A RESERVATION OF 1/20 SHARE IN ALL OIL AND MINERAL
RIGHTS AND DEPOSITS AS RESERVED IN DEED TO ED C. MARTIN AND BIRDIE F. MARTIN
FROM JAMES E. THOMPSON, A WIDOWER, RECORDED JUNE 15, 1946 IN BOOK 756 PAGE 217
OF OFFICIAL RECORDS OF RIVERSIDE COUNTY, CALIFORNIA.

PARCEL 8:
LOTS 1 AND 2 IN SECTION 8, TOWNSHIP 3 SOUTH, RANGE 1 WEST, SAN BERNARDINO BASE
AND MERIDIAN, IN THE COUNTY OF RIVERSIDE, STATE OF CALIFORNIA;
EXCEPT THE PORTION INCLUDED IN PUBLIC HIGHWAY ON THE NORTH.

PARCEL 8A:
AN EASEMENT FOR INGRESS AND EGRESS OVER AND ACROSS THE NORTHERLY 40 FEET OF
GOVERNMENT LOT 3, SECTION 8, TOWNSHIP 3 SOUTH, SAN BERNARDINO BASE AND
MERIDIAN, AS RESERVED IN DOCUMENT RECORDED OCTOBER 23, 1970 AS INSTRUMENT NO.
106752 OF OFFICIAL RECORDS OF RIVERSIDE COUNTY, CALIFORNIA.

APN: 421-070-001-5 and 421-070-004-8 and 421-070-005-9 and 421-070-006-0 and 421-070-
007-1 and 421-080-002-7 and 421-190-002-7 and 421-190-003-8 and 421-190-004-9 and 421-
421-190-005-0 and 421-190-006-1 and 421-190-011-5

Exhibit ___A___
Page ___86___

B-4


Exhibit ___6___
Page ___83___

