JEFFREY W. BROKER – State Bar No. 53226
PAMELA J. ZYLSTRA – State Bar No. 147977
BROKER & ASSOCIATES PROFESSIONAL CORPORATION
18191 Von Karman Avenue, Suite 470
Irvine, CA 92612-7114

Telephone: (949) 222-2000
Facsimile: (949) 222-2022
email: *jbroker@brokerlaw.biz*

General Reorganization Counsel
for Debtor and Debtor-in-Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### RIVERSIDE DIVISION

| | |
|---|---|
| In re<br><br>THE PRESERVE, LLC, a California Limited Liability Company,<br><br>Debtor and<br>Debtor-in-Possession | Case No. 6:08-bk-23006-BB<br><br>Chapter 11 Proceeding<br><br>**REPLY BY DEBTOR AND DEBTOR-IN-POSSESSION TO OPPOSITION BY POINT CENTER FINANCIAL, INC. TO MOTION OF DEBTOR AND DEBTOR-IN-POSSESSION FOR ORDER (1) AUTHORIZING FOURTH EXTENSION OF DEADLINE TO FILE A PLAN AND DISCLOSURE STATEMENT AND (2) EXCLUSIVITY PERIOD REGARDING SOLICITATION OF ACCEPTANCES AND REJECTIONS TO PLAN; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: March 3, 2010<br>Time: 11:00 a.m.<br>Ctrm: 303 |

**TO THE HONORABLE SHERI BLUEBOND, UNITED STATES BANKRUPTCY JUDGE; THE OFFICE OF THE UNITED STATES TRUSTEE; OBJECTING PARTY POINT CENTER FINANCIAL, INC. AND ITS ATTORNEYS, AND PARTIES IN INTEREST:**

THE PRESERVE, LLC, a California Limited Liability Company, the Debtor and Debtor-in-Possession in the within Chapter 11 case (the "Debtor"), hereby presents its Reply to the

Opposition (the "Opposition") filed by Point Center Financial, Inc. to the **DEBTOR'S MOTION FOR ORDER AUTHORIZING FOURTH EXTENSION OF (1) DEADLINE TO FILE A PLAN AND DISCLOSURE STATEMENT; AND (2) EXCLUSIVITY PERIOD REGARDING SOLICITATION OF ACCEPTANCES AND REJECTIONS TO PLAN** (the "Motion").

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### OVERVIEW

The Point Center Litigation is not 'bogus' as asserted in the Opposition. This Court is now aware of some of the documentary evidence and declaration testimony presented on behalf of the Debtor in connection with its Opposition to a motion for summary judgment / summary adjudication in connection with the Point Center Litigation that was heard on February 11, 2010. The evidence produced by the Debtor clearly showed a deliberate series of deceptive acts by which the Debtor was tricked into borrowing money in a transaction 'arranged' by Point Center and its employees. The Debtor subsequently discovered that the documents presented for signature in connection with the Loan and documents later provided in connection with documenting the closing of the loan were either fraudulent and there was no funding in the amount represented <u>or</u> the documents were accurate and a significant portion of the Debtor's funds were embezzled and were funded into a Point Center business account which was then diverted to other loan transactions in a series of Ponzi moves. Discovery is continuing as to the latter assertion, but the fact remains that the actions by Point Center and its employees (ratified by a substantial amount of the 'investors / beneficiaries') were reprehensible and, aside from general damages, the assessment of exemplary damages in connection with the scheme designed to ultimately steal the Debtor's property will be recovered at trial. Further, the Debtor questions whether the 'investors / beneficiaries' fully exist since the public record discloses more than <u>$51 million</u> in fractionalized interests encumbering the 654 acres of the residential portion of the Legacy Highlands project.

This voluntary Chapter 11 case was filed on September 25, 2008 in response to actions and activities taken by a <u>predatory arranger</u> of a secured loan to the Debtor as part of what has turned out to clearly be a **lend to own** Ponzi Scheme followed by a **scorched earth**[1] approach in this case. The Debtor contends that through a series of Ponzi Schemes the Debtor's money was diverted into Point Center's own bank account where it was subsequently re-lent to other borrowers. This financial predator, Point Center, the sole opposing party herein through its Opposition, has heretofore caused significant damage and disruption to the Debtor's business operations through its illegal activities and efforts to acquire title to the Debtor's Legacy Highlands project, directly resulting in the initiation of this Chapter 11 case. It should be specifically noted that Point Center has been scheduled in this case as a "<u>purported servicing agent</u> on behalf of multiple lenders holding fractional interests" (emphasis added) and was specifically characterized in the Debtor's schedules as the holder of a *contingent, unliquidated and disputed* claim in this case. **Point Center has never lent the Debtor one cent and is clearly the party in this case that has unclean hands.** The Debtor has clearly demonstrated the *mala fides* of Point Center in this case. The Debtor contends that its case has special circumstances that justify the fourth and final extension of the exclusivity periods as prayed for in the Motion.

<u>The Debtor's dispute with Point Center existed for approximately a year prior to the Petition Date.</u> As asserted in the Motion, the disclosure by Point Center in approximately October 2007 that <u>$7,675,980.00 of the funds attributable to the $39 million loan arranged by Point Center in 2006</u> that was **represented as being funded** at the closing of the Loan **were not existent** (*or had been diverted to its own bank account*) left the Debtor 'in the lurch' without the full use of the anticipated proceeds from the Loan for its use in the ongoing development process involving the Legacy Highlands project. Those funds were specifically earmarked to pay for "soft costs" or

---

[1] Examples include objecting to the motion to borrow funds from Scott Krentel in order to fund the case (overruled by the Court per its Order entered on November 26, 2008), objection (later withdrawn) to insider compensation, and a motion for a single asset real estate determination that was denied (per Order entered on December 24, 2008). No reconsideration or appellate review was taken with respect to any of the aforementioned Orders.

related interest reserves relating to the ongoing development of the Legacy Highlands project, which include but are not limited to consulting fees, 'contingency', legal and insurance, management fees, property maintenance and property tax reserves. The **missing funds** meant no remaining interest reserve for the Loan; the nonpayment of interest was the basis for the recording of the notice of default by Point Center in the first place! In other words, the Debtor would not be here, but for the fraud by Point Center in its representation of a fully funded loan and the failure to fund, among other items, sufficient funds to have carried the interest on the Loan for fourteen months beyond October 2007. In addition, there was a commitment to have the Loan extended for an additional two years beyond its original maturity date (to September 2010).

As asserted by the Debtor in the Motion, Point Center demanded that the Debtor fund the purported shortfall without any reduction in the fees and costs that were improperly taken at the inception of the "Loan." After the *existence of the shortfall* was disclosed to the Debtor by Point Center, the Debtor made arrangements to raise money through Deep Canyon Holdings, Inc. ("DCH") in order to assist in the replacement of the missing proceeds. After DCH provided over $1.3 million to Point Center for the benefit of the Debtor and was contemporaneously granted definitive fractionalized interests in the Loan in its own name, further funding by DCH was refused by Point Center. The Debtor contends that this refusal was in an effort to conceal its Ponzi Scheme and to divert the fact that the Debtor's money had been diverted into Point Center's own bank account. This refusal was in violation of the terms of its own loan modification with the Debtor, and Point Center indicated that no further investment would be allowed by DCH in connection with the Loan. DCH terminated Point Center as its servicer of the Loan. Thereafter, Mr. Krentel loaned $1,197,497 to the Debtor pre-petition at great personal hardship in order to keep the development process for the Legacy Highlands project moving forward. The Debtor considers DCH to be the only 'nonaffiliated' holder of a fractionalized interest in the Loan and, in addition, DCH is the only fractionalized interest holder whose claim is not disputed. DCH has filed its own proofs of claim in this case and has filed its own nonopposition to the instant Motion.

As the Motion and this Reply again demonstrate, **this case has significant complexities** and only one entity – Point Center who is itself <u>not a creditor (never having lent the Debtor one cent), only an *alleged* "servicer" with no valid power of attorney as determined by this Court and with questionable customers</u> – has been an ongoing impediment to the reorganization process. When the Court considers the source of the Opposition (a party who either defrauded the debtor or stole the Debtor's money) and the true motive on the part of Point Center of diverting attention away from its pre-petition actions which negatively impacted the Debtor and along with other improper actions caused the filing of this Chapter 11 case in the first instance, the Court must <u>overrule</u> the Opposition and grant the Motion.

## II.

## THE POINT CENTER LITIGATION

A lawsuit was filed by the Debtor against Point Center and others pre-petition relating to the transaction which is the subject matter of that claimed interest prior to the Petition Date (the "Point Center Litigation") described in the Motion. The matter was removed to this Court as a result of a Notice of Removal filed by the Defendants on October 30, 2008. In connection with a motion for summary judgment / partial adjudication brought by the Defendants which was heard on February 11, 2010, this Court specifically <u>refused</u> to grant relief with regard to the Fraud claim among other claims asserted against Point Center.

## III.

## THE DEBTOR'S POST-PETITION BORROWING
## TO FUND ONGOING OPERATIONS

Notwithstanding objection by Point Center, this Court approved the proposed post-petition borrowing from Mr. Krentel (in an amount up to $2 million for the purpose of funding the Debtor's post-petition cash needs) pursuant to its order entered on November 26, 2008. The debtor has been proceeding forward in its reorganization efforts with *replacement funding* from Mr. Krentel. <u>See</u>, Krentel Declaration annexed to the Motion at ¶10.

## IV.

## RECENT DEVELOPMENTS INVOLVING THE CEQA CHALLENGE

The CEQA Challenge was initiated in February of 2008, seven months prior to the Petition date. The trial of the CEQA Challenge took place on January 23, 2009. The trial court judge concluded in the Judgment filed on March 30, 2009 that, in his opinion, some, (but far from all that had been alleged) CEQA "violations" had occurred. The Debtor has, even before trial, conducted its own further water analysis and believes that it can with relative ease supply the City of Beaumont (the "City") with additional factual data about water as well as more information regarding the unacceptability of the suggested alternatives and furnish more support for the overriding benefits of the project.

The Debtor has continued to work on drafting a water rights transfer agreement with the City which will provide the Legacy Highlands project with primary water rights to meet the project's water demand. The creation of this primary water right would provide the project not only with a guaranteed water supply, but would also make the water supply portion of the environmental impact report unassailable in court based upon a recent ruling on a neighboring project. The City and the Debtor have continued to revise and negotiate the draft water agreement, with most issues now resolved. The City and the Debtor have also concluded that exploring methods to reduce the project's projected water demand is a step which is best taken concurrent with the drafting of this agreement and the revisions to the environmental impact report. The Debtor has begun this work, exploring the use of drought tolerant vegetation, reducing the landscaped area of the project and utilizing more efficient landscape watering systems amongst other items. Concurrent with this work, the Debtor has met with the City to delineate the parameters of the revised water supply section of the environmental impact report. As noted above, in addition to addressing the specific deficiencies found in the prior consultant's report that were involved with the CEQA Challenge, the addition of this primary water right and the water demand reduction methods will serve to protect the new report against further challenge. The Debtor is

actively pursuing this course of action which would result in the complete restoration of all entitlements for the Legacy Highlands. See, Krentel Declaration annexed to Motion at ¶13.

## V.

## CHALLENGES IN PLAN FORMULATION

The Debtor has other secured creditors whose scheduled *undisputed* claims are secured by real property assets *other than the Legacy Highlands project*. The Debtor also has general unsecured creditors in the case. The Debtor is in the final stage of completion of a Chapter 11 Plan that fairly treats the claim asserted by Point Center as the alleged agent for third party investors that will protect the interests of the Debtor (and Point Center) with regard to the making of payments under its Plan to a clearly disputed claimant/agent whose proof claim will be ultimately determined and *allowed* in this case, if at all, after the Point Center Litigation is finally concluded.

## VI.

## ARGUMENT

### A.    DEMONSTRATION OF CAUSE

On the issue of cause the reported cases amalgamate the following relevant factors (*see also*, In re Henry Mayo Newhall Memorial Hospital, 282 B.R. 444, 452 (9th Cir. BAP 2002):

- Was this the first extension requested
- Was the case complicated
- Was the case pending for a long time relative to its size and complexity
- Was the debtor proceeding in good faith
- Was the debtor paying current operating expenses
- Was there a reasonable prospect for filing a viable plan and prepare adequate information
- Was there satisfactory progress negotiating with key creditors
- Was the extension sought to pressure creditors
- Was there an unresolved contingency

This is the fourth extension requested by the Debtor in this case. The request by the Debtor was made timely. The second and third extension requests were approved by the Court <u>without reference</u> to the comments made by the Court in its tentative ruling in connection with the first extension request regarding the pending litigation between the Debtor and Point Center.

The Debtor submits that this case is complex for four reasons. The first is the magnitude and inherent complexity of the Legacy Highlands project in and of itself (this complexity has been magnified by the actions of Point Center) that has been worked on for well over seven years. The entitlements process is substantially completed which the Debtor contends has enhanced the value of the Legacy Highlands project. The second is the fact that the CEQA Challenge is still a few months away from its anticipated favorable completion and the EIR certification becoming immune against further attack. The Debtor has demonstrated significant progress in the entitlement process, has taken steps to rectify the deficiencies in the judgment relating to the CEQA Challenge and believes it will be favorably resolved in the near future. The third is the pending litigation against Point Center, which will be tried before a jury in the United States District Court at some point in time. **Stated simply, Point Center either defrauded the Debtor as to the true nature of the Loan (or later simply took money that belonged to the Debtor and put it in its own bank account), clearly paid itself <u>a fee that it did not earn</u> since the amount of funds represented to exist at closing did not, according to Point Center, exist after the tenth draw, diverted the funding from DCH and improperly declared a default under the Loan which precipitated the filing of this case.** The fourth is the Debtor's long stated desire to communicate with the 'true' creditors in the Loan in this case, which will come to fruition after they are named as additional defendants in the Point Center Litigation and become actively involved in this matter.

This case has not been pending for a "long time" since it was filed on September 25, 2008. The Debtor has made progress in both the entitlement processes and in its prosecution of the pending litigation against Point Center in order to obtain information that is both relevant to the

-8-

litigation and to the Loan and the 'true' investor/creditor issue in this case relating to the Loan. **The Debtor is the fraud victim here, not Point Center or the fractional interest investors.**

The Debtor asserts that it filed its Chapter 11 case in good faith and is proceeding in good faith in its efforts to reorganize. The Debtor is current in its administrative operating expenses through Court-approved borrowing (over the objection of Point Center) and is in complete compliance with the requirements of the Office of the United States Trustee.

A plan in this case is obviously intertwined with the amount, *if anything*, that is ultimately found to be owed on the Loan. <u>However, the Debtor believes that it has developed a solution for treating the Claim asserted by Point Center under its forthcoming Plan wherein its rights and the rights of Point Center are fairly resolved while the reorganization process proceeds forward.</u>

The Debtor has not pressured any of its creditors with regard to a particular payment proposal, although there have been discussions with parties and creditors *other than* Point Center post-petition in that regard. Finally, there are the unresolved contingencies of what the Debtor *actually owes* with regard to the Loan, *if anything*, at the end of the day, and whether it is validly secured in the first instance (the discovery process in the adversary proceeding is critical in that regard), the completion of the entitlement process, as well as the final corrective work relating to the CEQA Challenge completed, circulated, approved and the corrected portion of the EIR re-certified by the Beaumont City Council.

The authorities cited by Point Center on the issue of cause, most notably <u>In re R.G. Pharmacy, Inc.</u>, 374 B.R. 484 (Bankr. D. Conn. 2007) miss the mark. In <u>R.G. Pharmacy</u>, the case dynamics were significantly different than those at bar. First, Debtor did not show good cause pursuant to 11 USCS §1121(d) to further extend debtor's exclusivity period where debtor's bankruptcy case was not particularly large (debtor had assets of just under $ 4,000,0000) and there was <u>no support by any constituency</u> (the two major secured and unsecured creditors both opposed the extension of exclusivity). The major secured creditor held a claim of $2.5 million (82% of total scheduled secured debt), and the major unsecured creditor held an unsecured claim of $1.6 million (98% of total scheduled unsecured debt), *$1.025 million of which was a stipulated allowed*

*administrative claim.* In addition, the United States and the State of Connecticut (both unscheduled) had filed proofs of claim asserting an estimated aggregate unsecured claim of $2.7 million. There was a breakdown in negotiations between the Debtor, the secured creditor <u>and</u> the major unsecured creditor <u>who both opposed extending the exclusivity period</u>. In fact, the secured creditor also had motions pending for the appointment of a trustee as well as for relief from stay to enforce its security agreement. The Court also noted that the adversary proceeding against the secured creditor was filed just prior to the date of the hearing on the exclusivity extension motion, and denied the Debtor's request for an extension of the exclusivity period.

In the case at bar, this case simply has more complexities and constituencies than any cited by Point Center. There have been ongoing communications with Deep Canyon as well as other individual investors in the Loan who have contacted the Debtor's manager as well as Debtor's counsel. The Debtor is willing to mediate again in this case. The Debtor submits that it has established good cause to grant the final requested extension of the exclusivity periods as prayed for in the Motion.

## VII.

## **CONCLUSION**

This is the fourth and final requested extension of the exclusive period in a case which is complex for the reasons outlined above. The Debtor believes that it has formulated a Plan which permits the reorganization process to go forward and have the rights of the parties in interest preserved regarding the Point Center Litigation. Based upon the foregoing, the Debtor respectfully submits that good cause exists for this Court to grant the relief requested in this Motion and extend

//

//

//

1 | until March 25, 2010, the exclusivity period within which the Debtor has the exclusive right to file
2 | a Plan, and extend to May 25, 2010, the exclusivity period within which the Debtor has the
3 | exclusive right to solicit acceptances thereto.

DATED: February 24, 2010

BROKER & ASSOCIATES
PROFESSIONAL CORPORATION

By: *[signature]*
Jeffrey W. Broker
General Reorganization Counsel for Debtor and
Debtor-in-Possession

-11-

| In re:<br>THE PRESERVE, LLC | CHAPTER 11 |
|---|---|
| Debtor. | CASE NUMBER 6:08-bk-23006-BB |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 18191 Von Karman Avenue, Suite 470, Irvine, CA 92612.

A true and correct copy of the foregoing document described as **REPLY BY DEBTOR AND DEBTOR-IN-POSSESSION TO OPPOSITION BY POINT CENTER FINANCIAL, INC. TO MOTION OF DEBTOR AND DEBTOR-IN-POSSESSION FOR ORDER (1) AUTHORIZING FOURTH EXTENSION OF DEADLINE TO FILE A PLAN AND DISCLOSURE STATEMENT AND (2) EXCLUSIVITY PERIOD REGARDING SOLICITATION OF ACCEPTANCES AND REJECTIONS TO PLAN; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On February 24, 2010, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

jbroker@brokerlaw.biz (Jeffrey Broker)
jsb@jeffreybenice.com (Jeffrey Benice)
dfisher@ptwww.com ( Don Fisher at Palmieri Tyler et al.)
kmurphy@goeforlaw.com (Mark Forsythe at Goe & Forsythe)
kmurphy@goeforlaw.com; rgoe@goeforlaw.com; mforsythe@goeforlaw.com (Robert P. Goe at Goe & Forsythe)
ustregion16.rs.ecf@usdoj.gov (United States Trustee)
everett.l.green@usdoj.gov (Everett L. Green at Office of the United States Trustee)
dickatlaw@cox.net (Richard Harvey)
mcschnitzer@rhlaw.com (Mark Schnitzer at Reid & Hellyer)
dzaro@allenmatkins.com (David R. Zaro at Allen Matkins)
jdelcastillo@allenmatkins.com (Joshua del Castillo at Allen Matkins)

☐ Service information continued on attached page

II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served):
On February 24, 2010, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

The Hon. Sheri Bluebond, 255 East Temple Street, Suite 1482, Los Angeles, CA 90012
Office of the United States Trustee, 3685 Main Street, Suite 300, Riverside, CA 92501-3837

☐ Service information continued on attached page

III. **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on_____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| February 24, 2010 | Barbara Jean Little-Raphael | *(signature)* |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009

**F 9013-3.1**