# EXHIBIT 8

# EXHIBIT 8

# United States Bankruptcy Court
## Central District of California

### Los Angeles
### Judge Sheri Bluebond, Presiding
### Courtroom 1475 Calendar

**Wednesday, May 26, 2010**                                         **Hearing Room    1475**

11:00 am

**2:10-18429**    **The Preserve, LLC**                                      **Chapter    11**

**#100.00**          Disclosure Statement describing Debtors Chapter 11 Plan

                  fr. 4-14-10

                                              Docket #:   222

**Courtroom Deputy:**

    - NONE LISTED -

**Tentative Ruling:**

    Tentative Ruling for April 14, 2010:

    Deny approval of disclosure statement.  Plan that it describes is unconfirmable on its face
    and disclosure statement fails to contain adequate information on a number of issues.
    The following are among the more prominent problems.

    Court agrees with PCF that Class 1 Claim, which is a fractional interest in the Class 2
    Claim, cannot be separately classififed.  Court also agrees that disclosure statement does
    not describe a feasible plan.  How will debtor be able to fund its operating expenses?
    The plan alludes to new capital contributions, but does not impose a duty on anyone to
    make such contributions.  Court rejects PCF's contention that it violates the absolute
    priority rule to make payments to unsecured creditors before a secured creditor has
    received all the payments to which it is entitled under the plan.  Court agrees, however,
    that, if the class of unsecured claims rejects the plan, debtor would need to pay them in
    full with interest in order for equity to retain its interests in the debtor (but it appears from
    the debtor's reply that the debtor intends to amend the plan to address this issue).

    Court agrees that disclosure statement needs to include information about the appeal of
    the CEQA judgment and the dismissal thereof and to identify the principals of the
    members of the debtor.  Disclosure statement should also include a discussion of the
    basis for the debtor's contention that it does not owe anything to, and is entitled to a
    refund from, special litigation counsel. Discussion of the treatment of Mr. Krentel's
    administrative claim is unclear and needs to be revised.
    ---------------------------
    Final Ruling for April 14, 2010:

                                    EXHIBIT "8"                                    PAGE 133

# United States Bankruptcy Court
## Central District of California

### Los Angeles
### Judge Sheri Bluebond, Presiding
### Courtroom 1475 Calendar

**Wednesday, May 26, 2010**                                    **Hearing Room    1475**

<u>11:00 am</u>

**Cont....        The Preserve, LLC**                                    **Chapter    11**

Before permitting debtor an opportunity to attempt to amend disclosure statement, it would be wise for Court to resolve two fundamental issues raised by the debtor's proposed reorganization plan -- whether it is appropriate to separately classify Deep Canyon from the remainder of the undivided interests in the same credit and whether it is appropriate for the debtor to propose a plan in which it seeks to apply a refund that it is due from PCF against payments that would otherwise be due secured creditors under the plan.

Continue hearing to May 26, 2010 at 11:00 a.m.  Court set briefing schedule on these issues.
----------------------------
Tentative Ruling for May 26, 2010:

Section 553 does not create setoff rights.  Such rights exist, if at all, as a matter of applicable nonbankruptcy law.  Therefore, the fact that section 553 may be inapplicable has no bearing on the appropriate resolution of this issue.

In order for there to be a valid right of setoff, there must be mutuality.  When obligations are due to and from a party in different capacities, there is no mutuality.  Ratification and authority do not change this result.  The debtor has repeatedly emphasized the point that PCF and the beneficiaries are not synonomous.  In collecting amounts due under the loan, PCF would be acting solely in its capacity as an agent for the beneficiaries.  In charging loan fees, it was acting on its own behalf in its capacity as the party that arranged the loan.  There is no mutuality.  It is inappropriate for the debtor to attempt to credit any amount that PCF may owe it against amounts that would otherwise need to be paid to the beneficiaries.

On the issue of classification, the Court rejects the notion that it is appropriate to separately classify Deep Canyon's claim.  It is true that section 1122 only requires that claims within a particular class be substantially similar and not that all substantially similar claims be placed within the same class, but the claim held by Deep Canyon and that of the other beneficiaries represented by PCF are not substantially similar claims.  They are the same claim!  Deep Canyon holds an undivided interest in the same secured claim as

**5/25/2010        4:49:55PM**                    **Page 67 of 128**

# United States Bankruptcy Court
## Central District of California

### Los Angeles
### Judge Sheri Bluebond, Presiding
### Courtroom 1475 Calendar

**Wednesday, May 26, 2010**                                                                                    **Hearing Room    1475**

11:00 am

**Cont....          The Preserve, LLC**                                                                              **Chapter    11**

the other beneficiaries.  The debtor has not provided the Court with any examples of cases in which a bankruptcy court has permitted one of a group of beneficiaries under a single deed of trust to be classified separately from the other parties that hold an interest in the same deed of trust.

It is not appropriate for Deep Canyon to receive payments while other owners of fractional interests in the same obligations have their payments paid into the disputed claim reserve.  The classification scheme and differential treatment proposed by the debtor is not permissible.

Deny approval of the debtor's disclosure statement.  The plan that it describes is unconfirmable on its face.

| Party Information |
|---|

Debtor(s):

    The Preserve, LLC                                              Represented By
                                                                                   Jeffrey W Broker

Movant(s):

    The Preserve, LLC                                              Represented By
                                                                                   Jeffrey W Broker

# EXHIBIT 9

# EXHIBIT 9

**ORIGINAL**



UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

--oOo--

In Re: ) Case No. LA10-18429-BB
)
THE PRESERVE, LLC, ) Los Angeles, California
) Wednesday, May 26, 2010
Debtor. ) 11:00 a.m.
)

DISCLOSURE STATEMENT DESCRIBING DEBTOR'S CHAPTER 11 PLAN

SCHEDULING AND CASE MANAGEMENT CONFERENCE IN A CHAPTER 11 CASE

NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY WITH SUPPORTING DECLARATIONS REAL PROPERTY RE: UNINCORPORATED LAND - THE LEGACY HIGHLANDS, RIVERSIDE, CA 92223 DECLARATION OF DAN J. HARKEY

ADV. 10-01296; THE PRESERVE, LLC v. POINT CENTER FINANCIAL, INC., ET AL.

MOTION TO AMEND COMPLAINT

STATUS CONFERENCE RE NOTICE OF REMOVAL

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE SHERI BLUEBOND
UNITED STATES BANKRUPTCY JUDGE

Proceedings recorded by electronic sound recording; transcript produced by transcription service.

*Echo Reporting, Inc.*

3

remainder of the undivided interests in the same credit and whether it was appropriate for Debtor to propose a plan in which it seeks to apply a refund that is due from PCF against payments that would otherwise be due secured creditors under the plan..

And just to make sure I'm on the right page, if I recall correctly, the idea was, when the loan was funded, at least the first -- the initial funding, that PCF took a loan fee as if the full amount of the loan would fund. And for reasons that we talked about and argued about and maybe that are in dispute, it didn't all fund.

So there is, I believe, an acknowledgment that there is a refund due or a credit due for the percentage of the loan fee that PCF got for the part of the loan that didn't fund. So that's what I'm talking about when I'm talking about this credit due from PCF.

Is that a close enough factual description of what the credit is about for the purposes of this analysis?

MR. BROKER: Not exactly, your Honor. But maybe we can get into it when I argue about it.

THE COURT: Okay. But is it -- does the difference change the factual analysis?

MR. BROKER: It's close, but, again, I can address it --

THE COURT: Well, I'm about to talk for a while

EXHIBIT "9"                    PAGE 137

4

about what my analysis is.

MR. BROKER: Okay.

THE COURT: So I mean, if I've got a mistake as to my fundamental assumption as to what this credit comes from, then --

MR. BROKER: Yes.

THE COURT: -- it might be relevant. So --

MR. BROKER: Yes. A couple things that need to be spun in. First of all, that the unearned fee is part of the proof of claim amount asserted allegedly on behalf of beneficiaries, which ties beneficiaries to the amount.

THE COURT: Okay. Maybe there are other facts you want me to know. Are the facts that I explained not right or is it just that I didn't say enough?

MR. BROKER: It's augmenting the facts as you've described them.

THE COURT: Okay. But it's a credit resulting from the fact that they charged the fee on the full amount, even though it didn't fund to the full amount.

MR. BROKER: At bottom, that's right. But there's additional acts that could tend to change your thinking.

THE COURT: Okay. Well, in that case, I do want to -- then those facts we'll save.

MR. BROKER: Very well. Okay.

THE COURT: So Mr. Goe, is that generally good

*Echo Reporting, Inc.*

5

enough -- close enough for -- okay.  All right.

MR. GOE:  Yes, your Honor.

THE COURT:  If there are more wrinkles you want to add onto that, that's fine.  I just want to make sure it isn't, no, no, no, your Honor, that was some other dispute. This is something entirely different.  Okay.  All right.

So I set the hearing to today, and I asked for briefing on those issues.  Thank you.  I got briefing on the issues.  So here, let me launch into a description of my tentative.

The parties had some discussions about 553, and Mr. Goe was saying or C.F. was saying, this doesn't apply to 553 because it's the Debtor trying to set off instead of the creditor.  Well, okay, but so what.  553 doesn't create any setoff rights.  553 talks about the fact that bankruptcy doesn't destroy setoff rights.

So really, the doctrines that we're talking about, the principles that we're talking about, they are not really created by bankruptcy law.  This is just basic setoff law that I'm talking about here, subject to setoff.  And one of the requirements of setoff is mutuality.

And this is not actually relevant, the next point I'm going to make, but I don't know why I feel a need to disclose it or say it anyway, but I will.  There is this other doctrine called recoupment.  In my view of the

EXHIBIT "9"                                                    PAGE 139

6

universe, recoupment is a subset of setoff. So setoff is countervailing obligations, and recoupment is countervailing obligations that actually arise out of the same contract.

So if you are owed money under this back and forth under the same contract, they automatically extinguish each other, and you just don't owe it. Setoff, you have these two different obligations. It might have something to do with -- they might arise out of the same agreement. They might not. They might have nothing to do with each other.

So some people say they're two different documents -- doctrines. I view recoupment as a specific kind of a setoff. Anyway -- okay. So this to me is not about 553, and I don't really care what 553 says. It doesn't have anything to do with what we're talking about. We're talking about state law.

And one of the requirements of setoff is mutuality. If there is no mutuality, you don't get to set off. And just basic setoff law -- for example, let's say somebody is the trustee. So for -- okay. Like here's an example. A lawyer with regard to the monies in his trust account. A lawyer is a trustee with regard to the monies in his trust account. And let's say the bank -- let's say the bank where you've got your trust account at, that the lawyer owes money to the bank, let's assume, and the bank -- well, we all know that bank accounts are a legal fiction. It's

EXHIBIT "9"                                                        PAGE 140

7

really the debtor -- it's really the bank owing you money. Right? Okay.

So let's assume that the lawyer owes money to the bank in his individual capacity and the bank owes money to the lawyer because there's this bank account, but it's a trust account. It's not in his individual capacity. He's a trustee.

So the bank couldn't, even if -- you know, forget bankruptcy. Forget the automatic stay. Just, you know, real world, if we can ever remember what that was like separate and apart from bankruptcy. The bank couldn't set off any -- because even if they have a contractual right to set off things in general or otherwise, they couldn't set off monies that the lawyer owed because it's a trust account. I mean, you have to owe in the same capacity.

So the real question here is not whether somebody ratified or didn't ratify or whether or not somebody is an authorized agent or isn't an authorized agent. To me the question is, in what capacity does PCF owe the money, and is it the same capacity in which they're entitled to collect the money.

So -- and I don't -- the parties spent a lot of ink briefing a bunch of this stuff, but I'm not sure they actually hit it kind of head on. In collecting the -- but it seems to me that PCF, qua PCF in its individual

8

capacity -- that's not a human, so it doesn't -- it's PCF as an entity that owes the money back for this credit, and yet PCF is solely acting as an agent and a trustee, you know, a representative as far as collecting on this debt.

So it seems to me that what you're essentially doing -- it's no different than -- let's say there was a third party out there who owed money to the Debtor. What the Debtor is saying is, I'm going to take this asset that I have, this obligation from Joe Blow, and I'm going to use it to pay -- in lieu of making payments, I'm going to give that to the people I owe money to, to my secured creditor here.

And you're essentially assigning that and transferring the claim in that sense. Maybe you can do that and maybe you can't do that. Maybe we can have an argument about whether or not that's an appropriate plan treatment. But you couldn't set it off. It wouldn't be a question of setting it off. It would be a question of saying, the way I'm going to pay this claim is I'm going to assign to you an interest in my claim against Joe Blow and go chase Joe Blow. And that's value -- and it has a market value, and I'm giving it to you, and it's a valuable asset.

So I think that's essentially what you're doing here in this plan is you're saying, I've got this valuable claim against PCF, and PCF ought to have to pay it to you. And so, you know, take it from PCF.

17

representing a particular beneficiary is different from saying that PCF is not authorized to act on behalf of that beneficiary.

So I haven't seen anybody other than Deep Canyon who has said, they're not my agent. I've revoked the authority. And I don't know whether they can. Because think about that. What does that -- what sense would that -- how can you exist in the real world if all the beneficiaries could unilaterally revoke the agency to act on their behalf. And what if they all did. And then what in the world would we do.

But I'm not -- I don't think I need to decide for the purpose of this analysis whether or not the revocation of the agency was effective or not. But in any event -- okay. So there you have it. Mr. Goe is representing PCF. PCF is the authorized agent for the beneficiaries, with the possible exception of Deep Canyon. Does that respond to your question?

MR. BROKER: Yes.

THE COURT: Okay. All right. So then you want to address the setoff point?

MR. BROKER: Yes, please.

Your Honor, as I indicated earlier, there are a few facts that we need to grind into the mix here. The first is, the unearned fee is part of the claim that's been

18

filed in this case because there's been no reduction for that. But --

THE COURT: Wait. What does that mean? What do you mean, the unearned fees are part of the claim? They do offset the claim or --

MR. BROKER: No.

THE COURT: What do you mean?

MR. BROKER: No. It's subsumed within the proof of claim that's been filed. There's been an adjustment in the proof of claim that was filed in this case.

THE COURT: What do you mean? Okay. When you file a proof of claim, you file a proof of claim saying what you're owed. So what do you mean when you mean it's subsumed? You mean they didn't deduct it back out, they did deduct it back out?

MR. BROKER: They did not -- it was not deducted in the proof of claim that was filed by PCF in this case.

THE COURT: So it's not mentioned in the proof of claim.

MR. BROKER: It is not mentioned in the proof of claim.

THE COURT: Okay. So what do you mean it's subsumed by the proof of claim or as part of the claim?

MR. BROKER: It's -- well, the principal balance of the proof of claim includes the full amount of the fee

19

that was admittedly not earned.  The 32 million XXX dollars in principal includes that amount.  That claim was filed on behalf of the beneficiaries in this case.  That's number one.

THE COURT:  Okay.

MR. BROKER:  So it's there.  It's in the claim.  It's in the proof of claim that is attached --

THE COURT:  Let me say it differently.  The fees were financed, right?

MR. BROKER:  Yes.

THE COURT:  Okay.  So the amount that is the total balance of the claim is an amount that included the amount necessary to pay the fees.

MR. BROKER:  Yes.

THE COURT:  Right.  Okay.  So -- but that -- again, I think, as I did my analysis, that would mean that if those fees weren't due and you shouldn't have had to pay it, that they ought to reduce the balance.  That goes down to my -- either there's no mutuality and you can't do it or there is mutuality and, in fact, there's recoupment.  It just reduces the claim amount.  If the claim amount is wrong, it should be lowered by the amount they never should have charged you, right?

MR. BROKER:  Well, yes.  However, we also get to the point that interest was paid on the unearned fee.  Where

20

did the interest go to?  It went to the beneficiaries.  The unearned interest of about 80 some odd thousand dollars -- the interest that shouldn't have been paid was paid and presumably was disbursed out again to the beneficiaries. And we've kind of itemized that out.

What I think the Court should view this as is simply undisbursed funds out of this loan transaction.

THE COURT:  What in the world would ever make you think they were undisbursed?  Is there any doubt in your mind that PCF pocketed the money?

MR. BROKER:  Well, but again, whose problem is that?  Is it the Debtor's problem or is it the lender's problem?  Let me give you a different hypothetical that maybe can be helpful.

THE COURT:  The question to me isn't whose problem is it.  It's is there mutuality or not, and if -- because if so, then there's a right of setoff.  And is it a right of setoff or is it a right of recoupment?  If it's a right of recoupment, it reduces the loan balance.

I mean, I don't -- under no scenario do I get to the point where you get to take that money, treat it like cash and use it in lieu of having to make any payments for a period of time after confirmation.

I mean, if the fact that it's being -- it's part of the claim and they've added it to the loan balance and

21

you've been paying interest on it all along and they never should have charged you that, that -- okay.  Maybe that means we really ought to reduce that loan balance.

But how in the world does that mean -- and you've got a perfectly valid objection to the face amount of the claim because they shouldn't have charged you that fee, and they should back it out and they should back the interest out.  And if that means then they owe money to the beneficiaries behind the scenes because they did that, well, that's their problem.

And so to the answer to your question whose problem it should be, yeah, maybe it should be their problem.  But the way it's their problem is it's got to reduce the loan balance, not that that means you can -- again, think about the situation of -- you know, again, pretend -- forget the three-party transaction, two-party transaction.  The Debtor -- Wells Fargo Bank, straight loan, didn't give you credit you're entitled to.  Can you say in your plan, because you overcharged me, that you don't get any payments after confirmation from two years because that amount of the overcharge is equal to the amount of payments I would have made for you during that year?  I don't think so.  You're going to say the right amount of your claim is reduced by this fee, and that's the claim amount I have to deal with as of confirmation.

*Echo Reporting, Inc.*

22

MR. BROKER: Well, the cases that I cited on the issue of offset talk about the Court using its equitable power denying offset rights of creditors. And the way I interpreted those cases is that they were benefitting the Debtor because of inequitable conduct on the part of the creditor seeking to have the offset or recoupment.

And in this case, what is most equitable is for the Debtor to have the use of that money, use of the cash that it didn't get under the circumstances of this case because it did pay interest on it up until the time that it was told, oh, that the money isn't there. And the equitable result is that, fine, we'll leave the claim in its --

THE COURT: Then sue to get it, and if you have a right to recover that cash, then you've got the cash. If you couldn't sue them to get that money and recover that and wouldn't be entitled to that, then you're not entitled to do what you're trying to do under the plan.

I mean, either they've got a right -- either they can reduce the credit by that -- the debt by that amount or they can't. I mean, either there's mutuality and therefore recoupment or there isn't.

MR. BROKER: Okay.

THE COURT: I think you're asking me because they got a fee that they shouldn't have gotten, so you're asking me to create the functional equivalent of giving you a

23

judgment for that amount, letting you collect it and letting you spend that money. And that's just a whole lot of hurdles for me to jump through just because it would make it easier for you to confirm a plan.

If that -- that is the economic equivalent, the legal equivalent of what you're saying.

MR. BROKER: Yes, it is.

THE COURT: And I am not prepared to just short-circuit it. If that's what you want to do, then you're going to have to bring that action. You're going to have to get that money, and then you'll have the money and you can spend it. But I don't see how I just jump over all that, assume it away and treat it like that.

Because the instances in which -- and the instances in which you would deny somebody the right of recoupment and say, no, you have to -- even though I owe you $32 million or 30 million or 20 -- whatever the number is, that you're going to have to pay me back the money, and I get to keep the cash and use it to pay you back in dribs and drabs over time, that would be an extraordinary fact pattern.

And I've certainly never authorized anything like that. So -- if there was a genuine right of recoupment. If there is no right of recoupment because there is no mutuality, then it certainly isn't the case where you can,

24

you know, make this -- then the analogy is the other fact pattern, which is you're essentially saying in your plan, I am assigning to you -- I am assigning to you an undivided interest in my right as against PCF to recover this money. And that's what I'm giving you as, you know, the indubitable equivalent of your claim or -- I'm paying you in property, if you will.

And I'm trying -- here's my assignment, and I'm assigning to you beneficiaries jointly and severally the right to sue PCF to get my money back. Because that's what you're doing. You're saying, I'm going to use that money to pay you with. And I don't think that works either.

But, you know, the fact that it was part of the -- you know, you financed the fees and it was added in and you paid interest on it, that to me says maybe it really does need to come off the balance. So maybe then you've persuaded me that this is something you should recoup. But it doesn't mean you can spend the money.

MR. BROKER: Very well, your Honor.

THE COURT: Do you want to talk about the classification or are we leaving that to Mr. Schnitzer?

MR. BROKER: Well, I think Mr. -- it's more Mr. Schnitzer's issue than the Debtor's issue. However, the Debtor did bring Deep Canyon to the party and doesn't dispute that Deep Canyon is entitled to be paid.

*Echo Reporting, Inc.*

# EXHIBIT 10

# EXHIBIT 10

JEFFREY W. BROKER – State Bar No. 53226
BROKER & ASSOCIATES PROFESSIONAL CORPORATION
18191 Von Karman Avenue, Suite 470
Irvine, CA 92612-7114

Telephone:   (949) 222-2000
Facsimile:   (949) 222-2022
Email:       *jbroker@brokerlaw.biz*

General Reorganization Counsel for
Debtor and Debtor-in-Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>THE PRESERVE, LLC, a California Limited Liability Company,<br><br><br>Debtor and<br>Debtor in Possession. | Case No. 2:10-bk-18429-BB<br><br>Chapter 11 Case<br><br>**DEBTOR'S FIFTH AMENDED CHAPTER 11 PLAN AS MODIFIED**<br><br>**Disclosure Statement Hearing**<br><br>Date:    April 7, 2011<br>Time:    2:00 p.m.<br>Ctrm:    1475<br>         255 East Temple Street<br>         Los Angeles, CA 90012<br><br>**Plan Confirmation Hearing**<br>     [See Disclosure Statement for Voting and Objecting Procedures]<br><br>Date:    August 25, 2011<br>Time:    10:00 a.m.<br>Ctrm:    1475<br>         255 East Temple Street<br>         Los Angeles, CA 90012 |

DEBTOR'S FIFTH AMENDED CHAPTER 11 PLAN AS MODIFIED

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................ 3

II.   CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ........ 4
    A.    General Overview ...................................................... 4
    B.    Unclassified Claims .................................................... 4
          1.    Administrative Expenses .......................................... 4
          2.    Priority Tax Claims ............................................... 5
    C.    Classified Claims and Interests ........................................ 6
          1.    Classes of Secured Claims ........................................ 6
          2.    Class of Priority Unsecured Claims ............................... 15
          3.    Classes of General Unsecured Claims ............................. 16
          4.    Class of Interest Holders ......................................... 18
    D.    Means of Performing the Plan .......................................... 18
          1.    Funding for the Plan ............................................. 18
          2.    Post-Confirmation Management ................................... 20
          3.    Disbursing Agent ............................................... 20
          4.    Payment of Professionals' Fees and Expenses After Confirmation Date .. 21
          5.    Compromise of Claims or Controversies ........................... 21
          6.    Disputed Claims ................................................ 21
          7.    Objections to Disputed Claims .................................... 22
          8.    Unclaimed Distributions .......................................... 22

III.  TREATMENT OF MISCELLANEOUS ITEMS .............................. 24
    A.    Executory Contracts and Unexpired Leases ............................. 24
          1.    Assumptions ................................................... 24
          2.    Rejections ..................................................... 24
    B.    Changes in Rates Subject to Regulatory Commission Approval ............. 24
    C.    Retention of Jurisdiction .............................................. 24

IV.  EFFECT OF CONFIRMATION OF PLAN ................................. 24
    A.    Discharge ............................................................ 24
    B.    Revesting of Property in the Debtor .................................... 24
    C.    Modification of Plan .................................................. 24
    D.    Post-Confirmation Status Report ....................................... 25
    E.    Quarterly Fees ....................................................... 25
    F.    Post-Confirmation Conversion/Dismissal Upon Default Under Plan .......... 25
    G.    Restriction Against Future Filing of a Bankruptcy Case ................... 25
    H.    Final Decree ......................................................... 26

EXHIBIT D-2 – SECTION 1111(b) ELECTION MINIMUM PAYMENT
SCHEDULE  AND MINIMUM CUMULATIVE LOT SALES SCHEDULE ......... 30
EXHIBIT F – LIST OF DISPUTED CLAIMS ............................... 32

## I.

## <u>INTRODUCTION</u>

The Preserve, LLC, a California Limited Liability Company, is the Debtor and Debtor-in-Possession in this Chapter 11 bankruptcy case (the "Debtor"). On September 25, 2008, the Debtor commenced a bankruptcy case by filing a voluntary Chapter 11 petition under the United States Bankruptcy Code ("Bankruptcy Code"), found at 11 U.S.C. §101 et seq. This document is the Fifth Amended Chapter 11 Plan ("Plan") proposed by the Debtor ("Plan Proponent"). Sent to you in the same envelope as this document is the Disclosure Statement which has been approved by the Court, and which is provided to help you understand the Plan.

This is a reorganizing Plan which provides for the payment of creditors of the Debtor as indicated in the treatment of creditors more particularly described below. The Reorganized Debtor will make the payments called for under the Plan out of (i) capital contributions to the Reorganized Debtor in the form of new value, (ii) from the proceeds from the future sale of all or a part of the residential portion of the Legacy Highlands project, or (iii) from litigation recoveries in the Point Center Litigation. The Debtor will, pursuant to this Plan, continue in its ongoing development program for the Legacy Highlands project, and will continue to maintain that property and its other properties, pay property taxes, insurance, and development costs in order to bring the Legacy Highlands project to a position where its future value will be realized for the benefit of creditors and the Reorganized Debtor. A condition precedent to confirmation of the Plan will be the Court finding that with its retention of jurisdiction, upon noticed motion for cause shown, that the Court can set release prices for portions of the residential portion of the Legacy Highlands project in such dollar amount(s) that the Court in the future will determine to be appropriate. The Effective Date of the proposed Plan shall be a date selected by the Debtor which shall be *no later than* the first calendar day of the second full month after the Confirmation Date, which would be no more than sixty-two (62) days after the Confirmation Date. The "Confirmation Date" is defined as the entry of an Order confirming this Plan which has become final, unless such finality requirement is waived by the Debtor.

-3-

DEBTOR'S FIFTH AMENDED CHAPTER 11 PLAN AS MODIFIED

## II.

## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

### A.    General Overview

As required by the Bankruptcy Code, the Plan classifies claims and interests in various classes according to their right to priority of payments as provided in the Bankruptcy Code. The Plan states whether each class of claims or interests is impaired or unimpaired. The Plan provides the treatment each class will receive under this Plan.

### B.    Unclassified Claims

Certain types of claims are not placed into voting classes; instead they are unclassified. They are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code. As such, the Proponent has not placed the following claims in a class. The treatment of these claims is provided below.

### 1.  Administrative Expenses

Administrative expenses are claims for costs or expenses of administering the Debtor's Chapter 11 case which are allowed under Code Section 507(a)(1). The Code requires that all administrative claims be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment. There are no administrative expenses under §507(b) of the Code, which would be claims based upon the granting of 'adequate protection' to a creditor that turns out to be 'inadequate' for that creditor other than the claim of Scott Krentel in connection with the lending of moneys to the Debtor during the course of this case. The following chart lists all of the Debtors' §507(a)(2) administrative claims and their treatment under this Plan.

| Name | Amount Owed | Treatment |
|------|-------------|-----------|
| Broker & Associates PC (general reorganization counsel to Debtor) | Nothing currently owed | Paid in full on Effective Date |
| Law Office of Richard A. Harvey (special litigation counsel to Debtor) | Nothing currently owed | Paid in full on Effective Date |

-4-

| Gresham Savage Nolan & Tilden APC (special litigation counsel to Debtor) | Amount claimed to be owing in the amount of $76,522.50 is disputed | Paid upon future Court determination of liability of Debtor for this claimed expense. The Debtor asserts that it is not liable for this amount claimed to be owing and, in addition, is entitled to a refund of $87,889.24 in fees already paid. |
| --- | --- | --- |
| Marshall & Stevens Incorporated (Real estate valuation and litigation support) | Nothing currently owed | Paid in full on Effective Date |
| Scott Krentel | Moneys owed under post-petition lending facility approved by Court per Order entered on November 26, 2008; $1,994,500 is owed as of December 31, 2010 | This obligation will be paid by the Reorganized Debtor out of future business operations in such fashion as to not interfere with the payment requirements to the secured and unsecured creditors under the Plan. A projected repayment schedule is set forth in Exhibit B to the Disclosure Statement. |
| Clerk's Office Fees | Nothing currently owed | Paid in full on Effective Date |
| Office of the U.S. Trustee Fees | Nothing currently owed | Paid in full on Effective Date |
| TOTAL | Estimate $TBD | |

Court Approval of Professional Fees Required:

The Court must approve all professional fees listed in this chart. For all fees except Clerk's Office fees and U.S. Trustee's fees, the professional in question must file and serve a properly noticed fee application and the Court must rule on the application. Only the amount of fees allowed by the Court will be required to be paid under this Plan.

2. **Priority Tax Claims**

Priority tax claims are certain unsecured income, employment and other taxes described by Code Section 507(a)(8). The Code requires that each holder of such a 507(a)(8) priority tax claim receive the present value of such claim in deferred cash payments, over a period not exceeding six years from the date of the assessment of such tax. The Debtor believes that it has no Section 507(a)(8) priority tax claims in this case. The County of Riverside filed claims pertaining to real

-5-

property taxes (Claim Nos. 3 in the amount of $63,264.40 for 2008 and Claim No. 12 in the amount of $164,414.21 for 2010-2011).  The Debtor asserts that all real property taxes have in fact been timely paid in full and disputes these claims.  In the event that those claims are not voluntarily withdrawn the Debtor will file objections to those claims on the basis that same have been paid in full by 60 days after the Effective Date.

## C.    Classified Claims and Interests

### 1.    Classes of Secured Claims

Secured claims are claims secured by liens on property of the estate.  The following chart lists all classes containing Debtor's secured pre-petition claims and their treatment under this Plan:

| CLASS# | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 1 | Secured claim of: *POINT CENTER FINANCIAL, INC. as alleged designated agent ("Point Center") for some of the alleged fractional interest holders* **[DISPUTED CLAIM]** Basis of Debt: *Loan arranged by Point Center in 2006 that is the subject of a Proof of Claim and the Point Center Litigation.* Collateral description: *Secured by a portion of the Legacy Highlands development in Riverside County, CA. consisting of approximately 636 acres of unimproved land* | No | Yes | See Treatment set forth below |

-6-

DEBTOR'S FIFTH AMENDED CHAPTER 11 PLAN AS MODIFIED

| CLASS# | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
|  | Collateral value: |  |  |  |
|  | *$18,620,000.00 subject to the lien of Class 1* |  |  |  |
|  | Priority of security interest. |  |  |  |
|  | *First Priority fractional interest in Deed of Trust that was originally recorded on October 23, 2006* |  |  |  |
|  | Principal owed: |  |  |  |
|  | **DISPUTED** |  |  |  |
|  | *$32,665,620.00 per proof of claim* |  |  |  |
|  | Pre-petition arrearage amount: |  |  |  |
|  | **DISPUTED** |  |  |  |
|  | *Interest in the amounts of $2,684,846.40 and $309,956.36 per proof of claim* |  |  |  |
|  | *Default interest of $2,121,026.76 per proof of claim* |  |  |  |
|  | Other charges and fees claimed: |  |  |  |
|  | **ALL DISPUTED** |  |  |  |
|  | *Late fees of $306,240.21 per proof of claim* |  |  |  |
|  | *Legal fees of $7,005.99 per proof of claim* |  |  |  |
|  | *TD Services Fees and Costs of $106,203.06 per proof of claim* |  |  |  |
|  | Post-petition arrearage amount |  |  |  |

-7-

DEBTOR'S FIFTH AMENDED CHAPTER 11 PLAN AS MODIFIED

| CLASS# | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| | *$ n/a because this creditor is undersecured and no charges in the form of accrual of interest or other charges are permitted under Code Section 506(b)* Total claim amount: *$38,200,489.64.* **DISPUTED** (Claim No. 4) | | | |

## Treatment of the Class 1 Claim

### (a) The Class 1 Claimant Does Not Make a Section 1111(b) Election

• A motion under Section 506(a) of the Code was brought by the Debtor to determine the value for Plan purposes of the Legacy Highlands project. The Court has determined the value of the collateral securing the Point Center claim is $18,620,000 and that the holder of the Class 1 claim is *undersecured.* The Plan bifurcates the Class 1 claim into a Class 1 secured claim and a Class 4 unsecured claim. Specifically, the Plan provides that Class 1 is a secured claim in the amount of the Court-determined value of the property securing such claim ($18,620,000) and an unsecured Class 4 claim for the balance ($19,580,489.64). Accordingly, the holder of the Class 1 Claim shall receive two forms of distributions: one pursuant to the secured claim, and one pursuant to the general unsecured claim. Furthermore, the Class 1 Claimant shall have the right to vote both in the secured creditor class of claims and in the general unsecured creditor class of claims. However, the holder of the Class 1 claim may <u>elect</u> different treatment as described in (b) below.

• Unless Point Center on behalf of Class 1 makes an election under Section 1111(b), this claim will be treated under the Plan as secured in an amount equal to the value of the Collateral, which has been determined by the Court to be $18,620,000.00. This amount will be the beginning principal loan balance of the secured portion of the Class 1 Claim (unless Point Center makes a Section 1111(b) election) for distribution purposes under the Plan.

-8-

DEBTOR'S FIFTH AMENDED CHAPTER 11 PLAN AS MODIFIED

• The balance of this Creditor's claim beyond the amount paid as the holder of a Class 1 Claim will be treated as a Class 4 General Unsecured Claim. This claim is disputed, is the subject of the Point Center Litigation, and any and all distributions will be paid into the Disputed Claims Reserve and will be governed by the procedures for the treatment of Disputed Claims set forth in Section II.D.6. hereinbelow.

• On the Effective Date, cash in an amount equal to forty-eight (48) months of interest only payments on the secured portion of the Class 1 Claim (if no Section 1111(b) election is made) will be deposited into the Disputed Claims Reserve in the amount of $2,048,208. The interest rate is to be a fixed rate for the first forty-eight (48) months after the Effective Date of the Plan of 2.75%, based upon the "prime rate" existent as of the commencement of the hearing on confirmation of the Plan (the "prime rate" is presently 3.25%), minus a "riskless adjustment" of fifty basis points (0.5%). To the extent the principal balance of the allowed secured claim is reduced in an accelerated fashion, the Debtor may request that the Court permit excess funds in the Disputed Claims Reserve to either be (i) applied in further reduction of principal or (ii) released to the Debtor, in the Debtor's business judgment. Commencing on the forty-ninth (49th) month following the Effective Date of the Plan the interest rate will be increased to a fixed rate of 5.75%, based upon the "prime rate" existent as of the commencement of the hearing on confirmation of the Plan (the "prime rate" is presently 3.25%), plus a "risk adjustment" of two hundred fifty basis points (2.5%), with a minimum monthly payment of $203,869 which includes amortization of principal over ten years. If the Disputed Claims Reserve is not operative all future payments called for hereunder shall be paid directly to the holder of the Class 1 Claim.

• To the extent the principal balance of the allowed secured claim is reduced in an accelerated fashion, the monthly interest and principal payment after the 49th month will be correspondingly less so long as a ten year amortization of principal remains.

• 14 year term that will have initial payments of interest only, payable monthly, starting on the Effective Date. Interest rate will be as set forth above and principal will accrue interest at that fixed rate commencing as of the Confirmation Date. During the 14 year term, periodic principal reductions will occur out of the future sale of all or a part of the residential portion of the Legacy

-9-

Highlands project to be paid into the Disputed Claims Reserve if it is still operative at such time. The Court will retain jurisdiction for the purpose of determining an appropriate release price in connection with any proposed future sale. 100% of the proceeds of sale attributable to the then current market value of the property to be released shall be paid in cash to the holder of the Class 1 Claim. The unpaid balance of accrued interest and any remaining principal will be all due and payable at maturity. The monthly interest only payment for the first 48 months is $42,671 based on an allowed secured claim of $18,620,000.00, will be paid into the Disputed Claims Reserve as provided above, and will be governed by the procedures regarding Disputed Claims. This claim will be paid out of capital contributions, and the future sale of all or a part of the residential portion of the Legacy Highlands project.

• In the event that the Point Center Litigation results in an affirmative damages recovery for the Debtor in any amount, the Debtor may, in its business judgment with Court Authority seek to apply, in whole or in part, such recovery first against the payments called for under the secured portion of the Point Center Class 1 Claim, and thereafter against the unsecured portion of the Point Center Class 4 Claim if no Section 1111(b) election is made by this Claimant. The Debtor will take into account the projections for the development process, and will take into account any monetary recovery and its reserves at that point. The Debtor may, in its business judgment, retain, in whole or in part, any or all monetary damages recovery for use in its future business operations. In making this determination Debtor will first conclude whether sufficient funds are available to cover the payments required under the plan. If sufficient funds are available then Debtor may, in its business judgment, choose to retain the remainder of the affirmative damage award for use in either its business operations or to accelerate other payments called for under the plan (such as an acceleration of payments to be made to unsecured creditors).

• The Debtor shall have the right to prepay this claim in whole or in part at any time without penalty and obtain a full or partial reconveyance of the lien pertaining to this claim pursuant to further Order(s) of this Court, subject to the requirements for the treatment of Disputed Claims. The Bankruptcy Court will reserve jurisdiction in the event that the Debtor brings on for hearing a future motion for the imposition of a release price for a portion of the property subject to the lien of

-10-

the Class 1 Claimant in connection with the future sale of all or a part of the residential portion of the Legacy Highlands project.

### (b) The Class 1 Claimant Elects Section 1111(b) Treatment

• The Debtor will request pursuant to Bankruptcy Rule 3014 that the Class 1 Claimant be required to make the election by no later than seven (7) days after the entry of an Order approving the Disclosure Statement in this case.

• If the holder of the Allowed Class 1 Claim qualifies and timely elects to be treated pursuant to Bankruptcy Code Section 1111(b)(2), then such claim shall be deemed to be _fully secured_ in the amount of $38,200,489.64 (with no Class 4 Claim) and shall be fully paid over a time period sufficient to provide a present value equal to such holder's interest in the Collateral using a minimum 6.5% discount rate with a ten year payment schedule as described in Exhibit D-2 hereto. Payments pursuant to the Section 1111(b) election shall commence on 90th day following the Effective Date and shall be paid with an initial quarterly payment in the amount of $302,575.00 and thereafter paid in accordance with the terms set out in Exhibit D-2 with payment of the remaining balance due no later than the fourth quarter of 2021. In addition, payments shall be made on account of the Class 1 Claim out of the future sale of all or a part of the residential portion of the Legacy Highlands project. The Court will retain jurisdiction for the purpose of determining an appropriate release price in connection with any proposed future sale. 100% of the proceeds of sale attributable to the then current market value of the property to be released shall be paid in cash to the holder of the Class 1 Claim. To the extent lot sales occur on an accelerated basis and payments exceed the "Minimum Cumulative Payments Required" at any given time, Debtor will not be obligated to make additional payments until necessary to stay ahead of the "Minimum Cumulative Payments Required" schedule set forth on Exhibit D-2. By way of example, if Debtor has a $4,000,000 sale of 250 lots in Q4 2012, Debtor's next payment would not occur until Q2 2015. Debtor reserves the right to propose a modification of this payment schedule in connection with any lot sales. Further, in the event that the Point Center Litigation results in an affirmative damages recovery for the Debtor in _any_ amount, the Debtor may, in its business judgment seek Court authority to apply, in whole or in part, such recovery against the fully secured Point Center

-11-

Class 1 Claim in the event that the Section 1111(b) election is made. The Debtor may, in its business judgment, retain, in whole or in part, any monetary damages recovery for use in its future business operations. In making this determination Debtor will first conclude whether sufficient funds are available to cover the payments required under the plan. If sufficient funds are available then Debtor may, in its business judgment, choose to retain the remainder of the affirmative damage award for use in either its business operations or to accelerate other payments called for under the plan (such as an acceleration of payments to be made to unsecured creditors). The holder of the Class 1 Claim will retain its lien on the collateral for the amount of its allowed secured claim (except as provided herein, less the application of payments made under the Plan) until it is paid in full.

• The Debtor shall have the right to prepay this claim in whole or in part at any time without penalty and obtain a full or partial reconveyance of the lien pertaining to this claim pursuant to further Order(s) of this Court. The Bankruptcy Court will reserve jurisdiction in the event that the Debtor brings on for hearing a future motion for the imposition of a release price for a portion of the property subject to the lien of the Class 1 Claimant in connection with the future sale of all or a part of the residential portion of the Legacy Highlands project.

TO MAKE AN 1111(b) ELECTION, THE DEBTOR WILL REQUEST THAT THE COURT ORDER THE HOLDER OF THE CLASS 1 CLAIM FILE A NOTICE OF INTENT TO ELECT SECTION 1111(b) TREATMENT WITH THE COURT AND SERVE DEBTOR'S GENERAL REORGANIZATION COUNSEL BY MAILING SAME TO THE ATTENTION OF JEFFREY W. BROKER AT THE ADDRESS ON THE FIRST PAGE OF THIS DISCLOSURE STATEMENT BY NO LATER THAN SEVEN (7) DAYS AFTER THE ENTRY OF AN ORDER APPROVING THE DISCLOSURE STATEMENT IN THIS CASE. THE NOTICE MUST BE RECEIVED AT THE ABOVE ADDRESS ON THE DATE IT IS DUE.

-12-

### (c) Procedure for Determination of Release Prices

• The Bankruptcy Court will reserve jurisdiction in the event that the Debtor brings on for hearing a future motion for the imposition of a release price for a portion of the property subject to the lien of the Class 1 Claimant in connection with the future sale of all or a part of the residential portion of the Legacy Highlands project.

• The Debtor will file and serve the holder of the Class 1 Claim and its counsel with a Motion (the "Motion") in compliance with the Local Bankruptcy Rules seeking an Order of the Court determining a release price for a portion of the property subject to the lien of the Class 1 Claimant (the "Released Property").

• The Motion will present appraisal testimony relating to the value of the Released Property which will be proposed to be sold to a joint venture to which the Debtor will also provide future services, as well as appraisal testimony relating to the remaining collateral.

• The Motion will provide that 100% of the sales proceeds, which shall at a minimum be equal to the appraised value attributable to the Released Property will be paid to the holder of the Class 1 Claim in exchange for the delivery of marketable title to the Released Property.

• The Motion will provide that the sales proceeds received by the Class 1 Claimant shall reduce the principal balance of the Class 1 Claim in the manner set forth hereinabove.

• The Motion will propose a revised payment schedule on account of the reduced principal balance of the Class 1 Claim for Court approval.

• The Motion shall set forth the fixed service fee to be payable to the Debtor for future services provided by the Debtor to the joint venture which shall be subsequently payable at the time of completion of the 'blue topping' of the Released Property. The Debtor shall provide the Court with evidence of the reasonableness of the fixed service fee set forth in the Motion for its approval.

### (d) Minimum Cumulative Lot Sales Schedule

In addition to the minimum payment requirements called for hereunder, attached hereto as Exhibit D-2 is a schedule of the cumulative number of lots to be sold during the term of the Plan. The failure to achieve the cumulative number of lot sales described in Exhibit D-2 would constitute a default under the Plan.

-13-

DEBTOR'S FIFTH AMENDED CHAPTER 11 PLAN AS MODIFIED

| CLASS# | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 2 | Secured claim of: *The William Marano Living Trust* Collateral description: *112 Acres of vacant land under development in Riverside County, CA.* Collateral value: *Unknown* Priority of security interest. *First Deed of Trust* Principal owed: *Debtor contends the debt is in the amount of $4,125,000.00* *Class 3 Claimant asserts the principal amount is $4,150,000.00 per proof of claim* Other charges and fees claimed: *Interest in an unspecified amount per proof of claim* Pre-petition arrearage amount: *Unspecified in proof of claim* Post-petition monthly arrearage amount at contract rate: *$n/a per agreement* Total proof of claim amount: *$4,150,000.00* Estimated claim for distribution: *$4,125,000.00* (Claim No. 8) | No | No | The principal amount of this claim will be payable pursuant to the terms and conditions of its written agreement with the Debtor dated December 10, 2004, a copy of which is attached in Exhibit C to the Disclosure Statement, following the last page of Debtor's Amended Schedule D. Per the terms of that agreement, any pre-petition interest and post-petition interest shall accrue at the rate of 10% per annum but shall only be payable up to a maximum of $6,400,000 out of and if there are net profits in connection with the Legacy Highlands project of $20,000,000 in accordance with the terms of the treatment of the Class 5 Claim.  A pro-rata portion of the $6,400,000 is to be paid if net profits less than $20,000,000 are achieved. In the event that the Class 2 Claimant initiates litigation that results in a money judgment against the Debtor, the Debtor will pay such judgment when required to do so out of existing or additional capital. |

-14-

| CLASS# | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| **3** | Secured claim of: *Barry Hildebrandt* Collateral description: *Office building located at 4191 Brockton Avenue, Riverside, CA 92502* Collateral value: ***Exceeds claim*** Priority of security interest. *All Inclusive Deed of Trust (in first lien position)* Principal owed: *$575,000* Pre-petition arrearage amount: *0* Post-petition arrearage amount: *0* Total claim amount: *$575,000* | No | Yes | Commencing on the Effective Date, <u>Section 2.2</u> of the All-Inclusive Land Sale Contract dated February 1, 2007 by and between the Class 4 Claimant and the Debtor (the "Contract") will be <u>modified</u> as follows: • The monthly payment requirement under the Contract will increased by 10%, from $1,600.00 to $1,760.00. • The term of the Contract will be extended from January 31, 2013 to January 31, 2018. • All other terms and conditions of the Contract are to remain unchanged. |

### 2.    Class of Priority Unsecured Claims

Certain priority claims that are referred to in Code Sections 507(a)(3), (4), (5), (6), and (7) are required to be placed in classes. These types of claims are entitled to priority treatment as follows: the Code requires that each holder of such a claim receive cash on the Effective Date equal to the allowed amount of such claim. However, a class of unsecured priority claim holders may vote to accept deferred cash payments of a value, as of the Effective Date, equal to the allowed amount of such claims. <u>The Debtor believes that it has no such claim holders.</u>

-15-

DEBTOR'S FIFTH AMENDED CHAPTER 11 PLAN AS MODIFIED

### 3.    Classes of General Unsecured Claims

General unsecured claims are unsecured claims not entitled to priority under Code Section 507(a). The following charts identify this Plan's treatment of the two classes of Debtor's general unsecured claims: (i) those creditors with presently payable claims (Class 4) and (ii) that creditor whose claim is payable only upon the occurrence of future contingencies (Class 5):

| CLASS# | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 4 | General Unsecured Creditors<br><br>Estimated amount of Undisputed Claims: $6,276,000<br><br>Estimated amount of Disputed Claims scheduled or filed in the case: $16,233<br><br>Estimated amount of Disputed unsecured portion of Class 1 Claim: $19,580,489.64 | No | Yes | The holders of Allowed Claims in this Class will share pro-rata in payments totaling $6,300,000. An initial distribution of cash in the amount of $500,000 out of the Capital Contribution shall be paid by five (5) days after the Effective Date. No interest will be paid to this Class.<br><br>In addition, there will be future cash distributions sufficient to total $6,300,000 commencing in the third quarter of 2014. The funding will come from future sales of portions of the Legacy Highlands project after the payment of release prices to the holder of the Class 1 Claim. This class shall receive $15,000 in quarterly payments for the first three years. Quarterly payments shall be increased to $30,000 commencing in the third quarter of 2017 until the entirety of the additional funds necessary to total $6,300,000 has been paid in full, which the Debtor projects will occur by no later than the end of the fourth quarter of 2021.<br><br>Payments could commence earlier depending upon the results of the Point Center Litigation.<br><br>Any funds allocable to Disputed Claims are to be held in the Disputed Claims Reserve and later disbursed in accordance with the provisions of the Plan pertaining thereto. If the Disputed Claims Reserve is not operative all future payments called for |

-16-

| CLASS# | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| | | | | hereunder shall be paid directly to the holder of the Class 1 Claim. |
| 5 | General Unsecured Creditor holding contingent claim: *The William Marano Living Trust* Estimated amount of contingent Claim: $6,400,000 | No | No | The holder of the Allowed Claim in this Class will be paid pursuant to the terms and conditions of its written agreement with the Debtor dated December 10, 2004 only out of net profits arising from future sales of all or portions of the Legacy Highlands. Interest will only be payable to the Class 5 Claimant in the fashion set forth in its written agreement with the Debtor a copy of which is attached in Exhibit C to the Disclosure Statement, following the last page of Debtor's Amended Schedule D. Per the terms of that agreement, any pre-petition interest and post-petition interest shall accrue at the rate of 10% per annum but shall only be payable up to a maximum of $6,400,000 out of and if there are net profits in connection with the Legacy Highlands project of $20,000,000 in accordance with the terms of the treatment of the Class 5 Claim. A pro-rata portion of the 6,400,000 is to be paid if net profits less than $20,000,000 are achieved. In the event that the Class 5 Claimant initiates litigation that results in a money judgment against the Debtor, the Debtor will pay such judgment when required to do so out of existing or additional capital. |

-17-

DEBTOR'S FIFTH AMENDED CHAPTER 11 PLAN AS MODIFIED

### 4. Class of Interest Holders

Interest holders are the parties who hold ownership interests (i.e., equity interests) in the Debtor. If the Debtor is a corporation, entities holding preferred or common stock in the Debtor are interest holders as is the case with a Limited Liability Company, whose members are its interest holders. The Debtor's two members are MGM Property Holdings, which has a 75% interest and Kamran Group II, LLC which has a 25% interest. The following chart identifies this Plan's treatment of the class of interest holders:

| CLASS # | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---------|-------------|----------------|----------------|-----------|
| 6 | Interest holders | Yes | YES | INTERESTS ARE CANCELLED |

### D. Means of Performing the Plan

### 1. Funding for the Plan

The Reorganized Debtor will make the payments called for under the Plan out of (i) capital contributions to the Reorganized Debtor, (ii) from the proceeds from the future sale of all or a part of the residential portion of the Legacy Highlands project, or (iii) from litigation recoveries in the Point Center Litigation. A condition precedent to confirmation of the Plan will be the Court finding that with its retention of jurisdiction, upon noticed motion for cause shown, that the Court can set future release prices for portions of the residential portion of the Legacy Highlands project in such dollar amount(s) that the Court will determine to be appropriate. As part of the entitlement process, the Debtor has submitted to the City of Beaumont a plan which calls for development and build-out of the project in twenty-three (23) phases. The development of blue top lots may occur before, after or concurrently with an outright sale or joint venture with a home builder that contemplates the passage of title with a partial release of the lien of the Class 1 Claim, with Court approval. Following the sale to the joint venture, the Debtor will earn a service fee for its continued involvement in the 'blue topping' process. There is a further discussion concerning the Funding for the Plan set forth in Section III.D.1 of the Disclosure Statement.

-18-

DEBTOR'S FIFTH AMENDED CHAPTER 11 PLAN AS MODIFIED

On the Effective Date of the Plan, the New Member(s) will acquire ownership of 100% of the membership Interest in the Reorganized Debtor. In return, the New Member(s) will make a capital contribution of not less than $7,600,000 to the Reorganized Debtor on the Effective Date (the "Capital Contribution"). The identity of each New Member, the percentage interest in the Reorganized Debtor of such new member, and the minimum capital contribution of such New Member is as follows:

| Name of New Member | % Interest | Capital Contribution |
|---|---|---|
| Deep Canyon Holdings | 100% | $7,600,000.00 |

None of the owners or shareholders of Deep Canyon is a member or other beneficial interest holder of the existing Interest holders in the Debtor. None of the members or beneficial Interest holders of the Debtor have a beneficial interest in Deep Canyon. The person most knowledgeable on behalf of Deep Canyon will be available to provide testimony in this case.

In consideration of continuity of the Project and for the continued use of the expertise and development knowledge of MGM Holdings, Deep Canyon will subsequently convey to MGM Holdings, pursuant to a separate written agreement outside of the terms of the Plan, a 65% membership interest in the Reorganized Debtor out of the new membership Interest that Deep Canyon is to receive in connection with the Plan. The foregoing is for disclosure and informational purposes only.

The Debtor may, at any time prior to the Effective Date, substitute one or more alternative persons or entities as New Members, provided that such substitute New Members shall not be existing members of the Debtor, and such substitute New Members shall contribute sufficient capital contribution such that the total raised is $7,600,000 in new capital contributions. Upon the Effective Date of the Plan, the Capital Contribution shall be deposited into the general account of the Debtor at a federally insured financial institution to be used in accordance with the provisions of this Plan to fund the following:

(a)    In the event that Class 1 does not make the Section 1111(b) election, a payment into the Disputed Claims Reserve for the Class 1 Claim in an amount equal to forty-eight months' payments due under the Plan in the amount of $2,048,208. Payments are to

-19-

DEBTOR'S FIFTH AMENDED CHAPTER 11 PLAN AS MODIFIED

be disbursed from this account in accordance with the terms of Section II.D.6 of the Plan;

(b)  $500,000 is to be paid pursuant to the Plan on a pro-rata basis to the Class 4 Claimants in the event that Class 1 does not make the Section 1111(b) election;

(c)  In the event that Class 1 makes the Section 1111(b) election, payments are to be disbursed in accordance with the terms of Section II.C of the Plan;

(d)  $500,000 is to be paid pursuant the Plan on a pro-rata basis to the Class 4 Claimants in the event that Class 1 makes the Section 1111(b) election; and

(e)  $500,000 is to be paid to unpaid administrative claimants, which shall include post-petition loans to the Debtor.

The Debtor will, pursuant to this Plan, continue in its ongoing development program for the Legacy Highlands project, and will continue to maintain that property and its other properties, pay property taxes, insurance, and development costs in order to bring the residential portion of the Legacy Highlands project to a position where its future value will be realized for the benefit of creditors and the Debtor.  Only Creditors holding Allowed Claims will receive distributions and a reserve will be set up for filed or scheduled claims identified in Exhibit A hereto (other than the Point Center Class 1 Claim) that will be the subject matter of the claims objection process described in Sections II.D.6 and 7 below, or who did not file claims by the bar date.

**2.    Post-Confirmation Management**

The same manager of the Debtor, Beaumont 1600, LLC which has performed services through its various consultants both before and after the filing of the case, shall continue to oversee the management of its post-confirmation business affairs in order to assure that the Debtor will fully perform under the Plan.  Beaumont 1600, LLC will continue to be paid a monthly management fee of $20,000.00 per month plus reimbursement of ordinary and necessary costs as it was paid during the course of the Chapter 11 case.

**3.    Disbursing Agent**

The Reorganized Debtor shall act as the disbursing agent for the purpose of making all distributions provided for under the Plan to the holders of Claims that are not disputed except to the

-20-

DEBTOR'S FIFTH AMENDED CHAPTER 11 PLAN AS MODIFIED

extent that funds are held in the Disputed Claims Reserve under the control of the Reorganized Debtor or an escrow. The Reorganized Debtor as the Disbursing Agent shall serve without bond.

### 4. Payment of Professionals' Fees and Expenses After Confirmation Date

Any professional employed by the Debtor after the Confirmation Date shall be entitled to obtain payment of its fees and costs as a post-confirmation expense of the Reorganized Debtor without the need for any further order of the Bankruptcy Court with respect thereto.

### 5. Compromise of Claims or Controversies

From and after the Confirmation Date the Reorganized Debtor shall be entitled to compromise any Claim or controversy, pursuant to Stipulation and Order of the Bankruptcy Court with respect thereto without the need for notice and a hearing.

### 6. Disputed Claims

In the case of any claim that is disputed by the Debtor or asserted by the Debtor as being contingent (a "Disputed Claim"), the holder of the Disputed Claim shall receive no distribution under the Plan unless such creditor timely filed a proof of claim prior to the bar date or unless and until the Disputed Claim is allowed by a Final Order of the Bankruptcy Court that is not subject to an appeal or the contingency has been resolved. Pending the entry of any Final Order not subject to an appeal determining the allowed amount of a Disputed Claim, all distributions allocable to such Disputed Claim shall be deposited into an interest-bearing segregated bank account at a federally insured financial institution, or a financial instrument acceptable to the Court deposited into an escrow, based upon the face amount of the Disputed Claim, subject to further order of the Bankruptcy Court (the "Disputed Claims Reserve"). The claim of Point Center shall be deemed to be a 100% Disputed Claim, but it will receive distributions hereunder without payments being made into the Disputed Claims Reserve. The fact that Point Center receives payments without use of the Disputed Claims Reserve will be without prejudice to the rights of the Debtor in the Point Center Litigation and without prejudice to the rights of Deep Canyon should it bring its own litigation against Point Center. A list of Disputed Claims is attached hereto as Exhibit A. No disbursement shall be made from the Disputed Claims Reserve without the written consent of the Debtor and the holder of the Disputed Claim, or by Order of the Bankruptcy Court.

-21-

DEBTOR'S FIFTH AMENDED CHAPTER 11 PLAN AS MODIFIED

In the event that a Final Order is entered allowing a Disputed Claim and is not subject to an appeal, within five days thereafter the amount reserved in the Disputed Claims Reserve on account of such Allowed Claim shall be disbursed to the holder of such Allowed Claim, and any further distributions on account of such Allowed Claim shall be paid directly to the holder of the Allowed Claim in an aggregate amount not to exceed the amount of the Allowed Claim.

**7.      Objections to Disputed Claims**

The Debtor shall have the right to file and prosecute objections to any Disputed Claims after the Confirmation Date. Objections to any Disputed Claim shall be filed by sixty (60) days after the Effective Date. The Debtor has initiated litigation against Point Center and others and such action shall be deemed to constitute an objection to the Disputed Claim of Point Center without the need for the filing of any further action in the Bankruptcy Court. The Debtor reserves the right to file an objection to selected portions of the Disputed Claim of Point Center if it so chooses. The Bankruptcy Court may extend the time for objecting to Disputed Claims for cause shown, upon motion made after such notice as the Bankruptcy Court may deem appropriate.

The Debtor has reviewed all of the claims in this case and has determined that some of them will be subject to objection, and has so indicated in Exhibit A hereto. The investigation into claims is ongoing and will continue after the Confirmation Date. As a result, Creditors and parties-in-interest are hereby specifically advised that, notwithstanding that the existence of any particular objection to Claim may not be listed, disclosed or set forth in the Plan or Disclosure Statement, an objection to a Claim may be filed against a claimant at any time, subject to the claims objections limitations set forth hereinabove.

**8.      Unclaimed Distributions**

Each Claimant shall provide to the Debtor's counsel written notice of any change of address from the address of the Claimant set forth in the Schedules or in any Proof of Claim filed by the Claimant. The Debtor shall be entitled to rely upon the address for the Claimant set forth in the Schedules or in any Proof of Claim filed by the Claimant, and shall not be required to perform any investigation or inquiry as to the proper address for such Claimant if the address stated in the Schedules or in the Proof of Claim is incorrect. Any unclaimed Distribution ("Unclaimed

-22-

DEBTOR'S FIFTH AMENDED CHAPTER 11 PLAN AS MODIFIED

Distribution") provided for under the Plan (which shall include (i) checks which have been returned as undeliverable without a proper forwarding address, (ii) checks which were not mailed or delivered because of the absence of a proper address to which to mail or deliver the same or (iii) checks which remain unclaimed for a period of one hundred eighty (180) days) shall be deposited by the Debtor into an unclaimed property reserve ("Unclaimed Property Reserve") to be held in trust for the benefit of holders of Allowed Claims entitled thereto under the terms of the Plan. For the earlier to occur of (i) one (1) year after an Unclaimed Distribution is deposited into the Unclaimed Property Reserve or (ii) ninety (90) days after the making of the Final Distribution to be made to any Creditor under the Plan (the "Unclaimed Property Holding Period") such Unclaimed Distribution shall be held in the Unclaimed Property Reserve for the benefit of the holders of Allowed Claims who failed to previously claim such Unclaimed Distribution. Any holder of an Allowed Claim entitled to an Unclaimed Distribution may request payment from the Debtor; provided, however that after the expiration of the Unclaimed Property Holding Period, such Unclaimed Distribution shall be refunded to the Reorganized Debtor for its use to the extent still required under the Plan, and the holders of Allowed Claims otherwise entitled to said Unclaimed Distribution shall cease to be entitled thereto and their claims based thereon shall be deemed waived and forever barred.

//

//

//

//

//

-23-

DEBTOR'S FIFTH AMENDED CHAPTER 11 PLAN AS MODIFIED

## III.

## TREATMENT OF MISCELLANEOUS ITEMS

**A.    Executory Contracts and Unexpired Leases**

    **1.    Assumptions**

The Debtor believes that it has no executory contracts or unexpired leases.

    **2.    Rejections**

The Debtor believes that there are no executory contracts or unexpired leases that will be rejected under the Plan.

**B.    Changes in Rates Subject to Regulatory Commission Approval**

The Debtor is not subject to governmental regulatory commission approval of rates.

**C.    Retention of Jurisdiction**

The Court will retain jurisdiction to the extent required by law and as described in the Plan.

## IV.

## EFFECT OF CONFIRMATION OF PLAN

**A.    Discharge**

This Plan provides that upon Plan confirmation, the Debtor shall be discharged of liability for payment of debts incurred before confirmation of the Plan, to the extent specified in 11 U.S.C. §1141.  However, any liability imposed by the Plan will not be discharged.

**B.    Revesting of Property in the Debtor**

Except as provided in Section IV.F., and except as provided elsewhere in this Plan, the confirmation of the Plan revests all of the property of the estate in the Debtor.

**C.    Modification of Plan**

The Proponent of the Plan may modify the Plan at any time before confirmation.  However, the Court may require a new disclosure statement and/or revoting on the Plan if the Plan Proponent modifies the plan in a material fashion before confirmation.

The Proponent of the Plan may also seek to modify the Plan at any time after confirmation so long as (1) the Plan has not been substantially consummated and (2) the Court authorizes the proposed modifications after notice and a hearing.

-24-

**D.    Post-Confirmation Status Report**

Within 120 days of the entry of the order confirming the Plan, the Plan Proponent shall file a status report with the Court explaining what progress has been made toward consummation of the confirmed Plan. The status report shall be served on the United States Trustee, the twenty largest unsecured creditors, and those parties who have requested special notice. Further status reports shall be filed every 120 days and served on the same entities until the case is closed.

**E.    Quarterly Fees**

Quarterly fees accruing under 28 U.S.C. §1930(a)(6) to date of confirmation shall be paid to the United States Trustee on or before the Effective Date of the Plan. Quarterly fees accruing under 28 U.S.C. §1930(a)(6) after confirmation shall be paid to the United States Trustee in accordance with 28 U.S.C. §1930(a)(6) until entry of a final decree, or entry of dismissal or conversion to Chapter 7.

**F.    Post-Confirmation Conversion/Dismissal Upon Default Under Plan**

A creditor or party in interest may bring a motion to convert or dismiss the case under § 1112(b), after the Plan is confirmed, if there is a default in performing the Plan which is not cured by the Debtor within thirty (30) days after written notice to it and its counsel. In such event the Debtor will not oppose conversion to Chapter 7. If the Court orders the case converted to Chapter 7 after the Plan is confirmed, then all property that had been property of the Chapter 11 estate, and that has not been disbursed pursuant to the Plan, will revest in the Chapter 7 estate, and the automatic stay will be reimposed upon the revested property only to the extent that relief from stay was not previously granted by the Court during this case.

**G.    Restriction Against Future Filing of a Bankruptcy Case**

If a case is re-filed with the United States Bankruptcy Court by the Debtor, the case shall be assigned to the Honorable Sheri Bluebond, United States Bankruptcy Judge. In such event the case shall be dismissed or relief from stay granted, unless the filing of the case is due to causes not reasonably foreseeable at the time of confirmation of the Plan.

DEBTOR'S FIFTH AMENDED CHAPTER 11 PLAN AS MODIFIED

**H.    Final Decree**

Once the estate has been substantially consummated, the Plan Proponent, or other such party as the Court shall designate in the Plan Confirmation Order, may file a motion with the Court to obtain a final decree to close the case.

Dated:  September 28, 2011

The Preserve LLC,
a California Limited Liability Company

By:  Beaumont 1600, LLC,
a California Limited Liability Company
Its:  Manager

_____
By: Scott H. Krentel
Its:  Manager

APPROVED AS TO FORM AND CONTENT:

BROKER & ASSOCIATES
PROFESSIONAL CORPORATION

By  _____
Jeffrey W. Broker
General Reorganization Counsel for Debtor
and Debtor-in-Possession

-26-

DEBTOR'S FIFTH AMENDED CHAPTER 11 PLAN AS MODIFIED

# EXHIBIT D-2

**EXHIBIT D-2 TO PLAN**

**SECTION 1111(b) ELECTION MINIMUM PAYMENT SCHEDULE**

**AND**

**MINIMUM CUMULATIVE LOT SALES SCHEDULE**

-27-

Class 1 Minimum Payment Schedule

| Payment Date | | Amount* | Minimum Cumulative Lot Sales** | Cumulative Percentage of Lots Sold | Minimum Additional Payment Due to Cumulative Lot Sales*** | Minimum Cumulative Payments Required**** |
|---|---|---|---|---|---|---|
| Q1 | 2012 | $302,575 | | | | $302,575 |
| Q2 | 2012 | $302,575 | | | | $605,150 |
| Q3 | 2012 | $302,575 | | | | $907,725 |
| Q4 | 2012 | $302,575 | | | | $1,210,300 |
| Q1 | 2013 | $302,575 | | | | $1,512,875 |
| Q2 | 2013 | $302,575 | | | | $1,815,450 |
| Q3 | 2013 | $302,575 | | | | $2,118,025 |
| Q4 | 2013 | $302,575 | | | | $2,420,600 |
| Q1 | 2014 | $302,575 | | | | $2,723,175 |
| Q2 | 2014 | $302,575 | | | | $3,025,750 |
| Q3 | 2014 | $302,575 | | | | $3,328,325 |
| Q4 | 2014 | $302,575 | | | | $3,630,900 |
| Q1 | 2015 | $302,575 | | | | $3,933,475 |
| Q2 | 2015 | - | 250 | 8.72% | $3,329,889 | $7,263,364 |
| Q3 | 2015 | - | | | | $7,263,364 |
| Q4 | 2015 | - | | | | $7,263,364 |
| Q1 | 2016 | - | | | | $7,263,364 |
| Q2 | 2016 | - | 550 | 19.18% | $3,995,867 | $11,259,231 |
| Q3 | 2016 | - | | | | $11,259,231 |
| Q4 | 2016 | - | | | | $11,259,231 |
| Q1 | 2017 | - | | | | $11,259,231 |
| Q2 | 2017 | - | 900 | 31.38% | $4,661,845 | $15,921,076 |
| Q3 | 2017 | - | | | | $15,921,076 |
| Q4 | 2017 | - | | | | $15,921,076 |
| Q1 | 2018 | - | | | | $15,921,076 |
| Q2 | 2018 | - | 1250 | 43.58% | $4,661,845 | $20,582,921 |
| Q3 | 2018 | - | | | | $20,582,921 |
| Q4 | 2018 | - | | | | $20,582,921 |
| Q1 | 2019 | - | | | | $20,582,921 |
| Q2 | 2019 | - | 1600 | 55.79% | $4,661,845 | $25,244,766 |
| Q3 | 2019 | - | | | | $25,244,766 |
| Q4 | 2019 | - | | | | $25,244,766 |

EXHIBIT "10"

## Class 1 Minimum Payment Schedule

| Payment Date | Amount* | Minimum Cumulative Lot Sales** | Cumulative Percentage of Lots Sold | Minimum Additional Payment Due to Cumulative Lot Sales*** | Minimum Cumulative Payments Required**** |
|---|---|---|---|---|---|
| Q1 2020 | - | | | | $25,244,766 |
| Q2 2020 | - | 2000 | 69.74% | $5,327,823 | $30,572,589 |
| Q3 2020 | - | | | | $30,572,589 |
| Q4 2020 | - | | | | $30,572,589 |
| Q1 2021 | - | | | | $30,572,589 |
| Q2 2021 | - | 2425 | 84.55% | $5,660,812 | $36,233,401 |
| Q3 2021 | - | | | | $36,233,401 |
| Q4 2021 | - | 2868 | 100.00% | $1,967,089 | $38,200,490 |
| TOTALS | $3,933,475 | 2868 | 100.00% | $34,267,015 | $38,200,490 |

* Quarterly payments are included in the lots sales minimum payments when such payments occur.

** The Minimum Cumulative Lot Sales Requirements herein are satisfied by the total number of lots sold in all prior years through the end of the calendar year in question.  For example, a hypothetical sale of 1000 lots in 2014 would satisy the Minimum Cumulative Lot Sales Requirement of the plan through the year 2017, regardless of whether any further lot sales occur prior to the end of 2017.

*** Calculation is based upon a percentage of the $38,200,490 secured claim, before any offsets are applied as a result of the pending litigation against PCF and the investors.  Should the litigation recovery reduce the secured claim, the minimum additional payment would correspondingly be lowered, provided however that 100% of net land sales proceeds would be paid to Class 1 claimants regardless of the minimum required, resulting in an even greater expected paydown than shown.

****To the extent lot sales occur on an accelerated basis and payments exceed the "Minimum Cumulative Payments Required" at any given time, Debtor will not be obligated to make additional payments until necessary to stay ahead of the "Minimum Cumulative Payments Required" schedule.  By way of example, if Debtor has a $4,000,000 sale of 250 lots in Q4 2012, Debtor's next payment would not occur until Q2 2015.  Debtor reserves the right to propose a modification of this payment schedule in connection with any lot sales.

# EXHIBIT F

## EXHIBIT F TO PLAN

## <u>DISPUTED CLAIMS</u>

1.    Proof Claim No. 1 filed by Palmieri, Tyler, Wiener, Wilhelm & Waldron LLP (the "Palmieri Firm") in the unsecured amount of $16,233.75. The Debtor scheduled this claim in the amount of $7,416.00. Included in the Proof of Claim No. 4 filed by Point Center Financial, Inc. referenced below is a claim for $7,005.99 for legal fees payable to the Palmieri Firm.

2.    Proof of Claim No. 3 filed by the Riverside County Tax Collector in the amount of $63,264.40. The Debtor asserts that all taxes payable to Riverside County have been paid in full. If this claim is not voluntarily withdrawn the Debtor will file an objection to this Claim by 60 days after the Effective Date.

3.    Any and all claims of Point Center Financial, Inc. asserted in this case, including but not limited to Proof of Claim No. 4 claimed as secured filed with the Clerk of the Bankruptcy Court in the amount of $38,200,489.64. Any claim by Point Center was designated as <u>disputed</u> in Schedule D. Litigation is pending in the Bankruptcy Court with and against Point Center and others. The Debtor intends to file a formal objection to this Claim, referencing the Point Center Litigation as the forum for its resolution. The Debtor reserves the right to have a hearing as to portions of this Claim that can be resolved outside of the Point Center Litigation.

4.    Proof of Claim No. 7 filed by the County of San Bernardino in the amount of $963.76. The Debtor asserts that all taxes payable to San Bernardino County have been paid in full. If this claim is not voluntarily withdrawn the Debtor will file an objection to this Claim by 60 days after the Effective Date.

5.    Proof of Claim No. 8 filed by The William Marano Living Trust. There is a $25,000 discrepancy about the principal amount of the secured portion of the Claim. The Debtor contends that the principal balance is $4,125,000. All interest payable is to be payable out of the $6,400,000 'unsecured' portion only out of future profits, which makes it presently not payable and therefore contingent and as a result separately classified.

Exhibit____F____    -30-

Page____30____    DEBTOR'S FIFTH AMENDED CHAPTER 11 PLAN AS MODIFIED

6. Proof of Claim No. 12 filed by the Riverside County Tax Collector in the amount of $164,414.21. The Debtor asserts that all taxes payable to Riverside County have been paid in full. If this claim is not voluntarily withdrawn the Debtor will file an objection to this Claim by 60 days after the Effective Date.

7. Scheduled "contingent" unsecured claim of Sherry Ikezawa in the amount of $1,550,000. The Debtor asserts that $540,000.00 is the amount to be Scheduled for this claim as a presently payable claim, with no other "contingent" amount. The Debtor has amended its Schedule F to reflect the foregoing.

8. Scheduled unsecured claim of Rox Consulting Group, Inc. ("Rox") in the amount of $156,250.00. The Debtor is in the process of auditing the 'soft costs' with regard to the residential portion of the Legacy Highlands project and it appears likely that the Debtor has overpaid Rox and as a result owes Rox nothing. The Debtor reserves the right to object to the scheduled unsecured claim of Rox which objection would be filed by 60 days after the Effective Date.

9. Disputed administrative claim of Gresham Savage Nolan & Tilden APC (special litigation counsel to Debtor) in the amount of $76,522.20. The Debtor asserts that it is not liable for this amount claimed to be owing and, in addition, is entitled to a refund of $87,889.24 in fees already paid

Exhibit____F____   -31-

Page____31____      DEBTOR'S FIFTH AMENDED CHAPTER 11 PLAN AS MODIFIED

| In re:<br>THE PRESERVE, LLC | CHAPTER 11 |
|---|---|
| Debtor. | CASE NUMBER 2:10-bk-18429-BB |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 18191 Von Karman Avenue, Suite 470, Irvine, CA 92612.

A true and correct copy of the foregoing document described as **DEBTOR'S FIFTH AMENDED CHAPTER 11 PLAN AS MODIFIED** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On September 28, 2011, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

- Jeffrey S Benice jsb@jeffreybenice.com
- Jeffrey W Broker jbroker@brokerlaw.biz
- Russell Clementson russell.clementson@usdoj.gov
- Catherine Convy eac@ggb-law.com
- James R. Felton jfelton@greenbergbass.com
- Don Fisher dfisher@ptwww.com
- Marc C Forsythe kmurphy@goeforlaw.com
- Cynthia Futter cfutter@futterwells.com
- Robert P Goe kmurphy@goeforlaw.com, rgoe@goeforlaw.com;mforsythe@goeforlaw.com
- Richard A Harvey dickatlaw@cox.net
- John Mark Jennings jjennings@shblp.com
- Leonard M Shulman lshulman@shbllp.com
- United States Trustee (LA) ustpregion16.la.ecf@usdoj.gov
- Hatty Y. Yip jetty.yip@usdoj.gov
- David R Zaro dzaro@allenmatkins.com
- Joshua del Castillo jdelcastillo@allenmatkins.com

☐ Service information continued on attached page

II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served):
On September 28, 2011, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

The Hon. Sheri Bluebond, 255 East Temple Street, Suite 1482, Los Angeles, CA 90012 [Overnight Delivery]

☐ Service information continued on attached page

III. **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, 2010, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| September 28, 2011 | Barbara Jean Little-Raphael | *(signature)* |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*

**F 9013-3.1**

EXHIBIT "10"

PAGE 184

# EXHIBIT 11

JEFFREY W. BROKER – State Bar No. 53226
BROKER & ASSOCIATES PROFESSIONAL CORPORATION
18191 Von Karman Avenue, Suite 470
Irvine, CA 92612-7114

Telephone:  (949) 222-2000
Facsimile:  (949) 222-2022
email:      *jbroker@brokerlaw.biz*

General Reorganization Counsel
for Debtor and Debtor-in-Possession

FILED & ENTERED

DEC 01 2011

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY wesley    DEPUTY CLERK

CHANGES MADE BY COURT

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

In re

The Preserve, LLC, a California Limited
Liability Company,

        Debtor and
        Debtor-in-Possession

Case No.  2:10-bk-18429-BB
Chapter 11 Proceeding

**ORDER CONFIRMING DEBTOR'S
FIFTH AMENDED CHAPTER 11 PLAN
AS MODIFIED**

Date:    November 16, 2011
Time:    2:00 p.m.
Ctrm:    1475
       255 East Temple Street
       Los Angeles, CA 90012

The Court having heretofore signed and entered its *FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING CONFIRMATION OF DEBTOR'S FIFTH AMENDED CHAPTER 11 PLAN AS MODIFIED* (the "Findings"),

IT IS ORDERED, ADJUDGED AND DECREED THAT:

A.    Remaining Objections to Confirmation Overruled.  All objections to confirmation of the *DEBTOR'S FIFTH AMENDED CHAPTER 11 PLAN AS MODIFIED* (the "Plan" – ECF Docket No. 478) asserted by Beneficiaries through their authorized agent Point Center Financial, Inc. ("Point Center") and The William Marano Living Trust ("WMLT") are either addressed by

9C:\Documents and Settings\wesley\Local Settings\Temp\Order#139078#3e02a5ee-eeb6-4f22-8c71-2f38afc70658.doc

modifications to the Plan as required by the Court and this Confirmation Order or overruled on the merits.

B.    <u>Approval of Plan Modifications</u>.  As set forth in the Findings at paragraph 32 thereof, at the hearing on October 20, 2011 the Court requested and the Debtor has agreed to accept the following additional modifications to the Plan (new text is underscored):

(i)    The sentence appearing at page 3, lines 22-25 of the Plan shall be modified to read as follows:  "The Effective Date of the proposed Plan shall be <u>fifteen (15)</u> days after the Confirmation Date.

(ii)    The sentence appearing at page 11, lines 18-20 of the Plan shall be modified to read as follows:  "100% of the <u>net sales</u> proceeds of the property to be released shall be paid in cash to the holder of the Class 1 Claim.  <u>"Net Sales Proceeds" shall be defined as the amount paid by the buyer</u> ~~through escrow~~ <u>in connection with the purchase, less closing costs (either approved by the Holder of the Class 1 Claim or by Order of the Court), which may include the following categories together with any other ordinary and usual fees and costs associated with the sale of the type of land involved, including escrow and processing fees; non-insider fees, costs, and sales commissions; verifications;</u> ~~tax services and~~ <u>certifications; document preparation; notary; title insurance; reconveyance; prorated taxes; and transfer taxes</u>.

(iii)    The sentence appearing at page 11, lines 25-26 that states "Debtor reserves the right to propose a modification of this payment schedule in connection with any lot sales" is to be deleted.

(iv)    The sentence appearing at page 12, lines 7-10 of the Plan shall be modified to read as follows:  "The holder of the Class 1 Claim will retain its lien on the collateral for the amount of its allowed secured claim <u>absent a subsequent Order of the Court requiring a partial reconveyance in connection with a partial sale of the Property in exchange for the payment of 100% of the net sales proceeds</u> until it is paid in full."

(v)    The sentence appearing at page 13, lines 13-15 of the Plan shall be modified to read as follows:  "The Motion will provide that 100% of the <u>net</u> sales proceeds, which shall at a minimum be equal to the appraised value attributable to the Released Property will be paid to the holder of the

-2-

-

Class 1 Claim in exchange for the delivery of <u>a conveyance partially releasing the lien on</u> the Released Property.

(vi)    The sentence appearing at page 13, lines 16-17 of the Plan shall be modified to read as follows:  "The Motion will provide that the sales proceeds received by the Class 1 Claimant shall reduce the balance of the Class 1 Claim in the manner set forth hereinabove."

(vii)    The sentence appearing at page 13, lines 18-19 of the Plan that states:  "The Motion will propose a revised payment schedule on account of the reduced balance of the Class 1 Claim for Court approval" is deleted.

(viii)    The sentence appearing at page 13, lines 27-28 of the Plan shall be modified to read as follows:  "The failure to achieve the cumulative number of lot sales<u>, the failure to meet the minimum payment requirements</u> described in Exhibit D-2 <u>or the failure to remain current in the real property tax obligations pertaining to the residential portion of the Legacy Highlands Property</u> would constitute a default under the Plan.

(ix)    The second sentence in the second paragraph of the TREATMENT section for the Class 4 Claimants at page 16, lines 13-16 of the Plan shall be deleted:  "The funding will come from future sales of portions of the Legacy Highlands project after the payment of release prices to the holder of the Class 1 Claim."

(x)    Subparagraph F, page 25, lines 14-21 of the Plan shall be replaced by the following language:  "<u>In addition to such remedies as may otherwise be available under nonbankruptcy law, which shall include with regard to secured creditors the remedies that are available under their respective deeds of trust or security agreements to the extent not inconsistent with the express terms of the Plan,</u> a creditor or party in interest may bring a motion to convert or dismiss the case under § 1112(b), after the Plan is confirmed, if there is a default in performing the Plan which is not cured by the Debtor within thirty (30) days after written notice to it and its counsel.  In such event the Debtor will not oppose conversion to Chapter 7.  If the Court orders the case converted to Chapter 7 after the Plan is confirmed, then all property that had been property of the Chapter 11 estate, and that has not been disbursed pursuant to the Plan, will revest in the Chapter 7 estate."

-3-

(xi)     The following sentence appearing on Exhibit D-2, page 29 of the Plan at "****" that states "Debtor reserves the right to propose a modification of this payment schedule in connection with any lot sales" shall be deleted.

(xii)     The following sentence shall be added to the third paragraph of the TREATMENT section for the Class 2 Claimant at page 14, line 24 of the Plan:  "The Debtor shall bring a declaratory relief action against the Class 2 Claimant by sixty (60) days after the Effective Date. This deadline may be extended to later date(s) certain as the Class 2 Claimant may agree to in writing prior to the date(s) of any such deadline(s)."

In accordance with 11 U.S.C. §1127 and Fed. R. Bankr. P. 3019, all holders of Claims who voted to accept the Plan or who are conclusively presumed to have accepted the Plan are deemed to have accepted the Plan as modified.  No holder of a Claim shall be permitted to change its vote as a consequence of the modifications to the Plan.

C.     Confirmation of Plan.  The Plan is approved and confirmed under 11 U.S.C. §1129, as stated on the record on November 16, 2011, at the conclusion of the continued Confirmation hearing.

D.     Incorporation of Terms and Provisions of Plan.  The terms and provisions of the Plan are incorporated by reference into and are an integral part of this Confirmation Order.  Each term and provision of the Plan is valid, binding and enforceable as though fully set forth herein.  The failure specifically to include or reference any particular term or provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such term and provision, it being the intent of the Court that the Plan be confirmed in its entirety as specifically modified by this Confirmation Order.

-4-

E.   <u>Binding Effect</u>.  Effective on the Effective Date, the Plan shall be binding upon the Debtor, the Reorganized Debtor, any party in interest, any entity receiving a distribution under the Plan and any holder of a Claim against the Debtor, including all governmental entities, whether or not the Claim or Interest of such holder is impaired under the Plan and whether or not such holder or entity has accepted the Plan.  Pursuant to 11 U.S.C. §§1123(a) and 1142(a) and the provisions of this Confirmation Order, the Plan and all Plan-related documents shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

F.   <u>Plan Implementation Authorization</u>.  The Debtor and the Reorganized Debtor and their respective managers, members, agents and attorneys, are authorized and empowered from and after the date hereof to negotiate, execute, issue, deliver, implement, file or record any contract, instrument, lease, grant of security, or other agreements or documents referenced in the Plan, and to take any action necessary or appropriate to implement, effectuate, consummate or further evidence the Plan in accordance with its terms, without further order of the Court.

G.   <u>Retention of Jurisdiction by Bankruptcy Court</u>.  Until this case is closed, the Court shall retain jurisdiction over this case to ensure that the purposes and intent of the Plan are carried out until the Plan has been fully consummated, pursuant to and for the purposes set forth in the Bankruptcy Code, and specifically for the purposes of:

(i)   Classification of the Claim of any Creditor or the reexamination of Claims which have been allowed for the purposes of voting or the determination of such objections as may be filed to Creditors' Claims.  The failure by the Debtor to object to or examine any claim for the purpose of voting shall not be deemed to be a waiver of the Debtor's right to object to or reexamine the Claim in whole or in part;

(ii)   The allowance of compensation or other administrative expenses;

(iii)   To hear and determine Claims concerning state, local, and federal taxes pursuant to Sections 346, 505, 525, and 1146 of the Bankruptcy Code;

-5-

(iv)    To hear and determine any action or proceeding brought by Debtor under Sections 510,543, 544, 545, 548, 549, 550, 551, and 553 of the Bankruptcy Code, whether such action or proceeding is brought before or after the Effective Date;

(v)    To hear and determine all actions and proceedings which relate to pre-confirmation matters brought by the Debtor whether such action or proceeding is brought before or after the Effective Date;

(vi)    The determination of any issues relating to the assumption or rejection of executory contracts and unexpired leases including the assumption or rejection of executory contracts or unexpired leases not expressly dealt with herein;

(vii)    The ruling upon a subsequent motion by the Reorganized Debtor for the establishment of release prices pertaining to the Property as expressly contemplated in the Plan at pages 11 to 13 thereof and approved by the Court at paragraph 27(ii)(B) of the Findings;

(viii)    The modification of this Plan after Confirmation to the extent permissible under the Bankruptcy Rules and Title 11 of the United States Code;

(ix)    The enforcement and interpretation of the terms of this Plan;

(x)    The correction of any defects, the curing of any omission, or the reconciliation of any inconsistency of this Plan or in the Confirmation Order as may be necessary to carry out the purposes and intent of this Plan;

(xi)    The entry of any order, including injunctions, necessary to enforce title, rights and powers of the Debtor and to impose such limitations, restrictions, terms and conditions of such title, rights and powers as this Court may deem necessary including, without limitation, any right of the Debtor to recover assets pursuant to any of the relevant provisions of the Bankruptcy Code;

(xii)    The determination of the validity, extent and priority of all liens and security interests against property of the Debtor's Chapter 11 estate;

-6-

(xiii)    To hear and determine such matters and make such orders as are consistent with the Plan as may be necessary or desirable to carry out the provisions thereof and to adjudicate any disputes arising under or relating to any order entered by the Court in this proceeding; and

(xiv)    The entry of an order concluding and closing this Chapter 11 case.

H.    Notice of Entry of Confirmation Order.  Not later than ten (10) days following the date of entry of this Confirmation Order, the Debtor shall serve notice by first-class mail, postage prepaid, of the entry of this Confirmation Order on all holders of Claims and Interests, the Office of the United States Trustee, and all parties who have requested special notice in this case.

I.    Notice of Effective Date.  Not later than ten (10) days following the occurrence of the Effective Date, the Reorganized Debtor shall file a notice of the Effective Date and serve a copy of such notice by ECF noticing only and by first class mail, postage prepaid, to any party who has requested special notice but is not on the ECF notification list.

J.  Requirements of LBR 3020-1(b).  The Debtor shall file a status report ("Report") by **March 30, 2012** explaining what progress has been made toward consummation of the confirmed plan of reorganization.  The initial Report shall be served on the United States Trustee, the 20 largest unsecured creditors, and those parties who have requested special notice.  A Post-Confirmation status conference in this matter pertaining to the initial Report shall take place on **April 11, 2012 at the hour of 11:00 a.m**. in Courtroom 1475, located at 255 East Temple Street, Los Angeles, California.  The Report shall include at least the following information:

(1)    A schedule listing for each debt and each class of claims: the total amount required to be paid under the plan; the amount required to be paid as of the date of the report; the amount actually paid as of the date of the report; and the deficiency, if any, in required payments;

(2)    A schedule of any and all post-confirmation tax liabilities that have accrued or come due, and a detailed explanation of payments thereon;

(3)    Debtor's projections as to its continuing ability to comply with the terms of the plan;

(4)    An estimate of the date of plan consummation and application for final decree; and

-7-

(5)    Any other pertinent information needed to explain the progress toward completion of the confirmed plan.

Unless otherwise provided in the Plan, if the above-referenced case is converted to one under Chapter 7, the property of the reorganized debtor shall be revested in the chapter 7 estate.

####

DATED: December 1, 2011

_____
United States Bankruptcy Judge

-8-

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 18191 Von Karman Ave., Suite 470, Irvine, CA 92612.

A true and correct copy of the foregoing document described **ORDER CONFIRMING DEBTOR'S FIFTH AMENDED CHAPTER 11 PLAN AS MODIFIED** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On _____ I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☐ Service information continued on attached page

II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served)**:**
On November 18, 2011 I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

The Honorable Sheri Bluebond, 255 East Temple Street, Suite 1482, Los Angeles, CA 90012
Robert Goe, Esq., Goe & Forsythe, LLP, 18101 Von Karman Ave., Suite 510, Irvine, CA 92612
Loraine Pedowitz, Esq., Allen Matkins et al., 515 S. Figueroa St., 9th Floor, Los Angeles, CA 90071-3309

[All via Overnight Delivery]

☐ Service information continued on attached page

III. **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, 2011, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| November 18, 2011 | Barbara Jean Little-Raphael | s/s Barbara Jean Little-Raphael |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

-9-

**NOTE TO USERS OF THIS FORM**:

**1)**  Attach this form to the last page of a proposed Order or Judgment.  Do not file as a separate document.

**2)**  The title of the judgment or order and all service information must be filled in by the party lodging the order.

**3)  Category I.** below:  The United States trustee and case trustee (if any) will always be in this category.

**4**)  **Category II.** below:  List ONLY addresses for debtor (and attorney), movant (or attorney) and person/entity (or attorney) who filed an opposition to the requested relief. DO NOT list an address if person/entity is listed in category I.

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify*) **ORDER CONFIRMING DEBTOR'S FIFTH AMENDED CHAPTER 11 PLAN AS MODIFIED**  was entered on the date indicated as Entered on the first page of this judgment or order and will be served in the manner indicated below:

**I.  SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**  Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s), the foregoing document was served on the following person(s) by the court via NEF and hyperlink to the judgment or order.   As of _____ the following person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email address(es) indicated below.

- Jeffrey S Benice    jsb@jeffreybenice.com
- Jeffrey W Broker    jbroker@brokerlaw.biz
- Russell Clementson    russell.clementson@usdoj.gov
- Catherine Convy    eac@ggb-law.com
- James R. Felton   jfelton@greenbergbass.com
- Don Fisher    dfisher@ptwww.com
- Marc C Forsythe    kmurphy@goeforlaw.com
- Cynthia Futter    cfutter@futterwells.com
- Robert P Goe    kmurphy@goeforlaw.com, rgoe@goeforlaw.com;mforsythe@goeforlaw.com
- Richard A Harvey    dickatlaw@cox.net
- John Mark Jennings    jjennings@shblp.com
- Leonard M Shulman    lshulman@shbllp.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Hatty Y. Yip   jetty.yip@usdoj.gov
- David R Zaro    dzaro@allenmatkins.com
- Joshua del Castillo    jdelcastillo@allenmatkins.com

☐Service information continued on attached page

**II.  SERVED BY THE COURT VIA U.S. MAIL:**  A copy of this notice and a true copy of this judgment or order was sent by United States Mail, first class, postage prepaid, to the following person(s) and/or entity(ies) at the address(es) indicated below:

☒Service information continued on attached page

**III.  TO BE SERVED BY THE LODGING PARTY**:  Within 72 hours after receipt of a copy of this judgment or order which bears an Entered stamp, the party lodging the judgment or order will serve a complete copy bearing an Entered stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following person(s) and/or entity(ies) at the address(es), facsimile transmission number(s) and/or email address(es) indicated below:

☐Service information continued on attached page

-10-

Gresham Savage Nolan & Tilden APC
3750 University Ave, Ste 250
Attn: John Nolan Esq.
Riverside, CA 92501-3335

Marshall & Stevens Inc
355 S Grand Ave Ste 1750
Los Angeles, CA 90071

-11-

-

# EXHIBIT 12

JEFFREY W. BROKER – State Bar No. 53226
PAMELA J. ZYLSTRA – State Bar No. 147977
BROKER & ASSOCIATES PROFESSIONAL CORPORATION
18191 Von Karman Avenue, Suite 470
Irvine, CA 92612-7114

Telephone: (949) 222-2000
Facsimile:  (949) 222-2022
email:      *jbroker@brokerlaw.biz*

Counsel for Reorganized Debtor

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No.  2:10-bk-18429-BB<br>Chapter 11 Proceeding |
| THE PRESERVE, LLC, a California Limited Liability Company, | **REORGANIZED DEBTOR'S FIRST POST-CONFIRMATION STATUS REPORT**<br><br>[LBR §§ 3020-1(b)] |
| Reorganized Debtor | Date:    April 11, 2012<br>Time:    11:00 a.m.<br>Ctrm:    1475<br>255 East Temple Street<br>Los Angeles, CA 90012 |

**TO THE HONORABLE SHERI BLUEBOND, UNITED STATES BANKRUPTCY JUDGE; THE OFFICE OF THE UNITED STATES TRUSTEE; AND PARTIES IN INTEREST:**

THE PRESERVE, LLC, a California Limited Liability Company, the Reorganized Debtor in the within Chapter 11 case (the "Debtor"), hereby presents its First Post-Confirmation Status Report in this case.

The Order confirming the Debtor's Fifth Amended Chapter 11 Plan as Modified ("Plan") was entered on December 1, 2011 (the "Confirmation Order"). The Effective Date of the plan was

fifteen days after the date of the Confirmation Order, being December 16, 2011. In accordance with Paragraph (J) of the Confirmation Order and Local Bankruptcy Rule 3020-1(b), the Debtor reports as follows:

(1) Attached hereto collectively as Exhibit 1 is a schedule of all classes of creditors under the plan, the total amount required to be paid under the plan, the amount required to be paid as of the date of the report, the amount actually paid as of the date of the report, and the deficiency, if any, in required payments. The Debtor is current in all obligations to all classes of creditors under the Plan without any deficiencies (other than the initial payment to Point Center Financial, Inc. as explained in Exhibit 1, which will be made within the timeframe allowable for a cure under the Plan).

(2) The Debtor was current in all pre-confirmation tax liabilities and continues to be current in all post-confirmation tax liabilities and payment obligations. The next tax obligations are for the second installment of real property taxes that will be paid by the Debtor before their final due date of April 10, 2012.

(3) The Debtor believes that its projections attached as Exhibit B to the Supplemental Declaration of Aamir Raza in Support of Confirmation of Debtor's Fifth Amended Chapter 11 Plan as Modified (the "Raza Declaration") [ECF Docket No. 481 filed on September 28, 2011] continue to be reasonably accurate. Attached hereto as Exhibit 2 is a true and correct conformed copy of the Raza Declaration and its Exhibits for the Court's ready reference.

(4) The Debtor has consummated its plan but does not yet have an estimate of the date of application for a final decree. That is because the Plan contemplates a term of up to ten (10) years in payments to creditors.

//

//

-2-

(5)   The Debtor is current in all reporting requirements and quarterly fee requirements to the Office of the United States Trustee. The Debtor is diligently pursuing a sales program pertaining to the residential portion of the Legacy Highlands Project. The Debtor has completed the claims objection process pursuant to a hearing that took place on March 28, 2012. The Point Center Litigation continues to be pursued by the Debtor which is in its final phase before this Court before being transferred to another Court for trial. Litigation involving The William Marano Living Trust has been timely filed by the Debtor and is pending in the Riverside Superior Court, Case No. RIC 1200309 as called for under the Plan as it relates to the Class 2 Claim.

(6)   The Debtor recommends that this Post-Confirmation Status conference be continued for approximately 120 days at which time the Debtor will provide the Court and interested parties with an update as to the ongoing progress of its reorganization efforts.

Dated: March 30, 2012

The Preserve LLC,
a California Limited Liability Company

By:   Beaumont 1600, LLC,
a California Limited Liability Company
Its: Manager

By: Scott H. Krente
Its: Manager

APPROVED AS TO FORM AND CONTENT:

BROKER & ASSOCIATES
PROFESSIONAL CORPORATION

By:
Jeffrey W. Broker
Counsel for Reorganized Debtor

-3-

# EXHIBIT 1

## CLASS 1 CLAIM

Pursuant to the Plan, payments to the holder of the Class 1 claim are to be in the initial amount of $302,575.00 per quarter commencing on the 90th day following the Effective Date as set forth on Exhibit D-2 to the Plan, a copy of which is attached. The first payment to the holder of the Class 1 Claim will be made to the holder of the Class 1 claim within the allowable timeframe for a cure of a late payment provided for under Article IV, Section (F) of the Plan. After the payment is made, the fully secured Class 1 Claim will be reduced from $38,200,489.64 to $37,897,914.64. The Debtor by way of a supplement to this report will provide this Court with proof of payment.

Exhibit___1___

Page___4___

EXHIBIT "12"                                           PAGE 200

**EXHIBIT D-2 TO PLAN**

**SECTION 1111(b) ELECTION MINIMUM PAYMENT SCHEDULE**

**AND**

**MINIMUM CUMULATIVE LOT SALES SCHEDULE**

-27-

Exhibit _____1_____

Page_____5_____

Class 1 Minimum Payment Schedule

| Payment Date | Amount $ | Minimum Cumulative Lot Sales | Cumulative Percentage of Sales | Minimum Additional Payment due if Cumulative Lot Sales | Minimum Cumulative Payment required |
|---|---|---|---|---|---|
| Q1 2012 | $302,575 | | | | $302,575 |
| Q2 2012 | $302,575 | | | | $605,150 |
| Q3 2012 | $302,575 | | | | $907,725 |
| Q4 2012 | $302,575 | | | | $1,210,300 |
| Q1 2013 | $302,575 | | | | $1,512,875 |
| Q2 2013 | $302,575 | | | | $1,815,450 |
| Q3 2013 | $302,575 | | | | $2,118,025 |
| Q4 2013 | $302,575 | | | | $2,420,600 |
| Q1 2014 | $302,575 | | | | $2,723,175 |
| Q2 2014 | $302,575 | | | | $3,025,750 |
| Q3 2014 | $302,575 | | | | $3,328,325 |
| Q4 2014 | $302,575 | | | | $3,630,900 |
| Q1 2015 | $302,575 | | | | $3,933,475 |
| Q2 2015 | - | 250 | 8.72% | $3,329,889 | $7,263,364 |
| Q3 2015 | - | | | | $7,263,364 |
| Q4 2015 | - | | | | $7,263,364 |
| Q1 2016 | - | | | | $7,263,364 |
| Q2 2016 | - | 550 | 19.18% | $3,995,867 | $11,259,231 |
| Q3 2016 | - | | | | $11,259,231 |
| Q4 2016 | - | | | | $11,259,231 |
| Q1 2017 | - | | | | $11,259,231 |
| Q2 2017 | - | 900 | 31.38% | $4,661,845 | $15,921,076 |
| Q3 2017 | - | | | | $15,921,076 |
| Q4 2017 | - | | | | $15,921,076 |
| Q1 2018 | - | | | | $15,921,076 |
| Q2 2018 | - | 1250 | 43.58% | $4,661,845 | $20,582,921 |
| Q3 2018 | - | | | | $20,582,921 |
| Q4 2018 | - | | | | $20,582,921 |
| Q1 2019 | - | | | | $20,582,921 |
| Q2 2019 | - | 1600 | 55.79% | $4,661,845 | $25,244,766 |
| Q3 2019 | - | | | | $25,244,766 |
| Q4 2019 | - | | | | $25,244,766 |

Exhibit  D-2
Page  28

Exhibit  1
Page  6
EXHIBIT "12"

PAGE 202

## Class 1 Minimum Payment Schedule

| Payment Date | Amount | Minimum Cumulative Lot Sales** | Cumulative Percentage of Lots Sold | Minimum Additional Payment Due to Cumulative Lot Sales | Minimum Cumulative Payments Required*** |
|---|---|---|---|---|---|
| Q1 2020 | - | | | | $25,244,766 |
| Q2 2020 | - | 2000 | 69.74% | $5,327,823 | $30,572,589 |
| Q3 2020 | - | | | | $30,572,589 |
| Q4 2020 | - | | | | $30,572,589 |
| Q1 2021 | - | | | | $30,572,589 |
| Q2 2021 | - | 2425 | 84.55% | $5,660,812 | $36,233,401 |
| Q3 2021 | - | | | | $36,233,401 |
| Q4 2021 | - | 2868 | 100.00% | $1,967,089 | $38,200,490 |
| TOTALS | $3,933,475 | 2868 | 100.00% | $34,267,015 | $38,200,490 |

* Quarterly payments are included in the lots sales minimum payments when such payments occur.

** The Minimum Cumulative Lot Sales Requirements herein are satisfied by the total number of lots sold in all prior years through the end of the calendar year in question. For example, a hypothetical sale of 1000 lots in 2014 would satisy the Minimum Cumulative Lot Sales Requirement of the plan through the year 2017, regardless of whether any further lot sales occur prior to the end of 2017.

*** Calculation is based upon a percentage of the $38,200,490 secured claim, before any offsets are applied as a result of the pending litigation against PCF and the investors. Should the litigation recovery reduce the secured claim, the minimum additional payment would correspondingly be lowered, provided however that 100% of net land sales proceeds would be paid to Class 1 claimants regardless of the minimum required, resulting in an even greater expected paydown than shown.

****To the extent lot sales occur on an accelerated basis and payments exceed the "Minimum Cumulative Payments Required" at any given time, Debtor will not be obligated to make additional payments until necessary to stay ahead of the "Minimum Cumulative Payments Required" schedule. By way of example, if Debtor has a $4,000,000 sale of 250 lots in Q4 2012, Debtor's next payment would not occur until Q2 2015. Debtor reserves the right to propose a modification of this payment schedule in connection with any lot sales.

Exhibit 1
Page 7
EXHIBIT "12"

Exhibit D-2
Page 29

PAGE 203

## CLASS 2 CLAIM

Pursuant to the Plan, no payments are to be made to the holder of the Class 2 Claim pending the results of litigation between the Debtor and The William Marano Living Trust ("Marano") required to be initiated under the Plan. The Class 2 Claim is presently the subject matter of pending litigation in the Riverside Superior Court, Case No. RIC 1200309 that was commenced by Marano on January 9, 2012.

Exhibit___1___
Page___8___
EXHIBIT "12"                    PAGE 204

<u>CLASS 3 CLAIM</u>

Pursuant to the Plan, payments to the holder of the Class 3 claim are to be in the amount of $1,760.00 per month.  Payments to the holder of the Class 3 Claim have been made as provided for under the Plan as set forth on the attached schedule.

Exhibit _____1_____
Page_____9_____

The Preserve, LLC
Class 3 - Secured Claim of Barry Hildebrandt

| Date Paid | Creditor | Amount | Deficiency (if any) |
|---|---|---|---|
| 1/1/2012 | Barry Hildebrandt | $ 1,760.00 | NONE |
| 2/1/2012 | Barry Hildebrandt | $ 1,760.00 | NONE |
| 3/1/2012 | Barry Hildebrandt | $ 1,760.00 | NONE |
| | | $ 5,280.00   $ - | |

Exhibit 1

Page 10

EXHIBIT "12"

## CLASS 4 CLAIMS

Pursuant to the Plan, a payment of $500,000 to the holders of the Class 4 general unsecured claims to be shared pro-rata is to be made.  Payments to the holders of the Class 4 Claims have been made by the Reorganized Debtor as described in the attached schedule.

Exhibit ___1___

Page ___11___

The Preserve, LLC
Status of Schedule F - Creditors Holding Unsecured Non-Priority Claims

| Class | Creditor | Total Amount Required to be paid under the plan | Amount required to be paid as of the date of the report | Deficiency (if any) |
|---|---|---|---|---|
| Unsecured | Amir Raza | $ 17,928.95 | $ 1,416.39 | NONE |
| Unsecured | Beach Freeman Lim & Cleland, LLP | $ 52,946.00 | $ 4,182.73 | NONE |
| Unsecured | Deep Canyon Holdings, Inc. | $ 4,391,876.23 | $ 346,958.20 | NONE |
| Unsecured | Scott H. Krentel | $ 1,117,497.00 | $ 88,282.26 | NONE |
| Unsecured | Palmieri Tyler et al | $ 16,233.75 | $ 1,282.47 | NONE |
| Unsecured | Sherry Ikezawa | $ 540,000.00 | $ 42,660.00 | NONE |

$ 6,136,481.93   $ 484,782.05   $ -

Disputed Claims Reserve - Rox Consulting, Inc.    $ 15,217.95

$ 500,000.00

## CLASS 5 CLAIM

Pursuant to the Plan, no payments are to be made at this time to the holder of the Class 5 Claim.

Exhibit____1____

Page____13____

EXHIBIT "12"                                    PAGE 209

# EXHIBIT 2

JEFFREY W. BROKER – State Bar No. 53226
PAMELA J. ZYLSTRA – State Bar No. 147977
BROKER & ASSOCIATES PROFESSIONAL CORPORATION
18191 Von Karman Avenue, Suite 470
Irvine, CA 92612-7114
Telephone:  (949) 222-2000
Facsimile:  (949) 222-2022
email:    *jbroker@brokerlaw.biz*

General Reorganization Counsel
for Debtor and Debtor-in-Possession

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>THE PRESERVE, LLC, a California Limited Liability Company,<br><br><br>Debtor and<br>Debtor-in-Possession | Case No.  2:10-bk-18429-BB<br><br>Chapter 11 Proceeding<br><br>**SUPPLEMENTAL DECLARATION OF AAMIR RAZA IN SUPPORT OF CONFIRMATION OF DEBTOR'S FIFTH AMENDED CHAPTER 11 PLAN AS MODIFIED**<br><br>Date:  August 25, 2011<br>Time:  10:00 a.m.<br>Ctrm:  1475<br>        255 East Temple Street<br>        Los Angeles, CA  90012 |

**TO THE HONORABLE SHERI BLUEBOND, UNITED STATES BANKRUPTCY JUDGE; THE OFFICE OF THE UNITED STATES TRUSTEE; AND PARTIES IN INTEREST:**

//

//

//

## DECLARATION OF AAMIR RAZA

I, Aamir Raza, declare and state as follows:

1.   I am over the age of 21 and the matters stated herein are true and correct and are within my personal knowledge, and if called upon to testify as a witness, I could and would testify competently thereto. I am an attorney at law, duly licensed in the State of California since 2002 and a member of the Real Property Section of the State Bar of California since 2004. I have been practicing in the area of land development for the past seven years. Prior to opening my own land development practice in 2006, I was an attorney at Cox, Castle & Nicholson, LLP ("Cox Castle"), which is California's largest real estate law firm. While at Cox Castle I was a member of its Land Use Group. I advise clients on dozens of land development projects (including this one). I also have performed land use due diligence on more than 100 projects. Prior to becoming an attorney, I reviewed technology company business plans, including financial projections, for a venture capital group that I advised.

2.   I specialize in the area of real estate generally and land use planning and the development process in particular, including project financing. In addition to acting as an attorney advising clients on real estate related legal issues, I also perform land development consulting services, such as cash flow/pro forma preparation, project cost analysis, project feasibility reviews, sourcing and implementation of project financing and other development-related tasks. I have performed these feasibility and due diligence tasks on over 100 projects. Additionally, I have been personally involved in the land use, entitlement and development process (including financing) for over 30 large scale residential and commercial real estate developments consisting of master planned communities, residential developments, recreational developments, golf course developments, hotel developments, medical building developments, and office developments in Southern California.

3.   I have personally participated in the land use, entitlement and development process relating to the residential portion of the Legacy Highlands (the "Property" or the "Legacy Highlands") that consists of approximately 1,331 acres of raw land, located in West Beaumont,

-2-

Exhibit __2__

Page __15__

Riverside County, California, for over 4 years. In that regard, I worked closely with Rox Consulting Group, Inc., the principal engineer for the development of the Property, with other real estate and financial consultants involved in the development of the Property, and with the Debtor's manager. When appropriate I have acted as land use counsel for the Debtor's manager, Beaumont 1600, LLC. I have been involved with the generation of those portions of the Specific Plan, CEQA documentation, CFD formation, Tentative Tract Map and Final Parcel Map that pertain to the Property. I have also been personally involved in interfacing with the City of Beaumont and all other government agencies on behalf of the Debtor's manager with regard to all development tasks for the Property.

4.       I personally prepared the cash flows which were attached to the DEBTOR'S FIFTH AMENDED DISCLOSURE STATEMENT DESCRIBING DEBTOR'S FIFTH AMENDED CHAPTER 11 PLAN (the "Disclosure Statement") previously filed in this case and labeled as Exhibit "B" thereto. I have prepared, based upon the Section 1111(b) election by Point Center, a new cash flow which reflects infusion of $7,600,000 in new capital to be provided by Deep Canyon Holdings, Inc. ("Deep Canyon") and hypothetical future land sales, a true and correct copy of which is attached hereto as revised Exhibit B-1.

5.       Attached hereto as Exhibit D-2 is a true and correct copy of a revised Class 1 Minimum Payment Schedule that has been prepared after consultation with and approval by Deep Canyon.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct and that this declaration was executed this 28th day of September, 2011 at Irvine, California.

Aamir Raza

-3-

# EXHIBIT B-1

Exhibit___2___

Page___17___

EXHIBIT "12"                    PAGE 214

Case 2:10-bk-18429-BB    Doc 553-2    Filed 09/18/12    Entered 09/18/12 17:23:17    Desc
Exhibit Exhibits 8-15    Page 88 of 115
Case 2:10-bk-18429-BB    Doc 541    Filed 05/30/12    Entered 05/30/12 14:40:40    Desc
Main Document    Page 20 of 33
Case 2:10-bk-18429-BB    Doc 481    Filed 09/28/11    Entered 09/28/11 15:50:42    Desc
Main Document    Page 5 of 16

# PROJECTION BASED UPON CLASS 1 ELECTING SECTION 1111(b) TREATMENT AND HYPOTHETICAL SALES [SCENARIO TWO]

Exhibit B-1
Page 4

Exhibit 2
Page 18

EXHIBIT "12"                                PAGE 215

## EXHIBIT B-1

### HYPOTHETICAL SALES SCENARIO

1.      Plan Hypothetical Sales Scenario. This scenario is based upon the knowledge and information of a team of professional real estate development consultants on the basis of the following assumptions:

(1)     The current stabilization and subsequent growth in the housing market reflects a new base for housing prices and consequently for lot sales prices.

(2)     From this new base, and based on current sales and pricing trends, the housing sector will demonstrate modest growth over the life of the project.

(3)     Based upon historical data for multi-phase housing projects, each subsequent phase will achieve a marginally higher sales price (even when discounted for inflation) than the prior phase. However, that marginal increase in sales price for future phases is not included in the assumptions.

(4)     The scenario assumes that no major economic market downturns occur during the life of the project.

(5)     There will be hypothetical future payments on account of the Class 1 Claim based upon the imposition by the Court of release prices in connection with the future sale of all or a part of the residential portion of the Legacy Highlands Project. These hypothetical future cash payments are accounted for in the line items "LAND SALES, appreciated", "Class 1: PCF" and "Cumulated from Q1-2012" which will be the basis for the Debtor having sufficient cash with which to pay Court-determined release prices.

2.      The attached Plan Hypothetical Sales Scenario assumes that the holder of the Class 1 Claim elects treatment under Section 1111(b) of the Code. This scenario sets forth examples of how the Debtor will use the hypothetical lot sales proceeds to satisfy its obligations under the Plan.

Exhibit _B-1_
Page _5_

Exhibit _2_
Page _19_

3.  The Debtor shows sales beginning in Q2 of 2015 to correspond with Exhibit D-2 to the Plan as modified.

4.  Point Center correctly indicates that senior debt cannot be placed on its collateral without a release of that collateral. Debtor has already indicated that such a release would in fact occur concurrent with sale of a portion of the collateral. Payments on account of such releases are accounted for in the line item "Class 1: PCF".

Case 2:10-bk-18429-BB   Doc 553-2   Filed 09/18/12   Entered 09/18/12 17:23:17   Desc
Case 2:10-bk-18429-BB   Exhibit B   Page 84 of 115   Desc
Case 2:10-bk-18429-BB   Main Document   Page 23 of 33   Desc
Main Document   Page 8 of 16

**The Preserve, LLC**
**Projected Cash Flow**
**UPDATED 9/28/2011 10:20 AM**

**Scenario Two - Class 1 Section 1111(b) Election**

| | Q1 2012 | Q2 2012 | Q3 2012 | Q4 2012 | Q1 2013 | Q2 2013 | Q3 2013 | Q4 2013 |
|---|---|---|---|---|---|---|---|---|
| **REVENUE:** | | | | | | | | |
| | - | | | | | | | |
| LAND SALES, gross | - | - | - | - | - | - | - | - |
| Appreciation Factor: (1.0 = zero appreciation) | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0200 |
| LAND SALES, appreciated | - | - | - | - | - | - | - | - |
| SERVICE FEE | | | | | | | | |
| Less Commission: | - | - | - | - | - | - | - | - |
| TOTAL REVENUE | - | - | - | - | - | - | - | - |
| CUMULATIVE REVENUES | - | - | - | - | - | - | - | - |
| **COSTS AND EXPENSES:** | | | | | | | | |
| **SOFT COSTS:** | | | | | | | | |
| Final Engineering | 7,500 | 7,500 | 7,500 | 7,500 | 5,000 | 5,000 | 5,000 | 5,000 |
| LAFCO | 25,000 | 25,000 | 25,000 | 25,000 | 0 | 0 | 0 | 0 |
| CFD Formation | 0 | 0 | 100,000 | 0 | 0 | 0 | 0 | 0 |
| Property Taxes | 60,000 | 0 | 0 | 60,000 | 60,000 | 0 | 0 | 60,000 |
| Management | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 |
| Legal, Accounting, Professional & Insurance | 40,000 | 50,000 | 40,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 |
| Contingency | 19,250 | 14,250 | 23,250 | 18,250 | 15,500 | 9,500 | 9,500 | 15,500 |
| SOFT COSTS - Subtotal | 211,750 | 156,750 | 255,750 | 200,750 | 170,500 | 104,500 | 104,500 | 170,500 |
| **TOTAL COSTS** | 211,750 | 156,750 | 255,750 | 200,750 | 170,500 | 104,500 | 104,500 | 170,500 |
| **NET INCOME (LOSS) BEFORE CREDITORS** | (211,750) | (156,750) | (255,750) | (200,750) | (170,500) | (104,500) | (104,500) | (170,500) |
| **DEBT:** | | | | | | | | |
| Class 1 - "PCF" | 302,575 | 302,575 | 302,575 | 302,575 | 302,575 | 302,575 | 302,575 | 302,575 |
| Class 2 - Marano Secured | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Class 3 - Hildebrandt | 5,280 | 5,280 | 5,280 | 5,280 | 5,280 | 5,280 | 5,280 | 5,280 |
| Class 4 - Unsecured | 500,000 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Class 5 - Marano Unsecured | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Administrative Claims | 500,000 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| New Equity w/ capital and preferred return prior to profits | (7,600,000) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| DEBT - Sub-Total | (6,292,145) | 307,855 | 307,855 | 307,855 | 307,855 | 307,855 | 307,855 | 307,855 |
| CASH FLOW | 6,080,395 | (464,605) | (563,605) | (508,605) | (478,355) | (412,355) | (412,355) | (478,355) |
| Cumulative from Q1 2012 | 6,080,395 | 5,615,790 | 5,052,185 | 4,543,580 | 4,065,225 | 3,652,870 | 3,240,515 | 2,762,160 |

Exhibit 2 21

The Preserve, LLC

CASH FLOW

1

Case 2:10-bk-18429-BB    Doc 553-2    Filed 09/18/12    Entered 09/18/12 17:23:17    Desc
Case 2:10-bk-18429-BB    Exhibit B-1 Page 84 of 115    Desc
Case 2:10-bk-18429-BB    Main Document    Page 24 of 33    Desc
Main Document    Page 9 of 16

**The Preserve, LLC**
**Projected Cash Flow**
**UPDATED 9/28/2011 10:20 AM**

**Scenario Two - Class 1 Section 1111(b) Election**

| | Q1 2014 | Q2 2014 | Q3 2014 | Q4 2014 | Q1 2015 | Q2 2015 | Q3 2015 | Q4 2015 |
|---|---|---|---|---|---|---|---|---|
| **REVENUE:** | | | | | | | | |
| LAND SALES, gross | | - | | - | | 4,964,000 | | - |
| Appreciation Factor: (1.0 = zero appreciation) | 1.0250 | 1.0300 | 1.0350 | 1.0400 | 1.0450 | 1.0500 | 1.0550 | 1.0600 |
| LAND SALES, appreciated | - | - | - | - | - | 5,212,200 | - | - |
| SERVICE FEE | | | | | | | | 543,750 |
| Less Commission: | - | - | - | - | - | 52,122 | - | - |
| TOTAL REVENUE | - | - | - | - | - | 5,160,078 | - | 543,750 |
| CUMULATIVE REVENUES | - | - | - | - | - | 5,160,078 | 5,160,078 | 5,703,828 |
| **COSTS AND EXPENSES:** | | | | | | | | |
| **SOFT COSTS:** | | | | | | | | |
| Final Engineering | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| LAFCO | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| CFD Formation | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Property Taxes | 60,000 | 0 | 0 | 60,000 | 60,000 | 0 | 0 | 60,000 |
| Management | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 |
| Legal, Accounting, Professional & Insurance | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 |
| Contingency | 15,500 | 9,500 | 9,500 | 15,500 | 15,500 | 9,500 | 9,500 | 15,500 |
| SOFT COSTS - Subtotal | 170,500 | 104,500 | 104,500 | 170,500 | 170,500 | 104,500 | 104,500 | 170,500 |
| **TOTAL COSTS** | 170,500 | 104,500 | 104,500 | 170,500 | 170,500 | 104,500 | 104,500 | 170,500 |
| **NET INCOME (LOSS) BEFORE CREDITORS** | (170,500) | (104,500) | (104,500) | (170,500) | (170,500) | 5,055,578 | (104,500) | 373,250 |
| **DEBT:** | | | | | | | | |
| Class 1 - "PCF" | 302,575 | 302,575 | 302,575 | 302,575 | 302,575 | 5,160,078 | 0 | 0 |
| Class 2 - Marano Secured | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Class 3 - Hildebrandt | 5,280 | 5,280 | 5,280 | 5,280 | 5,280 | 5,280 | 5,280 | 5,280 |
| Class 4 - Unsecured | 0 | 0 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 |
| Class 5 - Marano Unsecured | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Administrative Claims | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| New Equity w/ capital and preferred return prior to profits | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| DEBT - Sub-Total | 307,855 | 307,855 | 322,855 | 322,855 | 322,855 | 5,180,358 | 20,280 | 20,280 |
| CASH FLOW | (478,355) | (412,355) | (427,355) | (493,355) | (493,355) | (124,780) | (124,780) | 352,970 |
| Cumulative from Q1 2012 | 2,283,805 | 1,871,450 | 1,444,095 | 950,740 | 457,385 | 332,605 | 207,825 | 560,795 |

The Preserve, LLC

EXHIBIT "12"    Page
PAGE 219

Exhibit 2
Page 29

Exhibit B-1
Page 8

Case 2:10-bk-18429-BB   Doc 553-2   Filed 09/18/12   Entered 09/18/12 17:23:17   Desc
Case 2:10-bk-18429-BB   Exhibit Exhibits 8-15 30 Page 94 of 115   14:40:40   Desc
Case 2:10-bk-18429-BB   Main Document   Page 25 of 33   09/28/11 15:50:42   Desc
Main Document   Page 10 of 16

**The Preserve, LLC**
**Projected Cash Flow**
**UPDATED 9/28/2011 10:20 AM**

**Scenario Two - Class 1 Section 1111(b) Election**

|  | Q1 2016 | Q2 2016 | Q3 2016 | Q4 2016 | Q1 2017 | Q2 2017 | Q3 2017 | Q4 2017 |
|---|---|---|---|---|---|---|---|---|
| **REVENUE:** | | | | | | | | |
| LAND SALES, gross |  | 5,956,800 |  | - |  | 6,949,600 |  | - |
| Appreciation Factor: (1.0 = zero appreciation) | 1.0650 | 1.0700 | 1.0800 | 1.0950 | 1.1100 | 1.1250 | 1.1400 | 1.1550 |
| LAND SALES, appreciated | - | 6,373,776 | - | - | - | 7,818,300 | - | - |
| SERVICE FEE | 543,750 |  |  | 652,500 | 652,500 |  |  | 761,250 |
| Less Commission: | - | 63,738 | - | - | - | 78,183 | - | - |
| TOTAL REVENUE | 543,750 | 6,310,038 | - | 652,500 | 652,500 | 7,740,117 | - | 761,250 |
| CUMULATIVE REVENUES | 6,247,578 | 12,557,616 | 12,557,616 | 13,210,116 | 13,862,616 | 21,602,733 | 21,602,733 | 22,363,983 |
| **COSTS AND EXPENSES:** | | | | | | | | |
| **SOFT COSTS:** | | | | | | | | |
| Final Engineering | 12,500 | 12,500 | 12,500 | 12,500 | 5,000 | 5,000 | 5,000 | 5,000 |
| LAFCO | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| CFD Formation | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Property Taxes | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 |
| Management | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 |
| Legal, Accounting, Professional & Insurance | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 |
| Contingency | 15,250 | 15,250 | 15,250 | 15,250 | 14,500 | 14,500 | 14,500 | 14,500 |
| SOFT COSTS - Subtotal | 167,750 | 167,750 | 167,750 | 167,750 | 159,500 | 159,500 | 159,500 | 159,500 |
| **TOTAL COSTS** | 167,750 | 167,750 | 167,750 | 167,750 | 159,500 | 159,500 | 159,500 | 159,500 |
| **NET INCOME (LOSS) BEFORE CREDITORS** | 376,000 | 6,142,288 | (167,750) | 484,750 | 493,000 | 7,580,617 | (159,500) | 601,750 |
| **DEBT:** | | | | | | | | |
| Class 1 - "PCF" | 0 | 6,310,038 | 0 | 0 | 0 | 7,740,117 | 0 | 0 |
| Class 2 - Marano Secured | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Class 3 - Hildebrandt | 5,280 | 5,280 | 5,280 | 5,280 | 5,280 | 5,280 | 5,280 | 5,280 |
| Class 4 - Unsecured | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 30,000 | 30,000 |
| Class 5 - Marano Unsecured | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Administrative Claims | 100,000 | 100,000 | 100,000 | 100,000 | 100,000 | 100,000 | 100,000 | 100,000 |
| New Equity w/ capital and preferred return prior to profits | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| DEBT - Sub-Total | 120,280 | 6,430,318 | 120,280 | 120,280 | 120,280 | 7,860,397 | 135,280 | 135,280 |
| CASH FLOW | 255,720 | (288,030) | (288,030) | 364,470 | 372,720 | (279,780) | (294,780) | 466,470 |
| Cumulative from Q1 2012 | 816,515 | 528,485 | 240,455 | 604,925 | 977,645 | 697,865 | 403,085 | 869,555 |

EXHIBIT "12"
Page
Exhibit 2
Page 23
Exhibit B-
Page
The Preserve, LLC
PAGE 220
CASH FLOW
3

The Preserve, LLC
Projected Cash Flow
UPDATED 9/28/2011 10:20 AM

Scenario Two – Class 1 Section 1111(b) Election

| | Q1 2018 | Q2 2018 | Q3 2018 | Q4 2018 | Q1 2019 | Q2 2019 | Q3 2019 | Q4 2019 |
|---|---|---|---|---|---|---|---|---|
| **REVENUE:** | | | | | | | | |
| LAND SALES, gross | | 6,949,600 | | - | | 6,949,600 | | - |
| Appreciation Factor: (1.0 = zero appreciation) | 1.1700 | 1.1850 | 1.2000 | 1.2150 | 1.2300 | 1.2450 | 1.2600 | 1.2750 |
| LAND SALES, appreciated | - | 8,235,276 | - | - | - | 8,652,252 | - | - |
| SERVICE FEE | 761,250 | | | 761,250 | 761,250 | | | 761,250 |
| Less Commission: | - | 82,353 | - | - | - | 86,523 | - | - |
| TOTAL REVENUE | 761,250 | 8,152,923 | - | 761,250 | 761,250 | 8,565,729 | - | 761,250 |
| CUMULATIVE REVENUES | 23,125,233 | 31,278,156 | 31,278,156 | 32,039,406 | 32,800,656 | 41,366,386 | 41,366,386 | 42,127,636 |
| **COSTS AND EXPENSES:** | | | | | | | | |
| **SOFT COSTS:** | | | | | | | | |
| Final Engineering | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| LAFCO | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| CFD Formation | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Property Taxes | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 |
| Management | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 |
| Legal, Accounting, Professional & Insurance | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 |
| Contingency | 14,500 | 14,500 | 14,500 | 14,500 | 14,500 | 14,500 | 14,500 | 14,500 |
| SOFT COSTS - Subtotal | 159,500 | 159,500 | 159,500 | 159,500 | 159,500 | 159,500 | 159,500 | 159,500 |
| TOTAL COSTS | 159,500 | 159,500 | 159,500 | 159,500 | 159,500 | 159,500 | 159,500 | 159,500 |
| NET INCOME (LOSS) BEFORE CREDITORS | 601,750 | 7,993,423 | (159,500) | 601,750 | 601,750 | 8,406,229 | (159,500) | 601,750 |
| **DEBT:** | | | | | | | | |
| Class 1 - "PCF" | 0 | 8,152,923 | 0 | 0 | 0 | 6,903,859 | - | - |
| Class 2 - Marano Secured | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Class 3 - Hildebrandt | 575,000 | - | - | - | - | - | - | - |
| Class 4 - Unsecured | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 |
| Class 5 - Marano Unsecured | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Administrative Claims | 100,000 | 100,000 | 100,000 | 100,000 | 100,000 | 100,000 | 100,000 | 100,000 |
| New Equity w/ capital and preferred return prior to profits | 0 | 0 | 0 | 0 | 100,000 | 100,000 | 100,000 | 100,000 |
| DEBT - Sub-Total | 705,000 | 8,282,923 | 130,000 | 230,000 | 230,000 | 7,133,859 | 230,000 | 230,000 |
| CASH FLOW | (103,250) | (289,500) | (289,500) | 371,750 | 371,750 | 1,272,370 | (389,500) | 371,750 |
| Cumulative from Q1 2012 | 766,305 | 476,805 | 187,305 | 559,055 | 930,805 | 2,203,176 | 1,813,676 | 2,185,426 |

The Preserve, LLC

CASH FLOW

4

EXHIBIT "12"

Page 24

Exhibit 2

EXHIBIT "E"

PAGE 221

Exhibit E

Page 10

The Preserve, LLC
Projected Cash Flow
UPDATED 9/28/2011 10:20 AM

Scenario Two – Class 1 Section 1111(b) Election

Case 2:10-bk-18429-BB    Doc 553-2    Filed 09/18/12    Entered 09/18/12 17:23:17    Desc
Case 2:10-bk-18429-BB    Exhibit Exhibits 9-12 Page 94 of 115    Desc
Case 2:10-bk-18429-BB    Exhibit 8-03/30/12 14:40:40    Desc
Main Document    Page 27 of 33
Doc 480 Document 09/28/11    Page 12 of 16
Main Document    Entered 09/28/11 15:50:42    Desc

| | Q1 2020 | Q2 2020 | Q3 2020 | Q4 2020 | Q1 2021 | Q2 2021 | Q3 2021 | Q4 2021 | TOTAL |
|---|---|---|---|---|---|---|---|---|---|
| **REVENUE:** | | | | | | | | | |
| | | | | | | | | | |
| LAND SALES, gross | | 7,942,400 | | - | | 8,438,800 | | 8,796,208 | 56,947,008 |
| Appreciation Factor: (1.0 = zero appreciation) | 1.2900 | 1.3050 | 1.3200 | 1.3350 | 1.3500 | 1.3650 | 1.3800 | 1.3950 | |
| LAND SALES, appreciated | - | 10,364,832 | - | - | - | 11,518,962 | - | 12,270,710 | 70,446,308 |
| SERVICE FEE | 761,250 | | | 870,000 | 870,000 | | | 924,375 | 9,624,375 |
| Less Commission: | - | 103,648 | - | - | - | 115,190 | - | 122,707 | 704,463 |
| TOTAL REVENUE | 761,250 | 10,261,184 | - | 870,000 | 870,000 | 11,403,772 | - | 13,072,378 | 79,366,220 |
| CUMULATIVE REVENUES | 42,888,886 | 53,150,070 | 53,150,070 | 54,020,070 | 54,890,070 | 66,293,842 | 66,293,842 | 79,366,220 | |
| | | | | | | | | | |
| **COSTS AND EXPENSES:** | | | | | | | | | |
| | | | | | | | | | |
| **SOFT COSTS:** | | | | | | | | | |
| Final Engineering | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 60,000 | 0 | 0 | 250,000 |
| LAFCO | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 100,000 |
| CFD Formation | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 100,000 |
| Property Taxes | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 1,680,000 |
| Management | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 | 2,400,000 |
| Legal, Accounting, Professional & Insurance | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 1,240,000 |
| Contingency | 14,500 | 14,500 | 14,500 | 14,500 | 14,500 | 20,000 | 14,000 | 14,000 | 580,500 |
| SOFT COSTS - Subtotal | 159,500 | 159,500 | 159,500 | 159,500 | 159,500 | 220,000 | 154,000 | 154,000 | 6,350,500 |
| | | | | | | | | | |
| TOTAL COSTS | 159,500 | 159,500 | 159,500 | 159,500 | 159,500 | 220,000 | 154,000 | 154,000 | 6,350,500 |
| | | | | | | | | | |
| NET INCOME (LOSS) BEFORE CREDITORS | 601,750 | 10,101,684 | (159,500) | 710,500 | 710,500 | 11,183,772 | (154,000) | 12,918,378 | 73,015,720 |
| | | | | | | | | | |
| **DEBT:** | | | | | | | | | |
| Class 1 - "PCF" | - | - | - | - | - | - | - | - | 38,200,490 |
| Class 2 - Marano Secured | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 4,125,000 | 4,125,000 |
| Class 3 - Hildebrandt | - | - | - | - | - | - | - | - | 701,720 |
| Class 4 - Unsecured | 30,000 | 30,000 | 5,260,000 | - | - | - | - | - | 6,300,000 |
| Class 5 - Marano Unsecured | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 6,400,000 | 6,400,000 |
| Administrative Claims | 100,000 | 100,000 | 100,000 | 100,000 | 100,000 | 100,000 | 100,000 | 200,000 | 3,000,000 |
| New Equity w/ capital and preferred return prior to profits | 100,000 | 100,000 | 100,000 | 100,000 | 100,000 | 100,000 | 100,000 | 9,300,000 | 10,500,000 |
| DEBT - Sub-Total | 230,000 | 230,000 | 5,460,000 | 200,000 | 200,000 | 200,000 | 200,000 | 20,025,000 | 69,227,210 |
| CASH FLOW | 371,750 | 9,871,684 | (5,619,500) | 510,500 | 510,500 | 10,983,772 | (354,000) | (7,106,622) | 11,353,510 |
| Cumulative from Q1 2012 | 2,557,176 | 12,428,860 | 6,809,360 | 7,319,860 | 7,830,360 | 18,814,132 | 18,460,132 | 11,353,510 | |

EXHIBIT "12"
Page 25
Exhibit 2
Page 11
Exhibit B
PAGE 222

The Preserve, LLC

CASH FLOW

5

# EXHIBIT D-2

Exhibit___*2*___
Page___*26*___

Case 2:10-bk-18429-BB    Doc 553-2    Filed 09/18/12    Entered 09/18/12 17:23:17    Desc
Case 2:10-bk-18429-BB    Exhibit Exhibits 8-15    Page 97 of 115
Case 2:10-bk-18429-BB    Doc 541    Filed 03/30/12    Entered 03/30/12 14:40:40    Desc
Main Document    Page 29 of 33
Case 2:10-bk-18429-BB    Doc 481    Filed 09/28/11    Entered 09/28/11 15:50:42    Desc
Main Document    Page 14 of 16

Class 1 Minimum Payment Schedule

| Payment Date | Amount | Minimum Cumulative Lot Sales | Cumulative Percentage of Lots Sold | Minimum Additional Payment Due to Cumulative Lot Sales | Minimum Cumulative Payment Required |
|---|---|---|---|---|---|
| Q1 2012 | $302,575 | | | | $302,575 |
| Q2 2012 | $302,575 | | | | $605,150 |
| Q3 2012 | $302,575 | | | | $907,725 |
| Q4 2012 | $302,575 | | | | $1,210,300 |
| Q1 2013 | $302,575 | | | | $1,512,875 |
| Q2 2013 | $302,575 | | | | $1,815,450 |
| Q3 2013 | $302,575 | | | | $2,118,025 |
| Q4 2013 | $302,575 | | | | $2,420,600 |
| Q1 2014 | $302,575 | | | | $2,723,175 |
| Q2 2014 | $302,575 | | | | $3,025,750 |
| Q3 2014 | $302,575 | | | | $3,328,325 |
| Q4 2014 | $302,575 | | | | $3,630,900 |
| Q1 2015 | $302,575 | | | | $3,933,475 |
| Q2 2015 | - | 250 | 8.72% | $3,329,889 | $7,263,364 |
| Q3 2015 | - | | | | $7,263,364 |
| Q4 2015 | - | | | | $7,263,364 |
| Q1 2016 | - | | | | $7,263,364 |
| Q2 2016 | - | 550 | 19.18% | $3,995,867 | $11,259,231 |
| Q3 2016 | - | | | | $11,259,231 |
| Q4 2016 | - | | | | $11,259,231 |
| Q1 2017 | - | | | | $11,259,231 |
| Q2 2017 | - | 900 | 31.38% | $4,661,845 | $15,921,076 |
| Q3 2017 | - | | | | $15,921,076 |
| Q4 2017 | - | | | | $15,921,076 |
| Q1 2018 | - | | | | $15,921,076 |
| Q2 2018 | - | 1250 | 43.58% | $4,661,845 | $20,582,921 |
| Q3 2018 | - | | | | $20,582,921 |
| Q4 2018 | - | | | | $20,582,921 |
| Q1 2019 | - | | | | $20,582,921 |
| Q2 2019 | - | 1600 | 55.79% | $4,661,845 | $25,244,766 |
| Q3 2019 | - | | | | $25,244,766 |
| Q4 2019 | - | | | | $25,244,766 |

Exhibit D-2
Page 12

Exhibit 2
Page 27

EXHIBIT "12"                              PAGE 224

Case 2:10-bk-18429-BB    Doc 553-2    Filed 09/18/12    Entered 09/18/12 17:23:17    Desc
Case 2:10-bk-18429-BB    Exhibit Exhibits 8-15 30 Page 98 of 115 3/30/12 14:40:40.    Desc
Case 2:10-bk-18429-BB    Main Document 09/28/ Page 20 of 33 Entered 09/28/11 15:50:42    Desc
Main Document    Page 15 of 16

## Class 1 Minimum Payment Schedule

| Payment Date | | Amount | Minimum Cumulative Lot Sales * | Cumulative Percentage of Lots Sold | Minimum Additional Payment Due to Cumulative Lot Sales ** | Minimum Cumulative Payments Required *** |
|---|---|---|---|---|---|---|
| Q1 | 2020 | - | | | | $25,244,766 |
| Q2 | 2020 | - | 2000 | 69.74% | $5,327,823 | $30,572,589 |
| Q3 | 2020 | - | | | | $30,572,589 |
| Q4 | 2020 | - | | | | $30,572,589 |
| Q1 | 2021 | - | | | | $30,572,589 |
| Q2 | 2021 | - | 2425 | 84.55% | $5,660,812 | $36,233,401 |
| Q3 | 2021 | - | | | | $36,233,401 |
| Q4 | 2021 | - | 2868 | 100.00% | $1,967,089 | $38,200,490 |
| TOTALS | | $3,933,475 | 2868 | 100.00% | $34,267,015 | $38,200,490 |

* Quarterly payments are included in the lots sales minimum payments when such payments occur.

** The Minimum Cumulative Lot Sales Requirements herein are satisfied by the total number of lots sold in all prior years through the end of the calendar year in question. For example, a hypothetical sale of 1000 lots in 2014 would satisy the Minimum Cumulative Lot Sales Requirement of the plan through the year 2017, regardless of whether any further lot sales occur prior to the end of 2017.

*** Calculation is based upon a percentage of the $38,200,490 secured claim, before any offsets are applied as a result of the pending litigation against PCF and the investors. Should the litigation recovery reduce the secured claim, the minimum additional payment would correspondingly be lowered, provided however that 100% of net land sales proceeds would be paid to Class 1 claimants regardless of the minimum required, resulting in an even greater expected paydown than shown.

****To the extent lot sales occur on an accelerated basis and payments exceed the "Minimum Cumulative Payments Required" at any given time, Debtor will not be obligated to make additional payments until necessary to stay ahead of the "Minimum Cumulative Payments Required" schedule. By way of example, if Debtor has a $4,000,000 sale of 250 lots in Q4 2012, Debtor's next payment would not occur until Q2 2015. Debtor reserves the right to propose a modification of this payment schedule in connection with any lot sales.

EXHIBIT "12"

Page 28
Exhibit 2

Exhibit D-2
Page 13

PAGE 225

| In re:<br>THE PRESERVE, LLC | | CHAPTER 11 |
|---|---|---|
| | Debtor. | CASE NUMBER 2:10-bk-18429-BB |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 18191 Von Karman Avenue, Suite 470, Irvine, CA 92612.

A true and correct copy of the foregoing document described as **SUPPLEMENTAL DECLARATION OF AAMIR RAZA IN SUPPORT OF CONFIRMATION OF DEBTOR'S FIFTH AMENDED CHAPTER 11 PLAN AS MODIFIED** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On September 28, 2011, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

- Jeffrey S Benice    jsb@jeffreybenice.com
- Jeffrey W Broker    jbroker@brokerlaw.biz
- Russell Clementson    russell.clementson@usdoj.gov
- Catherine Convy    eac@ggb-law.com
- James R. Felton    jfelton@greenbergbass.com
- Don Fisher    dfisher@ptwww.com
- Marc C Forsythe    kmurphy@goeforlaw.com
- Cynthia Futter    cfutter@futterwells.com
- Robert P Goe    kmurphy@goeforlaw.com, rgoe@goeforlaw.com;mforsythe@goeforlaw.com
- Richard A Harvey    dickatlaw@cox.net
- John Mark Jennings    jjennings@shblp.com
- Leonard M Shulman    lshulman@shbllp.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Hatty Y. Yip    jetty.yip@usdoj.gov
- David R Zaro    dzaro@allenmatkins.com
- Joshua del Castillo    jdelcastillo@allenmatkins.com

☐ Service information continued on attached page

II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served):
On September 28, 2011, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

The Hon. Sheri Bluebond, 255 East Temple Street, Suite 1482, Los Angeles, CA 90012 [Overnight Delivery]

☐ Service information continued on attached page

III. **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, 2010, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| September 28, 2011 | Barbara Jean Little-Raphael | *Little-Raphael* |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009    **F 9013-3.1**

Exhibit __2__
Page __29__

EXHIBIT "12"    PAGE 226

| In re:<br>THE PRESERVE, LLC<br><br>Debtor. | CHAPTER 11<br><br>CASE NUMBER 2:10-bk-18429-BB |
| --- | --- |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 18191 Von Karman Avenue, Suite 470, Irvine, CA 92612. A true and correct copy of the foregoing document described as **REORGANIZED DEBTOR'S FIRST POST-CONFIRMATION STATUS REPORT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On March 30, 2012, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

- Jeffrey S Benice    jsb@jeffreybenice.com
- Jeffrey W Broker    jbroker@brokerlaw.biz
- Russell Clementson    russell.clementson@usdoj.gov
- Catherine Convy    glg@ggb-law.com
- James R Felton    jfelton@greenbass.com
- Don Fisher    dfisher@ptwww.com
- Marc C Forsythe    kmurphy@goeforlaw.com
- Cynthia Futter    cfutter@futterwells.com
- Robert P Goe    kmurphy@goeforlaw.com, rgoe@goeforlaw.com;mforsythe@goeforlaw.com
- Richard A Harvey    dickatlaw@cox.net
- John Mark Jennings    jjennings@shbllp.com
- Loraine L Pedowitz    lpedowitz@allenmatkins.com
- Mark C Schnitzer    mschnitzer@rhlaw.com, mschnitzer@verizon.net
- Andrea Schoor    aschoor@allenmatkins.com
- Leonard M Shulman    lshulman@shbllp.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Hatty K Yip    hatty.yip@usdoj.gov
- David R Zaro    dzaro@allenmatkins.com
- Joshua del Castillo    jdelcastillo@allenmatkins.com

☐ Service information continued on attached page

II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served):
On March 30, 2012, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*
**Hon. Sheri Bluebond, 255 East Temple Street, Suite 1482, Los Angeles, CA 90012 (via U.S. Mail)**

☒ Service information continued on attached page

III. **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, 2012, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| March 30, 2012 | Barbara Jean Little-Raphael | *[signature]* |
| --- | --- | --- |
| Date | Type Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                          **F 9013-3.1**

United States Trustee
725 South Figueroa St., 26th Floor
Los Angeles, CA 90017
Attn: Gary Baddin

The Preserve, LLC
c/o Beaumont 1600, LLC
P.O. Box 55317
Riverside, CA 92517

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

Riverside County Tax collector
P.O. Box 12005
Riverside, CA 92502-2205

Scott H. Krentel
7006 Magnolia Ave., PMB 309
Riverside, CA 92506

Franchise Tax Board
Attention:  Bankruptcy
PO Box 2952
Sacramento, CA 95812-2952

Deep Canyon Holdings, Inc.
P.O. Box 10723
Palm Desert, CA 92255

San Bernardino County Tax Collector
172 West Third St., First Floor
San Bernardino, CA 91425-0360

Aamir Raza
655 Central Avenue, 17th Floor
Glendale, CA 91203

Gresham Savage Nolan & Tilden
3750 University Avenue,
Suite 250
Riverside, CA 92501-3335

Beach, Freeman Lim & Cleland
861 Parkview Drive North,
Suite 200
El Segundo, CA 90245

Rox Consulting Group, Inc
1661 South Coast Highway
Laguna Beach, CA 92651

Barry Hildebrandt
2680 Wintertree Ct.
Riverside, CA 92506

Palmieri Tyler et al
2603 Main Street, East Tower
Suite 1300
Irvine, CA 92614
[Special Notice]

National Financial Lending, LLC
7 Argonaut
Aliso Viejo, CA 92656

The William Marano Living Trust
c/o Steve Coldwell
3239 North Verdugo Road
Glendale, CA 91208-1633

Sherry Ikezawa
6349 Riverside Avenue
Riverside, CA 92506

Point Central Financial, Inc.
"PCFU" and "PCF1"
7 Argonaut
Aliso Viejo, Ca 92656

Robert P. Goe, Esq.
Goe & Forsythe, LLP
18101 Von Karman, Suite 510
Irvine, CA 92612
[Special Notice]

Marshall & Stevens Inc.
355 S. Grand, Suite 1750
Los Angeles, CA 90071

Amanda Breneman, Esq.
Grant Genovese & Baratta LLP
2030 Main Street, Suite 1600
Irvine, CA 92614

David Zaro, Esq.
Allen Matkins et al
515 S. Figueroa Street, 9th Floor
Los Angeles, CA 90071

Richard A. Harvey, Esq.
111 Pacifica, Suite 130
Irvine, CA 92618

# EXHIBIT 13

## United States Bankruptcy Court
## Central District of California

### Los Angeles
### Judge Sheri Bluebond, Presiding
### Courtroom 1475 Calendar

| | |
|---|---|
| **Tuesday, July 17, 2012** | **Hearing Room**   **1475** |

---

<u>11:00 am</u>

| | | |
|---|---|---|
| **2:10-18429** | **The Preserve, LLC** | **Chapter   11** |

Adv#: 2:12-01897        The Preserve, LLC v. Point Center Financial, Inc. et al

**#100.00**        Emergency Motion for Order Directing Deposit of Funds into Court
Registry in Pending Interpleader Adversary Proceeding

Docket #:    2

**Courtroom Deputy:**

 - NONE LISTED -

**Tentative Ruling:**

Deny motion, but give debtor a comfort order that it can comply with the plan
notwithstanding the levies it has received and any demand from Deep Canyon.

To the extent that the motion seeks authority to pay to the Court amounts that should be
paid to PCF under the plan, this is in substance a motion to modify the plan after it has
been substantially consummated.  The plan and confirmation order are clear that monies
are to be paid to PCF, the agent for the beneficiaries.  If Deep Canyon is unhappy with its
agent, that is a dispute between Deep Canyon and the agent.  The debtor can satisfy its
obligations under the plan, and should satisfy its obligations under the plan, by making
payments to PCF.  There is no basis for an interpleader.  Deep Canyon does not have a
claim against the debtor if PCF absconds with its share of the money.  Deep Canyon is
free to take action against PCF in an appropriate forum if it has a problem with PCF's
conduct as agent.  The debtor is not a party to this dispute.

The levies are irrelevant.  These levies seek to compel turnover of monies due PCF.  The
funds to be paid to PCF under the plan do not belong to PCF.  They are being paid to
PCF in its capacity as an agent for the beneficiaries.  A levy doesn't reach trust funds.
The levies refer to all property subject to enforcement of a money judgment against PCF.
The payments due PCF under the plan are not property subject to the enforcement of a
money judgment against PCF.

| Party Information |
|---|

<u>Debtor(s):</u>

---

# United States Bankruptcy Court
## Central District of California

### Los Angeles
### Judge Sheri Bluebond, Presiding
### Courtroom 1475 Calendar

| | |
|---|---|
| **Tuesday, July 17, 2012** | **Hearing Room    1475** |

11:00 am

| **Cont....** | **The Preserve, LLC** | | **Chapter    11** |
|---|---|---|---|

Debtor(s):

| The Preserve, LLC | Represented By |
|---|---|
| | Jeffrey W Broker |
| | Richard A Harvey |

Defendant(s):

Brady Company / San Diego, Inc.

Brewer Corporation dba Brewer Crane

Deep Canyon Holdings, Inc.

Division 8 Inc.

Dynalectric Company

| Point Center Financial, Inc. | Represented By |
|---|---|
| | Robert P Goe |

Plaintiff(s):

| The Preserve, LLC | Represented By |
|---|---|
| | Jeffrey W Broker |

U.S. Trustee(s):

United States Trustee (LA)

# EXHIBIT 14

JEFFREY W. BROKER – State Bar No. 53226
BROKER & ASSOCIATES PROFESSIONAL CORPORATION
18191 Von Karman Avenue, Suite 470
Irvine, CA 92612-7114

Telephone: (949) 222-2000
Facsimile: (949) 222-2022
email: *jbroker@brokerlaw.biz*

Counsel for Reorganized Debtor and Plaintiff

FILED & ENTERED

JUL 25 2012

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY milano    DEPUTY CLERK

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

In re
THE PRESERVE, LLC, a California Limited Liability Company,

      Reorganized Debtor

_____

THE PRESERVE, LLC,

      Plaintiff

      vs.

POINT CENTER FINANCIAL, INC., a California corporation; BRADY COMPANY / SAN DIEGO, INC., a California corporation; BREWER CORPORATION, a California corporation, dba BREWER CRANE & RIGGING; DYNALECTRIC COMPANY, a California corporation; DIVISION 8 INC., a California corporation; DEEP CANYON HOLDINGS, INC., a corporation, and Does 1 through 500, inclusive

      Defendants

Case No. 2:10-bk-18429-BB

Chapter 11 Proceeding

Adversary No. **2:12-ap-01897-BB**

**ORDER DENYING EMERGENCY MOTION FOR ORDER DIRECTING DEPOSIT OF FUNDS INTO COURT REGISTRY IN PENDING INTERPLEADER ADVERSARY PROCEEDING**

Date: July 17, 2012
Time: 11:00 a.m.
Ctrm: 1475
    255 East Temple Street
    Los Angeles, CA 90012

The matter of the hearing on the *EMERGENCY MOTION FOR ORDER DIRECTING DEPOSIT OF FUNDS INTO COURT REGISTRY IN PENDING INTERPLEADER ADVERSARY PROCEEDING* (the "Motion" – ECF Docket No. 2) filed by Plaintiff, The Preserve, LLC, the

Reorganized Debtor in this pending Chapter 11 case ("Plaintiff") came on for hearing before the undersigned United States Bankruptcy Judge pursuant to an Order Shortening Time on July 17, 2012 at the hour of 11:00 a.m.  Jeffrey W. Broker, Esq. of Broker & Associates Professional Corporation appeared on behalf of the Plaintiff.  Marc C. Forsythe, Esq. of Goe & Forsythe, LLP and Dale Martin, Esq., in-house counsel for Point Center Financial, Inc. appeared on behalf of Defendant Point Center Financial, Inc.  James Felton, Esq. of Greenberg & Bass LLP appeared on behalf of Defendant Deep Canyon Holdings, Inc.  Paul H. James, Esq. of Lincoln, Gustafson & Cercos appeared on behalf of Defendant Brady Company / San Diego, Inc.  Jon F. Gauthier, Esq. of Marks, Finch, Thornton & Baird, LLP appeared on behalf of Defendant Brewer Corporation dba Brewer Crane & Rigging.  Murray M. Helm, Jr., Esq. of the Law Offices of Murray M. Helm, Jr. appeared on behalf of Defendant Dynalectric Company.  After reviewing the pleadings and records on file in the case, and after hearing argument of counsel,

**IT IS HEREBY ORDERED** as follows:

1.     The Motion is DENIED.  Pursuant to the Plaintiff's *FIFTH AMENDED CHAPTER 11 PLAN AS MODIFIED* (the "Plan") payments are to be made thereunder by the Plaintiff to the Class 1 Claimant, Point Center Financial, Inc., in its capacity under the Plan as the agent for beneficiaries, payable to *Point Center Financial, Inc. Trust Account*; and

2.     In connection with the Motion, the Court makes no determination as to who the beneficiaries are for the pending payment (or any subsequent payments) under the Plan.  The parties are free to pursue their remedies, if any, as they deem fit in other fora.

###

DATED: July 25, 2012

_____
United States Bankruptcy Judge

-2-

EXHIBIT "14"                                        PAGE 232

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is 18191 Von Karman Ave., Suite 470, Irvine, CA 92612.

A true and correct copy of the foregoing document entitled **ORDER DENYING EMERGENCY MOTION FOR ORDER DIRECTING DEPOSIT OF FUNDS INTO COURT REGISTRY IN PENDING INTERPLEADER ADVERSARY PROCEEDING** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF"):** Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document.  On _____, 2012, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses indicated below:

☐Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL:**
On July 23, 2012 I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, addressed as follows.  Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on July 23, 2012, I served the following persons and/or entities by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

Hon. Sheri Bluebond, 255 East Temple Street, Suite 1482, Los Angeles, CA 90012 (**Overnight Delivery**)

☐Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| July 23, 2012 | Barbara Jean Little-Raphael | s/s Barbara Jean Little-Raphael |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

-3-

EXHIBIT "14"                    PAGE 233

## ATTACHMENT TO PROOF OF SERVICE

### [Served by U.S. Mail]

*Counsel for Defendant POINT CENTER FINANCIAL, INC.*:
Robert Goe, Esq.
Goe & Forsythe, LLP
18101 Von Karman, Suite 510
Irvine, CA 92612
Tel: (949) 798-2460

*Counsel for Defendant BRADY COMPANY / SAN DIEGO, INC.*:
Theodore R. Cercos, Esq.
Lincoln, Gustafson & Cercos
225 Broadway, Suite 2000
San Diego, CA 92101
Tel: (619) 233-1150

*Counsel for Defendant BREWER CORPORATION dba BREWER CRANE & RIGGING*:
Jon F. Gauthier, Esq.
Marks, Finch, Thornton & Baird, LLP
4747 Executive Drive, Suite 700
San Diego, CA 92121-3107
Tel: (858) 737-3100

*Counsel for Defendant DYNALECTRIC COMPANY*:
Murray M. Helm, Jr., Esq.
550 West "C" Street, Suite 1155
San Diego, CA 92101
Tel: (619) 234-6744

*Counsel for DIVISION 8 INC.*:
Kenneth C. Hoyt, Esq.
Hoyt Law Firm
181 Rea Avenue, Suite 2010
El Cajon, CA 92020
Tel: (619) 588-1726

*Counsel for DEEP CANYON HOLDINGS, INC.*:
James Felton, Esq.
Greenberg & Bass LLP
16000 Ventura Boulevard, Suite 1000
Encino, CA 91436
(818) 382-6200

-4-

EXHIBIT "14"                    PAGE 234

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify*) **ORDER DENYING EMERGENCY MOTION FOR ORDER DIRECTING DEPOSIT OF FUNDS INTO COURT REGISTRY IN PENDING INTERPLEADER ADVERSARY PROCEEDING** was entered on the date indicated as Entered on the first page of this judgment or order and will be served in the manner indicated below:

**1. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):** Pursuant to controlling General Orders and LBRs, the foregoing document was served on the following persons by the court via NEF and hyperlink to the judgment or order.   As of July 23, 2012 the following persons are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email addresses indicated below.

- Jeffrey W Broker:  jbroker@brokerlaw.biz

- James R Felton:  jfelton@greenbass.com

- Robert P Goe:  kmurphy@goeforlaw.com, rgoe@goeforlaw.com;mforsythe@goeforlaw.com

- United States Trustee (LA):  ustpregion16.la.ecf@usdoj.gov

☐Service information continued on attached page

**2. SERVED BY THE COURT VIA U.S. MAIL:**  A copy of this notice and a true copy of this judgment or order was sent by United States Mail, first class, postage prepaid, to the following persons and/or entities at the addresses indicated below:

☐Service information continued on attached page

**3. TO BE SERVED BY THE LODGING PARTY**:  Within 72 hours after receipt of a copy of this judgment or order which bears an Entered stamp, the party lodging the judgment or order will serve a complete copy bearing an Entered stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following persons and/or entities at the addresses, facsimile transmission numbers and/or email addresses indicated below:

☒Service information continued on attached page

-5-

### <u>ATTACHMENT TO SECTION 3 OF NOTICE OF ENTERED ORDER</u>

### <u>AND SERVICE LIST</u>

*Counsel for Defendant POINT CENTER FINANCIAL, INC.*:
Robert Goe, Esq.
Goe & Forsythe, LLP
18101 Von Karman, Suite 510
Irvine, CA 92612

*Counsel for Defendant BRADY COMPANY / SAN DIEGO, INC.*:
Theodore R. Cercos, Esq.
Lincoln, Gustafson & Cercos
225 Broadway, Suite 2000
San Diego, CA 92101

*Counsel for Defendant BREWER CORPORATION dba BREWER CRANE & RIGGING*:
Jon F. Gauthier, Esq.
Marks, Finch, Thornton & Baird, LLP
4747 Executive Drive, Suite 700
San Diego, CA 92121-3107

*Counsel for Defendant DYNALECTRIC COMPANY*:
Murray M. Helm, Jr., Esq.
550 West "C" Street, Suite 1155
San Diego, CA 92101

*Counsel for DIVISION 8 INC.*:
Kenneth C. Hoyt, Esq.
Hoyt Law Firm
181 Rea Avenue, Suite 2010
El Cajon, CA 92020

*Counsel for DEEP CANYON HOLDINGS, INC.*:
James Felton, Esq.
Greenberg & Bass LLP
16000 Ventura Boulevard, Suite 1000
Encino, CA 91436

-6-

# EXHIBIT 15

FILED & ENTERED

SEP 14 2012

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY beauchamDEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>The Preserve, LLC<br><br><br><br>Debtor(s). | CHAPTER 11<br><br>Case No.: 2:10-bk-18429-BB<br>Adv No: 2:12-ap-01897-BB<br><br>**ORDER DISMISSING ADVERSARY PROCEEDING** |
| The Preserve, LLC<br><br>Plaintiff(s),<br><br>v.<br><br>Point Center Financial, Inc.<br><br><br>Defendant(s). | Date: September 11, 2012<br>Time: 2:00 PM<br>Courtroom: 1475 |

A status conference in the above-referenced adversary proceeding having been scheduled for September 11, 2012 at 2:00 p.m. (the "Status Conference"), and Plaintiff having filed a request for voluntary dismissal,

//

**IT IS HEREBY ORDERED** that the Status Conference is off calendar, and the above-referenced adversary proceeding is dismissed.

### 

DATED: September 14, 2012

_____
United States Bankruptcy Judge

-2-

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify*): _____
was entered on the date indicated as "Entered" on the first page of this judgment or order and will be
served in the manner stated below:

**1. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)** – Pursuant to controlling
General Orders and LBRs, the foregoing document was served on the following persons by the court via
NEF and hyperlink to the judgment or order. As of (*date*)_____, the following persons are
currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive
NEF transmission at the email addresses stated below.

Jeffrey W Broker    jbroker@brokerlaw.biz
James R Felton    jfelton@greenbass.com
Robert P Goe    kmurphy@goeforlaw.com, rgoe@goeforlaw.com;mforsythe@goeforlaw.com
United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY THE COURT VIA UNITED STATES MAIL:** A copy of this notice and a true copy of this
judgment or order was sent by United States mail, first class, postage prepaid, to the following persons
and/or entities at the addresses indicated below:

Jon F Gauthier
Marks, Finch, Thornton & Baird, LLP
4747 Executive Dr Ste 700
San Diego, CA 92121-3107

☐ Service information continued on attached page

**3. TO BE SERVED BY THE LODGING PARTY**: Within 72 hours after receipt of a copy of this judgment
or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete
copy bearing an "Entered" stamp by United States mail, overnight mail, facsimile transmission or email
and file a proof of service of the entered order on the following persons and/or entities at the addresses,
facsimile transmission numbers, and/or email addresses stated below:

☐ Service information continued on attached page

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

EXHIBIT "15"    PAGE 289

**F 9021-1.1.NOTICE.ENTERED.ORDER**